McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
James P. Wagoner, #58553
  *jim.wagoner@mccormickbarstow.com*
Lejf E. Knutson, #234203
  *lejf.knutson@mccormickbarstow.com*
Nicholas H. Rasmussen, #285736
  *nrasmussen@mccormickbarstow.com*
Graham Van Leuven, #295599
  *graham.vanleuven@mccormickbarstow.com*
7647 North Fresno Street
Fresno, California 93720
Telephone:(559) 433-1300
Facsimile:(559) 433-2300

Attorneys for Defendant New York
Marine and General Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Travelers Commercial Insurance Company, a Connecticut corporation,<br><br>Plaintiff,<br><br>v.<br><br>New York Marine and General Insurance Company, a New York corporation<br><br>Defendant. | Case No. 2:21-cv-5832-GW (PDx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**<br><br>Date: September 16, 2021<br>Time: 8:30 a.m.<br>Judge: Hon. George H. Wu<br>Courtroom: 9D |

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

Ps&As IN SUPPORT OF MOTION TO DISMISS COMPLAINT (FRCP 12(b)(6))

1

## **TABLE OF CONTENTS**

2

**Page**

3
I.     INTRODUCTION ................................................................. 1

4
II.    FACTUAL ALLEGATIONS ................................................ 3

5
III.   LEGAL ARGUMENT ......................................................... 5

6
A.  A Defending Insurer Which Provides Independent Counsel To Its
7
Insured Is Not Entitled To Contribution From Another Defending
Insurer Which Does Not Have A Duty To Provide Independent
8
Counsel................................................................................. 5

9
B.  As A Matter Of Law, New York Marine Had No Obligation To
Provide The Insured With Independent Counsel ..................... 7

10
1.  Since The Underlying Action Is Pending In Virginia, The
11
Issue Of Whether New York Marine Is Obligated To
Provide Independent Counsel Is Governed By Virginia Law
12
................................................................................ 7

13
a.  The Conflict Of Interest Analysis Is Unaffected By
The Ninth Circuit's Decision In *Northern Insurance*
*Co. v. Allied Mutual Ins. Co.,* 955 F.2d 1353, 1359
14
(9th Cir. 1992) .................................................... 9

15
b.  Under Virginia Law, New York Marine Had No
Obligation To Provide Independent Counsel To The
16
Insured ............................................................. 11

17
(i)   Under Well Established Virginia Law,
Defense Counsel Retained By An Insurer
18
Under A Reservation Of Rights Has No
Conflict Of Interest Since Counsel Only Has
19
The Insured For A Client .......................... 11

20
(ii)  Under Virginia Law, New York Marine Did
Not Breach Its Defense Obligations To The
21
Insured By Providing A Defense Via
Appointed Defense Counsel Under A
22
Reservation Of Rights............................... 14

23
2.  Alternatively, In The Event California Law Applies To
New York Marine's Defense Obligations, New York
24
Marine Had No Obligation To Provide Independent
Counsel To The Insured.............................................. 15

25
a.  There Was No Actual Conflict Of Interest Under Civ.
26
Code § 2860 Since Virginia Defense Counsel Only
Had The Insured As A Client ............................... 16

27
(i)   Under California Law, "Actual" Conflicts Of
28
Interest Arise Only As A Consequence Of The

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

i

Ps&As IN SUPPORT OF MOTION TO DISMISS COMPLAINT (FRCP 12(b)(6))

## TABLE OF CONTENTS
### (Continued)

Page

"Tripartite Relationship" Between The Liability Insurer, The Insured And Defense Counsel ................................................................. 16

(ii)    Because Virginia Defense Counsel Was Not In An Attorney-Client Relationship With New York Marine, They Had No Obligation Under Civ. Code §2860 To Provide The Insured With Independent Counsel ............................................. 17

b.    New York Marine Had No Obligation Under California Law To Provide The Insured With Independent Counsel Because The "Given Issues" Raised By The ROR Did Not Involve "Coverage Issues" That Could Be "Controlled By Counsel" ........... 20

(i)    Under California Law An "Actual" Conflict Of Interest Is Required To Trigger The Obligation To Provide Independent Counsel ........ 20

(ii)    The "Given Issues" Raised By The ROR Only Involved "Independent," "Extrinsic" Issues Which Could Not Create Any "Actual" Conflict Of Interest For Purposes Of Civ. Code §2860(b) ................................................................ 21

A)    The Fact That The Insured's Potential Liability Did Not Arise From Business Related Activities Was An "Independent", "Extrinsic" Issue ................ 22

B)    The Fact That The Virginia Action Did Not Seek Damages Because Of "Bodily Injury" Or "Property Damage" Was An "Independent", "Extrinsic" Issue ................ 22

C)    The Fact That The Policy Precluded "Stacking" Of Multiple Policy Indemnity Limits Was An "Independent", "Extrinsic" Issue ................ 23

D)    The Fact That New York Marine Reserved The Right To Disclaim Indemnity For Any Punitive Damages Award In The Event California Law Applied To Its Indemnity Obligations Did Not Create A Conflict Of Interest Under Civ. Code §2860(b) ......................... 24

McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

# TABLE OF CONTENTS
## (Continued)

**Page**

C.   Travelers' Claim For Declaratory Relief Is Dependent Upon Its Claim Of Contribution And Should Therefore Likewise Be Dismissed ................................................................................. 25

IV.   CONCLUSION ................................................................................. 25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

Ps&As IN SUPPORT OF MOTION TO DISMISS COMPLAINT (FRCP 12(b)(6))

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Arrow Elecs., Inc. v. Liberty Mut. Ins. Co.*,
   775 F.App'x 305 (9th Cir. 2019) ................................................................. 7

*Black Diamond Asphalt, Inc. v. Superior Ct.*,
   109 Cal.App.4th 166 (2003) ....................................................... 8, 9, 15

*Blanchard v. State Farm Fire & Cas. Co.*,
   2 Cal.App.4th 345 (1991) ...................................................................... 23

*Buss v. Superior Court*,
   16 Cal.4th 35 (1997) ................................................................................ 8

*Centex Homes v. St. Paul Fire & Marine Ins. Co.*,
   19 Cal.App.5th 789 (2018) .................................................................... 21

*Cybernet Ventures, Inc. v. Hartford Ins. Co. of the Midwest*,
   168 F.App'x 850 (9th Cir. 2006) ........................................................... 23

*Downey Venture v. LMI Ins. Co.*,
   66 Cal.App.4th 478 (1998) ............................................................ 8, 9, 15, 18

*Dynamic Concepts, Inc. v. Truck Ins. Exchange*,
   61 Cal.App.4th 999 (1998) ................................................ 10, 17, 20, 21, 22, 23

*Fed. Ins. Co. v. MBL, Inc.*,
   219 Cal.App.4th 29 (2013) ............................................................. 1, 6, 7, 21

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*,
   65 Cal.App.4th 1279 (1998) ................................................................ 5, 6

*Fireman's Fund Ins. Co. v. Nationwide Mut. Fire Ins. Co.*,
   2012 WL 1985316 (S.D.Cal. 2012) .............................................. 8, 9, 15

*Foremost Ins. Co. v. Wilks*,
   206 Cal.App.3d 251 (1988) .................................................................. 24

*Frontier Oil Corp. v. RLI Ins. Co.*,
   153 Cal.App.4th 1436 (2007) ....................................................... 7, 8, 9, 15

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

iv

**TABLE OF AUTHORITIES**
(Continued)

Page

*Gen. Sec. Ins. Co. v. Jordan, Coyne & Savits, LLP,*
357 F.Supp.2d 951 (2005) ...............................................................11, 15, 18, 19

*Golden Eagle Ins. Co. v. Foremost Ins. Co.,*
20 Cal.App.4th 1372 (1993) ...........................................................17, 21

*Gray v. Zurich Ins. Co.,*
65 Cal.2d 263 (1966) ......................................................................17

*Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone,*
79 Cal.App.4th 114 (2000) ...............................................................12, 18, 21

*Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.,*
61 Cal.4th 988 (2015) .....................................................................21

