MARK D. PETERSON (State Bar #126174)
KATHLEEN O. PETERSON (State Bar #124791)
AMY HOWSE (State Bar # 252922)
CATES PETERSON LLP
4100 Newport Place, Suite 230
Newport Beach, CA 92660
Telephone: (949) 724-1180
markpeterson@catespeterson.com
kpeterson@catespeterson.com
ahowse@catespeterson.com

Attorneys for Plaintiff
TRAVELERS COMMERCIAL
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS COMMERCIAL INSURANCE COMPANY, a Connecticut corporation, | Case No.: 2:21-cv-5832-GW (PDx) Hon. George H. Wu Hon. M.J. Patricia Donahue |
| Plaintiff, | **PLAINTIFF TRAVELERS COMMERCIAL INSURANCE COMPANY'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| v. | |
| NEW YORK MARINE AND GENERAL INSURANCE COMPANY, a New York corporation, | **[FILED CONCURRENTLY WITH DECLARATION OF PAMELA A. JOHNSON]** |
| Defendants. | DATE:        December 13, 2021 TIME:         8:30 a.m. Courtroom: 9D |

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

## **TABLE OF CONTENTS**

2

3    I.     INTRODUCTION .................................................................................... 1

4    II.    STANDARD OF REVIEW ...................................................................... 3

5    III.   TRAVELERS' FIRST AMENDED COMPLAINT SUFFICIENTLY

6           ALLEGES A CLAIM OF EQUITABLE CONTRIBUTION ........................... 4

7           A.    The Governmental Interest Test Governs the Choice-of-Law

8                 Issue ...................................................................................... 5

9           B.    The Governmental Interest Test Requires Application of

10                California Law ......................................................................... 7

11          C.    Even Under Civil Code § 1646, ProSight Is Not Entitled to the

12                Application of Virginia Law, As It Urges ............................. 12

13          D.    ProSight's Reservation of Rights Created a Conflict of Interest

14                Between Its Appointed Counsel and the Insured ................... 15

15          E.    Travelers' Claim for Equitable Contribution is Further

16                Supported by the Allegations Regarding ProSight's Failure to

17                Provide an Adequate Defense to the Insured ......................... 20

18    IV.    TRAVELERS' FIRST AMENDED COMPLAINT STATES A

19           VALID CLAIM FOR DECLARATORY JUDGMENT ................................ 23

20    V.     CONCLUSION ..................................................................................... 24

21

22

23

24

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

## **TABLE OF AUTHORITIES**

2

3

**Cases**

4

*Ameron Int'l Corp. v. American Home Assur. Co.*,

5

   2011 WL 2261195 (C.D. Cal. 2011)................................................................14

6

*Axis Surplus Ins. Co. v. Glencoe Ins. Ltd.*

7

   204 Cal.App.4th 1214 (2012)...................................................................21

8

*Bell Atlantic Corp. v. Twombly*

9

   550 U.S. 544 (2007) ..................................................................................3

10

*Black Diamond Asphalt, Inc. v. Superior Court*

11

   109 Cal.App.4th 166 (2003)...................................................................13

12

*Celerity Educ. Group v. Scottsdale Ins. Co.*

13

   2018 WL 3853998 (C.D. Cal. Aug. 10, 2018).........................................19

14

*Columbia Cas. Co. v. Gordon Trucking, Inc.*

15

   758 F.Supp.2d 909 (N.D. Cal. 2018) ..................................................6, 8

16

*Doe v. United States*

17

   419 F.3d 1058 (9th Cir. 2005).................................................................3

18

*Downey Venture v. LMI Ins. Co.*

19

   66 Cal. App. 4th 478 (1998)...................................................................13

20

*Edmonson Property Management v. Kwock*

21

   156 Cal. App. 4th 197 (2007)...................................................................4

22

*Fireman's Fund Ins Co. v. Maryland Cas. Co.*

23

   65 Cal. App. 4th 1279 (1998)............................................................4, 21

24

*Fireman's Fund Ins. Co. v. Nationwide Mut. Fire Ins. Co.*

25

   2012 WL 1985316 (S.D. Cal. 2012) .......................................................13

26

*Foremost Ins. Co. v. Wilks*

27

   206 Cal. App. 3d 251(1988)..............................................................19, 20

28

*Frontier Oil Corp. v. RLI Ins. Co.*
  153 Cal.App.4th 1436 (2007)..............................................6, 7, 8, 12, 13

*Global Hawk Ins. Co. v. Wesco Ins. Co.*
  2019 WL 6468579 (C.D. Cal. 2019)...................................................6

*J. C. Penney Cas. Ins. Co. v. M. K.*
  52 Cal. 3d 1009 (1991)....................................................................18

*James River Ins. Co. v. Medolac Labs*
  290 F.Supp. 3d 956 (C.D. Cal. 2018) .......................................12, 13

*Kearney v. Salomon Smith Barney, Inc.*
  39 Cal.4th 95 (2006) ...........................................................................7

*Long v. Cent. Indem. Co.*
  163 Cal. App. 4th 1460 (2008)..........................................................16

*Lopez v. Smith*
  203 F.3d 1122 (9th Cir. 2000)..............................................................3

*McMullan & Son, Inc. v. United States Fid. & Guar. Co.*
  103 Cal. App. 3d 198 (1980)................................................................7

*Nedlloyd Lines B.V. v. Superior Court*
  3 Cal.4th 459 (1992) ...........................................................................9

*Northern Ins. Co. of New York v. Allied Mut. Ins. Co.*
  955 F.2d 1353 (9th Cir. 1992)................................................10, 11, 14

*Pitzer College v. Indian Harbor Ins. Co.*
  8 Cal. 5th 93 (2019)..........................................................................2, 9

*Residence Mut. Ins. Co. v. Travelers Indem. Co. of Connecticut*
  26 F.Supp.3d 965 (C.D. Cal. 2014) ..............................................21, 23

*San Diego Navy Federal Credit Union v. Cumis Insurance Society ("Cumis")*
  162 Cal. App. 3d 358 (1984)...............................................4, 9, 10, 16, 19

iii

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

*Shafer v. Berger, Kahn, Shafton, Moss, Figler Simon & Gladstone, et al.*
107 Cal. App. 4th 54 (2003)..................................................................18, 19

*Signal Cos., Inc. v. Harbor Ins. Co.*
27 Cal.3d 359 (1980)...............................................................................21

*State Farm Fire & Cas. Co. v. Eddy*
218 Cal. App. 3d 958 (1990)....................................................................18

*Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*
14 Cal. App. 4th 637 (1993)......................................................................7

*Studley v. Benicia Unified Sch. Dist.*
230 Cal. App. 3d 454 (1991)....................................................................18

*Tomerlin v. Canadian Indem. Co.*
61 Cal. 2d 638 (1964).........................................................................16, 19

*Truck Ins. Exchange v. Unigard Ins. Co.*
79 Cal. App. 4th 966 (2000)................................................................22, 23

*Washington Mutual Bank, FA v. Superior Court*
24 Cal. 4th 906 (2001) .........................................................................7, 8

*West Am. Ins. Co. v. Nutiva, Inc.*
2018 WL 3861832 (N.D. Cal. 2018) .......................................................13

*Williamsburg Nat. Ins. Co. v. New York Marine and General Ins. Co.*
2021 WL 4458952 (C.D. Cal. 2021).......................................................23

**Statutes**

Cal. Civ. Code §2860...........................................................................9, 11

Cal. Civ. Code §2860(c)..........................................................................15

Cal. Civ. Code Ann §2860...................................................................1, 2, 4

Cal. Civ. Code §1646.................................................................6, 12, 13, 14, 15

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Cal. Ins. Code §533..........................................................................17, 18, 19, 20

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff Travelers Commercial Insurance Company ("Travelers") opposes the motion by Defendant New York Marine and General Insurance Company ("ProSight") to dismiss the First Amended Complaint.

# I.

# INTRODUCTION

The ultimate question presented by this action is whether ProSight will be allowed to profit, at the expense of Travelers, for failing to abide by its obligations to ProSight's and Traveler's common California-based insured under a policy which was negotiated and issued to that insured in California. Unlike ProSight, Travelers has fully met its defense obligations, resulting in Travelers paying more than its share of the defense and being forced to bring this action to seek equitable contribution from ProSight.

While Travelers and ProSight both acknowledged a duty to defend their common insured for a defamation action filed in Virginia (the "Underlying Action"), a dispute exists regarding that insured's entitlement to independent *Cumis* counsel pursuant to Cal. Civ. Code Ann § 2860. From the outset, Travelers has acknowledged an obligation to provide independent counsel because the Underlying Action presents a question of intent by the insured that could defeat coverage. ProSight, on the other hand, attempts to avoid paying its share of defense costs by asserting that the insured was not entitled to independent counsel even though ProSight made it clear that it would not indemnify the insured for her intentional conduct.

ProSight's motion to dismiss is primarily premised on an ill-conceived argument that this Court should ignore the protections afforded to a California insured under policies negotiated and issued in California. Specifically, ProSight argues that Travelers's claim for a declaratory judgment and equitable contribution of defense expenses fails because ProSight never had an obligation under Virginia

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  law to provide independent counsel to ProSight's California-based insured under the

2  policy issued by ProSight in California.  But ProSight's argument that Virginia law

3  governs its defense obligation fundamentally misconstrues California choice-of-law

4  rules and ignores California's strong governmental interest in protecting its insureds

5  from a defense controlled by an insurer that could obviate coverage.  To permit

6  ProSight to escape its obligations under California law simply because a California

7  insured was sued in Virginia would seriously undermine the purpose of Cal. Civil

8  Code Ann. § 2860 in protecting California insureds.  Indeed, insurers may not strip

9  California policyholders of fundamental rights with choice of law gymnastics.  *See*

10  *Pitzer College v. Indian Harbor Ins. Co.,* 8 Cal. 5th 93 (2019), discussed *infra.*

11      ProSight alternatively asserts that even if California law does apply, its

12  reservation of rights did not create a conflict of interest that obligated ProSight to

13  advise the insured of her right to request independent counsel.  Yet ProSight clearly

14  preserved its ability to disclaim coverage for willful acts.  California law has long

15  recognized that a conflict of interest exists that triggers an obligation to provide

16  independent counsel when the insured's conduct could be found to be intentional

17  and, thus, not covered.  ProSight cannot be allowed to take refuge in a vaguely

18  worded reservation of rights letter to avoid its statutory obligation to provide

19  independent counsel.

20      Furthermore, even if the insured was not entitled to the protections afforded

21  by California law, Travelers is still entitled to equitable contribution from ProSight

22  based on ProSight's failure to provide an adequate defense to the insured, leaving

23  Travelers to fund the entire defense.  As pled in Travelers First Amended Complaint,

24  ProSight and Travelers have an obligation to defend their common insured, but

25  Travelers has paid far more than its fair share of that defense.  In short, ProSight

26  cannot be rewarded for its failure to abide by its policy obligations. And, without

27  question, the facts as pled in Travelers First Amended Complaint are sufficient to

28

2

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  defeat ProSight's motion to dismiss.

2      Accordingly, the Court should dismiss ProSight's motion in its entirety.

3                                    **II.**

4                          **STANDARD OF REVIEW**

5      A complaint "does not need detailed factual allegations" to survive dismissal;

6  its "[f]actual allegations must be enough to raise a right to relief above the

7  speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  Under

8  Fed.R.Civ.P. 8(a)(2), a pleading must contain, among other things, "a short and

9  plain statement of the claim showing that the pleader is entitled to relief."

10      In addressing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of

11  Civil Procedure, "the court must construe the complaint in the light most favorable

12  to the plaintiff, taking all her allegations as true and drawing all reasonable

13  inferences from the complaint in her favor." *Doe v. United States*, 419 F.3d 1058,

14  1062 (9th Cir. 2005).  Therefore, the motion must be denied unless the complaint

15  altogether fails to allege "enough facts to state a claim for relief that is plausible on

16  its face" and "even if it appears that a recovery is very remote and unlikely."

17  *Twombly*, 550 U.S. at 570.  If the court grants the motion, it "should grant leave to

18  amend even if no requesbt to amend the pleading was made, unless it determines

19  that the pleading could not possibly be cured by the allegations of other facts."

20  *Lopez v. Smith*, 203 F.3d 1122, 1127(9th Cir. 2000). As set forth in detail below,

21  Travelers First Amended Complaint when read in the light most favorable to

22  Travelers, clearly sets forth viable claims against ProSight for equitable

23  contribution and declaratory judgment.

