UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-5832-GW-PDx | Date | January 6, 2022 |
|---|---|---|---|
| Title | *Travelers Commercial Insurance Company v. New York Marine and General Insurance Company* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| None Present | None Present | |

**PROCEEDINGS:** IN CHAMBERS - FINAL RULING ON DEFENDANT NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S MOTION TO DISMISS COMPLAINT OR, ALTERNATIVELY, PARTIAL MOTION TO DISMISS EQUITABLE CONTRIBUTION CLAIM AND MOTION FOR MORE DEFINITE STATEMENT [17]

Attached hereto is the Court's Final Ruling. The Court GRANTS Defendant's motion to dismiss. Plaintiff requested leave to amend and Defendant did not appear to demand a dismissal without leave to amend. The Court sets a status conference for January 20, 2022 at 8:30 a.m, to discuss the future litigation in this case.

:

Initials of Preparer    JG

***Travelers Commercial Ins. Co. v. N.Y. Marine & Gen. Ins. Co.***, Case No. 2:21-cv-05832-GW-(PDx); Final Ruling on Motion to Dismiss or, Alternatively, Partial Motion to Dismiss Equitable Contribution Claim for More Definite Statement

## I. Introduction

Travelers Commercial Insurance Company ("Plaintiff") sues New York Marine and General Insurance Company[1] ("Defendant") for: 1) declaratory judgment and 2) equitable contribution of defense expenses. Plaintiff's operative First Amended Complaint ("FAC") – filed on September 7, 2021, *see* Docket No. 15 – includes the following allegations:

Plaintiff issued and delivered a homeowner's policy to the mutual insured of Plaintiff and Defendant in California (henceforth "ALH") covering the period beginning November 14, 2018, and ending November 14, 2019. *See* FAC ¶ 7. Plaintiff's policy extends to otherwise covered or potentially covered damages stemming from the allegations of defamation, and promised a defense to any lawsuit seeking such damages. *See id.*

Defendant issued and delivered a commercial general liability insurance policy to ALH, *see* Docket No. 17-4, Exh. B – in California, covering the period July 18, 2018, to July 18, 2019. *See id.* ¶ 8. It too extends to otherwise covered or potentially covered damages because of defamation and promised a defense to any lawsuit seeking such damages. *See id.*

ALH, a California resident, was sued in Virginia state court in or about March 2019, with the plaintiff in that action seeking damages for defamation. *See id.* ¶ 9; *see also* Docket No. 17-4, Exh. C.[2] Plaintiff agreed to defend ALH under a reservation of rights. *See id.* ¶ 10. Plaintiff offered to pay for independent "*Cumis*"[3] defense counsel of ALH's own selection, and has paid that counsel's fees. *See id.*

---

[1] Defendant is alleged to be "a corporation existing under the laws of the State of New York, with its principal place of business in Morristown, New Jersey . . . . and at all times relevant was, an insurance carrier eligible to do business and doing business as an insurer in the State of California." FAC ¶ 3.

[2] Plaintiff offers no objection to Defendant's request that the Court consider, in the context of this Rule 12(b)(6) motion, the insurance policies and the Complaint on-file in the underlying Virginia lawsuit.

[3] *See San Diego Navy Fed. Credit Union v. Cumis Ins. Soc'y, Inc.*, 162 Cal.App.3d 358 (1984) ("*Cumis*").

Defendant also accepted its obligation to defend the insured under a reservation of rights, also – according to Plaintiff's allegations, at least – triggering *Cumis* counsel obligations.[4] *See id.* ¶ 11. But Defendant did not agree to provide independent defense counsel. *See id.* ¶ 13. Instead, it attempted to evade its obligation by avoiding citation to certain policy provisions in its reservation of rights letter, and encouraged Plaintiff to do likewise, to the detriment of ALH. *See id.* ¶¶ 14-15.

Plaintiff refused to collaborate with or participate in Defendant's plan, and has instead repeatedly demanded that Defendant pay its share of ALH's independent defense counsel fees and costs. *See id.* ¶ 16. Defendant instead appointed defense counsel of its choice, and has refused demands by both ALH and Plaintiff to participate in the defense with counsel of ALH's choosing. *See id.* ¶ 17. Meanwhile, the defense counsel which Defendant selected has done "next to nothing" and "piggy-back[ed]" on the work of ALH's independent defense counsel, which Plaintiff has paid for. *See id.* ¶¶ 18, 38.

