1            **UNITED STATES DISTRICT COURT**

2        **CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION**

3          **HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE**

4

5   **TRAVELERS COMMERCIAL INSURANCE**
    **COMPANY, et al,**

6
                        **Plaintiff,**
7
        **vs.**                        **Case No. CV 21-5832-GW**
8
    **NEW YORK MARINE AND**
9   **GENERAL INSURANCE COMPANY,**
    **a New York Corporation,**
10
                        **Defendants.**
11  _____/

12

13
                    **REPORTER'S TRANSCRIPT OF**
14        **HEARING ON MOTION TO DISMISS COMPLAINT**
                   **MONDAY, DECEMBER 13, 2021**
15                        **8:30 A.M.**
                   **LOS ANGELES, CALIFORNIA**
16

17

18

19

20

21

22  _____

23          **TERRI A. HOURIGAN, CSR NO. 3838, CCRR**
               **FEDERAL OFFICIAL COURT REPORTER**
24           **350 WEST FIRST STREET, ROOM 4311**
               **LOS ANGELES, CALIFORNIA  90012**
25                    **(213) 894-2849**

1       **APPEARANCES OF COUNSEL:**

2

3 **FOR THE PLAINTIFF:**

4   CATES PETERSON LLP
    BY:  MARK D. PETERSON
5   Attorney at Law
    4100 Newport Place Suite 230
6   Newport Beach, California  92660

7

 **FOR THE DEFENDANT:**
8

   Mc CORMICK BARSTOW SHEPPARD WAYTE and CARRUTH LLP
9   BY:  JAMES P. WAGONER
    Attorney at Law
10   7647 North Fresno Street
    Fresno, California  93720

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          LOS ANGELES, CALIFORNIA; MONDAY, DECEMBER 13, 2021

2                              8:30 A.M.

3                               --oOo--

4

5          THE COURT:  Let me call the matter of *Travelers*

6  *Commercial Insurance versus New York Marine*.

7              For the plaintiff, we have?

8          MR. PETERSON:  Good morning, Your Honor.  Mark

9  Peterson for plaintiff.

10         THE COURT:  All right.  And for the defense, we

11 have?

12         MR. WAGONER:  James Wagoner on behalf of New York

13 Marine, Your Honor.

14         THE COURT:  All right.  We are here on the motion to

15 dismiss or a partial motion to dismiss.

16             I have issued a tentative on this.  I presume

17 both sides have seen it?

18         MR. PETERSON:  Yes, Your Honor.  Mark Peterson for

19 the plaintiff.

20         THE COURT:  All right.  For the defense?  Anything

21 from the defense?

22         MR. WAGONER:  No, nothing from the defense, Your

23 Honor.  We have seen the ruling, and we agree with it.

24         THE COURT:  Okay.  Let me ask, I indicated that I

25 would grant the motion to dismiss and the plaintiff is asking

**UNITED STATES DISTRICT COURT**

```
 1    for leave to amend.
 2             What is the defendant's response to a dismissal
 3    with leave to amend?
 4             MR. PETERSON:  Your Honor, may I interject and
 5    interrupt, begging the Court's pardon?
 6             We're not going to ask for a leave to amend, we
 7    ask the Court to change its tentative, and I would like to be
 8    heard on the merits.
 9             THE COURT:  Well, in that case, let me hear from
10    you, okay?
11             MR. PETERSON:  Very good.
12             As the Court knows in this case, it arises from
13    Travelers providing a California insured with protections under
14    the policy under California law.
15             The case involves several million dollars.  It's
16    a big case, but it's a bigger case than that because it
17    implicates the rights of California insureds for suing in other
18    states.
19             So, we ask the Court to reconsider its tentative.
20             The tentative ruling, in particular, if I could
21    draw the Court's attention to three sentences that I think are
22    places the Court went off the rails.
23             In page 7, the Court says:  Because a Virginia
24    lawyer has only the insured as a client, there is no conflict
25    of interest, regardless of defendant's Reservation of Rights
```

1    letter might say.

2              Also page 7:  It is therefore unnecessary to

3    analyze whether any conflict could arise from the language used

4    in that letter, because no matter what it might have said about

5    defendant's position *vis a vis* Heard, it says nothing about

6    Heard's Virginia lawyer's loyalty to Heard.

7              Lastly, the Court says:  It is likewise

8    unnecessary for this Court to attempt to resolve the parties'

9    competing choice-of-law arguments.

10             So, the Court has essentially jumped over the

11   choice-of-law issue, and we are sitting in California,

12   obviously, we have a California insured, a California issued

13   policy, California insurance litigation, the Central District.

14   We have a California statute that reflects the California

15   fundamental public policy about the right to independent

16   counsel.

17             By contrast, we have a Virginia landscape that is

18   silent on that right, it doesn't grant that right.  We have

19   alleged defamatory material, which is written in California and

20   sent to the Washington Post, which published it.

21             The Court is applying Virginia law to -- it has

22   in fact made a choice-of-law determination.

23             THE COURT:  Yes, but let me just ask you the duty

24   between the Virginia lawyer and the insured would be governed

25   by Virginia law, and Virginia law is clear that the lawyer has

1    the duty to the insured.

2            So, I don't understand why you are making the

3    argument that you are doing now, because again, there is no

4    dispute as to that.

5            MR. PETERSON:  So, Your Honor, it seems to Travelers

6    that you are conflating the issue of the lawyer's duty to his

7    client, which as you say, is singular in Virginia with the

8    insurance company ProSight's duty to its insured.

9            So the issue, if this case were about a lawyer

10   being brought up on ethical charges or whatnot, then we should

11   consider whether the lawyer did something right or wrong.

12           But this case is about the carrier's duty to a

13   policyholder, and that is a very different thing.  It is

14   certainly influenced by a lawyer's duty to the client, but that

15   is not the beginning and end of the inquiry.

