1  McCormick, Barstow, Sheppard,
   Wayte & Carruth LLP
2  James P. Wagoner, #58553
     *jim.wagoner@mccormickbarstow.com*
3  Lejf E. Knutson, #234203
     *lejf.knutson@mccormickbarstow.com*
4  Nicholas H. Rasmussen, #285736
     *nrasmussen@mccormickbarstow.com*
5  Graham A Van Leuven, #295599
     *graham.vanleuven@mccormickbarstow.com*
6  7647 North Fresno Street
   Fresno, California 93720
7  Telephone:  (559) 433-1300
   Facsimile:  (559) 433-2300
8
   Attorneys for Defendant New York
9  Marine and General Insurance Company

10              UNITED STATES DISTRICT COURT

11        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12

13  Travelers Commercial Insurance          Case No. 2:21-cv-5832-GW (PDx)
    Company, a Connecticut Corporation,
14                                          **DECLARATION OF STEVEN
                Plaintiff,                  BATTAGLIA**
15
          v.                               Filed Concurrently with New York
16                                         Marine's Further Brief in Support of its
    New York Marine and General            Motion to Dismiss
17  Insurance Company, a New York
    Corporation,                           Hon. George H. Wu
18
                Defendant.
19

20

21

22

23

24

25

26

27

28

I, Steven Battaglia, hereby declare as follows:

1.      I am a Senior Examiner, Claims, with ProSight Specialty Management Company, Inc.  ("ProSight"). ProSight provides all services and facilities necessary for New York Marine and General Insurance Company's ("New York Marine") operations, including marketing, underwriting, claims handling, adjustment, and all other relevant operations of New York Marine.

2.      In that capacity, I was responsible for  adjusting the claim submitted by New York Marine's insured in the litigation underlying the claims asserted in Travelers' First Amended Complaint ("FAC") in this action (the "Underlying Action"). The following facts are based upon my personal knowledge, and if called as a witness I could and would testify competently to these facts under oath.

3.      This Declaration is submitted in support of the further briefing requested by the Court during the hearing on January 27, 2021 in connection with New York Marine's motion to dismiss. I have reviewed a copy of Travelers' FAC, as well as a copy of the transcript of the January 27, 2021 hearing.

4.      The Insured tendered the defense of the Underlying Action to New York Marine on September 5, 2019. After investigating the claim and speaking with relevant counsel and the Insured, on October 1, 2019, New York Marine retained the law firm of Cameron McEvoy, PLLC  to represent the insured in the Underlying Action. The decision to retain Cameron McEvoy was made based on the fact that the firm had already been engaged to assist in the insured's defense in the Underlying Action, having been previously retained by the Insured, and because the firm had to that point successfully cooperated and coordinated with the insured's then-lead defense counsel, Richard Schwartz of the Browne George Ross law firm.

5.      As indicated in my correspondence to Sean Roche and Edward "Sunny" Cameron of Cameron McEvoy, it was my own and New York Marine's expectation that Cameron McEvoy would serve as "lead counsel" for the Insured, and that the various defense counsel would cooperate and coordinate their activities to ensure an

efficient, full, and complete defense for the insured. A true and correct copy of my email of October 1, 2019 to Cameron McEvoy is attached hereto as Exhibit 1.

6.      Thereafter, in an October 7, 2019 email to Pamela Johnson, the Claims Professional handling the insured's claim for defense in the Underlying Action for Travelers, and the insured's representative, John Blakeman, I again stated New York Marine's position and expectation that it had "retained Cameron McEvoy as lead counsel," but that we would of course "have the firm communicate and cooperate with any attorney Ms. Heard may want involved in the defense…". A true and correct copy of my email of October 7, 2019 is attached hereto as Exhibit 2.

7.      In a third email on November 13, 2019 which included both defense counsel and Ms. Johnson, I again summarized New York Marine's position as follows:

> I'm writing to follow-up on this matter.  As quick recap, we retained Cameron McEvoy to defend Ms. Heard, and Ms. Heard retained Kaplan Hecker & Fink (under the Travelers policy). It's not entirely uncommon for any given case to have more than one firm as co-lead defense counsel where more than one carrier is involved.
>
> With regard to discovery and overall defense strategy, both firms need to openly cooperate and work together to achieve the best outcome for our insured.  I understand we have a trial scheduled the first week of February 2020 which may not be adjourned. Therefore, there is much to be done and quickly. I recommend that a joint discovery/defense plan be discussed as soon as  possible with carrier involvement so that we can evaluate any potential exposure. …

A true and correct copy of my November 13, 2019 email is attached hereto as Exhibit 3.

