McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
James P. Wagoner, #58553
  *jim.wagoner@mccormickbarstow.com*
Lejf E. Knutson, #234203
  *lejf.knutson@mccormickbarstow.com*
Nicholas H. Rasmussen, #285736
  *nrasmussen@mccormickbarstow.com*
Graham A Van Leuven, #295599
  *graham.vanleuven@mccormickbarstow.com*
7647 North Fresno Street
Fresno, California 93720
Telephone:  (559) 433-1300
Facsimile:   (559) 433-2300

Attorneys for Defendant New York
Marine and General Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Travelers Commercial Insurance Company, a Connecticut Corporation,<br><br>Plaintiff,<br><br>v.<br><br>New York Marine and General Insurance Company, a Delaware Corporation,<br><br>Defendant.<br>_____<br>New York Marine and General Insurance Company, a Delaware corporation<br><br>Counter-Claimant<br><br>v.<br><br>Travelers Commercial Insurance Company, a Connecticut corporation,<br><br>Counter-Defendant | Case No. 2:21-cv-5832-GW (PDx)<br><br>**NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISQUALIFY MAYNARD COOPER & GALE, LLP**<br><br>Date:        May 11, 2023<br>Time:        8:30 a.m.<br>Judge:       Hon. George H. Wu<br>Courtroom:   9D |

# **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

I.     INTRODUCTION ............................................................................................ 1

II.    BACKGROUND ............................................................................................. 3

    A.    The Associate's Employment By McCormick Barstow, His Work On And Receipt Of NY Marine's Confidential Information Concerning This Matter, And His Employment By Maynard Cooper .......................................................................................................... 3

    B.    Maynard Cooper's Appearance And NY Marine's Efforts To Resolve This Matter Without Bringing the Present Motion .................. 6

III.   ARGUMENT ................................................................................................... 9

    A.    Standard........................................................................................................ 9

    B.    The Associate Now Employed By Maynard Cooper Previously Represented NY Marine *In This Matter*, Received NY Marine's Confidential Information Concerning *This Matter*, And Has A Conflict Requiring His Own And Maynard Cooper's Automatic Disqualification ................................................................................... 11

        1.    The Associate Both Represented NY Marine And Received Its Confidential Information Concerning This Matter Such That A Conflict Exists ........................................................ 11

        2.    The Associate's Conflict Is "Direct", Imputed to Maynard Cooper, And "Automatically" Requires Its Disqualification ............................................................................ 14

    C.    The Associate's Purported Lack Of Recollection Of His Representation Of NY Marine And Receipt Of Its Confidential Information, Is Not Relevant To The Conflict Analysis Nor Does It Excuse The Need To Disqualify Maynard Cooper ........................... 16

    D.    Where the Conflict Is Direct And The Conflicted Attorney Is On Both Sides Of The Same Dispute, No Ethical Screen Suffices – and Maynard Cooper's Own Letter Confirms That *Even If* An Ethical Screen *Could Have* Sufficed, Such A Screen Was Not Timely Implemented Here ................................................................. 18

IV.    CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Page**

## CASES

*City and Cty. of San Francisco v. Cobra Solutions, Inc.,*
(2006) 38 Cal.4th 839 .................................................................... 12, 14

*Dill v. Superior Court,*
(1984) 158 Cal.App.3d 301 ........................................................ 15, 16, 19

*Equal Employment Opportunity Comm'n. v. Peters' Bakery,*
(N.D.Cal. Dec. 22, 2014) 2014 WL 7272943 ................................. 17

*Flatt v. Superior Court,*
(1994) 9 Cal.4th 275 .............................................. 10, 11, 12, 14, 15, 19

*Global Van Lines, Inc. v. Superior Court,*
(1983) 144 Cal.App.3d 483 ........................................................ 12, 16, 17

*H. F. Ahamanson & Co. v. Salomon Brothers, Inc.,*
(1991) 229 Cal.App.3d 1445 .......................................................... 10, 11

*Henriksen v. Great American Savings & Loan,*
(1992) 11 Cal.App.4th 109 ....................................... 9, 11, 12, 14, 15, 16, 18

*In re Complex Asbestos Litig.,*
(1991) 232 Cal.App.3d 572 ................................................................ 19

*In re Cty. of L.A.,*
(9th Cir. 2000) 223 F.3d 990 ............................................................... 9

*In re Tevis,*
(9th Cir. BAP 2006) 347 B.R. 679 ..................................................... 12

*Jessen v. Hartford Cas. Ins. Co.,*
(2003) 111 Cal.App.4th 698 .............................................................. 11

*Kirk v. First Am. Title Ins. Co.,*
(2010) 183 Cal.App.4th 776 ........................... 7, 10, 11, 12, 14, 15, 18, 19

*Klein v. Superior Court,*
(1988) 198 Cal.App.3d 894 .............................................................. 15

*Maria De Jesus Cruz Ramos v. Costco Wholesale Corp., et al.,*
(C.D.Cal. Nov. 9, 2022) 2022 WL 18278604 ................................... 19

*Mattel, Inc. v. MGA Enter'mt, Inc.,*
(9th Cir. 2011) 408 Fed.Appx. 45 ...................................................... 11

*Meza v. H. Muehlstein & Co., Inc.,*
(2000) 176 Cal.App.4th 969 ............................................... 7, 14, 15, 18

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*People ex rel Deukmejian v. Brown,*
(1981) 29 Cal.3d 150...................................................................................12

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys's., Inc.,*
(1999) 20 Cal.4th 1135.............................9, 11, 12, 14, 15, 16, 18

*Rosenfeld Constr. Co. v. Superior Ct.,*
(1991) 235 Cal.App.3d 566........................................................................17

*Shadow Traffic Network v. Superior Court,*
(1994) 24 Cal.App.4th 1067......................................................................17

*Sierra v. Costco Wholesale Corp.,*
(N.D.Cal. 2022) -- F.Supp.3d --, 2022 WL 4454359.....................9, 10, 11, 19

*Terapeutisk, etc., v. Baxter Travenol Lab,*
(7th Cir. 1979) 607 F.2d 186......................................................................12

*Trone v. Smith,*
(9th Cir. 1980) 621 F.2d 994......................................................................12

*United States v. Sun Keung Lee,*
(N.D.Cal. Jan. 6, 2011) 2011 WL 52599 ...............................................17

# I.    <u>INTRODUCTION</u>

Defendant and Counterclaimant New York Marine and General Insurance Company ("NY Marine") brings this motion to disqualify Plaintiff and Counterdefendant Travelers Commercial Insurance Company's ("Travelers") newly appointed counsel of record, Nicholas J. Boos and the law firm Maynard Cooper & Gale, LLP ("Maynard Cooper")[1] due to a direct and irreconcilable ethical conflict.