*Herrick Corp. v. Canadian Ins. Co.,*
29 Cal.App.4th 753 (1994) ..............................................................6

*In re Silicon Graphics Inc.,*
183 F.3d 970 (9th Cir. 1999) ...........................................................1

*James 3 Corp. v. Truck Ins. Exch.,*
91 Cal.App.4th 1097 (2001) ............................................................10, 17, 20, 21, 23

*James River Ins. Co. v. Medolac, Lab'ys*
290 F.Supp.3d 956 (C.D.Cal.2018) .................................................7, 8, 9, 15

*Klaxon Co. v. Stentor Elec. Mfg. Co.,*
313 U.S. 487 (1941)........................................................................7, 9, 10

*Knievel v. ESPN,*
393 F.3d 1068 (9th Cir. 2005) .........................................................1, 5

*Long v. Century Indem. Co.,*
163 Cal.App.4th 1460 (2008) ..........................................................16, 21

*McGee v. Superior Ct.,*
176 Cal.App.3d 221 (1985) .............................................................22, 24

*Mosier v. S. California Physicians Ins. Exch.,*
63 Cal.App.4th 1022 (1998) ............................................................16

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Native Sun Inv. Grp. v. Ticor Title Ins. Co.,*
189 Cal.App.3d 1265 (1987) .................................................................. 17, 24

*Norman v. Ins. Co. of N. Am.,*
218 Va. 718 (1978) .................................................................. 13, 14, 15

*Northern Insurance Co. v. Allied Mutual Ins. Co.,*
955 F.2d 1353 (9th Cir. 1992) .................................................. 7, 9, 10, 11

*Parrino v. FHP, Inc.,*
146 F.3d 699 (9th Cir. 1998) .................................................................. 1

*Patel v. Am. Nat'l Prop. & Cas. Co.,*
367 F.Supp.3d 1186 (D.Nev. 2019).................................................... 25

*San Diego Fed. Credit Union v. Cumis Ins. Society,*
162 Cal.App.3d 358 (1984) .................................................................. 16, 17

*Sidorov v. Transamerica Life Ins. Co.,*
832 F. App'x 479 (9th Cir. 2020) ........................................................ 25

*State Farm Fire & Cas. Co. v. Mabry,*
255 Va. 286 (1998) .................................................................. 14, 15, 18, 19

*Steinle v. City and Cty. Of San Francisco,*
919 F.3d 1154 (9th Cir. 2019) .............................................................. 1, 5

*Streamcast Networks, Inc. v. IBIS LLC,*
2006 WL 5720345 .................................................................................. 25

*Swanson v. State Farm Gen. Ins. Co.,*
219 Cal.App.4th 1153 (2013) ............................................................ 16, 19

*Truck Ins. Exch. v. Unigard Ins. Co.,*
79 Cal.App.4th 966 (2000) .................................................................... 5

*Vascular Imaging Pros., Inc. v. Digirad Corp.,*
401 F.Supp.3d 1005 (S.D. Cal. 2019) ................................................ 25

**Statutes**

Bus. & Prof. Code §6002(a) ................................................................ 19

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

vi

Ps&As IN SUPPORT OF MOTION TO DISMISS COMPLAINT (FRCP 12(b)(6))

# TABLE OF AUTHORITIES
### (Continued)

**Page**

Civ. Code §1646 ................................................................................2, 7, 8, 9, 10, 15

Civ. Code §2860 ...........................................1, 3, 4, 5, 7, 9, 10, 15, 16, 17, 19, 20, 21

Civ. Code §2860(a)....................................................................................17, 19

Civ. Code §2860(b) ................................................3, 17, 19, 20, 21, 23, 24

Civ. Code §2860(e).....................................................................................17

Insurance Code §533 ...................................................................................24

**Rules**

Cal. Rules of Prof. Conduct, Rule 1.3 ........................................................19

FRCP 12(b)(6) ..................................................................1, 11, 25, 26

Virginia Code of Professional Responsibility
   DR: 5-106(B) .........................................................................................12

**Other Authorities**

Restatement (Second) Conflict of Laws § 188 (1971) ..................................9

Va. Sup. Ct. R. Sec.I, No.1 ........................................................................18

Va. Sup. Ct. R. Sec.II..................................................................................18

Virginia State Bar Standing Committee on Legal Ethics,
   Opinion 598 (approved by Supreme Court of Virginia, 1985) ...........12, 15, 18, 19

Virginia State Bar Standing Committee on Legal Ethics,
   Opinion 1536 (1993)...................................................12, 13, 15, 18, 19

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

## I.    __INTRODUCTION__

Both claims raised by plaintiff Travelers Commercial Insurance Company ("Travelers") against New York Marine and General Insurance Company ("New York Marine") are premised on a single, discrete legal contention – namely, that New York Marine is legally obligated to provide independent counsel to a common insured in a civil action venued in the Circuit Court of Fairfax County, Virginia. (Compl., ¶7; *see also* Wagoner Decl., Ex. C.)  As indicated by the operative allegations of the Complaint, this contention is in turn based on Travelers legal theory that the "terms" of New York Marine's reservation of rights letter sent to their common Insured created an *actual* conflict of interest triggering the Insured's corresponding right to independent counsel under California Civil Code § 2860.  (Compl., ¶¶9-10; *see also* Wagoner Decl., Ex. A [hereinafter "the ROR"].)[1]  Therefore, according to Travelers, since it is affording a defense *via* independent counsel, New York Marine is required to contribute one-half of the costs thereof.  (Compl., ¶ 16.)

However, the Complaint acknowledges that New York Marine has agreed to defend the common Insured and has "appointed defense counsel of its choice". (Compl., ¶ 13.)  And while Travelers had provided independent counsel to the Insured, an insurer which defends an insured through independent counsel is not entitled to contribution for those costs from other defending co-insurers who do not have a similar obligation to defend via independent counsel.  *See Fed. Ins. Co. v. MBL, Inc.,* 219 Cal.App.4th 29, 48-49 (2013).

---

[1] In connection with this Motion to Dismiss, New York Marine hereby brings to the Court's attention both a copy of the Complaint in the Virginia Action and the ROR pursuant to the Ninth Circuit's incorporation by reference doctrine.  *See Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir. 1998); *In re Silicon Graphics Inc.*, 183 F.3d 970, 986 (9th Cir. 1999)(under the doctrine, a district court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."); *see also Steinle v. City and Cty. Of San Francisco,* 919 F.3d 1154, 1167 fn. 17 (9th Cir. 2019); *Knievel v. ESPN*, 393 F.3d 1068, 1076-1078 (9th Cir. 2005).

Further, under Civil Code § 1646, since Virginia is the place of New York Marine's performance of its defense obligation, Virginia law applies. Under Virginia law, insurer-appointed defense counsel only has the insured as a client and there is no legal presumption that defense counsel provided pursuant to a reservation of rights will do anything contrary to the insured's interests in the conduct of their defense. Since New York Marine had no obligation to provide independent counsel in the Virginia Action, Travelers cannot establish a right to contribution for its cost of providing independent counsel to the Insured in that Action.

Alternatively, even if California law applies to govern New York Marine's performance of its obligation to provide a defense in the Virginia Action, under California law an insurer is only obligated to provide independent counsel where there is an "actual" conflict of interest. For two (2) independent reasons, no such actual conflict exists. First, under California law, "actual" conflicts of interest arise only as a consequence of the "tripartite" relationship between a liability insurer, the insured and defense counsel. However, since Virginia defense counsel is governed by the Virginia Code of Professional Responsibility which makes only the insured the client, no conflict of interest exists requiring the appointment of independent counsel. Second, according to the Complaint, New York Marine's ROR letter "triggered the right of its insured to be defended by independent counsel of the mutually insured's choosing." (Compl., ¶ 10.) However, those allegations are belied by the very terms of New York Marine's ROR letter which is being offered for the Court's consideration under the "incorporation by reference" doctrine. As set forth therein, the ROR only raised coverage issues with respect to the Insured's defense under the New York Marine Policy which did not create a conflict of interest under well-established California law. (See III.B.2.b.(ii).A)-D).) Since the outcome of these reserved coverage issues could not "be controlled by counsel first retained by the insurer for the defense of the claim," even if Virginia defense counsel appointed by New York Marine was somehow subject to California Rules of Professional Conduct and thereby

1  in a "tripartite" relationship with both the Insured and New York Marine, the ROR

2  created no actual conflict of interest.  *See* Civ. Code § 2860(b).