24

25

26

27

28

---

3

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

# III.

## TRAVELERS' FIRST AMENDED COMPLAINT SUFFICIENTLY ALLEGES A CLAIM OF EQUITABLE CONTRIBUTION

"The general rule is that when multiple carriers insure the same insured and cover the same risk, each insurer may assert a claim against a co-insurer for equitable contribution when it has undertaken the defense or paid a liability on behalf of the insured." *Edmonson Property Management v. Kwock*, 156 Cal. App. 4th 197, 202-203 (2007) (court held that defending carrier which did not contribute toward settlement must pay its fair share of the amount paid by the co-carrier which funded settlement of the underlying action). An insurer that has satisfied more than its share of defense fees may seek equitable contribution from another insurer who shared in that obligation. *Fireman's Fund Ins Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1293 (1998).

No dispute exists that ProSight and Travelers both have a duty to defend their common California-based insured in a defamation case pending in Virginia state court. (*See* Defendant's Motion to Dismiss ("Motion") Dkt. 17-1, p. 14 of 37; *see also* Dkt. 17-4.) In addition, both ProSight and Travelers agreed to defend the insured under a reservation of rights, including the right to deny indemnity coverage based on the insured's intent. (*Id.*, *see also* First Amended Complaint ("FAC") Dkt. 15 ¶¶10-12; *see also* Declaration of Pamela A. Johnson ¶ 3, Ex. A, p. 3 (Travelers' agreement to defend and notice that coverage is excluded for defamation if committed with knowledge of the falsity of the statement).)

In light of its reservation of rights, Travelers provided the insured with independent counsel pursuant to its obligations set forth in the holding of *San Diego Navy Federal Credit Union v. Cumis Insurance Society* (*"Cumis"*), 162 Cal. App. 3d 358 (1984), and Civil Code section 2860. Section 2860 states that "when an insurer reserves its rights on a given issue and the outcome of that coverage issue

1   can be controlled by counsel first retained by the insurer for the defense of the
2   claim, a conflict of interest may exist," and the insured is entitled to counsel of its
3   own selection.  (Johnson Decl. ¶ 3, Ex. A, pp. 3-4.)  Unlike Travelers, ProSight has
4   shirked its obligation to provide independent counsel, resulting in Travelers
5   satisfying more than its share of the common defense obligation and forcing this
6   equitable contribution action.  (See FAC Dkt. 15 ¶¶ 7-18, ¶¶37-38.)

7         ProSight first attempts to avoid this action by asserting that Travelers' claim
8   for equitable contribution fails because ProSight has no obligation to pay for *Cumis*
9   counsel and, thus, it has no corresponding responsibility to share in the costs
10  associated with the independent counsel.  ProSight bases its argument on the
11  assertion that Virginia law, which does not require independent counsel, governs
12  the issue of whether an insurer must provide its California-based insured the right to
13  independent counsel.  ProSight's argument ignores clear California precedent
14  compelling the application of California law when there is a fundamental issue of
15  California public policy at stake, like the right to an unconflicted defense of a
16  potentially covered claim.

17        ProSight alternatively argues that even if California law applies to the
18  defense obligations, no actual conflict existed that obligated ProSight to pay for
19  independent counsel.  That is wrong. ProSight clearly advised the insured at the
20  time it accepted the defense that it would not indemnify her for her intentional
21  conduct.  Accordingly, ProSight had an obligation to provide the insured with
22  independent counsel.  And, because it failed in that regard, Travelers is entitled to
23  seek equitable contribution for ProSight's share of the defense costs and fees
24  incurred by independent counsel.

25    **A.    The Governmental Interest Test Governs the Choice-of-Law Issue**
26        Even though Travelers and ProSight's common insured is a California
27  resident and the insurance policies were negotiated and issued in California,
28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1  ProSight inexplicably asserts that Virginia law controls whether the insured was

2  entitled to independent counsel.  At the outset, ProSight relies on the wrong choice-

3  of-law analysis to support its argument that Virginia law controls its obligations to

4  the insured under these facts.

5       Specifically, ProSight cites to *Frontier Oil Corp. v. RLI Ins. Co.*, 153

6  Cal.App.4th 1436, 1443 (2007), and argues that the choice-of-law issue is governed

7  by California Civil Code §1646.  (See Motion, Doc. 17-1 p. 4-5.)  That section

8  provides "[a] contract is to be interpreted according to the law and usage of the place

9  where it is to be performed; or, if it does not indicate a place of performance,

10  according to the law and usage of the place where it is made."  Civ. Code §1646.

11      By its terms, Civil Code §1646 governs the ***interpretation*** of an insurance

12  policy—but it does not govern all disputes involving insurance.  *Global Hawk Ins.*

13  *Co. v. Wesco Ins. Co.*, 2019 WL 6468579 at *3 (C.D. Cal. 2019). When a case does

14  not present an issue of contract interpretation, California courts apply the

15  governmental interest test to determine which state's law applies. *See Columbia Cas.*

16  *Co. v. Gordon Trucking, Inc.*, 758 F.Supp.2d 909, 915 (N.D. Cal. 2018) (holding

17  that when case did not present an issue of contract interpretation, California courts

18  will apply the governmental interest test to determine which state's law applies).

19      For example, akin to this action, in *Global Hawk* a dispute existed between

20  two insurers regarding their respective conduct in the defense of a common insured.

21  2019 WL 6468579 at *2.  Specifically, Global Hawk Insurance asserted that Wesco

22  Insurance Company breached its obligations to their common insured, in part, by

23  failing to reserve and advise the insured of his rights under the policy and failing to

24  provide the insured with a conflict-free defense.  Because the issues before the court

25  did not require any policy interpretation, the court found Section 1646 inapplicable

26  to resolve the choice-of-law issue.  *Id*. at 3. Moreover, the Court found that the same

27  case relied upon by ProSight for the application of Virginia law, *Frontier Oil*, was

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

inapplicable because *Frontier Oil* involved a dispute over the interpretation of insurance terms.  In fact, the *Frontier Oil* court recognized that the governmental interest test was the correct test to apply where the case did not present an issue of contract interpretation.  *See Frontier Oil*, 153 Cal.App.4th at 1460-61(noting that in both *McMullan & Son, Inc. v. United States Fid. & Guar. Co.*, 103 Cal. App. 3d 198 (1980) and *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637 (1993) the governmental interest test applied to the insurance disputes because neither involved an issue of contract interpretation).

Thus, the correct choice-of-law test to be applied here is the governmental interest analysis.