Defendant's chosen counsel withdrew from representation of ALH on November 20, 2020. *See id.* ¶ 19. Defendant then advised Plaintiff on January 21, 2021, that it would pay 50% of the fees and costs incurred by independent defense counsel on and after November 20, 2020. *See id.* ¶ 20. Plaintiff acknowledged that agreement, but demanded that Defendant also pay the same percentage of fees and costs between the date of tender to Defendant and November 20, 2020. *See id.* ¶ 21. Thus far, Defendant has not paid any portion of any fees or costs incurred by independent defense counsel, and has not reimbursed Plaintiff for any portion of such fees or costs. *See id.* ¶¶ 22-23, 40. It has also indicated that, after trial, it likely will attempt to deny coverage for any award against ALH based on its reservation of rights. *See id.* ¶ 24.

Plaintiff asserts that Defendant "is obligated to reimburse [Plaintiff] for at least 50% of the independent defense counsel fees and costs paid by [Plaintiff], plus interest, and it is further obligated to pay at least 50% of those fees and costs going forward," and that "[a]n actual case or controversy exists between [Plaintiff] and [Defendant] regarding [Defendant's] obligation to reimburse [Plaintiff] and pay for [ALH's] independent

---

[4] Defendant's Reservation of Rights Letter (which is referenced in FAC ¶¶ 11-12) is attached as Exhibit A to the Declaration of James P. Wagoner. *See* ECF No. 17-3. Defendant has filed a Request for Judicial Notice of certain documents including the aforesaid letter. *See* ECF No. 17-2. The Court finds there is a basis for granting said request as to the Reservation of Rights Letter. *See Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013).

2

defense counsel." *Id.* ¶¶ 27-28.

Defendant now moves to dismiss or, alternatively, for a more definite statement with respect to the claim for equitable contribution.

## II. Procedural Standard

Under Rule 12(b)(6), a court must: (1) construe a complaint in the light most favorable to the plaintiffs, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). However, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570); *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In its consideration of such a motion, a court is generally limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a

complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). However, "[a] court may [also] consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

### III. Analysis

A claim for equitable contribution between insurers requires Plaintiff to allege that Plaintiff and Defendant are obligated to indemnify or defend the same loss or claim, and that Plaintiff has paid more than its share of the loss or defended the action without any participation by Defendant. *See Fireman's Fund Ins. Co. v. Md. Cas. Co.*, 65 Cal.App.4th 1279, 1293 (1998); *see also Travelers Indem. Co. of Conn. v. Navigators Specialty Ins. Co.*, 70 Cal.App.5th 341, _, 285 Cal.Rptr.3d 289, 303 (2021); *Md. Cas. Co. v. Nationwide Ins. Co.*, 65 Cal.App.4th 21, 26-27 (1998); *Patent Scaffolding Co. v. William Simpson Constr. Co.*, 256 Cal.App.2d 506, 517 (1967) ("The equitable-contribution principle requires an equitable distribution of the loss among those who share liability for it."). While Plaintiff certainly has *alleged* as much in connection with its funding of *Cumis* counsel, here, Defendant's motion – and, it seems, this case in its entirety – comes down to the question of whether Defendant actually had any obligation to provide ALH with *Cumis* counsel, an issue of law for the Court to decide regardless of how Plaintiff depicts the matter.

#### A. Virginia Counsel's Undivided Loyalty

As a leading practice guide describes it, the need to provide an insured with *Cumis* counsel arises when an insurer's duty to provide a full defense by competent counsel to its insured would be breached by furnishing "defense counsel whose ability to represent the insured is impaired by a disqualifying conflict of interest." Croskey, Heeseman, Ehrlich & Klee, CAL. PRAC. GUIDE: INSURANCE LITIGATION (The Rutter Group 2021) ("Croskey & Heeseman"), ¶ 7:769, at 7B-111. "The rationale is that *in a conflict of interest situation*, 'the insurer's desire to exclusively control the defense

4

must yield to its obligation to defend its policy holder.'" *Id.* (emphasis added). *Cumis* has been at least partially-codified in California Civil Code § 2860(a), which provides that "[i]f the provisions of a policy of insurance impose a duty to defend upon an insurer and a conflict of interest arises which creates a duty on the part of the insurer to provide independent counsel to the insured, the insurer shall provide independent counsel to represent the insured . . . ." Cal. Civ. Code § 2860(a).