16           Here, California has legislated, first, there

17   were cases and then it turned into legislation, Civil Code

18   2860, the duty a insurance company has to a policyholder,

19   separate and apart from whatever the ethical duties are to a

20   lawyer, and a lawyer to a client.

21           So this Court has gone off on the technical

22   findings of Virginia law as to the lawyer being able to say, I

23   only have one client, but that is not what is at issue when

24   Travelers, on behalf of -- indirectly on behalf of the

25   policyholder is suing for equitable contribution and those

1   rights -- I'm sorry, those obligations on ProSight's part turn

2   on its obligations to its policyholder, which are not limited

3   to the lawyer's duty to the client.

4            So, that is the thing.

5            The technical difference in the lawyer's duty

6   under Virginia and California law is interesting, but it is not

7   determinative.

8            So that's where we think the biggest hiccup in

9   the Court's opinion is.

10           California, as you know, has a statute that arose

11  out of the *Cumis* line of cases, 2860(a), codifies *Cumis* and

12  says you need to provide independent counsel.

13           2860(b) tells you when that needs to happen.  We

14  know what that is, when the insured reserves the right to

15  disclaim coverage and the appointed lawyer can effect whether

16  the case steers in or steers out of coverage.

17           This case does involve a conflict of interest.

18  It's a defamation case.  It turns on whether the alleged

19  defamatory statements were made with knowledge and that they

20  were false.  There is a Northern District --

21           THE COURT:  Let me ask you this, why doesn't the

22  insured sue the defendant?

23           MR. PETERSON:  Because Travelers has stepped in and

24  taken care of it; that is why.  Millions of dollars have been

25  spent doing exactly that.

1          So Travelers is in effect carrying the insured's

2    right to ProSight's and saying, hey, you need to have done

3    this, you need to share.

4          There are two carriers that owe the same

5    obligation, and one of them met their obligation and one of

6    them didn't.

7          And the same kind of argument was made by a

8    carrier in a Ninth Circuit case that we cited *Northern*

9    *Insurance versus Allied*, Ninth Circuit 1992, and here is what

10   that Court said:  The underlying concern is not, however, the

11   enforcement of ethical rules, but rather, the protection of the

12   insured when its interests conflicts with those of the insurer.

13         *Cumis* in Section 2860 accomplishes this by

14   requiring the insurer to provide independent counsel when a

15   conflict arises.

16         And then this sentence is compelling:  California

17   has a strong interest in protecting its insureds and the risks

18   inherent and a defense provided under a reservation of rights.

19   Applying California law does not harm Washington interests.  So

20   we discussed that case in our brief at pages 10 to 11.

21         Same thing, but the Court's tentative ruling

22   undermines that fundamental California public policy and saying

23   that a lawyer in Virginia can tell himself when he goes to bed

24   at night that he's not in violation of an ethical rule does not

25   protect that policyholder.

1            THE COURT:  No, but it is a recognition that he does

2    have -- it's just the opposite.  He has the obligation.  He

3    doesn't have an -- he doesn't have a split in terms of his

4    loyalty which gives rise to the conflict of interest.

5            He only has one client.  He only has one

6    interest, and that is the insured.

7            So, you know, again, if there is any problem, he

8    is liable to the insured for it, and it's clear under Virginia

9    law.

10            MR. PETERSON:  Your Honor, on Friday you blessed us

11    with the benefit of your tentative hearing which is super

12    helpful in this argument.

13            I went back on Friday and I re-read the *Cumis*

14    case page by page quite slowly.

15            And I was reminded, because the *Cumis* case dates

16    back to when I was in law school in 1984, and I was reminded

17    that the foundation in that case is only secondarily the Rules

18    of Professional Conduct.  The California Rules of Professional

19    Conduct aren't mentioned until about page 15 of that decision.

20            The main foundation of the *Cumis* doctrine, I

21    think is important to keep in mind is the practical realities

22    of insurance defense work, right?

23            So the *Cumis* Court citing the trial court, quoted

24    the trial court in a few sentences, and if you will indulge me

25    I think it's important to be reminded of this because the Court

1   of Appeal in *Cumis* endorsed this analysis by the trial court.

2             Quote:  The carrier is required to hire

3   independent counsel because an attorney in the actual trial

4   would be tentative to develop the facts to help his real

5   client, the carrier company, as opposed to the insured, for

6   whom you will never likely work again.

7             In such a case as this the insured is placing in

8   an impossible position.  The one hand, the carrier says it will

9   happily defend him, and on the other hand, it says, it may

10  dispute paying any judgment, but trust us.  And the trial court

11  finishes referring to, quote:  The reality of insurance defense

12  work -- that is a quote -- and these two sentences:  Insurance

13  companies hire relatively few lawyers and concentrate their

14  business.  The lawyer that does not look out for the carrier's

15  best interest might soon find himself out of work.  Closed

16  quote, by the trial court.  Closed quote by the *Cumis* Court,

17  endorsing that analysis.

18            So the primary foundation of *Cumis* is not the

19  technical --

20       THE COURT:  Would that be true of the hiring lawyers

21  in different states?

22       MR. PETERSON:  Well --

23       THE COURT:  In other words, the lawyer in Virginia

24  is worried about being hired to represent another California

25  plaintiff in a case -- that gives rise to that?

1          MR. PETERSON:  Your Honor, no, no, the lawyer in

2   Virginia has to worry about whether ProSight sends that law

3   firm a 100 cases of a year.  That is the analysis, the

4   foundation of *Cumis,* right?

5              I'm not making these facts up, but to illustrate

6   the point, if that law firm survives and it gets half their

7   work from one insurance company, it doesn't matter what the

8   Rules of Professional Conduct say, that law firm has to worry

9   going to bed to sleep at night, about whether they are really,

10  really leaning one way or leaning in another way, and it's an

11  impossible position to put lawyers in, and whatever the Rules

12  of Professional Conduct are.

13         THE COURT:  Let me put it this way, none of the

14  cases that you cite concerning cases that arise from Virginia

15  where there is not this split of loyalty that is recognized.