8.      Unfortunately, following the insured's replacement of the BGR firm

DECLARATION OF STEVEN BATTAGLIA

with independent counsel from Kaplan Hecker, it became clear that independent counsel did not intend or desire to cooperate with the Cameron McEvoy firm, and instead deliberately cut New York Marine's appointed counsel out of major strategic and filing decisions, and even omitted them from routine correspondence concerning the Underlying Action.

9.      Thus, in a May 11, 2020 email to me, Sean Roche of Cameron McEvoy emailed me observing that:

> Often I get roped in to help with things at the last minute, often for filing requirements when Rottenborn or Kaplan aren't able to get a filing out in fedex the day before it's due. . . . [¶] . . . I often get asked to review, sign, and file subpoenas for Rottenborn/Kaplan.  I never know about them until the day they are due.  I believe the James subpoena noted in the invoice was one such example.
>
> There is no division of labor.  I'm effectively local counsel to Kaplan/Rottenborn and kept in the dark until help is needed.  Requests for help often involve a local practice question or urgent filing deadlines.  I'm fine with this and don't want to rock the boat since Kaplan/Rottenborn are excellent attorneys but if there's supposed to be a division of labor, there is not one and it's impossible for me to get involved because I am not copied on emails, filings, status, strstegy, [sic] etc.  I assumed you and/or Pamela were fine with this since we've all noted Kaplan's desire to lead, including that Kaplan does not list my firm on filings.

A true and correct copy of Mr. Roche's May 11, 2020 email is attached hereto as Exhibit 4.

10.     Mr. Roche's May 11, 2020 email also observed that Travelers was *aware* of the cooperation problems that Cameron McEvoy was having with independent counsel. To that end Mr. Roche expressly stated that:

DECLARATION OF STEVEN BATTAGLIA

1       Pamela recently mentioned a need for a division of labor by Kaplan and

2       control of the invoices from Kaplan.  She seemed aware that Kaplan was

3       not sharing the workload and I mentioned that my firm was basically

4       uninvolved except sporadically as Kaplan/Rottenborn were running the

5       case.  I understand she talked to Kaplan about it several weeks ago.  She

6       mentioned it was a "difficult" conversation but I never heard more so I

7       assumed the status quo was fine with everyone and I just want to win the

8       case so I'll play whatever role necessary.

9  *See,* Exhibit 4.

10      11.    Notwithstanding Travelers' awareness of the problem and at least brief

11  effort to resolve the matter with independent counsel, it continued to be apparent that

12  Cameron McEvoy was being "cut out" of participation in the defense. As summarized

13  in a July 29, 2020 email from Sean Roche of Cameron McEvoy:

14       On the afternoon of Nov. 18, 2019, we had a phone call with Travelers,

15       [New York Marine], Kaplan, and me and Sunny Cameron.  The purpose

16       was to get all counsel on the same page and make sure Kaplan was going

17       to play nice and delegate work.  Sunny and I also had a phone call with

18       just Kaplan (specifically Julie Fink and Talia Nissimyan) earlier that

19       same morning.  We coordinated this as an effort to open the lines of

20       communication amongst co-counsel and because there were red flags that

21       Kaplan may not want a co-counsel.  The call went well and it seemed

22       there would be an equal division of labor but with Kaplan maintaining

23       the appearance of lead to avoid any appearance to opposing counsel of

24       an internal power struggle.  Kaplan acknowledged we would be co-

25       counsel and they would work with us.  On the call with insurance later

26       that afternoon, Kaplan confirmed the same.  Pamela Johnson participated

27       for Travelers.  Julie and Talia participated for Kaplan.  Sunny and I

28       joined for Cameron/McEvoy.  All seemed good.