NY Marine's motion is simple and straightforward: from October 13, 2020 to April 1, 2022, the undersigned law firm, McCormick, Barstow, Sheppard, Wayte & Carruth LLP ("McCormick Barstow"), employed an Associate attorney, (the "Associate") in its Insurance Coverage and Bad Faith Litigation Practice Group.  In that capacity, the Associate: (1) performed actual work for NY Marine on the coverage dispute with Travelers and their mutual insured out of which the present litigation directly arises; (2) received multiple emails specifically addressing confidential and privileged information pertaining to the underlying coverage dispute out of which this litigation directly arises, including facts bearing on NY Marine's positions, as well as discussion of NY Marine's legal analysis and strategy in connection with that dispute*;* (3) was party to numerous conversations with and between the undersigned counsel for NY Marine during which confidential facts, legal analysis and strategy regarding NY Marine's position in the coverage dispute and this litigation were discussed; and (4) attended a February 23, 2022 dinner with the undersigned counsel and NY Marine's Coverage and Litigation Counsel during which confidential facts, legal analysis and strategy concerning this litigation were

---

[1] As of the date of filing, it appears that Maynard Cooper & Gale, LLP has changed form to Maynard Nexen, P.C. – however, as the firm has filed no formal notice to that effect in this action, for purposes of this motion, it will be referred to as "Maynard Cooper". (Request for Judicial Notice ["RJN"] ¶¶ 2-3; Declaration of James P. Wagoner ["Wagoner Decl."] ¶¶ 17-18, Exs. 7-8.)

discussed by all present.[2]   The Associate is now employed by Maynard Cooper in its San Francisco office under the apparent direct supervision of Travelers' current lead counsel of record, Mr. Boos.

Because of the Associate's actual work on this matter for NY Marine, as well as his receipt of NY Marine's confidential information concerning this litigation including, but not limited to NY Marine's knowledge of and view of relevant facts, legal analysis and strategy, the Associate has a direct, irreconcilable and incurable ethical conflict in opposing his former client, NY Marine, which conflict is imputed to Mr. Boos and Maynard Cooper. Under well-established California law, as a "bright-line" rule, the conflict "automatically" requires Maynard Cooper's disqualification in this matter.

Furthermore, the undersigned counsel have themselves represented NY Marine throughout this matter. Consequently, even if the Associate had not actually worked on this matter and received NY Marine's confidential information concerning the litigation during his employment with McCormick Barstow, knowledge of its confidential information would still be imputed to him. As a result, because California law provides that no ethical screen is sufficient to excuse a conflict where the tainted attorney has "switched sides" in the same matter, Maynard Cooper's disqualification would *still* be required even if the Associate had not actually represented NY Marine and received its confidential information concerning this very matter.

Finally, even if a timely ethical screen *could* have sufficed to avoid Maynard Cooper's disqualification here, because its own admissions confirm that an ethical wall was *not* timely implemented as analyzed by California courts, it is also the case that its disqualification would be required here for that additional reason.

---

[2] During this time, McCormick Barstow was also handling approximately 75 other files for NY Marine, some of which files the Associate also assisted in handling.

## II.   **BACKGROUND**

### A.   **The Associate's Employment By McCormick Barstow, His Work On And Receipt Of NY Marine's Confidential Information Concerning This Matter, And His Employment By Maynard Cooper**

Beginning on May 28, 2019 and ending on August 1, 2019, McCormick Barstow employed the Associate as a "Summer Associate" during the summer between his second and third years of law school. (Wagoner Decl. ¶ 3; Declaration of Nicholas H. Rasmussen ("Rasmussen Decl.") ¶ 3.) At the end of his term as a Summer Associate, the Associate received, and subsequently accepted, an offer of an employment with McCormick Barstow in its Insurance Coverage and Bad Faith Litigation Practice Group. (Wagoner Decl., ¶ 3; Rasmussen Decl., ¶ 3.) The Associate graduated from law school in the Spring of 2020 and commenced his employment with McCormick Barstow on October 13, 2020.[3]  (Wagoner Decl., ¶ 3; Rasmussen Decl., ¶ 3.)

On October 13, 2020, McCormick Barstow was retained by NY Marine to serve as coverage counsel in connection with the dispute between NY Marine and Travelers concerning the defense of their mutual insured, Amber Heard, subject to a reservation of rights, in underlying litigation in Virginia.[4] (Wagoner Decl. ¶ 5; Declaration of Ellen Fine ["Fine Decl."] ¶ 5.) From the outset, McCormick Barstow's involvement included advising NY Marine regarding its obligations to Ms. Heard in the underlying

---

[3] In November 2020 the Associate passed the California Bar Exam, and was licensed as an attorney on January 13, 2021. (RJN ¶ 1; Wagoner Decl. ¶ 16, Ex. 6.)