3       Because Travelers' allegations, if proven, would not establish that New York

4  Marine was obligated to provide the Insured  independent counsel under Civil Code

5  § 2860, Travelers' equitable contribution and declaratory relief claims necessarily fail

6  to state claims upon which the requested relief can be granted.

7  **II.    FACTUAL ALLEGATIONS**

8       The underlying civil defamation action alleging claims for both compensatory

9  and punitive damages is venued in Circuit Court of Fairfax County, Virginia.  (See

10 Compl., ¶¶7-12; see also Wagoner Decl., Ex. C; ROR.)   Significantly, Travelers

11 makes no assertion that New York Marine has failed to defend at all or that New York

12 Marine is not fulfilling its contractual duty to defend the mutual insured.  For it is

13 undisputed that New York Marine, upon tender of the Virginia Action, provided the

14 Insured with a full defense pursuant to the "personal injury" personal liability

15 coverage provided by the New York Marine Policy. (Compl., ¶¶7-12; see also ROR,

16 pg.1 [advising the Insured that "[b]ased on our review of your insurance policy, the

17 allegations at issue in the lawsuit and the facts of which we have been informed, New

18 York Marine has determined that it will provide you with a legal defense under a

19 reservation of rights … effective as of September 4, 2019, the date this matter was

20 first tendered to New York Marine"].)   Equally undisputed is that defense counsel

21 appointed by New York Marine, as set forth in the ROR letter, Cameron McEvoy

22 PLLC, are licensed only in Virginia and other eastern states but are not licensed in

23 California. (See generally Compl.; Wagoner Decl. Ex. F [Cameron McEvoy records

24 reflecting no attorneys licensed to practice in California].) Also significantly,

25 Travelers does not allege that defense counsel provided by New York Marine was

26 incompetent, did not adequately defend the Insured or that New York Marine failed

27 to adequately fund the Insured's defense in the Virginia Action.

28      Rather, Travelers only alleges that "[t]he terms of New York Marine's [ROR]

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

3

Ps&As IN SUPPORT OF MOTION TO DISMISS COMPLAINT (FRCP 12(b)(6))

triggered the rights of its [I]nsured to be defended by independent counsel of the mutual [I]nsured's choosing, at New York Marine's expense (subject to the terms of California Civil Code § 2860." (Compl., ¶10.)  However, with respect to the specific coverage issues reserved by New York Marine, the ROR only stated, in relevant part, as follows:

- With respect to Commercial General Liability Coverage, that "[t]he Commercial General Liability Coverage part provides *commercial* liability coverage; it provides coverage to insureds with respect to their business-related activities.  The allegations in the Complaint make it clear that the events at issue arise from your personal activities.  As an individual, you qualify as an insured only with respect to the conduct of a business of which you are the sole owner.  Therefore, you do not qualify as an insured under the Commercial General Liability Coverage part in the policy."  (ROR, pg. 9 of 11 [emphasis in original]);

- With respect to Comprehensive Personal Liability Coverage, that "[i]t is clear the Plaintiff is not seeking damages for 'bodily injury' or 'property damage in the Complaint."  However, the ROR further immediately clarified that "the Plaintiff is seeking damages for defamation, which falls under the definition of 'personal injury', 5.d.; oral or written publication of material that slanders or libels a person or organization including other forms of defamation. Accordingly, New York Marine will provide you with a defense under the Comprehensive Personal Liability Coverage part."  (*Id.*);

- Also with respect to the potential coverage provided under the Comprehensive Personal Liability Coverage, that "to the extent that California law does not permit an insurer to indemnify the insured, no indemnity can be provided."  (*Id.*);

- And finally, that "New York Marine also reserved the right to limit

coverage under the policy pursuant to the 'Limitation – No Stacking of Occurrence Limits Of Insurance" endorsement outlined above.  (*Id.*)

Based on the allegation that these "terms" of the ROR "triggered the rights of its [I]nsured to be defended by independent counsel" under Civil Code § 2860, New York Marine is alleged to have "intentionally violated its duty to its mutual [I]nsured and to Travelers under the New York Marine Policy and under California law" by its appointment of Virginia panel defense counsel.  (Compl., ¶¶10-12.)[2]

## III.   <u>LEGAL ARGUMENT</u>

### A.   <u>A Defending Insurer Which Provides Independent Counsel To Its Insured Is Not Entitled To Contribution From Another Defending Insurer Which Does Not Have A Duty To Provide Independent Counsel</u>

Travelers' contribution claim is "equitable" in nature and is based on "the right to recover ... from a co-obligor who shares such liability with the party seeking contribution." *Truck Ins. Exch. v. Unigard Ins. Co*., 79 Cal.App.4th 966, 974 (2000). As applied "[i]n the insurance context, the right to contribution arises when several insurers are obligated to indemnify or defend the same loss or claim, and one insurer has paid more than its share of the loss or defended the action without any participation by the others...." *Unigard, supra,* 79 Cal.App.4th 966, 974; *Maryland Casualty, supra,* 65 Cal.App.4th 1279, 1293–1294.

Thus, in order for one insurer to recover contribution from another, the insurer

---

[2] Insofar as the Travelers' Complaint appears to allege that New York Marine somehow breached the stated terms of the New York Policy itself by assigning defense counsel of its own choosing, any such allegation is overcome by the actual terms of the Policy which expressly states that New York Marine "will … provide a defense at our expense *by counsel of our choice*." (Wagoner Decl., Ex.B, Form GL 0011 [06-10], Cov. L(b) pg. 52 of 66 [emphasis added]); *see also Steinle, supra,* 919 F.3d 1154, 1167 fn. 17 (information in documents incorporated by reference to complaint overcome contrary allegations in complaint); *Knievel, supra,* 393 F.3d 1068, 1076-1078 (same).  As such, there is no basis for any claim by Travelers of New York Marine's duty to provide independent counsel other than applicable law.

seeking contribution must establish that the two insurers covered the "same risk." Consequently, if the insurer against whom contribution is sought did not afford coverage for the same risk, it is not liable for contribution.[3]

Travelers' contribution cause of action is premised on a combination of the following legal contentions: (1) "Travelers and New York Marine each owed their mutual insured a defense with independent counsel of the mutual insured's choice"; (2) "Travelers is providing that [independent counsel], and New York Marine has not"; such that (3) "Travelers seeks a money judgment of equitable contribution of half of the attorney's fees, costs and expenses of defending the Underlying Action through counsel of the mutual insured's choosing." (Compl.,¶¶14, 25.)  Similarly, Travelers' declaratory relief claim seeks a judicial determination "that New York Marine had and has an obligation to defend the mutual insured in the Underlying Action with independent counsel." (*Id.*, ¶19.)  As tacitly acknowledged by these allegations, if in fact New York Marine had no obligation to provide the Insured with independent defense counsel in the Virginia Action, Travelers' intra-insurer claims against New York Marine have no validity.

However, a defending insurer such as Travelers which provides independent counsel to its insured is not entitled to contribution from another defending insurer which does not have a duty to provide independent counsel because the insurers do not share the "same risk."  In *Fed. Ins. Co. v. MBL, Inc.*, 219 Cal.App.4th 29, a dispute arose over whether the respective reservation of rights letters by multiple insurers of a common insured meant that each had an obligation to provide independent defense

---

[3] *See, e.g., Herrick Corp. v. Canadian Ins. Co.,* 29 Cal.App.4th 753, 762 (1994) (insurers did not cover "same risk" where one insurer paid amounts to satisfy insured's liability as a contractual indemnitor and other insurer paid amounts to satisfy insured's liability as a joint tortfeasor); *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1298 (1998) (equitable contribution not available between malpractice liability insurers and premises liability insurer since both covered different "risks").