**B.      The Governmental Interest Test Requires Application of California Law**

The "governmental interest" test can be expressed as follows:

Under the governmental interest analysis, the court first determines whether the  applicable rules of law of the potentially concerned jurisdictions are the same or different.  If the applicable rules of law are identical, the court may apply California law.  If the applicable rules of law differ materially, the court proceeds to the second step, which involves an examination of the interests of each jurisdiction in having its own law applied to the particular dispute.  If each jurisdiction has an interest in applying its own law to the issue, there is a "true conflict" and the court must proceed to the third step.  In the third step, known as the comparative impairment analysis, the court determines which jurisdiction has a greater interest in the application of its own law to the issue or, conversely, which jurisdiction's interest would be more significantly impaired if its law were not applied.  The court must apply the law of the jurisdiction whose interest would be more significantly impaired if its law were not applied.  (*Kearney v. Salomon Smith Barney, Inc.* (2006) 39 Cal.4th

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    *95, 107–108 [45 Cal. Rptr. 3d 730, 137 P.3d 914] (Kearney); Washington*

2    *Mutual Bank v. Superior Court (2001) 24 Cal.4th 906, 919–920 [103 Cal.*

3    *Rptr. 2d 320, 15 P.3d 1071] (Washington Mutual).)*

4    *Frontier Oil Corp.,* 153 Cal. App. 4th at 1454-5.

5         With respect to the first prong of the test, a difference exists between Virginia

6    and California law regarding the requirement to provide independent counsel to an

7    insured where a conflict exists.  As set forth above, California protects its insureds in

8    a potential conflict situation, whereas no such protection is afforded under Virginia

9    law.

10        Second, if the laws differ materially, as they do here, the court must then

11   "determine what interest, if any, each state has in having its own law applied to the

12   case." *Washington Mutual Bank, FA v. Superior Court*, 24 Cal. 4th 906, 920 (2001).

13   In assessing each state's interest, courts should examine the policies underlying the

14   rule of law at issue.  *Gordon Trucking*, 758 F.Supp.2d at 916.

15        ProSight has not identified any interest that Virginia has in avoiding having an

16   insurer pay the reasonable costs of independent counsel for a California resident who

17   is insured under a policy negotiated and issued in California.[1]  Indeed, ProSight's

18   policy makes no mention of Virginia or any insured location other than California.

19   (*See, e.g.*, ProSight policy, Exhibit B to its motion (Dkt. 17-4), pp. 15, 32, and 78 of

20   161, showing insured's address in Los Angeles, California.)

21        ProSight argues at length that Virginia's ethical rules solely govern the acts of

22   counsel retained in the underlying Virginia action—thus intimating some interest by

23   Virginia regarding the conduct of licensed Virginia attorneys.  But that argument

24

25   [1] *See* Dkt. 17-4, p. 15. The ProSight policy was issued to Black Sky, Inc. c/o
     Macias, Gini & O'Connell at 2029 Century Park East, #1500, Los Angeles,
26   CA 90067, and the producer for the policy is identified as Integro USA, Inc.
27   located at 21650 Oxnard St., Suite 2350, Woodland Hills, CA 91367-7824.

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

misses the mark.  The underlying concern addressed by Cal. Civ. Code §2860 is not an enforcement of ethical rules.  It was enacted to protect the interest of the insured.

While Virginia has little to no interest in protecting a California insured under policies issued and negotiated in California, California's interest is paramount.  The *Cumis* right, which protects an insured from having its defense controlled by an insurance company and/or an attorney with interests which conflict with the insured's interests, clearly embodies a fundamental public policy of the state of California such that the rule law set forth in *Cumis* was codified under Civil Code section 2860(c).

And, in California, fundamental policyholder rights are vigorously protected by the courts, including where they intersect with choice of law questions.  For example, in *Pitzer College v. Indian Harbor Ins. Co.,* 8 Cal. 5th 93 (2019), the California Supreme Court was asked by the Ninth Circuit whether California's insurance "notice-prejudice" rule, by which an insurer cannot deny a claim based on receiving late notice of a first party claim unless the insurer has suffered substantial prejudice from the late notice, is a fundamental public policy for a choice-of-law analysis.  The insurance contract at issue had a New York choice of law provision. New York's law was less protective of the policyholder; New York did not require the insurer to show prejudice in order to invoke a late notice as a defense to coverage.  The California Supreme Court applied the test set forth in section 187 of the Restatement Second of Conflict of Laws, as discussed in *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal.4th 459, 464-66 (1992), and looked at whether the choice of law provision in the agreement (1) "conflicts with a state's fundamental public policy," and (2) whether the state has a "materially greater interest in the determination of the issue than the contractually chosen state."  *Pitzer College* at 100, citing *Nedlloyd* at 465-66.  If either test is met, the court must determine whether the contractually chosen state's law is "contrary to a ***fundamental*** policy of

9

California." *Id. (*emphasis in original).  The California Supreme Court applied this test and found the "notice-prejudice" rule, protecting policyholders, is a fundamental public policy of California which should not be undermined.  *Id.* at 105.

Regarding the third prong of the governmental interest test, that prong only applies if the trial court determines the competing state's laws are materially different ***and*** each state has an interest in having its law applied.  Given Virginia's lack of interest in having its law applied, there is no need to even address the third prong whereby the court determines which jurisdiction has a greater interest in the application of its law to the issue or, conversely, which state's interest would be more impaired if its law were not applied.  But even if an analysis of the third prong was necessitated due to some perceived interest by Virginia, that analysis likewise results in a finding that California law governs the insured's right to independent counsel given California's concern with protecting the rights of the insured.

Indeed, this case is analogous to the facts of *Northern Ins. Co. of New York v. Allied Mut. Ins. Co.*, 955 F.2d 1353 (9th Cir. 1992).  In that case, the Ninth Circuit addressed whether an insurer, Allied Mutual Insurance Company, fulfilled its duty to provide a defense to a California insured under a policy issued in California for a case pending in Washington when it hired counsel to defend the insured.  *Id*. at 1359.  The Ninth Circuit held that while Allied had fulfilled its defense obligation if Washington law applied, under California law the defense obligation was breached due to Allied's failure to provide *Cumis* counsel.  *Id*. at 1360. In determining which state's law applies, the court applied the most significant relationship test.  *Id*. at 1359.  Allied, similar to ProSight here, argued that only Washington had an in interest in enforcing its ethical rules.  *Id*.  The Ninth Circuit rejected that argument, finding California had the most significant relationship to the dispute given that the parties negotiated and contracted for insurance in California:

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1        The underlying concern is not, however, the enforcement of ethical

2        rules, but rather the protection of the insured when its interests

3        conflict with those of its insurer. *Cumis* and now section 2860,

4        accomplishes this by requiring insurers to provide independent

5        counsel when a conflict arises. California has a strong interest in

6        protecting its insureds from the risks inherent in a defense provided

7        under a reservation of rights. . . . Applying California law does not

8        harm Washington's interest.