Plaintiff focuses on the language used in Defendant's Reservation of Rights letter to bolster its conflict argument, *see* Croskey & Heeseman, ¶¶ 7:771, 773-75, at 7B-112, 7B-114–115, and on a choice-of-law analysis that it believes points to this Court's use of California law for purposes of assessing the question of the *Cumis* obligation in such circumstances. The trouble with Plaintiff's position, however, is due to a different argument Defendant made in its opening brief, *see* Docket No. 17-1, at 2:14-23, 9:6-11:9, and that it emphasized still-further in its Reply, when it was apparent that Plaintiff had not meaningfully responded to it.

Specifically, the underlying litigation in question is proceeding in Virginia, and Defendant provided ALH with a Virginia lawyer. Whatever any choice-of-law analysis might say about whether California or Virginia law applied to the question of Defendant's obligation to the insured, Defendant has argued – and cited authority in support[5] – that a Virginia lawyer appointed by an insurer to defend an insured has only one client, *the insured*. This is unlike the situation in California, where a California lawyer would be in what has been described as a "tripartite" relationship, necessitating consideration of the *Cumis* counsel issue. *See, e.g.*, *Swanson v. State Farm Gen. Ins. Co.*, 219 Cal.App.4th 1153, 1162 (2013); *see also Gen Sec. Ins. Co. v. Jordan, Coyne &*

---

[5] *See Gen. Sec. Ins. Co. v. Jordan, Coyne & Savits, LLP*, 357 F.Supp.2d 951, 955 (E.D. Va. 2005) (answering the question, never "squarely addressed" by Virginia's Supreme Court, of "whether an insurer can bring a legal malpractice claim against the law firm it retains to defend an insured"); *id.* at 957 & n.16 ("[T]he Supreme Court of Virginia has never suggested that an insurer, as well as the insured, may be a client of the law firm the insurer retains to defend an insured. The judicial tea leaves, such as they are, suggest the contrary. Thus, Virginia State Bar ethics opinions, approved by the Supreme Court of Virginia, make unmistakably clear that an insurer is not the client of counsel it retains to defend an insured.") (citing Virginia State Bar Committee of Legal Ethics, Opinions 598 and 1536); *see also Norman v. Ins. Co. of N. Am.*, 239 S.E.2d 902 (Va. 1978). A later Virginia federal district court decision supports Defendant's reading of these authorities. *See Nationwide Prop. & Cas. Ins. Co. v. Fraraccio*, 250 F.Supp.3d 5, 8-9 & n.7 (E.D. Va. 2017) (citing *State Farm Fire & Cas. Co. v. Mabry*, 497 S.E.2d 844, 847 (Va. 1998)). Moreover, the *Cumis* decision itself at the very least hinted that California law differed from Virginia law on the need for independent counsel for the insured. *See Cumis*, 162 Cal.App.3d at 373 n.9 (identifying Virginia as a "[j]urisdiction[] ruling to the contrary" on "the view we take," and citing *Norman*).

*Savits, LLP*, 357 F.Supp.2d 951, 956 (E.D. Va. 2005) (observing that, of the jurisdictions that allow an insurer to sue, for malpractice, an insured's lawyer, the few that offer an analysis of the insurer's relationship with the lawyer reflect the view that a "tripartite relationship" exists).  In other words, appointed Virginia counsel would, unlike a California lawyer (under California's law in this area), never be "in the position of having to choose which master to serve." *Fed. Ins. Co. v. MBL, Inc.*, 219 Cal.App.4th 29, 42 (2013); *see also Gafcon, Inc. v. Ponsor & Assocs.*, 98 Cal.App.4th 1388, 1423 (2002) ("It was not sufficient to show Ponsor & Associates' lawyers were not influenced or controlled by Travelers and had no *intent* to affect the outcome of coverage.  The statement in *Cumis* is still apt:  'No matter how honest the intentions, counsel cannot discharge *inconsistent duties*.'") (quoting *Cumis*, 162 Cal.App.3d at 366) (initial emphasis in original; latter emphasis added).  As a result, even if this Court would agree with Plaintiff that California law applied – thereby avoiding the "choice of law gymnastics" Plaintiff believes that Defendant is attempting (*see* Docket No. 20, at 2:8-10) – to the question of whether Defendant had an obligation to provide *Cumis* counsel, under California law it would not have such obligation because the Virginia lawyer – whose professional conduct is unquestionably governed/measured by Virginia law – has no undivided loyalty.