16              Virginia says there is only one client.  The

17  client is the insured.

18              These other cases that may talk about a situation

19  where there can be this conflict, but in Virginia, it's not

20  there.

21         MR. PETERSON:  Again, I would argue to the Court

22  there is a practical conflict every time, separate and apart

23  from what the Virginia judicial opinions or bar opinions say

24  about this.

25              Let me posit a situation in which the case we

1  have here is litigated, not just in Virginia, but discovery

2  happens like crazy to the tune of half million dollars -- it's

3  not speculation, that is reality in California.

4          They take depositions, there is document

5  discovery, there is discovery motions.  People fight like crazy

6  in California, and how do they do that?  They do it with

7  California lawyers licensed in California going to California

8  Courts to fight those fights.  Those lawyers are bounds by

9  California ethical rules, and they can't pretend they don't

10 have only one client because they don't, right?  California

11 says otherwise.

12         So, those lawyers have to worry about the *Cumis*

13 doctrine, and it just doesn't make sense for certain parts of

14 the case to be ones triggering the right to independent counsel

15 and other parts in the case, the ones that --

16         THE COURT:  I don't think that is a proper analogy,

17 though.

18         Let me hear from the defense, what is defense

19 response from all of this.  Don't say you agree with the

20 Court's tentative, because that doesn't tell me anything.

21         What is your response to the arguments?

22         MR. WAGONER:  James Wagoner, I will simply go a

23 little bit beyond that.

24         The 2860 applies, but it doesn't matter, because

25 under 2860, there has to be a conflict of interest.  And there

1   is no conflict of interest because a lawyer in Virginia has

2   only one client.  That is what all of Travelers' arguments just

3   seem to overlook.

4           In Virginia, there is a different landscape.

5   It's not a situation where there is a presumed ethical duty

6   that is going to be violated by the defense lawyer.  No, and

7   defense lawyers in Virginia have one client, and they could

8   even sue, as the Court recalled from those ethical opinions,

9   they could even sue an insured of the same insurance company

10  that referred them the case.  It's not the same landscape as it

11  is in California.

12          These California lawyers that counsel is

13  referring to, the question is who hires them.

14          And the answer is if they are hired by Virginia

15  counsel to do local work, it's still the Virginia counsel that

16  is the attorney of record.  That is what the complaint talks

17  about.

18          So under these circumstances, there is no

19  practical conflict every time.  There is never a factual

20  conflict.  The Virginia law is clear as a bell.  There was one

21  client, and that one client is the insured, and that is the

22  only entity to whom that lawyer's oath and the obligation

23  whatsoever.  That is the end of the story.

24          There is simply no conflict that 2860, even if

25  applicable, applies to because there isn't one.

**UNITED STATES DISTRICT COURT**

1            I just think that is the simple proposition that

2    Travelers appears to be overlooking.

3            THE COURT:  Well, let's put it this way, this is a

4    case that they require an appellate point of view.

5            But I think I have given it my best shot here, so

6    let me ask, is there any further argument from either side?

7            MR. PETERSON:  Yes, Your Honor.  Mark Peterson for

8    plaintiff.

9            If we're going to go to the Ninth Circuit on this

10   conclusion, I would just ask the Court to reconsider doing a

11   choice-of-law analysis.

12           I think you are going to be critical of all of us

13   if we didn't go through the step by step.  If the Court does do

14   that, I think you can't help but end up applying California law

15   which reflects the fundamental public policy on this issue.

16           Final point, just the nuts and bolts of this

17   complaint, you have enough, separate and apart from this issue,

18   you have the allegation that in the last year ProSight's

19   lawyers withdrew, so for the last year they have not been

20   defending, that is Paragraph 19, and ProSight hasn't paid

21   anything, even to date.  That is Paragraphs 22 and 23.

22           So the complaint, as it stands says they haven't

23   done anything.  They violated their duty to defend for the last

24   year.

25           The complaint at Paragraph 18 says that they

1   inadequately defended prior to that.

2         So in the last year, they have defended not at

3   all, and in the periods of time before that, they defended

4   inadequately.  That is enough to get past the motion to dismiss

5   and take us to a Rule 56 motion instead.

6         So we would urge the Court to deny the motion to

7   dismiss on all of those bases, and at a minimum to do the

8   choice-of-law analysis, which we think will make you revisit

9   your conclusion.

10        And then finally, it's just a footnote issue, but

11   important, Travelers asks that the Court omit the insured's

12   name, just as a matter of protecting her privacy as much as we

13   can do that.

14        THE COURT:  Let me ask, though, in the Virginia

15   litigation, she's named, isn't she?

16        MR. PETERSON:  She is, yes.  It's just a media

17   feeding frenzy and Travelers have instructed me not to use her

18   name in the complaint.  We haven't used it in our briefs, but

19   again, the more we can do to help her, the better.

20        THE COURT:  All right.  I will think about it.

21        Let me just ask this, in the tentative we're

22   assuming the California law applies.  I don't need to do a

23   choice-of-law necessarily.  I'm assuming that California law

24   applies.