1

2      In the weeks and months that followed there was little to no consultation

3      from Kaplan.  I did not view this as a major problem because by Nov. 18,

4      2019, the decision had already been made by Kaplan to pursue the

5      demurrer.  We offered to help along the way but a kitchen can only

6      handle so many cooks, Kaplan seemed to be operating with the approval

7      of Amber, and a lawyer power struggle did not seem to benefit Amber so

8      we continued to offer to help wherever possible though communication

9      from Kaplan was minimal to non-existent.  We did help with relatively

10     minor things like urgent filings, subpoenas, the occasional question from

11     Rottenborn on local practice/procedure requirements, and there were

12     times when Kaplan was overloaded on discovery and they would ask for

13     our help.  Otherwise, we were kept in the dark on case status and

14     strategy.  Kaplan also removed us from case filing distribution lists and

15     we were not included on internal case communications or

16     communications with opposing counsel.  Ironically, it was often

17     opposing counsel who would add us to case communications or forward

18     us pleadings as they knew we were still involved.  I believe we may have

19     helped with filing the demurrer and minor technical questions but we

20     were not included in the core drafting process or strategy.  There were

21     minor procedural missteps along the way that delayed resolution of the

22     demurrer and resulted in a significant amount of discovery occurring in

23     the meantime, but we only found out about the missteps after the fact or

24     after the decision had been made to do things a certain way so there was

25     no way to rewind the issue without alerting opposing counsel to an

26     internal dispute or without highlighting that lead counsel was not aware

27     of local practice/procedure.

28

DECLARATION OF STEVEN BATTAGLIA

Generally speaking I obtained updates either from Rottenborn or my checking out the court's CPAN docketing system or the website the court is maintaining given public interest in the case. I assumed there was some sort of direction from Amber or Travelers to minimize fees and just use us when absolutely necessary though Pamela Johnson kept indicating to me that she was ordering Kaplan to use us more and then I wouldn't hear from Kaplan for weeks. I had no idea what was going on behind the scenes. There were a couple times we were informed by Travelers that Kaplan was set to be replaced and that we were going to take over the lead. Pamela would tell me to sit tight and wait to take over soon but I then wouldn't hear any news for weeks.

The current status is approximately the same, my updates on case status are from the website, the court's online docketing system, or occasional forwards from opposing counsel indicating some filing or activity.

A true and correct copy of Mr. Roche's July 29, 2020 email is attached hereto as Exhibit 5.

12. Notably, although the Insured ultimately elected to replace the Kaplan firm with the firm of Charlson, Bredehoft, Cohen & Brown ("Charlson Bredehoft") as independent counsel in or about June 2020, the transition did not result in any improvement in the cooperation with or involvement of Cameron McEvoy by independent counsel. Indeed, as observed in Mr. Roche's email of July 29, 2020, roughly two months after that transition, "[t]he current status is approximately the same, my updates on case status are from the website, the court's online docketing system, or occasional forwards from opposing counsel indicating some filing or activity." *See,* Exhibit 5. The continued lack of cooperation from independent counsel after the transition to the Charlson Bredehoft firm was further reflected in a September 8, 2020 email from Mr. Roche, in which he again stated that:

1    We're still getting updates on this case through our own docket searches
2    and online searches, not from co-counsel.  This means we're finding out
3    about things after the fact.  I'm not sure why we aren't at least copied by
4    counsel on the courtesy copies of these that go around and added to
5    signature blocks/service lists since that's an easy way to keep us in the
6    loop in real time.  Which is at least marginally better than finding out
7    days after the fact.

8  Mr. Roche's email further stated that "[t]here is a growing consensus in our firm that
9  we should withdraw very soon since we're dangerously in the dark on what is going
10 on." A true and correct copy of the September 8, 2020 email is attached hereto as
11 Exhibit 6.

12        13.    Ultimately, on November 6, 2020, defense counsel advised me that they
13 would withdraw from the defense due to their concerns regarding the lack of
14 communication from independent counsel and an inability to participate actively in
15 the defense.

16        14.    At no time did I ever instruct defense counsel to "do nothing", to rely on
17 the independent counsel selected by the Insured and funded by Travelers, or to do
18 anything other than provide a full and complete defense to the Insured.

19        15.    As well, New York Marine has previously agreed that it would
20 participate in the defense of the insured jointly with Travelers since the withdrawal of
21 the Cameron McEvoy firm. Consistent with this position, New York Marine has to
22 date paid to Travelers the sum of $621,693.43 in reimbursement of defense fees
23 since Cameron McEvoy's withdrawal on November 6, 2020. New York Marine
24 will continue to evaluate and pay fees consistent with its representations to
25 Travelers; however, consistent with their conduct throughout this matter, and
26 despite numerous requests, New York Marine has yet to obtain all relevant, up-to-
27 date invoice and payment information from either independent counsel or Travelers
28 as would be necessary to fulfill that obligation.