[4] McCormick Barstow and the undersigned have represented NY Marine in numerous matters since at least 2015, and both prior to and since the Associate's employment at McCormick Barstow, the firm, through the undersigned and Messrs. Rasmussen, Knutson, Van Leuven, and others, routinely represented NY Marine in various matters. Since McCormick Barstow's initial receipt of this file from NY Marine, it has been primarily handled by Messrs. Wagoner and Rasmussen, with the subsequent involvement of Messrs. Knutson and Van Leuven. (Wagoner Decl., ¶ 4; Rasmussen Decl. ¶¶ 4-5.)

litigation, and specifically with respect to demands by Travelers and by Ms. Heard's "personal counsel"—whom NY Marine would subsequently learn was retained and paid by Travelers—that NY Marine owed a duty to defend Ms. Heard in the underlying litigation through independent counsel, and that it must participate with Travelers in doing so: the same claims which Travelers now litigates in this action.[5] (Wagoner Decl., ¶ 6; Fine Decl., ¶¶ 5-6.)

In furtherance of McCormick Barstow's representation of NY Marine in connection with the coverage dispute with Travelers, by way of a March 1, 2021 email, Mr. Rasmussen requested that the Associate assist him with a project relating to the coverage dispute with Travelers. (Rasmussen Decl., ¶ 5; Wagoner Decl. ¶ 7.) Mr. Rasmussen's March 1, 2021 email to the Associate assigning the project discussed relevant facts relating to NY Marine's obligations to the insured in the underlying action, how they related to NY Marine's view of its duties and obligations to the insured in connection with the underlying action, and requested that the Associate review various documents to identify other similar issues. (Rasmussen Decl. ¶ 5; Wagoner Decl. ¶ 7.) The Associate subsequently confirmed via a March 2, 2021 email that he had reviewed certain documents in the file, and related an opinion about how the documents he had reviewed might impact NY Marine's evaluation of its obligations.[6] (Rasmussen Decl. ¶ 5; Wagoner Decl. ¶ 7.)

---

[5] Although Travelers would not file this suit until July 2021 (see Dkt. #1), all of its claims arise directly out of disputes between Travelers and the insured, on the one hand, and NY Marine, on the other, concerning NY Marine's obligations to the insured in the underlying action. By way of example, Travelers' discovery requests seek NY Marine's documents and communications concerning the underlying Virginia litigation involving Ms. Heard and NY Marine's defense of her in that action. (Compare, Travelers' Compl., Dkt #1; Travelers' First Amended Complaint, Dkt. #15, with Wagoner Decl., ¶ 6, Ex. 1; Fine Decl., ¶¶ 5-6.)

[6] In addition to this matter, while at McCormick Barstow the Associate also performed work on several other NY Marine files. (Wagoner Decl. ¶ 7 ; Rasmussen Decl. ¶ 5.)

Additionally, on February 23, 2022, the Associate attended a dinner at Boulevard Restaurant in San Francisco with Messrs. Wagoner, Rasmussen, and Van Leuven, as well as Ellen Fine, then NY Marine's "Counsel, Coverage and Litigation". (Wagoner Decl., ¶ 8; Rasmussen Decl., ¶ 6; Declaration of Graham A. Van Leuven ["Van Leuven Decl."] ¶ 3; Fine Decl. ¶ 7.) During the course of the February 23, 2022 dinner, the attendees all discussed various factual issues bearing on NY Marine's legal position, as well as their thoughts concerning actual or potential tactical and legal strategies respecting the litigation.  (Wagoner Decl. ¶ 8; Rasmussen Decl., ¶ 6; Van Leuven Decl. ¶ 3; Fine Decl. ¶ 7.)

In addition to his actual documented work on the file and his participation in the February 23, 2022 dinner, the Associate was also privy, either as a participant or bystander, to numerous conversations by and between Messrs. Wagoner, Rasmussen, Knutson and Van Leuven concerning both the underlying coverage dispute and this litigation during which relevant confidential information was discussed. (Wagoner Decl., ¶ 9; Rasmussen Decl., ¶ 7; Declaration of Lejf E. Knutson ["Knutson Decl."] ¶¶ 3-4; Van Leuven Decl. ¶¶ 4-5.)[7]

On April 1, 2022, the Associate terminated his employment with McCormick Barstow for new employment in the San Francisco office of Maynard Cooper, in its Insurance and Financial Services Litigation Practice Group. (Wagoner Decl. ¶¶ 10, 16-18, Exs. 6-8; RJN ¶¶ 1-3.)[8]

---

[7] In particular, Messrs. Rasmussen and Knutson recall an extended discussion of the matter during a camping trip in 2021 attended by Messrs. Wagoner, Rasmussen, Knutson, and the Associate, as well as another member of McCormick Barstow's Insurance Coverage and Bad Faith Litigation Practice Group. (Rasmussen Decl., ¶ 8; Knutson Decl. ¶ 4.)

[8] According to Maynard Cooper's website, as of April 5, 2023, its San Francisco office had only six (6) attorneys, of which only three (3) attorneys, including the Mr. Boos and the Associate are affiliated with its Insurance and Financial Services Litigation Practice Group. (RJN, ¶¶ 2-3; Wagoner Decl., ¶¶ 17-18, Exs. 7-8.) Mr.

**B.    Maynard Cooper's Appearance And NY Marine's Efforts To Resolve This Matter Without Bringing the Present Motion**

On March 1, 2023, this Court granted Travelers' "Order on Request for Approval of Substitution of Attorney Or Withdrawal of Attorney", which identified Nicholas J. Boos as "retained counsel" for Travelers "instead of" Travelers' former counsel, Mark D. Peterson, Kathleen O. Peterson, and Amy Howse of Cates Peterson LLP. (Dkt. # 104). That same afternoon, Mr. Van Leuven recognized that Maynard Cooper was the same firm at which the Associate is now employed and that he is in the same office as Mr. Boos. (Van Leuven Decl. ¶ 6; Rasmussen Decl. ¶ 9; Wagoner Decl. ¶ 11.).