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

6

Ps&As IN SUPPORT OF MOTION TO DISMISS COMPLAINT (FRCP 12(b)(6))

counsel under Civil Code §2860. *Id.*, 33-35. One of the common insurers did, in fact, provide independent counsel while the other insurers declined. *Id.* The insured filed a declaratory relief action seeking a determination that the insurers refusing to provide independent counsel were legally obligated to do so. Additionally, the insurer providing independent counsel filed a contribution action against the same insurers, which was consolidated with the insured's declaratory relief action. *Id.*, 38-39. The trial court dismissed both complaints via summary judgment based on its determination that the defendant insurers' reservations of rights letters did not create an actual conflict of interest triggering an obligation by those insurers to provide independent defense counsel under Civil Code §2860. *Id.*, 39-40.

In affirming the judgment, the Court concluded that since "[t]he fundamental prerequisite to equitable contribution is shared responsibility for the loss," the insurer who had paid the costs of independent defense counsel could not obtain contribution from the others because "none of the insurers … were ever obligated to reimburse [the insured] for the fees generated by [independent] counsel." *Id.*, 48-49.

**B.** **As A Matter Of Law, New York Marine Had No Obligation To Provide The Insured With Independent Counsel**

    **1.** **Since The Underlying Action Is Pending In Virginia, The Issue Of Whether New York Marine Is Obligated To Provide Independent Counsel Is Governed By Virginia Law**

In this diversity action venued in California, California choice of law principles apply. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Northern Insurance Co. v. Allied Mutual Ins. Co.,* 955 F.2d 1353, 1359 (9th Cir. 1992).

With respect to New York Marine's contractual obligations under its policy, "Civil Code section 1646 is the choice-of-law rule that determines the law governing the *interpretation* of a contract." *See Frontier Oil Corp. v. RLI Ins. Co.,* 153 Cal.App.4th 1436, 1443 (2007) (emphasis in original); *see also James River Ins. Co. v. Medolac Lab'ys,* 290 F.Supp.3d 956, 963 (C.D.Cal.2018) (applying §1646 choice of law test "as interpreted by *Frontier Oil*" to duty to defend dispute); *Arrow Elecs.,*

*Inc. v. Liberty Mut. Ins. Co.*, 775 F.App'x 305, 306 (9th Cir. 2019) (applying §1646 choice of law test to insurance coverage dispute and noting "[t]his case begins and ends with *Frontier Oil*").  That section provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made."  Civ. Code §1646.

Generally speaking, a liability insurer's contractual obligations under its policy "includes both defense and indemnity obligations."  *Frontier Oil*, *supra,* 153 Cal.App.4th 1436, 1450.  A liability insurer's "defense obligation" "entails the rendering of a service, viz., the mounting and funding of a defense."  *Id.* (citing *Buss v. Superior Court*, 16 Cal.4th 35, 46 (1997).)   With respect to the policy's intended "place of performance" of this "defense obligation," California law recognizes that the insurer "performs its defense obligation by providing defense services through an attorney….  The insurer provides defense services in the jurisdiction where the suit is prosecuted. *There is little doubt that this was the understanding of the parties at the time they entered into the insurance contract in this case*."  *Id.* (emphasis added).[4]

---

[4] *See also Fireman's Fund Ins. Co. v. Nationwide Mut. Fire Ins. Co.*, 2012 WL 1985316, at *6 (S.D.Cal. 2012) (applying Civ. Code §1646 and following *Frontier Oil* in concluding that California was "place of performance" of insurer's defense obligations in third party action venued in San Diego County, notwithstanding fact policy was issued in Florida); *James River, supra*, 290 F.Supp.3d 956, 966 (applying Civ. Code §1646 and following *Frontier Oil* in concluding that California was "place of performance" for insurer's defense obligations in third party action venued in Orange County, notwithstanding fact policy was issued in Oregon); *Black Diamond Asphalt, Inc. v. Superior Ct.,* 109 Cal.App.4th 166, 171 (2003) (holding for venue purposes that CIGA's statutory defense obligation "arose" in county where plaintiff had "been named as a defendant in a third party lawsuit" "because that is where the insurer's liability arises."); *Downey Venture v. LMI Ins. Co.*, 66 Cal.App.4th 478, 514 (1998) ("A liability insurance policy issued on a nationwide basis may be construed in accordance with the law of the jurisdiction in which a particular claim arises. Thus, the same policy language may receive different construction and application in different jurisdictions.  Parties to an insurance contract understand this.")

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 North Fresno Street
Fresno, CA 93720

8

Ps&As IN SUPPORT OF MOTION TO DISMISS COMPLAINT (FRCP 12(b)(6))

Based on the foregoing authority, it is clear that New York Marine's defense obligations to the Insured under its Policy with respect to the Virginia Action are governed by Virginia law since Virginia is the "place of performance" for New York Marine's defense obligations to the Insured.  Civ. Code §1646; *Frontier Oil*, *supra*, 153 Cal.App.4th 1436, 1450; *Fireman's Fund*, *supra*, 2012 WL 1985316, at *6; *James River*, *supra*, 290 F.Supp.3d 956, 966; *Black Diamond*, *supra*, 109 Cal.App.4th 166, 171; *see also Downey Venture*, *supra*, 66 Cal.App.4th 478, 514.

>    a.    **The Conflict Of Interest Analysis Is Unaffected By The Ninth Circuit's Decision In *Northern Insurance Co. v. Allied Mutual Ins. Co.*, 955 F.2d 1353, 1359 (9th Cir. 1992)**

In its opposition, Travelers may argue that the Ninth Circuit's decision in *Allied Mutual, supra,* 955 F.2d 1353 controls this dispute and thereby establishes that New York Marine had a legal obligation to provide the Insured with independent defense counsel in the Virginia Action pursuant to California Civil Code §2860 because the New York Marine policy was delivered in California. (Wagoner Decl, Ex. B, pg 2.)

However, the *Allied Mutual* decision involved an intra-insurer contribution dispute filed in the Western District of Washington arising out of an underlying civil action against a common insured which had been filed and prosecuted in Washington. *Id.*, 1355-1356.  Among the disputes was whether or not the defendant insurer was required to contribute to the costs of retaining independent defense counsel for the common insured.  *Id.*, 1359-1360.  After determining that California and not Washington law applied, the Ninth Circuit affirmed the targeted insurer's defense obligations were governed by California law, including Civil Code §2860.  *Id.*

Accordingly, the *Allied Mutual* decision is readily distinguishable since the coverage dispute was venued in Washington, Washington choice of law rules applied to determine the independent counsel issue. *Id.*, 1359 (relying on *Klaxon*, *supra*, 313 U.S. 487, 496.) Consequently, the Ninth Circuit applied Washington's "significant relationship" choice of law test under the Restatement (Second) Conflict of Laws §

188 (1971) to determine which jurisdictions' law governed the targeted insurer's defense obligations. *Id.* Finding California had a "strong interest" in the issue and that application of Civil Code §2860 would "not harm Washington's interest", the Ninth Circuit concluded that California law applied. *Id.*

However, the present dispute is venued in California such that California choice of law principles apply. *Allied Mutual, supra*, at 1359; *Klaxon, supra*, at 496.  Again, under California Civil Code §1646, New York Marine's defense obligations with respect to the "performance" of its defense obligations occurred and are occurring in Virginia.  (*See, supra,* Sec.III.A.)  Even if Travelers contends that California law applies to New York Marine's defense obligations because California was the place the policy was "made," the *Allied Mutual* legal analysis would be totally irrelevant since the Civil Code §1646 choice of law test applies as opposed to the Restatement choice of law test applied in *Allied Mutual.*  (*Id.*)  Given the substantive differences in the applicable choice of law tests, *Allied Mutual* cannot be read as establishing a blanket rule that Civil Code §2860 automatically applies to a liability insurer's defense obligations merely because the subject policy was delivered in California.

Even more fundamentally, the *Allied Mutual* court did not conduct a conflict of interest analysis – "careful" or otherwise as required if California law applied. *Dynamic Concepts, Inc. v. Truck Ins. Exchange,* 61 Cal.App.4th 999, 1007–08 (1998); *James 3 Corp. v. Truck Ins. Exch.*, 91 Cal.App.4th 1097, 1107 (2001).  Rather, for purposes of the appeal, the two insurers conceded that if California law applied, Civil Code §2860 obligated the targeted insurer to provide independent counsel. *Allied Mutual*, *supra,* at 1359 ("The next question is whether Allied fulfilled its duty to provide a defense when it hired Betts, Patterson. Under Washington law, it did; under California law, it did not.")