9        . . . .

10       Washington has no specific interest in having its more lenient

11       standard applied here. California, on the other hand, has a strong

12       interest in seeing its law applied to protect both an insured domiciled

13       in California and the substantive rights of parties to a contract

14       negotiated and executed there.

15  *Id*. at 1359-60.

16       While the Ninth Circuit resolved the choice of law question under the most

17  significant relationship test versus the governmental interest test, it is clear from the

18  court's decision that the significance of California's interest (a factor applicable to

19  the governmental interest test) in protecting the rights of its insured was an

20  important consideration in the Ninth Circuit's application of California law.

21       Virginia law clearly provides less protection to its insureds, even allowing for

22  an insurer to provide its insured with a defense that California would find to be

23  conflicted and inadequate. Thus, as recognized by the Ninth Circuit, California has

24  the greater interest in ensuring a California insured is protected pursuant to the

25  obligation set forth in Civil Code section 2860(c).  Without a doubt, the right of a

26  California insured to have an unconflicted defense is fundamental and should not be

27  trampled by choice of law shenanigans.  The governmental interest analysis

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    compels the application of California law to the issue of an insured's right to

2    independent counsel in a conflict situation like this one.

3        **C.    Even Under Civil Code § 1646, ProSight Is Not Entitled to the**

4              **Application of Virginia Law, As It Urges**

5        Even if this Court concludes that Civil Code § 1646 applies to resolve the

6    choice-of-law issue, Civil Code § 1646 does not require the application of Virginia

7    law.  As stated above, Civil Code § 1646 states: "A contract is to be interpreted

8    according to the law and usage of the place where it is to be performed; or, if it does

9    not indicate a place of performance, according to the law and usage of the place

10   where it is made."  Cal. Civil Code § 1646.

11       ProSight's policy does not assert an "indicated" place of performance and it

12   does not say anything to suggest that it was "made" anywhere but California.  Thus,

13   on its face it is difficult to see how the Court could apply this statute to find that

14   Virginia law applies.  The only connection to Virginia is the happenstance that the

15   underlying defamation action at issue was filed there, something that is not asserted

16   to have been foreseeable at the time the insurance contract was made.

17       Accordingly, the authorities discussing Civil Code § 1646 cited by ProSight

18   are not helpful.  For example, *Frontier Oil,* 153 Cal.App.4th 1436 (2007), involved a

19   policy to cover an oil and gas facility identified in the insurance contract as being in

20   California, which the Court there found was the "intended" place of performance for

21   pollution claims.  Virginia is not the intended place of performance of ProSight's

22   policy.

23       *James River Ins. Co. v. Medolac Labs,* 290 F.Supp. 3d 956 (C.D. Cal. 2018),

24   also cited by ProSight, involved a business competition case in California brought

25   against an Oregon company.  The Court applied California law to interpret an

26   insurance policy issued in Oregon.  *James River* is factually distinguishable and

27   inapplicable here on several grounds: (1) it was a contract dispute between insured

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    and insurer, not an equitable claim between insurers, (2) the parties agreed that Civil

2    Code § 1646, as interpreted by the *Frontier Oil* Court, controlled (not so here),

3    (3) the evidence, a business contract that the insured had signed prior to purchasing

4    its policy, showed that the insured understood at the time of buying the policy in

5    Oregon that California is where the policy would be performed (no such evidence

6    here), and (4) the law of the two jurisdictions, the parties agreed, "would most

7    likely" lead to the same result regarding the coverage issues at stake.  The latter

8    point, no material difference in the law, makes the choice of law discussion in *James*

9    *River* dicta.  In any event, ProSight cannot say that any of those facts align with the

10   facts here.  *James River* did not address the choice of law situation presented here.[2]

11       In addition, subsequent decisions addressing choice-of-law in the context of

12   policies which cover risks in different states have rejected the premise that the place

13   of performance is any location where the contract could be performed.  Rather,

14   those decisions have correctly applied the law of where the contract was made.  *See*

15   *e.g. West Am. Ins. Co. v. Nutiva, Inc.,* 2018 WL 3861832 at *304 (N.D. Cal. 2018)

16

17   [2] ProSight's other cases, strung together in its footnote no. 4 (Dkt. 17-1, p. 16 of 37),

18   likewise do not apply here and do not support this motion to dismiss.  *See Fireman's*
     *Fund Ins. Co. v. Nationwide Mut. Fire Ins. Co.*, 2012 WL 1985316 (S.D. Cal. 2012),

19   also 2012 U.S. Dist. LEXIS 77189, Lexis p. 15 (applying California law, to a
     contract dispute, regarding a Florida policy because there was "no conflict between

20   California and Florida law on the matter of policy interpretation"; choice of law

21   analysis on that issue is dicta in light of no difference in laws; court applied
     California law regarding assessment of duty to defend because both the additional

22   insured and the plaintiff and the lawsuit were in California; nothing supported the

23   application of the law where the policy was issued to the named insured); *Black*
     *Diamond Asphalt, Inc. v. Superior Court*, 109 Cal.App.4th 166 (2003) (reaching the

24   unremarkable holding that a proper venue for an insurance dispute is the county

25   where case underlying case is filed); *Downey Venture v. LMI Ins. Co.*, 66
     Cal.App.4th 478, 514 (1998) (providing speculative dicta as to what a court would

26   do for indemnification claims brought in other states if there were clear policy

27   exclusions).

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1   (an insured seeking a defense for false advertising claims arising out of sale of

2   products in several states argued its policies were intended to be performed

3   wherever its products were sold and the law of multiple states governed under

4   Section 1646, court rejected that argument and held the law where the policies were

5   made governed because the insured's position would render the "place it was made

6   prong" of Section 1646 superfluous); *see also Ameron Int'l Corp. v. American*

7   *Home Assur. Co.*, 2011 WL 2261195 (C.D. Cal. 2011) (court declined to determine

8   a place of performance where the policy indicated performance in multiple states

9   and, instead, applied the law of California, where the policy was negotiated and

10   issued).

11       ProSight has not cited any case in which a California court concluded that the

12   law of a different state, which provides narrower protection to an insured, applied to

13   its insured's rights.  Further, ProSight has not cited any cases to suggest that paying

14   for the defense of a case filed in a distant jurisdiction is a "performance" of the

15   insurance contract that somehow trumps or outweighs the insurance company's

16   obligations to "perform" its commitment to its California insureds under insurance

17   contracts "made" in California.