Plaintiff has not even attempted to contest the issue of a Virginia lawyer's undivided loyalty in such circumstances.  Its Opposition brief does not so much as mention the two Virginia law-decisions Defendant relies upon, or even the two Virginia State Bar ethics opinions relied upon by one of those decisions. *See generally* Opposition to Defendant's Motion to Dismiss ("Opposition"), Docket No. 20.  Nor has Plaintiff directed this Court to any case imposing a *Cumis* counsel obligation under California law on an insurer where the insurer has appointed a Virginia lawyer to represent its insured in a Virginia lawsuit.  Nor has the Court, in its own research, discovered any authority that calls into question the proposition Defendant advances about a Virginia lawyer's undivided loyalty in this context and the resulting lack of need for a *Cumis* counsel-like relationship.[6]

---

[6] The closest the Court's own research has been able to come on the question (outside of the authorities Defendant has relied upon) is the *Nationwide Property* case cited in Footnote 5, *supra*, and a reference in a Virginia federal district court's decision on personal jurisdiction to an issue that was before a California

Instead, Plaintiff simply argues that finding no *Cumis* counsel obligation here for Defendant would be to "ignore the protections afforded to a California insured under policies negotiated and issued in California" (Opposition, at 1:23-25); that it is "wrong" that no actual conflict would exist even if California law applied (*id.* at 5:17-19); that "it simply cannot be that the strong protections of California law disappear simply because litigation is filed in an unforeseen forum" (*id.* at 14:26-15:2); and that "[t]he fact that Virginia's rules and laws offer less protection to its insureds cannot possibly be a basis for finding no conflict existed"[7] (*id.* at 16:13-15). In short, the response to these assertions-without-citations is that, when represented by a Virginia attorney in an action taking place in Virginia, an insured – whether a "California insured" or otherwise – has no need for those "protections," unlike in California, where the "tripartite" relationship exists. Furthermore, "the *Cumis* rule is not based on insurance law but on the ethical duty of an attorney to avoid representing conflicting interests." *Golden Eagle Ins. Co. v. Foremost Ins. Co.*, 20 Cal. App. 4th 1372, 1394 (1993). Thus, the focus should be on the ethical duties and not simply insurance law.

Because a Virginia lawyer has only the insured as a client, there is no conflict of interest, regardless of what Defendant's Reservation of Rights letter might say. *Cf. Native Sun Inv. Grp. v. Ticor Title Ins. Co. of Cal.*, 189 Cal.App.3d 1265, 1277-78 (1987) (concluding that, although independent counsel's representation could result in liability on uncovered claims, court would not extend *Cumis* to require compensation of such counsel because trial court found insurer: a) gave counsel "cart blanche to litigate all the

---

Superior Court in related litigation as to whether an insurer "has a duty to pay for independent counsel" in a lawsuit filed in Virginia (while also noting that "the right to independent counsel arises only by operation of a California statute"), but that decision indicated that the California Superior Court had "not yet ruled on this claim." *Hartford Cas. Ins. Co. v. JR Mktg., LLC*, 511 F.Supp.2d 644, 646, 651 (E.D. Va. 2007). However, the Court also observes the existence of a curious comment in the case of *Town Crier, Inc. v. Hume*, 721 F.Supp. 99 (E.D. Va. 1989), where a federal district court – in fact, the same court that would handle the *General Security* case (cited in Footnote 5, *supra*) some 16 years later – indicated that where an insurer issues "a reservation of rights notice with respect to any claims not covered . . . insureds may retain personal counsel to represent their interests or to monitor the conduct of the defense by the insurer." *Id.* at 102 n.12. Of course, there would be nothing preventing an insured from ever taking that step, but the question is why the insured would need to do so if the insurer-appointed Virginia attorney's duties were as singly-directed as Defendant argues here (and as the case law Defendant cites at least suggests).