25        MR. PETERSON:  Well, if California law applies, Your

```
1   Honor, I just don't see how you cannot apply it, which is 2860.
2           THE COURT:  Well, then you haven't fully read the
3   tentative.
4               Anything else?
5           MR. PETERSON:  No, Your Honor.
6           THE COURT:  Okay.  I will think about it some more,
7   and hopefully we will get something out either today or
8   tomorrow.
9               Gentlemen, have a nice day.
10          MR. PETERSON:  Thank you, Your Honor.
11           (The proceedings concluded at 9:20 a.m.)
12                          * * *
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1        **CERTIFICATE OF OFFICIAL REPORTER**

2   COUNTY OF LOS ANGELES   )
                            )
3   STATE OF CALIFORNIA     )

4

5           I, TERRI A. HOURIGAN, Federal Official Realtime

6   Court Reporter, in and for the United States District Court for

7   the Central District of California, do hereby certify that

8   pursuant to Section 753, Title 28, United States Code that the

9   foregoing is a true and correct transcript of the

10  stenographically reported proceedings held in the

11  above-entitled matter and that the transcript page format is in

12  conformance with the regulations of the judicial conference of

13  the United States.

14

15  Date:  January 18 2022

16

17

18                          /s/ TERRI A. HOURIGAN

19                  _____
                    TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
20                       Federal Official Court Reporter

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

**/**

/s [1] - 17:18

**1**

10 [1] - 8:20
100 [1] - 11:3
11 [1] - 8:20
13 [2] - 1:14, 3:1
15 [1] - 9:19
18 [2] - 14:25, 17:15
19 [1] - 14:20
1984 [1] - 9:16
1992 [1] - 8:9

**2**

2021 [2] - 1:14, 3:1
2022 [1] - 17:15
21-5832-GW [1] - 1:7
213 [1] - 1:25
22 [1] - 14:21
23 [1] - 14:21
230 [1] - 2:5
28 [1] - 17:8
2860 [6] - 6:18, 8:13, 12:24, 12:25, 13:24, 16:1
2860(a [1] - 7:11
2860(b [1] - 7:13

**3**

350 [1] - 1:24
3838 [2] - 1:23, 17:19

**4**

4100 [1] - 2:5
4311 [1] - 1:24

**5**

56 [1] - 15:5

**7**

7 [2] - 4:23, 5:2
753 [1] - 17:8
7647 [1] - 2:10

**8**

894-2849 [1] - 1:25
8:30 [2] - 1:15, 3:2

**9**

90012 [1] - 1:25

92660 [1] - 2:6
93720 [1] - 2:10
9:20 [1] - 16:11

**A**

A.M [2] - 1:15, 3:2
a.m [1] - 16:11
able [1] - 6:22
above-entitled [1] - 17:11
accomplishes [1] - 8:13
actual [1] - 10:3
agree [2] - 3:23, 12:19
al [1] - 1:5
allegation [1] - 14:18
alleged [2] - 5:19, 7:18
Allied [1] - 8:9
amend [3] - 4:1, 4:3, 4:6
analogy [1] - 12:16
analysis [5] - 10:1, 10:17, 11:3, 14:11, 15:8
analyze [1] - 5:3
AND [1] - 1:8
ANGELES [4] - 1:15, 1:25, 3:1, 17:2
answer [1] - 13:14
apart [6] - 6:19, 11:22, 14:17
Appeal [1] - 10:1
APPEARANCES [1] - 2:1
appellate [1] - 14:4
applicable [1] - 13:25
applies [5] - 12:24, 13:25, 15:22, 15:24, 15:25
apply [1] - 16:1
applying [3] - 5:21, 8:19, 14:14
appointed [1] - 7:15
argue [1] - 11:21
argument [4] - 6:3, 8:7, 9:12, 14:6
arguments [3] - 5:9, 12:21, 13:2
arise [2] - 5:3, 11:14
arises [2] - 4:12, 8:15
arose [1] - 7:10
assuming [2] - 15:22, 15:23
attempt [1] - 5:8
attention [1] - 4:21

**Attorney** [2] - 2:5, 2:9
attorney [2] - 10:3, 13:16

**B**

bar [1] - 11:23
BARSTOW [1] - 2:8
bases [1] - 15:7
Beach [1] - 2:6
bed [2] - 8:23, 11:9
begging [1] - 4:5
beginning [1] - 6:15
behalf [3] - 3:12, 6:24
bell [1] - 13:20
benefit [1] - 9:11
best [2] - 10:15, 14:5
better [1] - 15:19
between [1] - 5:24
beyond [1] - 12:23
big [1] - 4:16
bigger [1] - 4:16
biggest [1] - 7:8
bit [1] - 12:23
blessed [1] - 9:10
bolts [1] - 14:16
bounds [1] - 12:8
brief [1] - 8:20
briefs [1] - 15:18
brought [1] - 6:10
business [1] - 10:14
BY [2] - 2:4, 2:9

**C**

CALIFORNIA [5] - 1:2, 1:15, 1:25, 3:1, 17:3