DECLARATION OF STEVEN BATTAGLIA

1    I declare under penalty of perjury that the foregoing is true and correct.

2  Executed on February 7, 2022.

3

4

5                                        By:     *Steven Battaglia*

6                                                Steven Battaglia

7  8195934.1

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF STEVEN BATTAGLIA

# Exhibit 1

From: Steven Battaglia
Sent: Tuesday, October 1, 2019 2:19 PM
To: Edward Cameron
Cc: Thomas Jambor ; Jill Pompeii ; Janice Bierman
Subject: New Lawsuit: ███████████████ | Fairfax, VA | Our File # LAX00177770 | Media Program

Hi Sunny.

As discussed, we are retaining your firm to represent the interests of our insured, Amber Heard, in connection with this defamation suit ari

We would like you to be lead counsel in the case, and we have informed Richard Schwartz of our decision to retain your firm. Initially, IÂ'm

Our insured is also insured by Travelers, however I am not aware of which firm they have or will agree to retain.  I informed Travelers of y

Preliminarily, I would like you to reach out to Mr. Schwartz to see how quickly we can make this a smooth transition. If you get any pushbac

Your assistance is greatly appreciated, and I look forward to working with you.

Steven Battaglia
Claims Specialist
412 Mt. Kemble Avenue, Suite 300C
Morristown, NJ 07960
Direct: 973.532.6395
Cell: 908.578.6242
E-mail: sbattaglia@prosightspecialty.com

Exhibit 1

# Exhibit 2

From: Steven Battaglia
Sent: Monday, October 7, 2019 2:17 PM
To: John Blakeman ; 'Richard A. Schwartz'
Cc: 'Johnson,Pamela A'
Subject: J███████████████████ | Our File # LAX00177770

Messrs. Blakeman and Schwartz:

In follow-up to our call this past Friday afternoon, we retained Cameron McEvoy to defend Ms. Heard in connection with this matter. We invited Travelers the join in the defense through the firm Cameron McEvoy, but as of this date it does not appear Travelers has set forth their defense position in writing. Although we retained Cameron McEvoy as lead counsel, I explained that we will have the firm communicate and cooperate with any attorney Ms. Heard may want involved in the defense, which appears to be Roberta Kaplan (but not yet confirmed).  However, I explained that we will only pay for the fees/costs of Cameron McEvoy in the defense of this matter.

Once you receive TravelersÂ' position in writing, please discuss this issue with Ms. Heard and let me know if Ms. Heard will also choose to retain Cameron McEvoy or another firm.  ItÂ's my understanding that Travelers is agreeing to defend under a reservation of rights to the extent that Ms. Heard is entitled to independent counsel under TravelersÂ' policy.

As trial is scheduled to begin on February 3, 2020, time is of the essence.  ItÂ's important for us all to get on the same page as soon as possible.

Steven Battaglia
Claims Specialist
412 Mt. Kemble Avenue, Suite 300C
Morristown, NJ 07960
Direct: 973.532.6395
Cell: 908.578.6242
E-mail: sbattaglia@prosightspecialty.com

Exhibit 2

mhtml:file://\\s-f-fs02\imaging\Coverage\LLanden\ProSight - Under the Black Sky (Amber ...   2/7/2022

# Exhibit 3

From: Steven Battaglia
Sent: Wednesday, November 13, 2019 11:18 AM
To: 'Edward Cameron' ; Julie Fink
Cc: 'Johnson,Pamela A' ; 'Richard A. Schwartz'
Subject: J███████████████ | Our File # LAX00177770

Good morning.

IÂ'm writing to follow-up on this matter.  As quick recap, we retained Cameron McEvoy to defend Ms. Heard, and Ms. Heard retained Kaplan Hec

With regard to discovery and overall defense strategy, both firms need to openly cooperate and work together to achieve the best outcome for

Can you all provide availability either Friday or early next week for a conference call?