On March 2, 2023 the undersigned wrote to Mr. Boos observing that the Associate had been employed in McCormick Barstow's Insurance Coverage and Bad Faith Litigation Practice Group immediately prior to his employment with Maynard Cooper and noting that this gave rise to an ethical conflict requiring Maynard Cooper's withdrawal. (Wagoner Decl., ¶ 12, Ex. 2.)  The March 2, 2023 letter specifically stated that the Associate had actually worked for NY Marine on this matter and had actually received NY Marine's confidential information concerning this litigation, both by way of his work on the file, as well as through conversations with the undersigned, and indeed, during the February 23, 2022 dinner with NY Marine's Coverage and Litigation Counsel. (*Id.*) The March 2, 2023 letter observed that as a result, the Associate had an actual conflict which was imputed to Maynard Cooper, and quoted the well-established California law holding that "when 'the tainted attorney was actually involved in the representation of the first client, and switches sides in the same case, no amount of screening will be sufficient, and the

Boos is also identified as the "Managing Partner of Maynard's San Francisco office". (RJN, ¶¶ 2-3; Wagoner Decl., ¶¶ 17-18, Exs. 7-8.) Of the attorneys listed, only the Associate is identified as an "Associate"-level attorney; of the others, four (4) are identified as "Partners", and one (1) as an "Of Counsel". (RJN, ¶ 2; Wagoner Decl., ¶ 17, Ex. 7.)

presumption of imputed knowledge is conclusive' thereby requiring the disqualification of the tainted firm. *Kirk v. First Am. Title Ins. Co.,* 183 Cal.App.4th 776, 814 (2010) (citing *Henriksen v. Great Am. Savings & Loan,* 11 Cal.App.4th 109, 115, 117 (1992) and *Meza v. H. Muehlstein & Co., Inc.,* 176 Cal.App.4th 969, 979 (2000))." (Wagoner Decl. ¶ 12, Ex. 2.) Accordingly, the letter requested that Maynard Cooper "immediately withdraw from Travelers' representation in this matter." (*Id.*)

On March 9, 2023, Mr. Boos, on behalf of Maynard Cooper, responded by letter to the undersigned. (Wagoner Decl. ¶ 13, Ex. 3.) Maynard Cooper's March 9, 2023 letter asserted that the Associate "has not had any involvement in this matter", "is not disqualified from working on this matter", and that "his alleged disqualification is not imputed to other members of [Maynard Cooper]." (*Id.*, at p.1.) The March 9, 2023 letter further asserted that the Associate:

> … did not represent your client, New York General Insurance Company [sic] in the above referenced action while he worked at your firm. He was not assigned to that matter by your firm, he did not make any appearances in that matter, and he has no recollection of performing any work on that matter.

(*Id.*) Maynard Cooper's March 9, 2023 letter further asserted that under Rule 1.10(a) of the California Rules of Professional Conduct, "even if" the Associate "was disqualified, his disqualification is not imputed to [Maynard Cooper]." (*Id.*) Maynard Cooper's March 9, 2023 letter also asserted that the Associate:

> … was timely screened. Although [the Associate] was not disqualified and, as discussed above, has no confidential information, we nevertheless developed a screen in response to your letter asserting a conflict. To that end, [the Associate] has not worked on the above-referenced action nor will he do so; he is "walled off" from any information pertaining to the matter, including being unable to access paper or electronic files; no attorney or employee of our firm will

communicate with him regarding the action; an email memorandum has been circulated warning legal staff to isolate [the Associate] from communications regarding the above-reference action and to prevent access to file materials; and reminder memoranda will be sent to legal staff every 60 days.

(*Id.*, at p. 2.)

In response, on March 23, 2023, the undersigned provided a further written response to Mr. Boos addressing the erroneous factual and legal contentions asserted in Maynard Cooper's March 9, 2023 letter. (Wagoner Decl. ¶ 14, Ex. 4.) In particular, NY Marine's March 23, 2023 letter addressed in detail the facts establishing the Associate's actual work for NY Marine on this very matter, as well as his undoubted receipt of NY Marine's confidential information concerning the coverage matters which underlie this litigation, as well as this specific litigation. (*Id.*) The March 23, 2023 letter again recited the well-established California law providing that where an attorney directly represents a party and then "switches sides" in that same matter, the conflict is direct, is imputed to the new firm, and requires as a "bright line" rule the new firm's disqualification "automatically." (*Id.*) NY Marine's March 23, 2023 letter again requested that Maynard Cooper acknowledge the existence of the conflict and confirm that it would withdraw, or that Mr. Boos "let us know when you are available next week for a telephonic 'meet and confer' conference in connection with NY Marine's motion to disqualify Maynard Cooper." (*Id.*)

Having not received either: (1) confirmation of Maynard Cooper's acknowledgment of the conflict and its agreement to withdraw; or (2) a proposed time for a telephonic "meet and confer" conference concerning these matters, on March 28, 2023, the undersigned unilaterally proposed a "meet and confer" call on Thursday, March 30, 2023 at 1:00 p.m. (Wagoner Decl. ¶ 15, Ex. 5.) On March 30, 2023, Mr. Boos responded that he was unavailable, but would be available on March 31, 2023. (*Id.*.) The parties subsequently met and conferred by telephone on that date, but no

1  agreement resolving the present dispute was reached. (*Id.*) This motion followed.

**III.   ARGUMENT**

**A.   Standard**

California state law governs motion to disqualify in federal diversity actions venued in California. *Sierra v. Costco Wholesale Corp.,* -- F.Supp.3d --, 2022 WL 4454359 *2, fn. 1 (N.D.Cal. 2022) (citing *In re Cty. of L.A.,* 223 F.3d 990, 995 (9th Cir. 2000) ["Because we apply state law in determining matters of disqualification, we must follow the reasoned view of the state supreme court when it has spoken on the issue."]).