However, as explained in detail below, even if California law applied to New York Marine's defense obligations in the Virginia Action, there was no actual conflict of interest which  could trigger the Insured's right to independent counsel under Civil

Code § 2860 since: (1) Virginia defense counsel only represented the insured, thereby eliminating any actual or potential conflict of interest (see Section III.B.1.b(i) *supra*) raised no coverage issues whose outcome could be controlled by defense counsel (see Section III.B.2.b(ii), *supra*).  *See Allied Mutual, supra*, at 1359 (noting *Cumis*-triggering conflicts of interest "arise when, as here, the insurer reserves its rights on an issue over which defense counsel exerts some degree of control.")

> **b.**   **Under Virginia Law, New York Marine Had No Obligation To Provide Independent Counsel To The Insured**
>
> **(i)**   **Under Well Established Virginia Law, Defense Counsel Retained By An Insurer Under A Reservation Of Rights Has No Conflict Of Interest Since Counsel Only Has The Insured For A Client**

Virginia law does not require liability insurers to provide their insureds with independent defense counsel in reservation of rights situations because: (1) insurer-appointed defense counsel only has the insured for a client; and (2) Virginia does not apply any legal presumption that defense counsel retained an insurer to defend an insured under a reservation of rights will do anything in the conduct of the insured's defense which is inconsistent with the insured's interests.

In *Gen. Sec. Ins. Co. v. Jordan, Coyne & Savits, LLP,* 357 F.Supp.2d 951 (2005), a dispute arose in the context of a legal malpractice action brought by a liability insurer against a law firm previously retained to defend an insured in a personal injury lawsuit. *Id.*, 952.  As part of the liability insurer's malpractice claim, it alleged that appointed defense counsel was the insurer's client since the insurer had "selected, retained, and paid [defense counsel] to undertake [the insured's] representation." *Id.*, 955.  The defense counsel-defendant sought to dismiss the insurer's complaint under FRCP 12(b)(6) by arguing that under Virginia law, "an insurer cannot bring a legal malpractice claim against a law firm it retains to defend an insured because the insured, not the insurer, is the client of the firm, and conflict-of-interest principles bar any secondary duty to the insurer." *Id.*

MCCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

In evaluating these competing legal theories, the *Jordan* court noted that several jurisdictions outside of Virginia, including California, had adopted the view that defense counsel retained by a liability insurer to defend an insured is in a "tripartite relationship" which "exists among insurer, insured, and counsel, with both insurer and insured as co-clients of the firm in the absence of a conflict of interest." *Id.*, 956, *citing Gulf Ins. Co. v. Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone*, 79 Cal.App.4th 114, 126 (2000).  However, the *Jordan* court noted that "the Supreme Court of Virginia has never suggested that an insurer, as well as the insured, may be a client of the law firm the insurer retains to defend an insured." *Id.*, 957.  Instead, the *Jordan* court looked to "Virginia State Bar ethics opinions, approved by the Supreme Court of Virginia [which] make *unmistakably clear that an insurer is not the client of counsel it retains to defend an insured*." *Id.* (emphasis added, citing Opinions 598 and 1536).[5]  Those Virginia Supreme Court-approved opinions squarely address and resolve the issue by concluding that a Virginia licensed attorney retained by an insurer only has the insured for a client.[6]

---

[5] Notwithstanding the lack of an attorney-client relationship between the insurer and retained defense counsel, the *Jordan* court concluded the insurer could sue defense counsel for malpractice under a third-party beneficiary theory. *Id.*, 958.

[6] In Opinion 598, the legal question presented was whether the Virginia Code of Professional Responsibility "prohibits representation of an insured by a staff attorney for a liability carrier."  (See Wagoner Decl., Ex. D.)  In concluding that such representations are ethically permitted, Opinion 598 relied in part on Virginia Code of Professional Responsibility DR: 5-106(B) stating that "[a] lawyer shall not permit a person who recommends, employs or pays [them] to render legal services for another to direct or regulate [their] professional judgment in rendering such legal services." (*Id.*, pg.1.)  Based on this provision and others contained in the Virginia Code of Professional Responsibility, Opinion 598 concluded that: (1) "The essential point of ethics involved is that the lawyer so employed shall represent the insured as [their] client *with undivided fidelity*"; and (2) "The client of an insurance carrier's employee attorney *is the insured, not the insurance carrier*." (*Id.*, pgs. 1-2 [emphasis added].)

The fact that Virginia law clearly establishes that insurer-retained appointed defense counsel only has the insured as a client is further demonstrated by the analysis and result in *Norman v. Ins. Co. of N. Am.*, 218 Va. 718 (1978).  In *Norman*, an insured had been sued for assault and battery following a gunshot injury and was defended by his liability insurer under the policy pursuant to a full reservation of rights.  *Id. at 720-22.*  The reservation issued by the insurer included a reservation based on the policy's insuring agreement which only provided coverage for injuries caused by an "occurrence" defined by the policy as an "accident" resulting in "bodily injury or property damage neither expected nor intended from the standpoint of the Insured." *Id.* at 720-722. The jury found the insured had committed an actionable assault and battery without legal justification and awarded both compensatory and punitive damages.  *Id.* at 721. Subsequently, the insured in a declaratory relief action argued that the insurer was estopped to assert its coverage defenses since it had operated under "an inherent conflict of interest" in "defending him from a charge of assault and battery while at the same time relying on the fact that such an assault and battery had been committed and would be a compete defense to liability … under the policy." *Id.* at 722.  The Supreme Court of Virginia characterized the insured's legal theory as alleging "in substance" that the insurer had "breached its contract with him by failing to have defended him adequately in the suit," that such breach "constituted a waiver

_____

Subsequently, in Opinion 1536, the hypothetical presented was whether an attorney who was previously employed by a law firm which "handled insurance defense cases and coverage issues" for an insurance company could subsequently represent a plaintiff "in a personal injury action against a defendant who is insured" by the same insurance company. (Wagoner Decl., Ex. E.)  In response, Opinion 1536 "direct[ed] [the inquirer's] attention to prior Opinion 598, approved by the Virginia Supreme Court effective June 1, 1985, which concluded that 'the client of an insurance carrier's [in-house] employee attorney is the insured, not the insurance carrier.'" (*Id.*)  Based on this earlier legal conclusion, Opinion 1536 further concluded "that such delineation of the client is equally applicable when the insurance company engages outside counsel to represent its insured." (*Id.*)

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

13
Ps&As IN SUPPORT OF MOTION TO DISMISS COMPLAINT (FRCP 12(b)(6))

of its reservation of right to deny coverage and that [the insurer] is estopped by its conduct from relying on such reservation." *Id.* at 723.

After concluding that the injuries and resulting underlying judgment did not satisfy the policy's "occurrence" definition (*id.* at 723-725), the Virginia Supreme Court further concluded that the insurer did not breach any defense obligations to the insured by defending him through appointed defense counsel notwithstanding its reservation of its right to subsequently disclaim indemnity coverage for the judgment. *Id.* at 725-727.  In reaching this conclusion, the *Norman* court rejected the insured's "conflict of interest" argument, emphasizing instead that it was presumed, absent evidence to the contrary, that defense counsel only acted in the interests of the insured as if they had been "privately retained" by the insured:

> Appellant alleges a possible conflict of interest on the part of counsel for INA…. Norman points to nothing that the attorneys did, or did not do, that denied him a full, fair and competent defense to Wilson's action. He alleges a conflict of interest but alleges no prejudice suffered thereby….
>
> No one questions the fact that the standards of the legal profession require undeviating fidelity of a lawyer to his client, and no exceptions can be tolerated. A client may presume that his attorney has no interest which will interfere with his devotion to the cause confided in him. *And an insurer's attorney, employed to represent an insured, is bound by the same high standards which govern all attorneys, and owes the insured the same duty as if he were privately retained by the insured.*
>
> There is no allegation by Norman, and no intimation in the record, that in defending Norman in the Wilson case his attorneys safeguarded the interest of INA and neglected that of Norman. This is not an action by Norman against his attorneys and INA for negligent representation, or one against INA for negligent employment of incompetent attorneys. It is an effort by him to recover under the terms of the INA policy even though we hold there is no coverage thereunder.