18       In fact, the question of whether providing a defense is a detail of performance

19   versus a substantial right was also addressed by the Ninth Circuit in *Northern Ins.*

20   *Co. of New York,* cited above. The Ninth Circuit noted that "[w]hether something

21   constitutes a detail of performance or a substantial right is more a matter of degree

22   than kind." 955 F.2d at 1359.  It went on to state an example of a detail of

23   performance was the time and place of payment.  *Id*.  Whereas, substantial rights

24   included the amount to be paid and whether payment could be withheld under a

25   statute. *Id*.  Thus, the Ninth Circuit found that the right of an insured to a conflict-

26   free defense was a substantive right. *Id*. at 1360.  Indeed, it simply cannot be that

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1   the strong protections of California law disappear simply because litigation is filed

2   in an unforeseen forum.

3         In sum, ProSight's motion to dismiss Travelers' complaint is not supported

4   under either the governmental interest or the Civil Code §1646 choice of law

5   analysis.  Both tests lead to the application of California law to this claim under

6   these facts.[3]  And, as set forth in Travelers' complaint and discussed below, under

7   California law, a conflict existed which obligated ProSight to offer its insured

8   independent counsel, and its refusal to do so has resulted in Travelers inequitably

9   incurring more than its share of the defense costs.

10       **D.**    **ProSight's Reservation of Rights Created a Conflict of Interest**

11               **Between Its Appointed Counsel and the Insured**

12         From the outset of the Underlying Action, ProSight made clear that it has no

13

14   [3] ProSight should not be heard to complain about having to meet the California

15   obligations to provide a unconflicted defense to this California insured inasmuch as

16   ProSight itself has given itself the benefit of applying California law to this case

17   when it suits its interests.  In its complaint, Travelers alleges that ProSight has

"repeatedly invoked California law in its communications with its California insured

18   and Travelers." (FAC. Dkt. 15 p.  6, ¶ 25.)  ProSight's letter to the insured, attached

to its motion as Exhibit A, demonstrates this.  It states that "to the extent that

19   *California law* does not permit an insurer to indemnify the insured, no indemnity

can be provided." (*See* letter at Dkt. 17-4, at p. 2 of 161 (emphasis added).)  Thus,

20   ProSight itself has determined that California law applies to define its rights and

obligations to this insured regarding the underlying Virginia action.  ProSight also

21   has relied upon California's hourly rate limitation, codified in Civil Code section

22   2860(c), which states: "The insurer's obligation to pay fees to the independent

counsel selected by the insured is limited to the rates which are actually paid by the

23   insurer to attorneys retained by it in the ordinary course of business in the defense of

similar actions in the community where the claim arose or is being defended."

24   ProSight (like Travelers) asserts that it does not owe more in hourly attorney fee

25   reimbursement than called for under this California statute.  The Court should not

permit ProSight to apply California law when it favors it, while evading it when it

26   does not.

27

28

duty to indemnify its insured for intentional conduct under its policy.  And, contrary to ProSight's arguments, a reservation like this one, to disclaim coverage based upon the ultimate finding of the insured's intent, is precisely the kind that creates a conflict necessitating independent counsel. See *Long v. Cent. Indem. Co.*, 163 Cal. App. 4th 1460, 1471 (2008)("[T]he most common situation in which a conflict of interest exists and independent or *Cumis* counsel is required occurs when the insured's allegedly wrongful conduct could be found to be intentional, with coverage thus depending on the ultimate characterization of the insured's actions.") While the policyholder and insurer share the same interest in defeating the underlying defamation claim, if that doesn't happen their interests quickly diverge.[4]

ProSight first attempts to avoid its requirements under California law by arguing that no conflict of interest could exist due to the application of Virginia's ethical rules to appointed counsel defending its insured.  The fact that Virginia's rules and laws offer less protection to its insureds cannot possibly be a basis for finding no conflict existed under California law that requires independent counsel

---

[4] *See, Cumis*:

> Opposing poles of interest are represented on the one hand in the insurer's desire to establish in the third party suit the insured's "liability rested on intentional conduct" ( *Gray, supra, 65 Cal.2d 263, 279*), and thus no coverage under the policy, and on the other hand in the insured's desire to "obtain a ruling . . . such liability emanated from the nonintentional conduct within his insurance coverage" (*ibid.*).  (See fn. 4.) Although issues of coverage under the policy are not actually litigated in the third party suit, this does not detract from the force of these opposing interests as they operate on the attorney selected by the insurer, who has a dual agency status (see *Tomerlin v. Canadian Indemnity Co. (1964) 61 Cal.2d 638, 647 [39 Cal.Rptr. 731, 394 P.2d 571]*).
>
> . . .
>
> ***Disregarding the common interests of both insured and insurer in finding total nonliability in the third party action, the remaining interests of the two diverge to such an extent as to create an actual, ethical conflict of interest warranting payment for the insureds' independent counsel.***

*Cumis, supra* at 364-365, 375 (emphasis added).

---

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    for California insureds.

2         Next, ProSight asserts that no conflict exists because under no scenario would

3    its interests diverge from the insureds.  That is wrong. ProSight acknowledges that,

4    under Virginia law, defamation may be proven if a defendant acted negligently.  If

5    proven, a plaintiff may be entitled to compensatory damages.  However, a plaintiff

6    may also be entitled to punitive damages if the plaintiff proves that the defendant

7    acted with malice.  (Mot. Dkt. 17-1, p. 26 of 37.)  As recognized by ProSight,

8    California Insurance Code § 533, which bars coverage for willful acts, applies to

9    where an insured acts with "malice."  (*Id.*, fn. 12.)  Thus, a conflict most certainly

10   exists here given that if the punitive damages claim is not vigorously defended, i.e.

11   resulting in a finding the insured defendant acted with "malice," then a potential

12   exists, based on that finding, that all damages are excluded from coverage.

13        In obvious recognition of that potential outcome, ProSight's reservation of

14   rights letter to the insured states that "to the extent that California law does not

15   permit an insurer to indemnify the insured, no indemnity can be provided."

16   (Dkt. 17-4 at p. 10 of 161.)  Moreover, as set forth in Travelers' First Amended

17   Complaint, ProSight made it clear in correspondence to Travelers that ProSight

18   worded its reservation of rights letter to preserve its defense to coverage without

19   having to offer independent counsel:

20             15.  ProSight sent an email to Travelers on September 30, 2019,

21        encouraging Travelers to revise its reservation of rights in such a way as to

22        avoid having to provide the mutual insured with independent defense

23        counsel. The ProSight email state in part as follows:

24             Reserving rights under the intentional acts exclusion is not necessary

25             as coverage for willful acts is not insurable as a matter of public

26             policy just like punitive damages. . . .