[7] The argument that California law is "strong[er]" in this regard, or more-protective of insureds, does not take account of the fact that, in Virginia, there is no need to have independent counsel because there is no "tripartite" relationship and Virginia attorneys owe their duties only to the insured. This does not make California law stronger on this point; it is simply a different arrangement with the same goal in mind.

issues . . . covered and uncovered" and b) that counsel at no time preferred the insurer's interest to those of his client, "nor did he allow questions of coverage – though he was informed of them – to interfere with his litigation decisions regarding the third party claims"). *But see* Croskey & Heeseman, ¶ 7:788, at 7B-119 (criticizing approach taken in *Native Sun*). It is therefore unnecessary to analyze whether any conflict could arise from the language used in that letter, because no matter what it might have said about *Defendant's* position *vis-a-vis* ALH, it says nothing about ALH's Virginia lawyer's loyalty to ALH.[8] It is likewise unnecessary for this Court to attempt to resolve the parties' competing choice-of-law arguments.

Defendant has no *Cumis* counsel obligation in connection with a Virginia attorney's representation of its insured in a Virginia lawsuit. "'The principle of equity on which the right to contribution is founded applies only where the parties are under a common burden of liability.'" *Morgan Creek Residential v. Kemp*, 153 Cal.App.4th 675, 684 (2007) (quoting *Weinberg Co. v. Heller*, 73 Cal.App. 769, 779 (1925)); *see also Am. Continental Ins. Co. v. Am. Cas. Co.*, 86 Cal.App.4th 929, 937-38 (2001) ("[W]here there is no common obligation that is legally due from multiple insurers, then no basis for contribution exists.") (emphasis omitted). Because Defendant had no "common burden of liability" with respect to any duty to appoint *Cumis* counsel, Plaintiff has no independent right to equitable contribution from Defendant.

The parties' briefs make clear that they believe the viability of Plaintiff's declaratory relief cause of action rises-and-falls with the equitable contribution claim.[9] *See* Docket No. 17-1, at 23:16-24:2; Docket No. 20, at 23:19-27, Docket No. 21, at

---

[8] California Civil Code § 2860(b) provides that "a conflict of interest does not exist as to allegations or facts in the litigation for which the insurer denies coverage; however, when an insurer reserves its rights on a given issue and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim, a conflict of interest may exist." Cal. Civ. Code § 2860(b). But that provision cannot be divorced from the underlying principle of California law that such counsel is in a "tripartite" relationship, unlike in Virginia. *Cf. Endurance Am. Specialty Co. v. Lance-Kashian & Co.*, No. CV F 10-1284 LJO BAM, 2011 WL 5417103, *22 (E.D. Cal. Nov. 8, 2011). Simply because an insurer may have "first retained" the counsel does not turn the insurer into counsel's client, at least with respect to Virginia lawyers handling litigation in Virginia.

[9] It would seem to the Court that this is not entirely accurate, *see* FAC ¶¶ 31(a), 31(c), 31(e), but also seems that the other issues Plaintiff identifies in its declaratory relief claim are not truly in much dispute, are not issues that Plaintiff may dispute and/or that does not involve Defendant, as opposed to ALH's Virginia counsel (for instance, whether Defendant breached any duty to defend by not providing an "adequate" defense), or are issues that Plaintiff may need further amendment, *see* Footnote 11, *infra*.

18:22-28. As such, because the Court concludes that Plaintiff's equitable contribution claim must be dismissed, so too must its claim for declaratory relief.