California [34] - 2:6, 2:10, 4:13, 4:14, 4:17, 5:11, 5:12, 5:13, 5:14, 5:19, 6:16, 7:6, 7:10, 8:16, 8:19, 8:22, 9:18, 10:24, 12:3, 12:6, 12:7, 12:9, 12:10, 13:11, 13:12, 14:14, 15:22, 15:23, 15:25, 17:7
cannot [1] - 16:1
care [1] - 7:24
carrier [4] - 8:8, 10:2, 10:5, 10:8
carrier's [2] - 6:12, 10:14
carriers [1] - 8:4
CARRUTH [1] - 2:8
carrying [1] - 8:1
Case [1] - 1:7

case [22] - 4:9, 4:12, 4:15, 4:16, 6:9, 6:12, 7:16, 7:17, 7:18, 8:8, 8:20, 9:14, 9:15, 9:17, 10:7, 10:25, 11:25, 12:14, 12:15, 13:10, 14:4
cases [6] - 6:17, 7:11, 11:3, 11:14, 11:18
CATES [1] - 2:4
CCRR [1] - 1:23
Central [2] - 5:13, 17:7
CENTRAL [1] - 1:2
certain [1] - 12:13
certainly [1] - 6:14
CERTIFICATE [1] - 17:1
certify [1] - 17:7
change [1] - 4:7
charges [1] - 6:10
choice [5] - 5:9, 5:11, 5:22, 14:11, 15:8, 15:23
choice-of-law [6] - 5:9, 5:11, 5:22, 14:11, 15:8, 15:23
Circuit [3] - 8:8, 8:9, 14:9
circumstances [1] - 13:18
cite [1] - 11:14
cited [1] - 8:8
citing [1] - 9:23
Civil [1] - 6:17
clear [3] - 5:25, 9:8, 13:20
client [15] - 4:24, 6:7, 6:14, 6:20, 6:23, 7:3, 9:5, 10:5, 11:16, 11:17, 12:10, 13:2, 13:7, 13:21
closed [2] - 10:15, 10:16
Code [2] - 6:17, 17:8
codifies [1] - 7:11
COMMERCIAL [1] - 1:5
Commercial [1] - 3:6
companies [1] - 10:13
company [5] - 6:8, 6:18, 10:5, 11:7, 13:9
COMPANY [2] - 1:5, 1:9
compelling [1] - 8:16
competing [1] - 5:9
COMPLAINT [1] - 1:14

complaint [5] - 13:16, 14:17, 14:22, 14:25, 15:18
concentrate [1] - 10:13
concern [1] - 8:10
concerning [1] - 11:14
concluded [1] - 16:11
conclusion [2] - 14:10, 15:9
Conduct [2] - 9:18, 9:19, 11:8, 11:12
conference [1] - 17:12
conflating [1] - 6:6
conflict [12] - 4:24, 5:3, 7:17, 8:15, 9:4, 11:19, 11:22, 12:25, 13:1, 13:19, 13:20, 13:24
conflicts [1] - 8:12
conformance [1] - 17:12
consider [1] - 6:11
contrast [1] - 5:17
contribution [1] - 6:25
CORMICK [1] - 2:8
Corporation [1] - 1:9
correct [1] - 17:9
counsel [8] - 5:16, 7:12, 8:14, 10:3, 12:14, 13:12, 13:15
COUNSEL [1] - 2:1
COUNTY [1] - 17:2
Court [23] - 4:7, 4:12, 4:19, 4:22, 4:23, 5:7, 5:8, 5:10, 5:21, 6:21, 8:10, 9:23, 9:25, 10:16, 11:21, 13:8, 14:10, 14:13, 15:6, 15:11, 17:6, 17:19
court [5] - 9:23, 9:24, 10:1, 10:10, 10:16
COURT [20] - 1:1, 1:24, 3:5, 3:10, 3:14, 3:20, 3:24, 4:9, 5:23, 7:21, 9:1, 10:20, 10:23, 11:13, 12:16, 14:3, 15:14, 15:20, 16:2, 16:6
Court's [5] - 4:5, 4:21, 7:9, 8:21, 12:20
Courts [1] - 12:8
coverage [2] - 7:15, 7:16
crazy [2] - 12:2, 12:5
critical [1] - 14:12

**CRR** [1] - 17:19
**CSR** [2] - 1:23, 17:19
**Cumis** [12] - 7:11, 8:13, 9:13, 9:15, 9:20, 9:23, 10:1, 10:16, 10:18, 11:4, 12:12
**CV** [1] - 1:7

## D

**date** [1] - 14:21
**Date** [1] - 17:15
**dates** [1] - 9:15
**DECEMBER** [2] - 1:14, 3:1
**decision** [1] - 9:19
**defamation** [1] - 7:18
**defamatory** [2] - 5:19, 7:19
**defend** [2] - 10:9, 14:23
**DEFENDANT** [1] - 2:7
**defendant** [1] - 7:22
**defendant's** [3] - 4:2, 4:25, 5:5
**Defendants** [1] - 1:10
**defended** [3] - 15:1, 15:2, 15:3
**defending** [1] - 14:20
**defense** [11] - 3:10, 3:20, 3:21, 3:22, 8:18, 9:22, 10:11, 12:18, 13:6, 13:7
**deny** [1] - 15:6
**depositions** [1] - 12:4
**determination** [1] - 5:22
**determinative** [1] - 7:7
**develop** [1] - 10:4
**difference** [1] - 7:5
**different** [3] - 6:13, 10:21, 13:4
**disclaim** [1] - 7:15
**discovery** [3] - 12:1, 12:5
**discussed** [1] - 8:20
**DISMISS** [1] - 1:14
**dismiss** [5] - 3:15, 3:25, 15:4, 15:7
**dismissal** [1] - 4:2
**dispute** [2] - 6:4, 10:10
**DISTRICT** [3] - 1:1, 1:2, 1:3
**District** [4] - 5:13, 7:20, 17:6, 17:7

**DIVISION** [1] - 1:2
**doctrine** [2] - 9:20, 12:13
**document** [1] - 12:4
**dollars** [3] - 4:15, 7:24, 12:2
**done** [2] - 8:2, 14:23
**draw** [1] - 4:21
**duties** [1] - 6:19
**duty** [11] - 5:23, 6:1, 6:6, 6:8, 6:12, 6:14, 6:18, 7:3, 7:5, 13:5, 14:23

## E

**effect** [2] - 7:15, 8:1
**either** [2] - 14:6, 16:7
**end** [3] - 6:15, 13:23, 14:14
**endorsed** [1] - 10:1
**endorsing** [1] - 10:17
**enforcement** [1] - 8:11
**entitled** [1] - 17:11