Steven Battaglia
Claims Specialist
412 Mt. Kemble Avenue, Suite 300C
Morristown, NJ 07960
Direct: 973.532.6395
Cell: 908.578.6242
E-mail: sbattaglia@prosightspecialty.com

Exhibit 3

# Exhibit 4

**Marisela Taylor**

| | |
|---|---|
| **From:** | Sean Roche <SRoche@cameronmcevoy.com> |
| **Sent:** | Monday, May 11, 2020 6:40 PM |
| **To:** | Steven Battaglia |
| **Subject:** | Re: Invoice Released: Case: J████████████████████ an Individual - LAX00177770, Claim #: LAX00177770 |

*External Email*

Totally understandable and I agree with you.  Often I get roped in to help with things at the last minute, often for filing requirements when Rottenborn or Kaplan aren't able to get a filing out in fedex the day before it's due.

Depp sued The Sun in London.  Also a defamation case.  The Sun referred to Depp as a "wife beater" in an article.  Amber was scheduled to testify but it got postponed due to virus issues.  I'm not sure about the new trial date and I am not in the loop on any recent updates.  Back when our case started, Schwartz and I coordinated a joint defense agreement with The Sun's lawyers.  I've largely been in the dark on that case since Schwartz was replaced by Kaplan though there was major drama in that case a few months back when texts came out that Depp had told friends he wanted to torture Amber and burn her body.

I often get asked to review, sign, and file subpoenas for Rottenborn/Kaplan.  I never know about them until the day they are due.  I believe the James subpoena noted in the invoice was one such example.

There is no division of labor.  I'm effectively local counsel to Kaplan/Rottenborn and kept in the dark until help is needed.  Requests for help often involve a local practice question or urgent filing deadlines.  I'm fine with this and don't want to rock the boat since Kaplan/Rottenborn are excellent attorneys but if there's supposed to be a division of labor, there is not one and it's impossible for me to get involved because I am not copied on emails, filings, status, strstegy, etc.  I assumed you and/or Pamela were fine with this since we've all noted Kaplan's desire to lead, including that Kaplan does not list my firm on filings.  Pamela recently mentioned a need for a division of labor by Kaplan and control of the invoices from Kaplan.  She seemed aware that Kaplan was not sharing the workload and I mentioned that my firm was basically uninvolved except sporadically as Kaplan/Rottenborn were running the case.  I understand she talked to Kaplan about it several weeks ago.  She mentioned it was a "difficult" conversation but I never heard more so I assumed the status quo was fine with everyone and I just want to win the case so I'll play whatever role necessary.

I definitely agree about conferring about filings and overall strategy but I'll get contacted at noon by Rottenborn to file something I was not aware was being filed and told it urgently needs to be filed by 2pm the same day so it's usually a scramble to review it, prepare any local filing requirements, and get it filed in time.

We should talk before discussing with Rottenborn/Kaplan.  Rottenborn is a good guy and seems like he is simply following Kaplan's instructions.  Ironically, we have been local counsel to his firm for Northern Virginia cases so we get along well with his firm and they are very reasonable and well respected.  Meaning, I think Rottenborn plays well in the sandbox and would be fine with a division of labor.  I do not get the sense the same can be said about Kaplan.  She's a litigator, and clearly a good one, but I do not get the sense she wants a co-lead counsel and she will not respond well to some of my blunt assessments in this email.

Can we talk by phone tomorrow?

Sean

Exhibit 4

Sean Patrick Roche, Esq.
Cameron/McEvoy, PLLC - A Litigation Boutique
4100 Monument Corner Drive, Suite 420
Fairfax, Virginia 22030
703.460.9343 (direct)
571.213.5412 (mobile)
703.273.8897 (fax)
sean.patrick.roche (skype)
sroche@cameronmcevoy.com

Find us on the web at: http://www.cameronmcevoy.com

Bio:  http://www.cameronmcevoy.com/attorneys/sean-patrick-roche/

Paralegal: Courtney Moore
703.460.9350
cmoore@cameronmcevoy.com

---

**From:** Steven Battaglia <SBattaglia@prosightspecialty.com>
**Sent:** Monday, May 11, 2020 4:09:48 PM
**To:** Sean Roche <SRoche@cameronmcevoy.com>
**Subject:** FW: ███████████████████████████████████
████████████████████

Hi Sean....in reviewing this invoice it looks like things are happening I'm not aware of.  What UK case is out there and what was the subpoena for?  Did Kaplan's firm ask you to issue the subpoena?  How are things going on division of labor among the various firms?

I want to make sure we discuss things before they happen so we can make decisions on various issues as they come up.