"A trial court's authority to disqualify an attorney derives from the power inherent in every court to control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto." *Id.,* (quoting *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys's., Inc.,* 20 Cal.4th 1135, 1145 (1999) ["*SpeeDee Oil*"]). Thus, "[w]hether an attorney should be disqualified is a matter addressed to the sound discretion of the trial court." *Id.,* (quoting *Henriksen v. Great American Savings & Loan,* 11 Cal.App.4th 109, 113 (1992)). "In exercising that discretion, the trial court is required to make a reasoned judgment which complies with the legal principles and policies applicable to the issue at hand." *Id.,* (quoting *Henriksen, supra,* at 113). Disqualification motions involve "a conflict between the clients' right to counsel of their choice and the need to maintain ethical standards of professional responsibility. [Citation.] The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *SpeeDee Oil, supra,* at 1145.

In California, the general governing test regarding whether disqualification is warranted is the "substantial relationship test", "under which, if the former client can

1  demonstrate a substantial relationship between the subjects of the former and the

2  current representations, it is presumed that the attorney had access to confidential

3  information in the first representation which is relevant to the second representation."

4  *Kirk v. First Am. Title Ins. Co.,* 183 Cal.App.4th 776, 798 (2010) (citing *Flatt v.*

5  *Superior Court,* 9 Cal.4th 275, 283 (1994) ["Where the requisite substantial

6  relationship between the subjects of the prior and the current representations can be

7  demonstrated, access to confidential information by the attorney in the course of the

8  first representation (relevant, by definition, to the second representation)

9  is *presumed* and disqualification of the attorney's representation of the second client

10 is mandatory; indeed, the disqualification extends vicariously to the entire firm."]

11 [emphasis in original]).

12       In evaluating whether a conflict requiring disqualification exists, "the former

13 client need show no more than that the matters embraced within the pending suit

14 wherein his former attorney appears on behalf of his adversary are *substantially*

15 *related* to the matters or cause of action wherein the attorney previously represented

16 him, the former client. The Court will assume that during the course of the former

17 representation confidences were disclosed to the attorney bearing on the subject

18 matter of the representation. It will not inquire into their nature and extent." *H. F.*

19 *Ahamanson & Co. v. Salomon Brothers, Inc.,* 229 Cal.App.3d 1445, 1452 fn. 2 (1991)

20 (and citing cases); *Trone, supra,* 621 F.2d at 999 ("The test does not require the former

21 client to show that actual confidences were disclosed. That inquiry would be improper

22 as requiring the very disclosure the rule is intended to protect."); *see also, Sierra,*

23 *supra,* 2022 WL 4454359 *3 ("If the relationship between the attorney and the former

24 client is shown to have been direct—that is, where the lawyer was personally involved

25 in providing legal advice and services to the former client—then it must be presumed

26 that confidential information has passed to the attorney and there cannot be any

27 delving into the specifics of the communications between the attorney and the former

28 client in an effort to show that the attorney did or did not receive confidential

information during the course of that relationship." *Sierra, supra,* 2022 WL 4454359 *3) (quoting *Jessen v. Hartford Cas. Ins. Co.,* 111 Cal.App.4th 698, 709 (2003)). Rather, the declarations of the undersigned counsel and NY Marine's Assistant Vice President and Senior Counsel, submitted herewith, suffice to establish the requisite facts. *See, generally, Sierra, supra,* 2022 WL 4454359 (decided on basis of attorneys' declarations); *H. F. Ahamanson & Co., supra,* 229 Cal.App.3d 1445, and *Id.,* at 1451 (discussing Appellate Court's evaluation of Trial Court's resolution of factual issues arising from competing declarations).

And moreover, "when 'the tainted attorney was actually involved in the representation of the first client, and switches sides in the same case, no amount of screening will be sufficient, and the presumption of imputed knowledge is conclusive' thereby requiring the disqualification of the tainted firm." *Kirk, supra,* 183 Cal.App.4th 776, 814 (2010) (citing *Henriksen, supra,* 11 Cal.App.4th at 115, 117); *Flatt, supra,* 9 Cal.4th at 283 ("where an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law."); *Mattel, Inc. v. MGA Enter'mt, Inc.,* 408 Fed.Appx. 45, 46 (9th Cir. 2011) (quoting *Kirk, supra,* at 776 ["[V]icarious disqualification should be automatic in cases of a tainted attorney possessing actual confidential information from a representation, who switches sides in the same case...."].)

**B.** **The Associate Now Employed By Maynard Cooper Previously Represented NY Marine *In This Matter*, Received NY Marine's Confidential Information Concerning *This Matter*, And Has A Conflict Requiring His Own And Maynard Cooper's Automatic Disqualification**

1. **The Associate Both Represented NY Marine And Received Its Confidential Information Concerning This Matter Such That A Conflict Exists**

As observed by the California Supreme Court in *SpeeDee Oil,* "[i]n considering whether an attorney-client relationship has reached a point where the attorney can be subject to disqualification for a conflict of interest, we begin with the relationship's

early stages … ." *SpeeDee Oil, supra,* 20 Cal.4th at 1147. Thus, a "fiduciary relationship between lawyer and client" will extend even to "preliminary consultations by a prospective client with a view to retention of the lawyer, although actual employment does not result." *Id.,* at 1148; *In re Tevis,* 347 B.R. 679, 692 (9th Cir. BAP 2006) ("Under California law, the mere consultation with a prospective client may create a disqualifying conflict of interest for a lawyer, especially where confidential information was disclosed.") (citing *SpeeDee Oil, supra*). "The primary concern is whether and to what extent the attorney acquired confidential information". *SpeeDee Oil, supra,* 20 Cal.4th at 1148 (citing *Hendriksen, supra,* 11 Cal.App.4th at 113-114). "That question is not necessarily answered by the amount of time involved", and so "[e]ven the briefest conversation between a lawyer and a client can result in the disclosure of confidences." *Id.,* (quoting *Novo Terapeutisk, etc., v. Baxter Travenol Lab,* 607 F.2d 186, 195 (7th Cir. 1979)).