*Id.*, 727–28 (emphasis added); *see also State Farm Fire & Cas. Co. v. Mabry,* 255 Va. 286, 291 (1998) (following *Norman, supra*).

**(ii)    Under Virginia Law, New York Marine Did Not Breach Its Defense Obligations To The Insured By Providing A Defense Via Appointed Defense Counsel Under A Reservation Of Rights**

Assuming that Virginia law applies to New York Marine's obligation to defend

the Insured, the allegations of Travelers' Complaint nevertheless fail to state any actionable claim against New York Marine.  Its appointed defense counsel, while practicing law in Virginia, was not subject to any conflict of interest because they only had the Insured as a client.  *Norman, supra*, at 727-728; *Mabry, supra, 55* Va. 286, 291 ; *Jordan, supra,* at 957; Opinions 598 and 1536, *supra.*  Moreover, under Virginia law, there is no legal presumption that insurer-appointed defense counsel retained pursuant to a reservation of rights will favor the insurer's interests over those of the insureds in the conduct of the defense.  *Norman, supra*, at 727-728; *Mabry, supra,* 55 Va. 286, 291.  Nor does Travelers' Complaint contain any allegation that defense counsel appointed by New York Marine did anything or failed to do anything which would injure the Insured's interests in the Virginia Action.

Therefore, insofar as Virginia law governs New York Marine's "performance" of its "defense" obligations to the Insured, the allegations of Travelers' Complaint do not show that New York Marine breached any duty to the Insured by providing a defense via appointed defense counsel subject to a reservation of rights as authorized by the terms of its policy.  Civ. Code § 1646; *Frontier Oil*, *supra,* 153 Cal.App.4th 1436, 1450; *Fireman's Fund, supra,* 2012 WL 1985316, at *6;  *James River, supra*, 290 F.Supp.3d 956, 966; *Black Diamond, supra,* 109 Cal.App.4th 166, 171; *see also Downey Venture, supra,* 66 Cal.App.4th 478, 514.

### 2.   Alternatively, In The Event California Law Applies To New York Marine's Defense Obligations, New York Marine Had No Obligation To Provide Independent Counsel To The Insured

Even if California law applies to New York Marine's performance of its defense obligation in Virginia, New York Marine nevertheless had no obligation to provide independent counsel to the insured for two (2) independent reasons.  First, there was no actual conflict of interest under Civil Code § 2860 since, as outlined above, Virginia defense counsel only had the Insured as a client.  Second, because the "given issues" raised by the ROR did not involve coverage issues that could be

"controlled by counsel" within the meaning of Civil Code § 2860 as interpreted by California case law, New York Marine had no obligation under California law to provide the Insured with independent counsel.

<blockquote>

a. **There Was No Actual Conflict Of Interest Under Civ. Code § 2860 Since Virginia Defense Counsel Only Had The Insured As A Client**

(i) **Under California Law, "Actual" Conflicts Of Interest Arise Only As A Consequence Of The "Tripartite Relationship" Between The Liability Insurer, The Insured And Defense Counsel**

</blockquote>

Unlike Virginia, California has expressly adopted the "tripartite relationship" doctrine under which – assuming there is no actual conflict of interest between the insurer and the insured – counsel retained by a liability insurer to defend its insured has both the insurer and the insureds as "clients" to whom fiduciary duties are owed. *See, e.g., San Diego Fed. Credit Union v. Cumis Ins. Society,* 162 Cal.App.3d 358, 364 (1984) ("In the usual tripartite relationship existing between insurer, insured and counsel, there is a single, common interest shared among them.  Dual representation by counsel is beneficial since the shared goal of minimizing or eliminating liability to a third party is the same.").[7]

Thus, under California law, because liability insurer-retained defense counsel normally represents both the insurer's and the insured's interests in the underlying litigation, an "actual" conflict of interest can arise in a case where the insurer defends under a reservation of rights which, by its terms, raises insurance coverage issues the outcome of which can be determined by how the underlying action is litigated.  As explained in the seminal *Cumis* decision:

<blockquote>

A different situation is presented, however, when some or all of the allegations in the complaint do not fall within the scope of coverage under the policy. In such a case, the standard practice of an insurer is to defend under a reservation of rights where the insurer promises to defend

</blockquote>

---

[7] *See also, Swanson v. State Farm Gen. Ins. Co.*, 219 Cal.App.4th 1153, 1162 (2013); *Long v. Century Indem. Co.*, 163 Cal.App.4th 1460, 1468 (2008); *Mosier v. S. California Physicians Ins. Exch.*, 63 Cal.App.4th 1022, 1041 (1998).

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

16

Ps&As IN SUPPORT OF MOTION TO DISMISS COMPLAINT (FRCP 12(b)(6))

but states it may not indemnify the insured if liability is found. In this situation, there may be little commonality of interest. Opposing poles of interest are represented on the one hand in the insurer's desire to establish in the third party suit the insured's "liability rested on intentional conduct", and thus no coverage under the policy, and on the other hand in the insured's desire to "obtain a ruling ... such liability emanated from the nonintentional conduct within his insurance coverage."

*Cumis, supra,* 162 Cal.App.3d 358, 363–65 (emphasis added, citing *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 279 (1966)); *see also Native Sun Inv. Grp. v. Ticor Title Ins. Co.,* 189 Cal.App.3d 1265, 1277 (1987); *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal.App.4th 1372, 1395 (1993).

Therefore, to eliminate the actual conflict of interest created under California law where defense counsel is called upon to represent *two clients* with divergent interests in the same litigation, the *Cumis* decision, as codified by Civil Code § 2860, requires either that: (1) the insurer fund the insured's retention of independent defense counsel who represents only the insured and not the insurer; or (2) the insured expressly waives the conflict in writing.  Civ. Code §2860(a)-(b), (e).

### (ii) Because Virginia Defense Counsel Was Not In An Attorney-Client Relationship With New York Marine, They Had No Obligation Under Civ. Code §2860 To Provide The Insured With Independent Counsel

Again, assuming California law applies, as the court explained in *James 3, supra,* 91 Cal.App.4th 1093, 1101, "the *Cumis* rule *is not based on insurance law but on the ethical duty of an attorney to avoid representing conflicting interests*." (emphasis added, citing *Golden Eagle, supra,* 20 Cal.App.4th at 1394).   As a consequence of this rule, if defense counsel is able to fully represent the insured's interests in the action notwithstanding the fact that the insurer is paying for that defense, there is no actual conflict of interest which could require appointment of independent defense counsel.   *See Native Sun, supra,* 189 Cal.App.3d at 1277; *Dynamic Concepts, supra*, 61 Cal.App.4th 999, 1008.

Applying these fundamental legal principles, unlike the circumstances of defense counsel in *Cumis* and cases following that decision, Virginia defense counsel

appointed by New York Marine to defend the Insured in the Virginia Action was never subject to a conflict of interest. Rather, Virginia defense counsel, in the defense of the Insured in the Virginia Action, was governed by the Virginia Code of Professional Responsibility. *See* Va. Sup. Ct. R. Sec.I, No.1 (prohibiting "non-lawyers" from "engaging in the practice of law in the Commonwealth of Virginia except as may be authorized by rule or statute" and defining "non-lawyer" in relevant part as "any person, firm, association or corporation not duly licensed or authorized to practice law in the Commonwealth of Virginia."); Va. Sup. Ct. R. Sec.II, "Preamble" (explaining a Virginia licensed lawyer's "professional responsibilities are prescribed in the Rules of Professional Conduct, as well as [Virginia] substantive and procedural law.")   (Wagoner Decl., Ex. F [indicating that Virginia defense counsel was only licensed to practice law in Virginia and other eastern states].)