27             If you reserve right by simply saying "to the extent that California

28

17

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

> law does not permit an insurer to indemnify the insured, no indemnity

2

> can be provided" you address both willful acts and punitive damages.

3

> . . . and you still can control the defense as there is no conflict under

4

> CA law. . . .

5

(FAC Dkt. 15, p. 5 of 11 at ¶15; *see also* Johnson Decl. ¶ 4, Ex. B.)

6

Contrary to the arguments of ProSight, the asserted right to disclaim coverage

7

due to the application of California Insurance Code § 533 is the equivalent of

8

asserting a policy exclusion and, thus, an insurer cannot hide behind its reliance on

9

a statutory limitation to coverage to avoid providing independent counsel to its

10

insured.

11

The California Supreme Court has stated that Insurance Code § 533 is

12

"an implied exclusionary clause which by statute is to be read into all insurance

13

policies." *J. C. Penney Cas. Ins. Co. v. M. K.*, 52 Cal. 3d 1009, 1019 (1991); *see*

14

*also Studley v. Benicia Unified Sch. Dist.*, 230 Cal. App. 3d 454, 458 (1991)

15

("Insurance Code section 533 has been regarded as an implied exclusionary clause

16

subject to the rules applying to other exclusionary clauses."); *State Farm Fire &*

17

*Cas. Co. v. Eddy*, 218 Cal. App. 3d 958, 969 (1990) ("Under California law,

18

section 533 is a part of every insurance contract and is the equivalent to an

19

exclusionary clause in the insurance contract itself.")  Given that Section 533 is

20

equivalent to and considered an exclusionary clause in the insurance contract itself,

21

ProSight's reliance on Section 533 is no different than a reservation based upon its

22

policy's express intentional conduct exclusions.

23

ProSight attempts to avoid the impact of Section 533 by also asserting,

24

wrongly, that Section 533 cannot be waived and, thus, the exclusion for willful

25

conduct would apply regardless of whether ProSight asserted the defense in its

26

reservation of rights letter.  However, while Section 533 prohibits parties from

27

contracting for coverage for damages caused by a willful act, it does not prevent an

28

18

insurer from waiving its right to disclaim coverage for a willful act.  S*ee, Shafer v. Berger, Kahn, Shafton, Moss, Figler Simon & Gladstone, et al.*, 107 Cal. App. 4th 54, 62, (2003), as modified on denial of reh'g (Apr. 8, 2003) ("[W]hile an insurance policy cannot provide indemnity for willful acts (see Ins. Code. §533), an insurer may agree to pay indemnity ***after*** an insured has committed a willful act.) (emphasis in original); *Celerity Educ. Group v. Scottsdale Ins. Co*., 2018 WL 3853998, at *2 (C.D. Cal. Aug. 10, 2018) ("While intentional conduct also is uninsurable, Cal. Ins. Code § 533, Defendant 'did not specifically reserve its rights in that area,' Accordingly, Defendant's general reservation did not raise an actual conflict of interest or duty to provide independent counsel") (citation omitted).  By contrast, ProSight reserved its right to disclaim coverage based upon Section 533.

Further, the California Supreme Court in *Tomerlin v. Canadian Indem. Co.*, 61 Cal. 2d 638, 643-649 (1964), explained that an insurer can be liable to an insured for willful conduct, notwithstanding Section 533, on an estoppel theory for representations concerning the promise of coverage which were made after the willful tort had allegedly been committed and on which promise the insured relied in dispensing with the services of his personal attorney in the underlying action and permitting counsel selected by the insurer to defend him.  The California Supreme Court specifically found that the public policy reflected in Section 533 was not offended by "recovery under a subsequent estoppel."  *Id.* at 648-649;  s*ee also Shafer, supra* (finding panel counsel may be sued for conspiring with insurer to commit actual fraud by specifically advising insured that it was modifying reservation of rights to withdraw reservation on occurrence and Section 533 to avoid triggering a *Cumis* obligation then denying indemnity for intentional conduct as respects judgment creditors).  *Tomerlin* and its progeny confirm that that the only way an insurer may avoid triggering the *Cumis* obligation in an action like the Underlying Action is to waive the protections offered by Section 533.  Again,

19

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1    ProSight did the opposite.

2         Finally, ProSight's reliance on *Foremost Ins. Co. v. Wilks*, 206 Cal. App. 3d

3    251(1988), is also misplaced as the Court in *Wilks* failed to even address the impact

4    of Section 533 on an insured's right to *Cumis* counsel.  Rather, in *Wilks* the court

5    specifically noted that the insurer had expressly stated in writing to its insured that

6    it was not reserving its right to rely on the "knowledge of the falsity thereof"

7    exclusion with respect to defending a defamation claim against its insured.  *Id*. at

8    258.  And, further, at oral argument, the insurer also conceded liability coverage for

9    compensatory damages in the event of willful misconduct by its insured.  *Id*.

10        Unlike the insurer in *Wilks*, ProSight did not waive its right to deny coverage

11   based on any willful misconduct by its insured.  Accordingly, it was obligated to

12   provide its insured with *Cumis* counsel from the outset of defending the Underlying

13   Action given its confirmed intent to disclaim indemnity for intentional conduct.

14   ProSight failed its obligation to provide such counsel.

15   **E.    Travelers' Claim for Equitable Contribution is Further Supported**

16   **by the Allegations Regarding ProSight's Failure to Provide an**

17   **Adequate Defense to the Insured.**

18        Regardless of whether ProSight had an obligation to provide independent

19   counsel, Travelers' claim for equitable contribution also survives a motion to

20   dismiss based on the allegations that Travelers has paid far more than its fair share

21   of the defense expenses for Travelers and ProSight's common insured.  ProSight

22   wrongly asserts that the equitable contribution claim as it pertains to the inequities

23   between Travelers and ProSight's defense of their common insured fails because

24   Travelers lacks "standing" to assert a claim for breach of a contractual defense

25   obligation since it is a "stranger" to the ProSight policy.  (Motion Dkt. 17-1 p. 33 of

26   37.)  But Travelers is not seeking to recover damages under a breach of contact

27   claim.  It seeks equitable contribution.  Moreover, the fact that Travelers is a

28

1   "stranger" to the contract between ProSight and the insured is also irrelevant as the

2   right to seek equitable contribution from another insurer exists independently of the

3   rights of the insured.  *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65

4   Cal.App.4th 1279, 1294 (1998).

5          An insurer unquestionably has the right to seek equitable contribution against

6   other insurers where: (1) they are coinsurers, meaning, insurers of the same coverage

7   level (i.e., all primary); and (2) one insurer satisfies more than its share of the claim.