### B. Defendant's Reservation of Rights

Even putting aside the Virginia counsel's undivided loyalty to the insured, Plaintiff has still not made a case for the appointment of *Cumis* counsel. An insurer's obligation to provide *Cumis* counsel only arises when a *sufficient* conflict of interest arises between the insurer and the insured. *See Dynamic Concepts, Inc. v. Truck Ins. Exchange*, 61 Cal. App. 4th 999, 1007 (1998) ("A mere possibility of an unspecified conflict does not require independent counsel. The conflict must be significant, not merely theoretical[;] actual, not merely potential."); *Federal Ins. Co. v. MBL, Inc.*, 219 Cal. App. 4th 29, 42 (2013) ("[N]ot every conflict of interest entitles an insured to insurer-paid independent counsel."). The fact an insurer defends an action brought against its insured under a reservation of its right to deny coverage does not, by itself, create a conflict entitling the insured to select *Cumis* counsel. *See Gafcon, Inc.*, 98 Cal. App. 4th at 1421 ("a conflict of interest does not arise every time the insurer proposes to provide a defense under a reservation of rights."); *Centex Homes v. St. Paul Fire & Marine Ins. Co.*, 237 Cal. App. 4th 23, 32 (2015). Nor is an insurer's general reservation of rights sufficient to trigger the right to independent counsel. *Centex Homes*, 237 Cal. App. 4th at 31. "Where the insurer has not *expressly* reserved its right to deny coverage under a *particular* exclusion in its policy, there can be no actual conflict based on the application of that exclusion during the pendency of the action." *Federal Ins. Co.*, 219 Cal. App. 4th at 47 (emphasis added). As further stated in *Federal Ins. Co.*:

> The insured's right to independent counsel "depends upon the nature of the coverage issue, as it relates to the issues in the underlying case." "[W]here the reservation of rights is based on coverage disputes which have nothing to do with the issues being litigated in the underlying action, there is no conflict of interest requiring independent counsel." . . . .
>
> Nor does "every reservation of rights entitles an insured to select *Cumis* counsel. There is no such entitlement, for example, where the coverage issue is independent of, or extrinsic to, the issues in the underlying action or where the damages are only partially covered by the policy." However, independent counsel is required where there is a reservation of rights "and the outcome of that coverage issue can be controlled by counsel first retained by the insurer for the defense of the claim." . . . .

9

> The duty to appoint independent counsel is not triggered at the moment defense counsel makes a tactical decision giving rise to a conflict. Instead, the parties' respective interests must be analyzed to determine if they can be reconciled or if there is a conflict of interest which puts appointed counsel in the position of having to choose which master to serve.

219 Cal. App. 4th at 42 (citations omitted).

As alleged in the FAC ¶¶ 11-12, the only basis for Defendant's obligation to provide ALH with *Cumis* counsel is Defendant's accepting "its obligation to defend the insured under a reservation of rights." FAC ¶ 11. Plaintiff avers that: "[Defendant's] reservation of rights letter . . . indicated that indemnity coverage could be denied based on the insured's knowledge and/or intent with respect to the alleged events giving rise to the Underlying Action. In other words, 'the outcome of that coverage issue[s]' raised by [Defendant] could 'be controlled by counsel first retained by the insurer for the defense of the claim.'"[10] FAC ¶ 12. However, the quoted language from the FAC is not, in fact, contained in the Reservation of Rights Letter, which this Court has judicially noticed. Said Letter states, in relevant part:

> Based on our review of your insurance policy, the allegations at issue in the lawsuit and the facts of which we have been informed, New York Marine has determined that it will provide you with a legal defense under a reservation of rights . . . .
> In providing your legal defense, we do not waive any rights under your policies or otherwise, all of which rights are reserved.
> Notwithstanding that New York Marine has determined that it will provide a legal defense to you, to the extent that California law does not permit an insurer to indemnify the insured, no indemnity can be provided.

ECF No. 17-4 at 2 of 161.

As noted above, a general reservation of rights is not sufficient to create a duty on the insurer to provide independent counsel – "[w]here the insurer has not expressly reserved its right to deny coverage under a particular exclusion in its policy, there can be no actual conflict based on the application of that exclusion during the pendency of the action." *Federal Ins. Co.*, 219 Cal. App. 4th at 44; *see also Hollyway Cleaners &*

---

[10] Plaintiff's reference to the notion – that "indemnity coverage could be denied based on the insured's knowledge and/or intent with respect to the alleged events giving rise to the Underlying Action" – is not grounded upon any specific fact or circumstance. As indicated in the Reservation of Rights Letter, ALH's insurance policy contains coverage for "personal and advertising injury" which is set out as including "oral or written publication, *in any manner*, of material that slanders or libels a person . . . ." ECF No. 17-4 at 5-6 of 161 (emphasis added).

*Laundry Co., Inc. v. Central Nat'l Ins. Co.*, 219 F.Supp.3d 996, 1005-06 (C.D. Cal. 2016). The reservation of rights in Defendant's Letter is general; it did not cite to a specific provision or exclusion in ALH's policy upon which its reservation was based. *See, e.g.*, *Celerity Educ. Grp. V. Scottsdale Ins. Co.*, CV 17-03239-RSWL-JC, 2018 WL 3853998, at *2 (C.D. Cal. Aug. 10, 2018) ("Defendant's broad reservation on 'matters uninsurable under the laws pursuant to which the Policy is construed' was general.").

A number of cases demonstrate that Defendant's reservation of rights in this case did not give rise to a duty to provide ALH with *Cumis* counsel. In *Dynamic Concepts, Inc.*, the insured was sued for six causes of action but only the sixth claim for defamation was identified as giving rise to a duty to defend. *See* 61 Cal. App. 4th at 1002. The insurer accepted the defense under a reservation of rights and designated an attorney to provide the defense; said attorney not being retained to provide coverage advice to the insurer or to represent the insurer's interests. *Id.* The insured refused to accept said attorney and demanded the appointment of *Cumis* counsel; refused the insurer's attempts to accommodate the insured's dictates (short of appointing *Cumis* counsel); and proceeded to settle the lawsuit without the insurer's participation. The court of appeal rejected the insured's "proposed per se rule requiring the appointment of an independent counsel whenever a carrier issues a so-called 'global reservation of rights' or . . . reserves its right to seek reimbursement for defense costs for uncovered claims." *Id.* at 1008. It was observed that "[the insurer] offered to provide [the insured] with a defense by outside counsel whose only role was to defend [the insured], not represent [the insurer]." *Id.* It was further held that:

> Both Sheehy and Koeller, as insurer-appointed defense counsel, owed their primary obligations to [the insured] to provide the same level of competent and ethical representation "as if [it] had retained [them] personally." There is no basis on the record to presume they would have violated their stringent ethical responsibilities to completely defend [the insured] for all allegations of the entire complaint, covered or uncovered. There similarly is no support for the proposition [the insurer] intended to offer merely a token defense for uncovered claims or that either Sheehy or Koeller were retained to act as "coverage spies" to generate potential coverage defenses. Had they so misbehaved, they would have been exposed to malpractice liability, disciplinary actions and possible loss of coverage defenses by Truck. (*Betts v. Allstate Ins. Co.* (1984) 154 Cal.App.3d 688, 716, 201 Cal.Rptr. 528 [finding liability against

>insurance defense attorney and insurer for wrongly favoring carrier's interests over insured's] . . . .).''

*Id.* It was additionally noted that "[t]he supposed *Cumis* conflict for the covered libel claim was vague, ephemeral and highly theoretical." *Id.* at 1009-10. The present case is similar to *Dynamic Concepts, Inc.* in that: (1) there is a general reservation of rights; (2) Defendant-insurer has provided the insured with counsel; and (3) said counsel's sole client is (and hence its ethical responsibilities are only to) ALH.

In *Federal Ins. Co.*, the insured tendered the defense in a Comprehensive Environmental Response, Compensation, and Liability Act of 1980 action to its insurers which included the Federal Insurance Company ("FIC") and Nationwide Indemnity Company ("Nationwide"). *See* 219 Cal. App. 4th at 33. The insurers accepted the tender of defense, subject to reservations of various rights, and retained counsel to provide the insured with a defense. The insured refused to accept retained counsel, arguing the insurers' reservations of rights created conflicts of interest and demanding the insurers instead pay for counsel of the insured's choosing. The insurers denied there was any such conflict of interest and filed declaratory relief actions, which the trial court granted on summary judgment in favor of the insurers (finding no actual conflict of interest). *Id.* at 33-34. Nationwide's reservation of rights included: (1) coverage for property damage that did not occur during the applicable policy periods; (2) coverage for fines or penalties that were not "damages" as defined by the policies; (3) coverage under the absolute pollution exclusions in the policies; and (4) reimbursement of defense costs if it was determined Nationwide had no duty to defend the particular claim. *Id.* at 37. FIC's reservation of rights covered: (1) any property damage that did not occur within the applicable policy period; (2) any award of punitive damages; (3) any damages awarded in excess of their respective limits of liability; and (4) reimbursement of defense costs where there was no duty to defend. In affirming the district court's finding that there was no conflict of interest giving rise to a duty to provide *Cumis* counsel, the court of appeals *inter alia* held: (1) to the extent that the insurers had made general reservations of rights, such reservations "create a theoretical, potential conflict of interest – nothing more" (*id.* at 47); (2) although FIC's policy did contain "qualified pollution exclusions" which would create a conflict of interest between FIC and the insured, because FIC had not expressly reserved its right to deny coverage under those particular provisions of the

policy, there could not be an "actual conflict based on the application of that exclusion during the pendency of the action" (*id.* at 44); (3) although Nationwide's policy provided a specified limit on the number of accidents/occurrences which would be covered which could potentially create a conflict of interest between Nationwide and the insured, again it was held that no actual conflict arose because Nationwide's reservation of rights letter did not expressly reserve the right to raise that contention (*id.* at 45); and (4) while Nationwide did expressly reserve its right to deny coverage under the "absolute pollution" exclusion in the policy, that reservation did not give rise to an applicable conflict of interest because "[e]ither the loss arose out of a government claim to remediate pollution or it did not, and there is nothing which counsel, whether retained or independent, could do to change the answer to that question" (*id.* at 44).

In *Centex Homes*, plaintiff (who was named as an additional insured in one of its subcontractor's insurance policy with the defendant insurer) brought an action against its subcontractors and concomitant insurers seeking, *inter alia*, declaratory relief as to whether plaintiff was entitled to *Cumis* counsel. *See* 237 Cal. App. 4th at 26. Plaintiff contractor argued that its interests were "irreconcilably adverse" to the subcontractor (who was also insured by the defendant) which in turn raised a conflict of interest among the contractor, the subcontractor and the insurer. *Id.* at 31. In rejecting the argument that the situation gave rise to a duty to appoint *Cumis* counsel, the court of appeals stated:

> [Plaintiff] argues [the insurer] will manipulate experts to its advantage without giving any explanation about how that will be accomplished. Similarly, Centex offers a host of allegations about how Travelers will control the litigation without describing how this is occurring in the underlying construction defect litigation. [Plaintiff] is alleging conclusions without substance, not facts. As Gertrude Stein famously said about Oakland, there is no there there.

*Id*. at 31-32. Here, Plaintiff has charged that Defendant's reservation of rights was made with the intention of later attempting to assert that "indemnity coverage could be denied based on the insured's knowledge and/or intent with respect to the alleged events giving rise to the Underlying Action." *See* FAC ¶ 12. However, Plaintiff has not articulated how that could be done or whether counsel chosen by Defendant took any steps in that regard. Additionally, "the mere fact that the insurer disputes coverage does not entitle the insured to *Cumis* counsel." *James 3 Corp. v. Truck Ins. Exch.*, 91 Cal. App. 4th 1093,

13

1101 (2001).

For the above stated reasons, the Court finds that Defendant's reservation of rights does not give rise to *Cumis* counsel herein.

## IV. Conclusion

The Court GRANTS Defendant's motion to dismiss. Plaintiff requested leave to amend and Defendant did not appear to demand a dismissal *without* leave to amend.[11] The Court sets a status conference for January 20, 2022, to discuss the future litigation in this case.

---

[11] Defendant notes that there is no breach of contract claim in the FAC, yet Plaintiff asserts that after Defendant agreed to share costs for the independent counsel *going-forward* (when counsel Defendant hired for ALH withdrew from her representation), it still has not contributed/paid anything, either from that period or before. *See* FAC ¶¶ 19-20, 22-23, 40. Perhaps *this* potential breach of contract/promise situation is where Plaintiff sees a basis for amendment (notwithstanding its apparent statement to the contrary in its Opposition, *see* Docket No. 20, at 20:26-27)?