**entity** [1] - 13:22
**equitable** [1] - 6:25
**essentially** [1] - 5:10
**et** [1] - 1:5
**ethical** [7] - 6:10, 6:19, 8:11, 8:24, 12:9, 13:5, 13:8
**exactly** [1] - 7:25

## F

**fact** [1] - 5:22
**facts** [2] - 10:4, 11:5
**factual** [1] - 13:19
**false** [1] - 7:20
**FEDERAL** [1] - 1:24
**Federal** [2] - 17:5, 17:19
**feeding** [1] - 15:17
**few** [2] - 9:24, 10:13
**fight** [2] - 12:5, 12:8
**fights** [1] - 12:8
**final** [1] - 14:16
**finally** [1] - 15:10
**findings** [1] - 6:22
**finishes** [1] - 10:11
**firm** [3] - 11:3, 11:6, 11:8
**first** [1] - 6:16
**FIRST** [1] - 1:24
**footnote** [1] - 15:10
**FOR** [2] - 2:3, 2:7
**foregoing** [1] - 17:9
**format** [1] - 17:11

**foundation** [4] - 9:17, 9:20, 10:18, 11:4
**frenzy** [1] - 15:17
**Fresno** [2] - 2:10, 2:10
**Friday** [2] - 9:10, 9:13
**fully** [1] - 16:2
**fundamental** [3] - 5:15, 8:22, 14:15

## G

**GENERAL** [1] - 1:9
**gentlemen** [1] - 16:9
**GEORGE** [1] - 1:3
**given** [1] - 14:5
**governed** [1] - 5:24
**grant** [2] - 3:25, 5:18

## H

**half** [2] - 11:6, 12:2
**hand** [2] - 10:8, 10:9
**happily** [1] - 10:9
**harm** [1] - 8:19
**hear** [2] - 4:9, 12:18
**Heard** [2] - 5:5, 5:6
**heard** [1] - 4:8
**Heard's** [1] - 5:6
**hearing** [1] - 9:11
**HEARING** [1] - 1:14
**held** [1] - 17:10
**help** [3] - 10:4, 14:14, 15:19
**helpful** [1] - 9:12
**hereby** [1] - 17:7
**hiccup** [1] - 7:8
**himself** [2] - 8:23, 10:15
**hire** [2] - 10:2, 10:13
**hired** [2] - 10:24, 13:14
**hires** [1] - 13:13
**hiring** [1] - 10:20
**Honor** [12] - 3:8, 3:13, 3:18, 3:23, 4:4, 6:5, 9:10, 11:1, 14:7, 16:1, 16:5, 16:10
**HONORABLE** [1] - 1:3
**hopefully** [1] - 16:7
**HOURIGAN** [4] - 1:23, 17:5, 17:18, 17:19

## I

**illustrate** [1] - 11:5

**implicates** [1] - 4:17
**important** [3] - 9:21, 9:25, 15:11
**impossible** [2] - 10:8, 11:11
**inadequately** [2] - 15:1, 15:4
**independent** [5] - 5:15, 7:12, 8:14, 10:3, 12:14
**indicated** [1] - 3:24
**indirectly** [1] - 6:24
**indulge** [1] - 9:24
**influenced** [1] - 6:14
**inherent** [1] - 8:18
**inquiry** [1] - 6:15
**instead** [1] - 15:5
**instructed** [1] - 15:17
**INSURANCE** [2] - 1:5, 1:9
**Insurance** [2] - 3:6, 8:9
**insurance** [8] - 5:13, 6:8, 6:18, 9:22, 10:11, 10:12, 11:7, 13:9
**insured** [16] - 4:13, 4:24, 5:12, 5:24, 6:1, 6:8, 7:14, 7:22, 8:12, 9:6, 9:8, 10:5, 10:7, 11:17, 13:9, 13:21
**insured's** [2] - 8:1, 15:11
**insureds** [2] - 4:17, 8:17
**insurer** [2] - 8:12, 8:14
**interest** [8] - 4:25, 7:17, 8:17, 9:4, 9:6, 10:15, 12:25, 13:1
**interesting** [1] - 7:6
**interests** [2] - 8:12, 8:19
**interject** [1] - 4:4
**interrupt** [1] - 4:5
**involve** [1] - 7:17
**involves** [1] - 4:15
**issue** [7] - 5:11, 6:6, 6:9, 6:23, 14:15, 14:17, 15:10
**issued** [2] - 3:16, 5:12

## J

**JAMES** [1] - 2:9
**James** [2] - 3:12, 12:22
**January** [1] - 17:15
**JUDGE** [1] - 1:3

**judgment** [1] - 10:10
**judicial** [2] - 11:23, 17:12
**jumped** [1] - 5:10

## K

**keep** [1] - 9:21
**kind** [1] - 8:7
**knowledge** [1] - 7:19
**knows** [1] - 4:12

## L

**landscape** [3] - 5:17, 13:4, 13:10
**language** [1] - 5:3
**last** [4] - 14:18, 14:19, 14:23, 15:2
**lastly** [1] - 5:7
**Law** [2] - 2:5, 2:9
**law** [23] - 4:14, 5:9, 5:11, 5:21, 5:22, 5:25, 6:22, 7:6, 8:19, 9:9, 9:16, 11:2, 11:6, 11:8, 13:20, 14:11, 14:14, 15:8, 15:22, 15:23, 15:25
**lawyer** [15] - 4:24, 5:24, 5:25, 6:9, 6:11, 6:20, 6:22, 7:15, 8:23, 10:14, 10:23, 11:1, 13:1, 13:6
**lawyer's** [6] - 5:6, 6:6, 6:14, 7:3, 7:5, 13:22
**lawyers** [9] - 10:13, 10:20, 11:11, 12:7, 12:8, 12:12, 13:7, 13:12, 14:19
**leaning** [2] - 11:10
**leave** [3] - 4:1, 4:3, 4:6
**legislated** [1] - 6:16
**legislation** [1] - 6:17
**letter** [2] - 5:1, 5:4
**liable** [1] - 9:8
**licensed** [1] - 12:7
**likely** [1] - 10:6
**likewise** [1] - 5:7
**limited** [1] - 7:2
**line** [1] - 7:11
**litigated** [1] - 12:1
**litigation** [2] - 5:13, 15:15
**LLP** [2] - 2:4, 2:8
**local** [1] - 13:15
**look** [1] - 10:14
**LOS** [4] - 1:15, 1:25, 3:1, 17:2

**loyalty** [3] - 5:6, 9:4, 11:15

**M**

**main** [1] - 9:20
**Marine** [2] - 3:6, 3:13
**MARINE** [1] - 1:8
**mark** [1] - 14:7
**MARK** [1] - 2:4
**Mark** [2] - 3:8, 3:18
**material** [1] - 5:19
**matter** [6] - 5:4, 11:7, 12:24, 15:12, 17:11
**mc** [1] - 2:8
**media** [1] - 15:16
**mentioned** [1] - 9:19
**merits** [1] - 4:8
**met** [1] - 8:5
**might** [3] - 5:1, 5:4, 10:15
**million** [2] - 4:15, 12:2
**millions** [1] - 7:24
**mind** [1] - 9:21
**minimum** [1] - 15:7
**MONDAY** [2] - 1:14, 3:1
**morning** [1] - 3:8
**MOTION** [1] - 1:14
**motion** [6] - 3:14, 3:15, 3:25, 15:4, 15:5, 15:6
**motions** [1] - 12:5
**MR** [18] - 3:8, 3:12, 3:18, 3:22, 4:4, 4:11, 6:5, 7:23, 9:10, 10:22, 11:1, 11:21, 12:22, 14:7, 15:16, 15:25, 16:5, 16:10

**N**

**name** [2] - 15:12, 15:18
**named** [1] - 15:15
**necessarily** [1] - 15:23
**need** [4] - 7:12, 8:2, 8:3, 15:22
**needs** [1] - 7:13
**never** [2] - 10:6, 13:19
**NEW** [1] - 1:8
**New** [3] - 1:9, 3:6, 3:12
**Newport** [2] - 2:5, 2:6
**nice** [1] - 16:9

**night** [2] - 8:24, 11:9
**Ninth** [3] - 8:8, 8:9, 14:9
**NO** [2] - 1:23, 17:19
**none** [1] - 11:13
**North** [1] - 2:10
**Northern** [2] - 7:20, 8:8
**nothing** [2] - 3:22, 5:5
**nuts** [1] - 14:16

**O**

**oath** [1] - 13:22
**obligation** [4] - 8:5, 9:2, 13:22
**obligations** [2] - 7:1, 7:2
**obviously** [1] - 5:12
**OF** [6] - 1:2, 1:13, 2:1, 17:1, 17:2, 17:3
**Official** [2] - 17:5, 17:19
**OFFICIAL** [2] - 1:24, 17:1
**omit** [1] - 15:11
**ON** [1] - 1:14
**one** [15] - 6:23, 8:5, 9:5, 10:8, 11:7, 11:10, 11:16, 12:10, 13:2, 13:7, 13:20, 13:21, 13:25
**ones** [2] - 12:14, 12:15
**oOo** [1] - 3:3
**opinion** [1] - 7:9
**opinions** [3] - 11:23, 13:8
**opposed** [1] - 10:5
**opposite** [1] - 9:2
**otherwise** [1] - 12:11
**overlook** [1] - 13:3
**overlooking** [1] - 14:2
**owe** [1] - 8:4

**P**

**page** [6] - 4:23, 5:2, 9:14, 9:19, 17:11
**pages** [1] - 8:20
**paid** [1] - 14:20
**Paragraph** [2] - 14:20, 14:25
**Paragraphs** [1] - 14:21
**pardon** [1] - 4:5
**part** [1] - 7:1
**partial** [1] - 3:15

**particular** [1] - 4:20
**parties'** [1] - 5:8
**parts** [2] - 12:13, 12:15
**past** [1] - 15:4
**paying** [1] - 10:10
**people** [1] - 12:5
**periods** [1] - 15:3
**PETERSON** [17] - 2:4, 2:4, 3:8, 3:18, 4:4, 4:11, 6:5, 7:23, 9:10, 10:22, 11:1, 11:21, 14:7, 15:16, 15:25, 16:5, 16:10
**Peterson** [3] - 3:9, 3:18, 14:7
**Place** [1] - 2:5
**places** [1] - 4:22
**placing** [1] - 10:7
**PLAINTIFF** [1] - 2:3
**Plaintiff** [1] - 1:6
**plaintiff** [6] - 3:7, 3:9, 3:19, 3:25, 10:25, 14:8
**point** [3] - 11:6, 14:4, 14:16
**policy** [5] - 4:14, 5:13, 5:15, 8:22, 14:15
**policyholder** [5] - 6:13, 6:18, 6:25, 7:2, 8:25
**posit** [1] - 11:25
**position** [3] - 5:5, 10:8, 11:11
**Post** [1] - 5:20
**practical** [2] - 9:21, 11:22, 13:19
**presume** [1] - 3:16
**presumed** [1] - 13:5
**pretend** [1] - 12:9
**primary** [1] - 10:18
**privacy** [1] - 15:12
**problem** [1] - 9:7
**proceedings** [2] - 16:11, 17:10
**Professional** [4] - 9:18, 11:8, 11:12
**proper** [1] - 12:16
**proposition** [1] - 14:1
**ProSight** [2] - 11:2, 14:20
**ProSight's** [4] - 6:8, 7:1, 8:2, 14:18
**protect** [1] - 8:25
**protecting** [2] - 8:17, 15:12
**protection** [1] - 8:11
**protections** [1] -

4:13
**provide** [2] - 7:12, 8:14
**provided** [1] - 8:18
**providing** [1] - 4:13
**public** [3] - 5:15, 8:22, 14:15
**published** [1] - 5:20
**pursuant** [1] - 17:8
**put** [3] - 11:11, 11:13, 14:3

**Q**

**quite** [1] - 9:14
**quote** [5] - 10:2, 10:11, 10:12, 10:16
**quoted** [1] - 9:23

**R**

**rails** [1] - 4:22
**rather** [1] - 8:11
**re** [1] - 9:13
**re-read** [1] - 9:13
**read** [2] - 9:13, 16:2
**real** [1] - 10:4
**realities** [1] - 9:21
**reality** [2] - 10:11, 12:3
**really** [2] - 11:9, 11:10
**Realtime** [1] - 17:5
**recalled** [1] - 13:8
**recognition** [1] - 9:1
**recognized** [1] - 11:15
**reconsider** [2] - 4:19, 14:10
**record** [1] - 13:16
**referred** [1] - 13:10
**referring** [2] - 10:11, 13:13
**reflects** [2] - 5:14, 14:15
**regardless** [1] - 4:25
**regulations** [1] - 17:12
**relatively** [1] - 10:13
**reminded** [3] - 9:15, 9:16, 9:25
**reported** [1] - 17:10
**REPORTER** [2] - 1:24, 17:1
**Reporter** [2] - 17:6, 17:19
**REPORTER'S** [1] - 1:13
**represent** [1] - 10:24
**require** [1] - 14:4

**required** [1] - 10:2
**requiring** [1] - 8:14
**Reservation** [1] - 4:25
**reservation** [1] - 8:18
**reserves** [1] - 7:14
**resolve** [1] - 5:8
**response** [3] - 4:2, 12:19, 12:21
**revisit** [1] - 15:8
**rights** [3] - 4:17, 7:1, 8:18
**Rights** [1] - 4:25
**rise** [2] - 9:4, 10:25
**risks** [1] - 8:17
**ROOM** [1] - 1:24
**RPR** [1] - 17:19
**Rule** [1] - 15:5
**rule** [1] - 8:24
**Rules** [4] - 9:17, 9:18, 11:8, 11:11
**rules** [2] - 8:11, 12:9
**ruling** [3] - 3:23, 4:20, 8:21

**S**

**school** [1] - 9:16
**secondarily** [1] - 9:17
**Section** [2] - 8:13, 17:8
**see** [1] - 16:1
**seem** [1] - 13:3
**sends** [1] - 11:2
**sense** [1] - 12:13
**sent** [1] - 5:20
**sentence** [1] - 8:16
**sentences** [3] - 4:21, 9:24, 10:12
**separate** [3] - 6:19, 11:22, 14:17
**several** [1] - 4:15
**share** [1] - 8:3
**SHEPPARD** [1] - 2:8
**shot** [1] - 14:5
**side** [1] - 14:6
**sides** [1] - 3:17
**silent** [1] - 5:18
**simple** [1] - 14:1
**simply** [2] - 12:22, 13:24
**singular** [1] - 6:7
**sitting** [1] - 5:11
**situation** [3] - 11:18, 11:25, 13:5
**sleep** [1] - 11:9
**slowly** [1] - 9:14
**soon** [1] - 10:15

sorry [1] - 7:1
speculation [1] - 12:3
spent [1] - 7:25
split [2] - 9:3, 11:15
stands [1] - 14:22
STATE [1] - 17:3
statements [1] - 7:19
States [3] - 17:6, 17:8, 17:13
STATES [1] - 1:1
states [2] - 4:18, 10:21
statute [2] - 5:14, 7:10
steers [2] - 7:16
stenographically [1] - 17:10
step [2] - 14:13
stepped [1] - 7:23
still [1] - 13:15
story [1] - 13:23
Street [1] - 2:10
STREET [1] - 1:24
strong [1] - 8:17
sue [3] - 7:22, 13:8, 13:9
suing [2] - 4:17, 6:25
Suite [1] - 2:5
super [1] - 9:11
survives [1] - 11:6

T

talks [1] - 13:16
technical [3] - 6:21, 7:5, 10:19
tentative [10] - 3:16, 4:7, 4:19, 4:20, 8:21, 9:11, 10:4, 12:20, 15:21, 16:3
terms [1] - 9:3
TERRI [4] - 1:23, 17:5, 17:18, 17:19
THE [20] - 2:3, 2:7, 3:5, 3:10, 3:14, 3:20, 3:24, 4:9, 5:23, 7:21, 9:1, 10:20, 10:23, 11:13, 12:16, 14:3, 15:14, 15:20, 16:2, 16:6
therefore [1] - 5:2
three [1] - 4:21
Title [1] - 17:8
TO [1] - 1:14
today [1] - 16:7
tomorrow [1] - 16:8
TRANSCRIPT [1] - 1:13
transcript [2] - 17:9,

17:11
TRAVELERS [1] - 1:5
Travelers [9] - 3:5, 4:13, 6:5, 6:24, 7:23, 8:1, 14:2, 15:11, 15:17
Travelers' [1] - 13:2
trial [6] - 9:23, 9:24, 10:1, 10:3, 10:10, 10:16
triggering [1] - 12:14
true [2] - 10:20, 17:9
trust [1] - 10:10
tune [1] - 12:2
turn [1] - 7:1
turned [1] - 6:17
turns [1] - 7:18
two [2] - 8:4, 10:12

U

U.S [1] - 1:3
under [7] - 4:13, 4:14, 7:6, 8:18, 9:8, 12:25, 13:18
underlying [1] - 8:10
undermines [1] - 8:22
UNITED [1] - 1:1
United [3] - 17:6, 17:8, 17:13
unnecessary [2] - 5:2, 5:8
up [3] - 6:10, 11:5, 14:14
urge [1] - 15:6

V

versus [2] - 3:6, 8:9
view [1] - 14:4
violated [2] - 13:6, 14:23
violation [1] - 8:24
Virginia [26] - 4:23, 5:6, 5:17, 5:21, 5:24, 5:25, 6:7, 6:22, 7:6, 8:23, 9:8, 10:23, 11:2, 11:14, 11:16, 11:19, 11:23, 12:1, 13:1, 13:4, 13:7, 13:14, 13:15, 13:20, 15:14
vis [2] - 5:5
vs [1] - 1:7

W

WAGONER [4] - 2:9, 3:12, 3:22, 12:22

Wagoner [2] - 3:12, 12:22
Washington [2] - 5:20, 8:19
WAYTE [1] - 2:8
WEST [1] - 1:24
WESTERN [1] - 1:2
whatnot [1] - 6:10
whatsoever [1] - 13:23
withdrew [1] - 14:19
words [1] - 10:23
worried [1] - 10:24
worry [3] - 11:2, 11:8, 12:12
written [1] - 5:19
WU [1] - 1:3

Y

year [5] - 11:3, 14:18, 14:19, 14:24, 15:2
YORK [1] - 1:8
York [3] - 1:9, 3:6, 3:12



**UNITED  STATES  DISTRICT  COURT**