Exhibit 4

# Exhibit 5

**Marisela Taylor**

| | |
|---|---|
| **From:** | Sean Roche <SRoche@cameronmcevoy.com> |
| **Sent:** | Wednesday, July 29, 2020 8:57 AM |
| **To:** | Steven Battaglia |
| **Subject:** | RE: Depp v. Heard: Motion to Compel |

*External Email*

No problem.  This is relatively easy because Kaplan didn't consult with us on much of anything.  When they first got involved and before insurance took up the defense there was some back and forth as they got up to speed.  Schwartz indicated that Kaplan was looking to bring in their own team, including Rottenborn from Roanoke who they were working with on a case down in the Charlottesville area so there was an established relationship.  I think we were perceived as Schwartz's selection and therefore loyal to Schwartz so there was some desire to start fresh.  Kaplan had also issued a statement to the press that Schwartz forwarded to me indicating that they were going to get the case dismissed now that they had taken over so I believe there may have been a perception by Kaplan that they needed to bring in their own team.

Rottenborn indicated he was advocating to keep us on for various reasons.  I understand from Schwartz there was opposition to this idea from Kaplan because they did not know how to justify to Amber so many lawyers on the case, particularly Rottenborn from so far away as "local counsel."  Schwartz then withdrew and we were actually preparing to withdraw when insurance took over the defense and we were informed that we were ProSight's insurance defense selection.  We were asked to stay on and act as co-counsel with Kaplan.

By this point Kaplan had clearly taken over lead of the case from Schwartz, Rottenborn was acting as effectively lead local counsel, and we were occasionally helping with filings and advising Rottenborn on local practice and procedure though on a very limited basis.

On the afternoon of Nov. 18, 2019, we had a phone call with Travelers, Prosight, Kaplan, and me and Sunny Cameron.  The purpose was to get all counsel on the same page and make sure Kaplan was going to play nice and delegate work.  Sunny and I also had a phone call with just Kaplan (specifically Julie Fink and Talia Nissimyan) earlier that same morning.  We coordinated this as an effort to open the lines of communication amongst co-counsel and because there were red flags that Kaplan may not want a co-counsel.  The call went well and it seemed there would be an equal division of labor but with Kaplan maintaining the appearance of lead to avoid any appearance to opposing counsel of an internal power struggle.  Kaplan acknowledged we would be co-counsel and they would work with us.  On the call with insurance later that afternoon, Kaplan confirmed the same.  Pamela Johnson participated for Travelers.  Julie and Talia participated for Kaplan.  Sunny and I joined for Cameron/McEvoy.  All seemed good.

In the weeks and months that followed there was little to no consultation from Kaplan.  I did not view this as a major problem because by Nov. 18, 2019, the decision had already been made by Kaplan to pursue the demurrer.  We offered to help along the way but a kitchen can only handle so many cooks, Kaplan seemed to be operating with the approval of Amber, and a lawyer power struggle did not seem to benefit Amber so we continued to offer to help wherever possible though communication from Kaplan was minimal to non-existent.  We did help with relatively minor things like urgent filings, subpoenas, the occasional question from Rottenborn on local practice/procedure requirements, and there were times when Kaplan was overloaded on discovery and they would ask for our help.  Otherwise, we were kept in the dark on case status and strategy.  Kaplan also removed us from case filing distribution lists and we were not included on internal case communications or communications with opposing counsel.  Ironically, it was often opposing counsel who would add us to case communications or forward us pleadings as they knew we were still involved.  I believe we may

have helped with filing the demurrer and minor technical questions but we were not included in the core drafting process or strategy. There were minor procedural missteps along the way that delayed resolution of the demurrer and resulted in a significant amount of discovery occurring in the meantime, but we only found out about the missteps after the fact or after the decision had been made to do things a certain way so there was no way to rewind the issue without alerting opposing counsel to an internal dispute or without highlighting that lead counsel was not aware of local practice/procedure.

Generally speaking I obtained updates either from Rottenborn or my checking out the court's CPAN docketing system or the website the court is maintaining given public interest in the case. I assumed there was some sort of direction from Amber or Travelers to minimize fees and just use us when absolutely necessary though Pamela Johnson kept indicating to me that she was ordering Kaplan to use us more and then I wouldn't hear from Kaplan for weeks. I had no idea what was going on behind the scenes. There were a couple times we were informed by Travelers that Kaplan was set to be replaced and that we were going to take over the lead. Pamela would tell me to sit tight and wait to take over soon but I then wouldn't hear any news for weeks.

The current status is approximately the same, my updates on case status are from the website, the court's online docketing system, or occasional forwards from opposing counsel indicating some filing or activity.

**Sean Patrick Roche, Esq.**
**Cameron/McEvoy,** PLLC – *A Litigation Boutique*
4100 Monument Corner Drive, Suite 420
Fairfax, Virginia 22030
703.460.9343 (direct)
571.213.5412 (mobile)
703.273.8897 (fax)
sean.patrick.roche (skype)
sroche@cameronmcevoy.com

Find us on the web at:  http://www.cameronmcevoy.com

Bio:  http://www.cameronmcevoy.com/attorneys/sean-patrick-roche/

Paralegal:  Courtney Moore
703.460.9350
cmoore@cameronmcevoy.com

Exhibit 5

2

# Exhibit 6

**Marisela Taylor**

| | |
|---|---|
| **From:** | Sean Roche <SRoche@cameronmcevoy.com> |
| **Sent:** | Tuesday, September 08, 2020 11:30 AM |
| **To:** | Steven Battaglia |
| **Subject:** | FW: 2519.002 |
| **Attachments:** | Def's Oppo to Motion for Continuance - Filed 09.04.20 (4847-0612-9098.1).pdf; Pltf's SDT to Natasha Brooks - Filed 08.20.20 (4814-0082-0938.1).pdf; Plaintiff's Praecipe Motion to Continue - Filed 08.21.20 (4825-9141-3450.1).pdf; Plaintiff's Motion to Continue - Filed 08.21.20 (4815-5096-3914.1).pdf; Plaintiff's Memo ISO Motion to Continue - Filed 08.21.20 (4849-5719-7514.1).pdf; Plaintiff's Praecipe re Briefing Schedule - Filed 08.31.20 (4852-1069-0762.1).pdf; Pltf's Motion for Leave to File Brief - Filed 08.31.20 (4827-4424-3402.1).pdf; Pltf's Demurrer & PiB to Counterclaims - Filed 08.31.20 (4838-1765-7546.1).pdf; Plaintiff's Memo ISO Motion to File Brief - Filed 08.31.20 (4826-9312-5322.1).pdf |

*External Email*


FYI.

We're still getting updates on this case through our own docket searches and online searches, not from co-counsel.  This means we're finding out about things after the fact.  I'm not sure why we aren't at least copied by counsel on the courtesy copies of these that go around and added to signature blocks/service lists since that's an easy way to keep us in the loop in real time.  Which is at least marginally better than finding out days after the fact.

Unless Travelers has been given lead on the case, I would think that you should be included in decisions anyway, particularly whether the trial gets continued.

In any event, see attached.  We should regroup soon.  There is a growing consensus in our firm that we should withdraw very soon since we're dangerously in the dark on what is going on.

I hope all is well and I really hope all turned out okay with your girlfriend.

**Sean Patrick Roche, Esq.**
**Cameron/McEvoy,** PLLC – *A Litigation Boutique*
4100 Monument Corner Drive, Suite 420
Fairfax, Virginia 22030
703.460.9343 (direct)
571.213.5412 (mobile)
703.273.8897 (fax)
sean.patrick.roche (skype)
sroche@cameronmcevoy.com

Find us on the web at:  http://www.cameronmcevoy.com

Bio:  http://www.cameronmcevoy.com/attorneys/sean-patrick-roche/

Paralegal:  Courtney Moore

Exhibit 6                                          1

## **PROOF OF SERVICE**

**Travelers Commercial Insurance Company v. New York Marine and General Insurance Company**

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Fresno, State of California.  My business address is 7647 North Fresno Street, Fresno, CA 93720.

On February 7, 2022, I served true copies of the following document(s) described as **DECLARATION OF STEVEN BATTAGLIA** on the interested parties in this action as follows:

Mark D. Peterson
Kathleen O. Peterson
Amy Howse
Cates Peterson LLP
4100 Newport Place, Suite 230
Newport Beach, CA 92660
Telephone: (949) 724-1180
Email: markpeterson@catespeterson.com
kpeterson@catespeterson.com
ahowse@catespeterson.com

*Attorneys for Plaintiff Travelers Commercial Insurance Company*

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on February 7, 2022, at Fresno, California.

/s/ Heather Ward
_____
Heather Ward

DECLARATION OF STEVEN BATTAGLIA