Furthermore, under California law, knowledge of confidential information—and thus the existence of a conflict—is imputed to *all* attorneys in a firm. *SpeeDee Oil, supra,* 20 Cal.4th 1135, 1139 (citing *Flatt, supra,* 9 Cal.4th at 283). This principle flows from the practical "rationale that attorneys practicing together generally share each other's, and their clients', confidential information." *Kirk, supra,* 183 Cal.App.4th at 799 (citing *City and Cty. of San Francisco v. Cobra Solutions, Inc.,* 38 Cal.4th 839, 847-848 (2006)). As such, "it is well settled that actual possession of confidential information need not be proved to disqualify an attorney from representing the adversary of a former client in litigation against the former client." *Global Van Lines, Inc. v. Superior Court,* 144 Cal.App.3d 483, 489 (1983) (citing *People ex rel Deukmejian v. Brown,* 29 Cal.3d 150, 156 (1981); *Trone v. Smith,* 621 F.2d 994, 999 (9th Cir. 1980) ["Confidential information may or may not have been shared with other members of the firm, but the firm as a whole is disqualified whether or not its other members were actually exposed to the information."].)

In the present instance, the existence of a conflict is straightforward: the

Associate was previously employed by McCormick Barstow from October 13, 2020 to April 1, 2022, and practiced in the firm's Insurance Coverage and Bad Faith Litigation Practice Group during that time. (Wagoner Decl., ¶ 3; Rasmussen Decl., ¶ 3.) Prior to and during the Associate's employment at McCormick Barstow, the firm, through Messrs. Wagoner, Rasmussen, Knutson, Van Leuven and others, routinely represented NY Marine. (Wagoner Decl. ¶¶ 3-4; Rasmussen Decl. ¶¶ 3-4.) On October 13, 2020—the same day the Associate began his employment at McCormick Barstow—NY Marine retained McCormick Barstow to represent it in connection with certain coverage disputes between itself, Travelers and Ms. Heard relating to the defense of Ms. Heard in underlying litigation in Virginia, and disputes between those parties about the respective scope of NY Marine's and Travelers' duties.  (Wagoner Decl. ¶¶ 5-6; Rasmussen Decl. ¶ 4; ECF nos. 1, 15.)

The foregoing facts establish the undersigned attorneys' knowledge and possession of NY Marine's confidential information concerning this litigation during the course of the Associate's employment by McCormick Barstow, which knowledge was legally imputed to the Associate. Those facts alone thus suffice to establish an ethical conflict which "automatically" requires that Maynard Cooper be disqualified from representing Travelers in this litigation.

But in fact, during the course of his employment, the Associate represented NY Marine and performed work on multiple NY Marine files—including, most importantly, work *on this file* pertaining to NY Marine's obligations to Ms. Heard in the underlying litigation in Virginia and the disputes between NY Marine, on the one hand, and Travelers and Ms. Heard, on the other, concerning NY Marine's obligations with respect to the defense of the underlying Virginia litigation—again, the same matter and dispute which Travelers litigates here. (Wagoner Decl. ¶¶ 4-5; Rasmussen Decl. ¶¶ 4-8 _; Van Leuven Decl., ¶¶ 3-4; Knutson Decl., ¶ _; ECF nos. 1, 15.)

Additionally, the Associate was also a party to numerous conversations between the attorneys on this file—Messrs. Wagoner, Rasmussen, Van Leuven and

Knutson—during which they discussed matters which were unquestionably confidential to NY Marine, including discussions of relevant facts, discussions of the relative strengths and weaknesses of legal arguments and theories asserted by Travelers or which were or might be asserted by NY Marine, as well as their own personal evaluations of the value and credibility of various evidentiary materials and witnesses. (Wagoner Decl., ¶ 9; Rasmussen Decl., ¶¶ 7-8; Knutson Decl. ¶¶ 3-4; Van Leuven Decl. ¶¶ 4-5.) The Associate was similarly privy to a conversation between the undersigned and NY Marine's Coverage and Litigation counsel during which those same confidential matters were discussed. (Wagoner Decl. ¶ 8; Rasmussen Decl. ¶ 6; Van Leuven Decl., ¶ 3; Fine Decl., ¶ 7.)

Given the foregoing, it cannot be disputed that the Associate both *actually* "represented" NY Marine *in this matter*, and obtained NY Marine's confidential information concerning *this matter*. As a result, a conflict undisputedly exists.

### 2. The Associate's Conflict Is "Direct", Imputed to Maynard Cooper, And "Automatically" Requires Its Disqualification

As observed above, for very practical reasons, California law recognizes that the knowledge of one attorney in a firm must be imputed to *all* attorneys in a firm. *SpeeDee Oil, supra,* 20 Cal.4th 1135, 1139 (citing *Flatt, supra,* 9 Cal.4th at 283); *Kirk, supra,* 183 Cal.App.4th at 799 (citing *Cobra Solutions, Inc., supra,* 38 Cal.4th at 847-848). Thus, where, as here, an attorney with confidential information switches sides in the same litigation, "there is a presumption that each member of the [new] firm has imputed knowledge of the confidential information." *Meza, supra,* 176 Cal.App.4th at 979 (citing *SpeeDee Oil, supra,* 20 Cal.4th at 1146); *Flatt, supra,* 9 Cal.4th at 283-284; *Henriksen, supra,* 11 Cal.App.4th at 1117.

As the California Supreme Court has twice specifically observed, "[t]he most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation." *SpeeDee Oil, supra,* 20 Cal.4th at 1147 (citing *Flatt, supra,* 9 Cal.4th at 284, fn. 3). Indeed, as stated in *Flatt,* "[t]he paradigmatic

instance of such prohibited dual representation—one roundly condemned by courts and commentators alike—occurs where the attorney represents clients whose interests are *directly* adverse *in the same litigation.* So patently improper is the spectacle of this sort of conflict that George Sharswood, a justice of the Supreme Court of Pennsylvania and a 19th century writer on legal ethics, wrote in 1854 that it 'ought, like parricide in the Athenian law, to be passed over in silence in a code of professional ethics.'" *Flatt, supra,* 9 Cal.4th at 284, fn. 3 (emphasis in original, citations omitted).

Accordingly, as the Supreme Court explained, the principal focus in determining whether a conflict of interest requires disqualification is the appearance of a conflict to the clients and to the public: "[s]uch patently improper dual representation suggests to the clients—and to the public at large—that the attorney is completely indifferent to the duty of loyalty and the duty to preserve confidences. However, the attorney's actual intention and motives are immaterial, and the rule of automatic disqualification applies." *SpeeDee Oil, supra,* 20 Cal.4th at 1147.

In consequence, "[a]s a general rule in California, where an attorney is disqualified from representation, the entire law firm is vicariously disqualified as well. This is especially true where the attorney's disqualification is due to his prior representation of the opposing side during the same lawsuit." *Henriksen, supra,* 11 Cal.App.4th at 114-115; *Id.,* ("[W]here an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law."); *Kirk, supra,* 183 Cal.App.4th at 814 ("when 'the tainted attorney was actually involved in the representation of the first client, and switches sides in the same case, no amount of screening will be sufficient, and the presumption of imputed knowledge is conclusive'", thereby requiring the disqualification of the tainted firm.); *Meza, supra,* 176 Cal.App.4th at 979; *Klein v. Superior Court,* 198 Cal.App.3d 894, 909, 912-913 (1988); *Dill v. Superior Court,* 158 Cal.App.3d 301, 305-306 (1984);

*Global Van Lines, Inc., supra,* 144 Cal.App.3d at 490. This is "a bright-line rule". *SpeeDee Oil, supra,* 20 Cal.4th at 1156 (Mosk, J., Concur. Opp.).

Moreover, it is a rule which applies regardless whether the "tainted" attorney is a Partner or other senior attorney, or a mere "Associate". *Dill, supra,* 198 Cal.App.3d at 303, 306; *Henriksen, supra,* 11 Cal.App.4th at 111 ("At issue is whether a law firm may continue to represent a client where during the pendency of litigation it hires an associate who formerly represented the adverse party in the same proceeding. We follow *Dill* … and hold that  the associate's disqualification results in the vicarious disqualification of the entire law firm. This disqualification is compelled even if the law firm takes measures to insulate the new associate from any involvement in the current litigation.")

Accordingly, because here the Associate actually represented NY Marine and obtained its confidential information in this matter, his conflict is direct, is imputed to Maynard Cooper, and requires Maynard Cooper's disqualification.

**C.    The Associate's Purported Lack Of Recollection Of His Representation Of NY Marine And Receipt Of Its Confidential Information, Is Not Relevant To The Conflict Analysis Nor Does It Excuse The Need To Disqualify Maynard Cooper**

In addition to disputing whether the Associate actually "represented" NY Marine in this matter or obtained its confidential information, Maynard Cooper's March 9, 2023 "meet and confer" letter also asserts that the Associate "has no recollection of performing any work on [this] matter". and (2) that he "was timely screened", thus suggesting that this excuses any conflict or avoids the need for its disqualification. (Wagoner Decl. ¶ 13, Ex. 3.) Neither position is correct nor suffices to avoid the "automatic" "bright-line" requirement that Maynard Cooper be disqualified.

In this respect, the California courts which have passed on the question have consistently held that an attorney's specific recollections of a conflicting representation or receipt of confidential information are immaterial where, as here,

the conflict is direct and the attorney is on both sides of the same dispute. *Rosenfeld Constr. Co. v. Superior Ct.,* 235 Cal.App.3d 566, 576 (1991) ("We find no authority that supports the notion that, standing alone, the present recollection of the members of the firm is an adequate criterion."); *Equal Employment Opportunity Comm'n. v. Peters' Bakery,* Case no. 13-cv-04507-BLF, 2014 WL 7272943 *6 (N.D.Cal. Dec. 22, 2014) ("That Mr. Baker neither recalls the consultation nor, presumably, what confidential information he received during the consultation, does not eliminate the risk that his memory may be triggered at any point as the present case develops."); *United States v. Sun Keung Lee,* Case no. CR 10-0186 MHP, 2011 WL 52599 *2 (N.D.Cal. Jan. 6, 2011) ("Lastly, at the hearing and in his papers, Mr. Gruel assures the court that he has no present recollection of being privy to any confidential information regarding the government's investigation into Lee's alleged drug-related criminal activities. [Citations.] Whether Mr. Gruel has any present recollection is not dispositive here."); *see also, Global Van Lines, Inc., supra,* 144 Cal.App.3d at 488 (1983) (finding that notwithstanding an attorney's claims of no present recollection, it is not unreasonable to impute receipt of confidential information where it would have been logical for the attorney to have received such information in the course of his employment); *see also, Shadow Traffic Network v. Superior Court,* 24 Cal.App.4th 1067, 1086 (1994) (expressing recognition that expert's representation could be impacted by his conscious or unconscious consideration of confidential information received from prior conflicting representation).[9]

---

[9] Moreover, since an attorney's failure to recall either their representation of a client or their receipt of confidential client information is an entirely subjective matter, it cannot logically make a material difference in the analysis where, as here, the attorney actually did represent the client and acquired its confidential information. Further, permitting an attorney to avoid a conflict or disqualification based on their purported failure to recall representing or performing work for a client would be inconsistent with both the purpose behind the rule, the "paramount concern" of which the California Supreme Court has stated "must be to preserve public trust in the

As a result, the Associate's apparent inability to recall that he actually represented NY Marine in this matter, or that he received its confidential information concerning this matter, simply does not alter the analysis nor excuse the conflict itself.

**D. Where the Conflict Is Direct And The Conflicted Attorney Is On Both Sides Of The Same Dispute, No Ethical Screen Suffices – and Maynard Cooper's Own Letter Confirms That *Even If* An Ethical Screen *Could Have* Sufficed, Such A Screen Was Not Timely Implemented Here**

In a further attempt to avoid the consequences of the present conflict, Maynard Cooper's March 9, 2023 "meet and confer" letter also asserted that the Associate "was timely screened". That argument is unavailing for two reasons: (1) because on the facts here, under California law no ethical screen is sufficient to avoid disqualification; and (2) because even *if* a timely "ethical screen" could have sufficed to avoid its disqualification here, Maynard Cooper's own admissions establish that in this instance, its ethical screen was *not* "timely" established as a matter of California law.

As previously observed, under California law, where, as here, "the tainted attorney was actually involved in the representation of the first client, and switches sides in the same case, no amount of screening will be sufficient, and the presumption of imputed knowledge is conclusive." *Kirk, supra,* 183 Cal.App.4th 776, 814; *Meza supra,* 176 Cal.App.4th at 978 (stating that the rule of automatic disqualification "is especially true where the attorney's disqualification is due to his prior representation of the opposing side during the same lawsuit."); *Henriksen, supra,* 11 Cal.App.4th at 111 (where conflicted associate moves to firm representing party adverse to the associate's former client, "the associate's disqualification results in the vicarious disqualification of the entire law firm", and "[t]his disqualification is compelled even

_____

scrupulous administration of justice and the integrity of the bar", and the need for courts to "protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship." *SpeeDee Oil, supra,* 20 Cal.4th 1135, 1145, 1147.

if the law firm takes measures to insulate the new associate from any involvement in the current litigation."); *Id.,* at 114-115 (discussing the issue at greater length and citing *Flatt, supra,* 9 Cal.4th at 283); *see also, Dill, supra,* 158 Cal.App.3d at 308 (concluding that where conflicted associate moved to opposing firm, the opposing firm "must be disqualified" without consideration of ethical screen).  As a result, *no* ethical screen is sufficient to excuse Maynard Cooper's disqualification from Travelers' representation in this litigation.

Furthermore, even where an "ethical screen" may be sufficient to avoid a disqualifying conflict, California law provides that "screening should be implemented *before undertaking the challenged representation* or hiring the tainted individual. Screening must take place at the outset to prevent any confidences from being disclosed." *Sierra v. Costco Wholesale Corp., supra,* 2022 WL 4454359 *4 (emphasis added) (quoting *In re Complex Asbestos Litig.,* 232 Cal.App.3d 572, 594 (1991)); *Maria De Jesus Cruz Ramos v. Costco Wholesale Corp., et al.,* Case no. CV 22-3579-MWF (AFMx), 2022 WL 18278604 *2 (C.D.Cal. Nov. 9, 2022) (same); *Kirk, supra,* 183 Cal.App.4th 776, 792 (same).

Here, the "Request for Approval of Substitution of Attorney Or Withdrawal of Attorney" naming Mr. Boos and Maynard Cooper as the attorney and firm substituting in was filed on February 28, 2023, and the Order granting that Request was signed and filed on March 1, 2023. (ECF #103, 104). It follows logically that Maynard Cooper undertook Travelers' representation in this matter on or before February 28, 2023. However, Maynard Cooper's March 9, 2023 letter expressly acknowledges that Maynard Cooper only "developed a screen *in response to [McCormick Barstow's] letter*" of March 2, 2023. (Wagoner Decl., ¶ 13, Ex. 3, p. 2 [emphasis added]). Its own statement thus confirms that *even if* a screen could have been effective, it was not "timely" implemented here, because it was not implemented "before [its] undertaking" of Travelers' representation in this matter. (*Id.*; ECF #103.) As a result, even if well-established California law did not hold that such a screen is immaterial

in the present circumstances, Maynard Cooper still could not find shelter in its admittedly untimely attempt to screen the conflicted Associate.

## IV.   **CONCLUSION**

For all of the foregoing reasons, NY Marine respectfully requests that the Court grant its motion to disqualify Maynard Cooper from representing Travelers in this action based on the manifest ethical conflict created by its employment of an attorney who previously represented NY Marine in this same matter.

Dated:  April 10, 2023                           McCORMICK, BARSTOW, SHEPPARD,
                                                                      WAYTE & CARRUTH LLP


By:  _____*/s/ James P. Wagoner*_____
                          James P. Wagoner
                          Lejf E. Knutson
                          Nicholas H. Rasmussen
                          Graham A. Van Leuven
              Attorneys for Defendant New York Marine and
                    General Insurance Company

## WORD COUNT CERTIFICATE

I certify that the foregoing Plaintiff and Counter-defendant's Motion to Disqualify Maynard Cooper & Gale LLP contains 6,480 words (not including the cover, the Table of Contents, the Table of Authorities, the signature block, and this certificate). In preparing this certificate, I relied on the word count of Microsoft Office Word 2010, the computer program used to prepare the Plaintiff and Counter-Defendant's Motion to Disqualify Maynard Cooper & Gale LLP.

Dated:  April 10, 2023                    McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP


By:      _/s/ James P. Wagoner_
                James P. Wagoner
                Lejf E. Knutson
                Nicholas H. Rasmussen
                Graham A. Van Leuven
       Attorneys for Defendant New York Marine and General Insurance Company

9015173.1

## PROOF OF SERVICE

**Travelers Commercial Insurance Company v. New York Marine and General Insurance Company**

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Fresno, State of California. My business address is 7647 North Fresno Street, Fresno, CA 93720.

On April 10, 2023, I served true copies of the following document(s) described as **NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO DISQUALIFY MAYNARD COOPER & GALE, LLP** on the interested parties in this action as follows:

Nicholas J. Boos
Maynard Cooper & Gale
Two Embarcadero Center, Suite 1450
San Francisco, CA 94111
Telephone: (415) 646-4674
Email: nboos@maynardcooper.com

*Attorneys for Plaintiff Travelers Commercial Insurance Company*

Kirk Pasich
Kayla Robinson
Pasich LLP
10880 Wilshire Blvd., Suite 2000
Los Angeles, CA 90024
Telephone: (424) 313-7860
Email: kpasich@pasichllp.com
krobinson@pasichllp.com

*Attorneys for Non-Party Amber Heard*

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 10, 2023, at Fresno, California.

*/s/ Heather Ward*
Heather Ward