As licensed counsel governed by the Virginia Code of Professional Responsibility, Virginia counsel: (1) only had the Insured as a client; and (2) was ethically barred from representing or advancing the coverage interests of New York Marine during the course of the Virginia Action. *Norman, supra*, at 727-728; *Mabry, supra,* 55 Va. 286, 291; *Jordan, supra,* at 957; Opinions 598 and 1536. Furthermore, there is no allegation in the Complaint that defense counsel retained by New York Marine was not given "carte blanche" to litigate all of the issues, covered and uncovered.  Nor does the ROR letter set forth any limitation on the defense being provided.  (Wagoner Decl, Ex. A.)

Nevertheless, according to the allegations of Travelers' Complaint, Virginia defense counsel necessarily had an attorney-client relationship with New York Marine because, as alleged, New York Marine chose that counsel and paid for their representation of the insured.  (Compl., ¶¶7-12.) However, California law is clear that for the purposes of conflict of interest analysis, "the issue presented is not who initially selected and retained the defense attorney *but with whom the attorney-client relationship was established.*"  *Berger, supra,* 79 Cal.App.4th at 126.  As a result,

since Virginia defense counsel never entered into an attorney-client relationship with New York Marine, Civil Code § 2860 never required appointment of additional, independent counsel.  See Civ. Code § 2860(a) (requiring insurer which has a duty to defend under its policy "to provide independent counsel to the insured" in cases where a "conflict of interest" exists); *see also Swanson, supra,* 219 Cal.App.4th 1153, 1164–65 ("the duty to provide and pay for *Cumis* counsel arises only where a disqualifying conflict of interest exists…. Thus, when the ethical bar to dual representation does not exist, the insurer has no duty to provide and pay for *Cumis* counsel.").

Accordingly, even to the extent New York Marine's performance of its defense obligation in Virginia is governed by California law, Virginia defense counsel, in connection with the defense provided to the insured in the Virginia Action, was never subject to the California Rules of Professional Responsibility or any other provision or principle of California law since: (1) the Insured's representation occurred in Virginia; and (2) counsel was only licensed to practice law in Virginia state and federal courts in Virginia and other eastern states.  (See Wagoner Decl., Ex. F); *see also* Cal. Rules of Prof. Conduct, Rule 1.3 (explaining "scope" of California Rule of Professional Conduct "concern … the rights and responsibilities of … licensees and prospective licensees" of "the State Bar of California"); *see also* Bus. & Prof. Code §6002(a) (defining "licensees of the [California] State Bar" as "all persons admitted and licensed to practice law *in this state*") (emphasis added).

Consequently, and as a matter of law, there was never any "tripartite" relationship between New York Marine, the Insured and Virginia defense counsel from which an actual conflict of interest could even arise.  *Norman, supra*, at 727-728; *Mabry, supra,* 55 Va. 286, 291 ; *Jordan, supra,* at 957; Opinions 598 and 1536.  As a result, even applying California law, Travelers cannot establish that Virginia defense counsel appointed by New York Marine was subject to an actual conflict of interest which, in turn, could have required New York Marine to furnish the Insured with independent counsel pursuant to Civil Code §2860(b).

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

19

Ps&As IN SUPPORT OF MOTION TO DISMISS COMPLAINT (FRCP 12(b)(6))

**b.** **New York Marine Had No Obligation Under California Law To Provide The Insured With Independent Counsel Because The "Given Issues" Raised By The ROR Did Not Involve "Coverage Issues" That Could Be "Controlled By Counsel"**

**(i)** **Under California Law An "Actual" Conflict Of Interest Is Required To Trigger The Obligation To Provide Independent Counsel**

Separate and apart from the foregoing, Travelers' Complaint is premised on the contention that the "terms" of New York Marine's ROR letter created an actual conflict of interest which, in turn, "triggered" the Insured's right to independent counsel under Civil Code §2860. (Compl., ¶10.) This contention reflects the conflict of interest theory codified by Civil Code §2860(b) stating, in relevant part, "when an insurer reserves its rights *on a given issue and the outcome of that coverage issue can be controlled by counsel* first retained by the insurer for the defense of the claim, a conflict of interest may exist." (Emphasis added); *see also James 3, supra,* at 1101. Conversely, under the same "actual" conflict of interest rule, there "is no … entitlement [to independent counsel] where the coverage issue is independent of, or extrinsic to, the issues in the underlying action [citation] or where the damages are only partially covered by the policy." *James 3, supra,* 91 Cal.App.4th at 1102 (quoting *Dynamic Concepts, supra*, 61 Cal.App.4th at 1006.)

As a result, and as the California case law following *Cumis* and the adoption of Civil Code §2860 make abundantly clear, the mere issuance of a reservation of rights, standing alone, does not create an actual conflict of interest "triggering" an insured's right to independent counsel:

> "As statutory and case law make clear, not every conflict of interest triggers an obligation on the part of the insurer to provide the insured with independent counsel at the insurer's expense. For example, *the mere fact the insurer disputes coverage does not entitle the insured to Cumis counsel*; nor does the fact the complaint seeks punitive damages or damages in excess of policy limits. The insurer owes no duty to provide independent counsel in these situations because the *Cumis* rule is not based on insurance law but on the ethical duty of an attorney to avoid representing conflicting interests." For independent counsel to be required, the conflict of interest must be "significant, not merely theoretical, actual, not merely potential."

1  *James 3*, *supra,* 91 Cal.App.4th 1093, 1101 (*citing Golden Eagle, supra*, 20

2  Cal.App.4th at 1394 and *Dynamic Concepts, supra*, 61 Cal.App.4th at 1007); *MBL,*

3  *supra,* 219 Cal.App.4th at 41-42 (same).[8]

4    Therefore, insofar as Travelers' Complaint fails to allege facts which, if true,

5  would show that New York Marine's ROR raised coverage disputes whose outcome

6  could be controlled by Virginia defense counsel, its conflict of interest theory fails to

7  withstand analysis as a matter of law.

8         **(ii)**  **The "Given Issues" Raised By The ROR Only**

9             **Involved "Independent," "Extrinsic" Issues Which Could Not Create Any "Actual" Conflict**

10            **Of Interest For Purposes Of Civ. Code §2860(b)**

11   Under California law, when determining whether or not an insurer's reservation

12 of rights created an "actual" conflict of interest, the Court must perform "a careful

13 analysis of the parties' respective interests to determine whether they can be

14 reconciled…or whether an actual conflict of interest precludes insurer-appointed

15 defense counsel from presenting a quality defense for the insured." *Dynamic*

16 *Concepts*, *supra,* 61 Cal.App.4th 999, 1007–08; *James 3*, *supra,* 91 Cal.App.4th

17 1093, 1107.  Applying such a "careful analysis" to the four (4) "given issues"

18 specifically raised by New York Marine's limited ROR, it is clear that no "actual"

19 conflict of interest was thereby created.

20

21

22

23

24 [8] *See also Hartford Cas. Ins. Co. v. J.R. Mktg., L.L.C.*, 61 Cal.4th 988, 1003 (2015)

25 ("Section 2860 is not triggered simply because an insurer defends under a reservation of rights, the underlying litigation alleges facts under which the insurer would deny

26 coverage, or the litigation includes claims for punitive damages or damages in excess

27 of policy limits."); *see also Centex Homes v. St. Paul Fire & Marine Ins. Co.,* 19 Cal.App.5th 789, 798 (2018); *Long, supra*, 163 Cal.App.4th at 1470; *Berger*, *supra,*

28 79 Cal.App.4th at 130.

A)   The Fact That The Insured's Potential Liability Did Not Arise From Business Related Activities Was An "Independent", "Extrinsic" Issue

The first "given issue" raised by the ROR was that the Insured's potential liability in the Virginia Action did not arise out of any business-related activity as required to potentially implicate the policy's Commercial General Liability Coverage. Rather, the Virginia Action only potentially implicated the Insured's "personal injury" coverage under the Policy's Comprehensive Personal Liability Coverage since the Insured had been sued for allegedly defamatory statements made in opinion pieces published in the *Washington Post* which allegedly accused the Insured's ex-husband of spousal abuse.  (ROR, pg. 2 and 9 of 11.)

Virginia defense counsel could not, via the conduct of the Insured's defense, have somehow assisted New York Marine in establishing that these published statements regarding alleged incidents during the Insured's former marriage were business related. *McGee v. Superior Ct.,* 176 Cal.App.3d 221, 227 (1985) (coverage issues which turned on family relationship between plaintiff and insured defendant were "independent and extrinsic" from insured's liability for plaintiff's injuries).

Furthermore, even assuming there was some issue whether or not the Insured's liability-producing conduct could have potentially implicated the Policy's Commercial General Liability Coverage, this could not have created any divergent interests between the Insured and New York Marine because the Policy's $1 million Commercial General and Personal Liability indemnity limits could not be "stacked" together to provide greater protection to the Insured.  (Wagoner Decl, Ex. B, pg. 64 of 66 [non-stacking endorsement]).

B)   The Fact That The Virginia Action Did Not Seek Damages Because Of "Bodily Injury" Or "Property Damage" Was An "Independent", "Extrinsic" Issue

In *Dynamic Concepts, supra,* the court concluded no "actual" conflict of interest was created by the fact that an insured was sued for economic injuries which

did not constitute "property damage," although the concurrent defamation claim against the insured triggered the insurer's prophylactic duty to defend the entire action. *See Dynamic Concepts, supra,* 61 Cal.App.4th at 1007.

Similarly here, since New York Marine agreed to provide the Insured with a complete defense based on the defamation claims raised in the Virginia Action, no actual conflict of interest was created by the fact that the Insured was not sued for injuries which could constitute either "bodily injury" or "property damage" as those terms are defined by the Policy. (See ROR, pgs. 2-3, 5-6 and 9 of 11.)

> C) The Fact That The Policy Precluded "Stacking" Of Multiple Policy Indemnity Limits Was An "Independent", "Extrinsic" Issue

Civil Code §2860(b) expressly provides that "[n]o conflict of interest shall be deemed to exist as to allegations of punitive damages or be deemed to exist solely because an insured is sued for an amount in excess of the insurance policy limits." Therefore, the fact that the Policy's "No Stacking Of Occurrence Limits" endorsement potentially limited the otherwise available indemnity limits to the Insured did not, as a matter of law, create any actual conflict of interest. *Id.*; *Blanchard v. State Farm Fire & Cas. Co.,* 2 Cal.App.4th 345, 350 (1991); *see also Cybernet Ventures, Inc. v. Hartford Ins. Co. of the Midwest,* 168 F.App'x 850, 852 (9th Cir. 2006) (unpublished) ("When a reservation of rights relates only to the issue of the amount of damages and not to the question of liability, California courts hold that there is no conflict requiring independent counsel.")

Furthermore, defense counsel could not control the application of the anti-stacking endorsement since its application had nothing to do with the nature of the Insured's conduct as proven at trial. As a result, the applicable indemnity limit was an "independent", "extrinsic" coverage issue, the assertion of which did not trigger the insured's right to independent counsel. *James 3, supra,* 91 Cal.App.4th at 1102; *Dynamic Concepts, supra*, 61 Cal.App.4th at 1006.

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

23

Ps&As IN SUPPORT OF MOTION TO DISMISS COMPLAINT (FRCP 12(b)(6))

D) The Fact That New York Marine Reserved The Right To Disclaim Indemnity For Any Punitive Damages Award In The Event California Law Applied To Its Indemnity Obligations Did Not Create A Conflict Of Interest Under Civ. Code §2860(b)

Civil Code § 2860(b) expressly provides that "no conflict of interest shall be deemed to exist as to allegations of punitive damages." *See also Native Sun, supra*, 189 Cal.App.3d at 1277; *McGee, supra,* 176 Cal.App.3d at 226; *Foremost Ins. Co. v. Wilks,* 206 Cal.App.3d 251, 261 (1988). New York Marine's ROR expressly reserved the right to disclaim indemnity coverage for damages for which "California does not permit an insurer to indemnify the insured…." (ROR, pg. 9 at 11.) In context, this clearly referred to the $50,000 in punitive damages sought by the Virginia Action. (*Id.*, pg. 2 of 11.)

Furthermore, nothing in the ROR reserved the right to disclaim coverage under the "occurrence" definition which requires an "accident" or otherwise based on the nature of the Insured's conduct as proven at trial. (See ROR and Wagoner Decl, Ex. B, pg. 52, 55 of 66.) In *Wilks, supra,* 206 Cal.App.3d at 261, the policy "contained an exclusion for libel or slander made by the insured 'with knowledge of the falsity thereof'". *Id.* at 258. However, in its ROR letter, the insurer only disclaimed coverage for punitive damages and "did not reserve the future right to deny coverage under this exclusion and thereby waived its right to assert the exclusion as a defense to coverage." *Id.* Similarly here, New York Marine's ROR letter did not reserve rights based on the definition of "occurrence" requiring an "accident" and thus waived that defense. Consequently, its ROR can only reasonably be read to disclaim coverage for punitive damages to the extent California law applies to its indemnity obligation.

Therefore, as a matter of law, New York Marine's ROR preserving, with respect to the insured's conduct, only the right to disclaim indemnification for punitive damages under California public policy as reflected in Insurance Code §533, did not create any *Cumis*-triggering actual conflict of interest. Civ. Code §2860(b).

**C.** **Travelers' Claim For Declaratory Relief Is Dependent Upon Its Claim Of Contribution And Should Therefore Likewise Be Dismissed**

Because the purpose of declaratory relief is "to resolve uncertainties or disputes that may result in future litigation[,]" "[v]arious courts have held ... that, where determinations of a breach of contract claim will resolve any question regarding interpretation of the contract, there is no need for declaratory relief, and dismissal of a companion declaratory relief claim is appropriate." *Vascular Imaging Pros., Inc. v. Digirad Corp.*, 401 F.Supp.3d 1005, 1010 (S.D. Cal. 2019) (citing *Streamcast Networks, Inc. v. IBIS LLC,* 2006 WL 5720345, at *3).

Here, since Travelers' claim for contribution should be dismissed, its companion claim for declaratory relief should likewise be dismissed. *See, e.g., Sidorov v. Transamerica Life Ins. Co.,* 832 F. App'x 479, 483 (9th Cir. 2020) (unpublished) (derivative declaratory relief claim "properly dismissed" where underlying "tort and contract claims" were "appropriately dismissed" ); *Patel v. Am. Nat'l Prop. & Cas. Co.,* 367 F.Supp.3d 1186, 1194 (D.Nev. 2019) (derivative declaratory relief claim subject to dismissal under FRCP 12(b)(6) where plaintiff failed to plead actionable breach of insurance contract claim).

**IV.** **CONCLUSION**

For the foregoing reasons, the motion to dismiss should be granted.


Dated:  August 17, 2021            McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP


By:    /s/ James P. Wagoner
_____
James P. Wagoner
Lejf E. Knutson
Nicholas H. Rasmussen
Graham A Van Leuven
Attorneys for Defendant New York Marine
and General Insurance Company

7820174.1

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

# PROOF OF SERVICE

**Travelers Commercial Insurance Company v. New York Marine and General Insurance Company**
**Case No. 2:21-cv-5832-GW (PDx)**

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Fresno, State of California.  My business address is 7647 North Fresno Street, Fresno, CA 93720.

On August 17, 2021, I served true copies of the following document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)** on the interested parties in this action as follows:

Mark D. Peterson
Kathleen O. Peterson
Amy Howse
Cates Peterson LLP
4100 Newport Place, Suite 230
Newport Beach, CA 92660
Telephone: (949) 724-1180
Email: markpeterson@catespeterson.com
kpeterson@catespeterson.com
ahowse@catespeterson.com

*Attorneys for Plaintiff Travelers Commercial Insurance Company*

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on August 17, 2021, at Fresno, California.

*/s/ Marisela Taylor*
Marisela Taylor

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
7647 NORTH FRESNO STREET
FRESNO, CA 93720

Ps&As IN SUPPORT OF MOTION TO DISMISS COMPLAINT (FRCP 12(b)(6))