8   *Fireman's Fund,* 65 Cal. App. 4th at 1293*; Residence Mut. Ins. Co. v. Travelers*

9   *Indem. Co. of Connecticut*, 26 F.Supp.3d 965 (C.D. Cal. 2014) (the doctrine of

10  equitable contribution grants an insurer that has paid a claim the right to recover

11  from a co-insurer, where both insurers were obliged to indemnify or defend the

12  claim, and where the co-insurer did not share, or did not sufficiently share, in

13  covering the claim).  The purpose of this rule of equity is to accomplish substantial

14  justice by equalizing the common burden shared by co-insurers, and to prevent one

15  insurer from profiting at the expense of others.  *Signal Cos., Inc. v. Harbor Ins. Co*.,

16  27 Cal.3d 359, 269 (1980).  Equitable contribution claims allow for wide-reaching

17  consideration by the Court of *all* equitable factors.  *See Axis Surplus Ins. Co. v.*

18  *Glencoe Ins. Ltd.*, 204 Cal.App.4th 1214, 1231-32 (2012) ("The court may consider

19  numerous factors in making its determination, including the nature of the underlying

20  claim, the relationship of the insured to the various insurers, the particulars of each

21  policy, and any other equitable considerations. [Citation omitted.].")

22          Travelers' First Amended Complaint undeniably pleads sufficient facts to

23  support a claim of equitable contribution.  As set forth in detail in the First Amended

24  Complaint, Travelers asserts that both Travelers and ProSight owed a defense to

25  their common insured for the same risk and, despite this common obligation,

26  Travelers has paid more than its fair share.  (*See* FAC Dkt. 15, p. 9, ¶36.)  As set

27  forth in the First Amended Complaint, ProSight's appointed counsel did next to

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

nothing in the defense of the insured and, instead, "piggy-backed" on the work of independent counsel paid by Travelers. (*Id*. p. 6, ¶ 18.) In fact, ProSight's appointed counsel withdrew from representation on November 20, 2020, and, while ProSight advised it would pay 50% of fees and costs incurred by independent counsel on or after November 20, 2020, it has not paid a dime to Travelers. (*Id.* ¶¶19-20.) In its count for equitable contribution, by which Travelers seeks a money judgment of equitable contribution of at least half of the attorney's fees, costs, and expenses of defending the insured, Travelers pled:

> 37. Travelers has spent and continues to spend substantial sums toward the mutual insured's defense in the Underlying Action with independent defense counsel of the mutual insured's choosing, as well as other counsel, experts, and vendors necessary to defend the insured. The case continues and the amount incurred by Travelers continues to grow.

> 38. For its part, rather than pay half, ProSight has not reimbursed the insured or Travelers anything, and it has not adequately funded a defense of its own. It has not actually defended by any objective measure. ProSight instead appointed defense counsel of its choice and it repeatedly refused demands by the mutual insured and by Travelers to participate in the defense with counsel of the mutual insured's choosing.

These allegations, and the facts behind them, must be considered by this Court, outside of the pleading context, to allow the Court to determine, in equity, how much ProSight owes Travelers.

Finally, ProSight audaciously states that an insurer cannot sue another for equitable contribution if the target insurer has paid anything at all. This simply is wrong. Citing to *Truck Ins. Exchange v. Unigard Ins. Co.*, 79 Cal. App. 4th 966, 974 (2000), ProSight's motion states that "equitable contribution only applies where the insurer seeking contribution for defense costs 'defended the action ***without any***

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1   *participation* by the other [insurers].'" (Motion, Dkt. 17-1 pp. 34 of 37; 1-9,

2   (emphasis added in ProSight's Motion).)  ProSight's selective quote is misleading

3   and results in a complete misstatement of the law.  Rather, the case law relied upon

4   by ProSight states as follows:

5         In the insurance context, the right to contribution arises when several insurers

6         are obligated to indemnify or defend the same loss or claim, and one insured

7         has paid more than its share of the loss or defended the action without any

8         participation by the others.

9   *Unigard Ins. Co.*, 79 Cal. App. 4th at 974.

10        Thus, under the correct rule of law, the doctrine of equitable contribution

11   grants rights against an insurer which has paid less than its fair share.  *Residence*

12   *Mut., supra.*  There is no one dollar buy-out defense, as ProSight suggests.  And,

13   without question, Travelers had pled sufficient facts to support its claim for

14   equitable contribution.  ProSight's motion must be dismissed to prevent ProSight

15   from profiting at the expense of Travelers.

16                              **IV.**

17   **TRAVELERS' FIRST AMENDED COMPLAINT STATES A VALID CLAIM**

18                 **FOR DECLARATORY JUDGMENT**

19        Because Travelers has stated a claim for relief against ProSight for equitable

20   contribution, it has also stated a valid claim for a declaratory judgment.  ProSight's

21   argument as to the dismissal of the declaratory judgment claim are part and parcel of

22   its argument that Travelers is not entitled to equitable contribution. (See Motion Dkt.

23   17-1, p. 34 of 37:17-22.)  Because Travelers has adequately pled its claim for

24   equitable contribution, its claim for declaratory judgment likewise survives a motion

25   to dismiss.  *See Williamsburg Nat. Ins. Co. v. New York Marine and General Ins.*

26   *Co.*, 2021 WL 4458952 (C.D. Cal. Sept. 29, 2021) (denying a motion to dismiss a

27   declaratory judgment accompanying a claim for equitable relief).

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## V.

## CONCLUSION

Travelers' First Amended Complaint alleges sufficient facts to state claims upon which relief can be granted against ProSight for equitable contribution and declaratory relief.  Accordingly, the Court should deny the Motion in its entirety.  If, however, the Court is inclined to grant the Motion in any fashion, Travelers respectfully requests that the Court do so with leave to amend.

Dated: November 17, 2021

Respectfully submitted,

/s/ Mark D. Peterson
MARK D. PETERSON
Of CATES PETERSON LLP
Attorneys for Plaintiff
TRAVELERS COMMERCIAL
INSURANCE COMPANY

24

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS