McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
James P. Wagoner, #58553
  *jim.wagoner@mccormickbarstow.com*
Lejf E. Knutson, #234203
  *lejf.knutson@mccormickbarstow.com*
Nicholas H. Rasmussen, #285736
  *nrasmussen@mccormickbarstow.com*
Graham A Van Leuven, #295599
  *graham.vanleuven@mccormickbarstow.com*
7647 North Fresno Street
Fresno, California 93720
Telephone:   (559) 433-1300
Facsimile:    (559) 433-2300

Attorneys for Defendant New York
Marine and General Insurance Company

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Travelers Commercial Insurance Company, a Connecticut Corporation,<br><br>              Plaintiff,<br><br>       v.<br><br>New York Marine and General Insurance Company, a Delaware Corporation,<br><br>              Defendant.<br>———————————————<br>New York Marine and General Insurance Company, a Delaware corporation<br><br>              Counter-Claimant<br><br>       v.<br><br>Travelers Commercial Insurance Company, a Connecticut corporation,<br><br>Counter-Defendant | Case No. 2:21-cv-5832-GW (PDx)<br><br>**DECLARATION OF JAMES P. WAGONER IN SUPPORT OF NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S MOTION TO DISQUALIFY MAYNARD COOPER & GALE, LLP**<br><br>Date:          May 11, 2023<br>Time:          8:30 a.m.<br>Judge:         Hon. George H. Wu<br>Courtroom:   9D |

I, James P. Wagoner, declare as follows:

1.      I am an attorney licensed to practice in the State of California, and am admitted to practice in the United States District Court for the Central District of California. I am a member of the firm of McCormick, Barstow, Sheppard, Wayte & Carruth, LLP, and in that capacity, represent Defendant and Counterclaimant New York Marine and General Insurance Company ("NY Marine") in this action. The following facts are based upon my personal knowledge, and if called as a witness I could and would testify competently to these facts under oath.

2.      This Declaration is submitted in support of NY Marine's motion to disqualify Travelers Commercial Insurance Company's ("Travelers") counsel of record, Maynard Cooper & Gale, LLP ("Maynard Cooper").

3.      Matthew A. Chipman (referred to as "the Associate" in NY Marine's Memorandum of Points & Authorities) was hired by McCormick, Barstow, Sheppard, Wayte & Carruth, LLP ("McCormick Barstow") as a "Summer Associate" and worked at the firm in that capacity between May 28, 2019 and August 1, 2019 during the Summer between his second and third years of law school. At the end of his term as a Summer Associate, he received, and subsequently accepted, an offer of an employment with McCormick Barstow in its Insurance Coverage and Bad Faith Litigation Practice Group. Mr. Chipman graduated from law school in the Spring of 2020 and commenced his employment with McCormick Barstow on October 13, 2020.

4.      McCormick Barstow and the undersigned have represented NY Marine in numerous matters since at least 2015, and prior to Mr. Chipman's employment at McCormick Barstow, the firm, through the undersigned and Messrs. Rasmussen, Knutson, Van Leuven, and others, routinely represented NY Marine in various matters.

5.      On October 13, 2020, McCormick Barstow was retained by NY Marine to serve as coverage counsel in connection with the defense it was providing to NY

Marine's and Travelers' mutual insured, Amber Heard, subject to a reservation of rights, in underlying litigation in Virginia. Since McCormick Barstow's initial receipt of this file from NY Marine, it has been handled by the undersigned and Mr. Rasmussen, with the subsequent involvement of Messrs. Knutson and Van Leuven.

6.    From the outset, McCormick Barstow's involvement in this matter included advising NY Marine regarding its obligations to Ms. Heard in the underlying litigation, and specifically with respect to demands by Travelers and by Ms. Heard's "personal counsel"—whom NY Marine would subsequently learn was retained and paid by Travelers—that NY Marine owed a duty to defend Ms. Heard through independent counsel, and that it must participate with Travelers in doing so the same claims which Travelers now litigates in this action. Although Travelers would not file this action until July of 2021, all of its claims arise directly out of the disputes between Travelers and the insured, on the one hand, and NY Marine, on the other, concerning NY Marine's obligations to the insured in underlying litigation in Virginia, in connection with which NY Marine retained the undersigned and McCormick Barstow to advise it. By way of example, Travelers' discovery requests, true and correct excerpts of which are attached hereto as Exhibit 1, seek NY Marine's documents and communications concerning the underlying Virginia litigation involving Ms. Heard and NY Marine's defense of her in that action.

7.    In March 2021, in furtherance of the firm's representation of NY Marine in this matter, my Partner, Mr. Rasmussen, assigned a project to Mr. Chipman. Mr. Rasmussen's emails to Mr. Chipman concerning the assignment explained certain facts and legal theories, as well as the basis for his request and the nature of what information he expected Mr. Chipman to provide. Mr. Chipman subsequently responded to confirm that he had reviewed certain documents, and expressed an opinion regarding the manner in which the documents he had reviewed might impact NY Marine's evaluation of its obligations. Copies of Mr. Rasmussen's and Mr. Chipman's emails are not being filed with this motion since they contain confidential

1  information subject to the attorney-client privilege and work-product doctrine. Mr.
2  Chipman also performed work on several other matters for NY Marine.

3      8.    In addition to work he performed on this matter, on February 23, 2022,
4  Mr. Chipman attended a dinner at Boulevard Restaurant in San Francisco with myself,
5  Messrs. Rasmussen and Van Leuven, and Ellen Fine, then NY Marine's Counsel,
6  Coverage and Litigation. During the course of the February 23, 2022 dinner, we
7  discussed various factual issues bearing on NY Marine's legal position, as well as our
8  thoughts concerning the potential strengths and weaknesses of various arguments
9  advanced by Travelers and NY Marine. The conversation also involved an extensive
10  discussion of NY Marine's actual or potential tactical and legal strategies respecting
11  the litigation.

12      9.    Mr. Chipman was also privy, either as a participant or bystander, to
13  numerous conversations by and between myself and Messrs. Rasmussen, Knutson,
14  and Van Leuven concerning both the underlying coverage dispute and this litigation,
15  during which discussions confidential information was discussed, including the
16  relevance of certain facts, the potential strengths and weaknesses of various
17  arguments advanced by the parties, as well as discussions of NY Marine's legal
18  theories and strategies or potential strategies.

19      10.    On April 1, 2022, Mr. Chipman terminated his employment with
20  McCormick Barstow for new employment in the San Francisco office of Maynard
21  Cooper in its Insurance and Financial Services Litigation Practice Group.

22      11.    On March 1, 2023, I received an ECF service copy of the Court's "Order
23  on Request for Approval of Substitution of Attorney Or Withdrawal of Attorney"
24  granting Mr. Boos and the Maynard Cooper firm's substitution as counsel for
25  Travelers. Shortly after receiving that notice, Mr. Rasmussen notified me of the fact
26  that Maynard Cooper was the firm to which Mr. Chipman had gone after departing
27  McCormick Barstow in April 2022, and that he was and remains employed in
28  Maynard Cooper's San Francisco office, in their Insurance and Financial Services

Litigation Practice Group, apparently under the direct supervision of Mr. Boos.

12.     On March 2, 2023, I wrote to Mr. Boos observing that Mr. Chipman had been employed in McCormick Barstow's Insurance Coverage and Bad Faith Litigation Practice Group immediately prior to his employment with Maynard Cooper and noting that such prior employment gave rise to an ethical conflict of interest requiring Maynard Cooper's withdrawal. My letter specifically stated that Mr. Chipman had actually worked for NY Marine on this matter, and had actually received NY Marine's confidential information concerning this litigation by way of his work on the file, in conversations with myself, and Messrs. Rasmussen, and Van Leuven, and indeed, during the February 23, 2022 dinner with NY Marine's Coverage and Litigation Counsel. The letter observed that as a result, Mr. Chipman had an actual conflict which was imputed to Maynard Cooper, and quoted the well-established California law holding that "when 'the tainted attorney was actually involved in the representation of the first client, and switches sides in the same case, no amount of screening will be sufficient, and the presumption of imputed knowledge is conclusive' thereby requiring the disqualification of the tainted firm." *Kirk v. First Am. Title Ins. Co.,* 183 Cal.App.4th 776, 814 (2010) (citing *Henriksen v. Great Am. Savings & Loan,* 11 Cal.App.4th 109, 115, 117 (1992) and *Meza v. H. Muehlstein & Co., Inc.,* 176 Cal.App.4th 969, 979 (2000))." Accordingly, my letter conveyed NY Marine's request that Maynard Cooper "immediately withdraw from Travelers' representation in this matter." A true and correct copy of my March 2, 2023 Letter is attached hereto as Exhibit 2.

13.     On March 9, 2023, Mr. Boos responded to my letter of March 2, 2023. That response asserted that Mr. Chipman "has not had any involvement in this matter", "is not disqualified from working on this matter", and that "his alleged disqualification is not imputed to other members of [Maynard Cooper]." It further asserted that Mr. Chipman:

     … did not represent your client, New York General Insurance Company

[sic] in the above referenced action while he worked at your firm. He was not assigned to that matter by your firm, he did not make any appearances in that matter, and he has no recollection of performing any work on that matter.

Mr. Boos's March 9, 2023 letter further asserted that under Rule 1.10(a) of the California Rules of Professional Conduct, "even if" Mr. Chipman "was disqualified, his disqualification is not imputed to [Maynard Cooper]." (*Id.*) Maynard Cooper's March 9, 2023 letter also asserted that Mr. Chipman:

… was timely screened. Although Mr. Chipman was not disqualified and, as discussed above, has no confidential information, we nevertheless developed a screen in response to your letter asserting a conflict. To that end, Mr. Chipman has not worked on the above-referenced action nor will he do so; he is "walled off" from any information pertaining to the matter, including being unable to access paper or electronic files; no attorney or employee of our firm will communicate with him regarding the action; an email memorandum has been circulated warning legal staff to isolate him from communications regarding the above-reference action and to prevent access to file materials; and reminder memoranda will be sent to legal staff every 60 days.

A true and correct copy of Mr. Boos's March 9, 2023 letter is attached hereto as Exhibit 3.

14.     On March 23, 2023, I wrote a further letter to Mr. Boos in order to address the erroneous factual and legal contentions asserted in his March 9, 2023 letter. My March 23, 2023 response addressed in detail the facts establishing Mr. Chipman's actual work for NY Marine on this very matter, his undoubted receipt of NY Marine's confidential information concerning the coverage matters which underlie this litigation as well as this specific litigation. It again recited the well-

established California law providing that where an attorney directly represents a party and then "switches sides" in that same matter, the conflict is direct, is imputed to the new firm, and requires the new firm's disqualification "automatically" and as a "bright line" rule. It also again requested that Maynard Cooper acknowledge the existence of the conflict and confirm that it would withdraw, or that Mr. Boos "let us know when you are available next week for a telephonic 'meet and confer' conference in connection with NY Marine's motion to disqualify Maynard Cooper." A true and correct copy of my March 23, 2023 letter is attached hereto as Exhibit 4.

15.    Having not received either: (1) confirmation of Maynard Cooper's acknowledgment of the conflict and agreement to withdraw; or (2) a proposed time for a telephonic "meet and confer" conference concerning these matters, on March 28, 2023, the undersigned unilaterally proposed a "meet and confer" call on Thursday, March 30, 2023 at 1:00 p.m. On March 30, 2023, Mr. Boos responded that he was unavailable at that time, but would be available on March 31, 2023, and the parties subsequently met and conferred telephonically on March 31, 2023, however no agreement resolving the present dispute was reached. A true and correct copy of the March 28, 2023 and March 30, 2023 emails between Mr. Boos and myself are attached hereto as Exhibit 5.

16.    On April 5, 2023, I caused to be obtained from the website of the State Bar of California, a copy of the Attorney Profile for Matthew A. Chipman maintained by the State Bar of California, identifying his date of licensure in California, a true and correct copy of which is attached hereto as Exhibit 6.

17.    On April 5, 2023, I caused to be obtained from the website of Maynard Cooper & Gale, LLP, webpages identifying the attorneys in its San Francisco Office as well as their status as Partners, Of Counsel, or Associates if the firm, a true and correct copy of which is attached hereto as Exhibit 7.

18.    On April 5, 2023, I caused to be obtained from the website of Maynard Cooper & Gale, LLP, webpages identifying the specialty of each of the attorneys

1   listed as members of Maynard Cooper's San Francisco office, as well as their

2   respective status as Partners, Of Counsel, or Associates of the firm, true and correct

3   copies of which are attached hereto as Exhibit 8.

4        I declare under penalty of perjury that the foregoing is true and correct.

5   Executed in Fresno, California, on April 10, 2023.

6

7                                    By: _____ */s/ James P. Wagoner*_____

8                                               James P. Wagoner

9   9021513.1

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Declaration of James P. Wagoner ISO NY Marine's Motion to Disqualify Maynard Cooper & Gale, LLP

# EXHIBIT 1

MARK D. PETERSON (State Bar #126174)
KATHLEEN O. PETERSON (State Bar #124791)
AMY HOWSE (State Bar # 252922)
CATES PETERSON LLP
4100 Newport Place, Suite 230
Newport Beach, CA 92660
Telephone: (949) 724-1180
markpeterson@catespeterson.com
kpeterson@catespeterson.com
ahowse@catespeterson.com

Attorneys for Plaintiff
TRAVELERS COMMERCIAL
INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVELERS COMMERCIAL INSURANCE COMPANY, a Connecticut corporation, <br><br> Plaintiff, <br><br> v. <br><br> NEW YORK MARINE AND GENERAL INSURANCE COMPANY, a New York corporation, <br><br> Defendants. | ) Case No.: 2:21-cv-5832-GW (PDx) <br> ) Hon. George H. Wu <br> ) Hon. M.J. Patricia Donahue <br> ) <br> ) **PLAINTIFF TRAVELERS** <br> ) **COMMERCIAL INSURANCE** <br> ) **COMPANY'S FIRST SET OF** <br> ) **INTERROGATORIES TO** <br> ) **DEFENDANT NEW YORK** <br> ) **MARINE AND GENERAL** <br> ) **INSURANCE COMPANY** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

PROPOUNDING PARTY:     TRAVELERS COMMERCIAL
                       INSURANCE COMPANY

RESPONDING PARTY:      NEW YORK MARINE AND GENERAL
                       INSURANCE COMPANY

SET NO.:               ONE

---

PLAINTIFF'S FIRST SET OF INTERROGATORIES

### INTRODUCTION AND INSTRUCTIONS

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 33, plaintiff Travelers Commercial Insurance Company ("TRAVELERS") hereby requests that defendant New York Marine And General Insurance Company ("NEW YORK MARINE") respond to the interrogatories set forth below.  These responses should be stated separately, fully, in writing, within 30 days of service.

### DEFINITIONS

Words in capital are defined as follows:

1. The term "CAMERON MCEVOY" means the law firm Cameron McEvoy PLLC.

2. The term "COMMUNICATION" or "COMMUNICATED" means any exchange of information, statement, or discussion between or among two or more PERSONS, including but not limited to, face-to-face conversation, telephone conversations, video conversations, correspondence, memoranda, emails, telegrams, telexes, facsimiles, meetings, discussions, releases, statements, publications, or any recordings or reproductions.

3. The term "INDEPENDENT COUNSEL" means counsel retained by the insured and funded by TRAVELERS, including Charlson Bredehoft Cohen Brown & Nadelhaft P.C. and Kaplan Hecker & Fink.

4. The term "INSURED" means and refers to the defendant in the UNDERLYING ACTION, Amber Laura Heard, to whom both TRAVELERS and NEW YORK MARINE issued insurance policies.

5. The "PROSIGHT POLICY" means the insurance policy issued by YOU to "Under the Black Sky, Inc." and "Amber Heard, an individual," policy no. GL201800012500, effective for the one year term beginning July 18, 2018.

6. The term "UNDERLYING ACTION" means and refers to the action entitled *John C. Depp, II v. Amber Laura Heard,* which was filed on January 4, 2017, in Fairfax County, Virginia Circuit Court and bears case number CL-2019-

1

0002911.

7. The term "TRAVELERS" mean and refer to Travelers Commercial Insurance Company and includes anyone acting on Travelers Commercial Insurance Company's behalf, such as all agents, representatives, attorneys, and/or other persons acting or purporting to act on behalf of Travelers Commercial Insurance Company for any purpose.

8. "YOU," "PROSIGHT," and "NEW YORK MARINE" each means and refers to New York Marine and General Insurance Company and includes anyone acting on New York Marine and General Insurance Company's behalf, such as all agents, representatives, attorneys and/or other person acting or purporting to act on behalf of New York Marine and General Insurance Company for any purpose. "YOU," "PROSIGHT," and "NEW YORK MARINE" each also means and refers to ProSight Specialty Management Company, Inc. and includes anyone acting on ProSight Specialty Management Company, Inc.'s behalf, such as all agents, representatives, attorneys and/or other person acting or purporting to act on behalf of ProSight Specialty Management Company, Inc. for any purpose.

## INTERROGATORIES

**INTERROGATORY NO. 1:**

State the amount you have paid CAMERON MCEVOY for its work defending the INSURED in the Underlying Action.

**INTERROGATORY NO. 2:**

Describe in detail (including invoice date and service provider) each amount you have reimbursed TRAVELERS in connection with its defense of the INSURED in the UNDERLYING ACTION.

**INTERROGATORY NO. 3:**

If you contend that any amount that TRAVELERS paid toward the INSURED'S defense in the UNDERLYING ACTION was unreasonable, describe that amount with specificity (including the invoice date, serviced provider, and a

2

1  description of the line item).

2  **INTERROGATORY NO. 4:**

3      If it is YOUR contention that CAMERON MCEVOY had an attorney-client

4  relationship with the INSURED, but not with PROSIGHT, regarding the

5  UNDERLYING ACTION, explain the legal basis of CAMERON MCEVOY

6  sharing privileged information regarding the defense of the UNDERLYING

7  ACTION with PROSIGHT.

8  **INTERROGATORY NO. 5:**

9      Describe all actions YOU took to obtain INDEPENDENT COUNSEL's

10  cooperation with CAMERON MCEVOY in the defense of the INSURED in the

11  UNDERLYING ACTION.

12  **INTERROGATORY NO. 6:**

13      Describe all actions CAMERON MCEVOY took to obtain INDEPENDENT

14  COUNSEL's cooperation with CAMERON MCEVOY in the defense of the

15  INSURED in the UNDERLYING ACTION.

16  **INTERROGATORY NO. 7:**

17      Describe in detail all COMMUNICATIONS in which YOU warned the

18  INSURED that if cooperation with CAMERON MCEVOY in the defense of the

19  INSURED in the UNDERLYING ACTION did not improve, the INSURED would

20  lose rights regarding the UNDERLYING ACTION.

21  **INTERROGATORY NO. 8:**

22      Describe in detail all acts (including failures to act) by anyone which YOU

23  contend violated a duty to YOU in connection with the defense of the

24  UNDERLYING ACTION.

25  **INTERROGATORY NO. 9:**

26      Describe in detail all substantial prejudice YOU contend that YOU have

27  suffered as a result of any violation of a duty to YOU in connection with the

28  defense of the UNDERLYING ACTION.

**INTERROGATORY NO. 10:**

State all facts which you contend support the contention at paragraph 18 of YOUR counterclaim that in defending the INSURED in the UNDERLYING ACTION, TRAVELERS incurred "far in excess of the amounts which Travelers was required to pay in light of the provisions of Civil Code § 2860(c) upon which it could have relied."

**INTERROGATORY NO. 11:**

State all facts which you contend support the contention at paragraph 22 of YOUR counterclaim that in defending the INSURED in the UNDERLYING ACTION, "Travelers has inhibited and obstructed New York Marine's ongoing participation in the defense of the insured."

**INTERROGATORY NO. 12:**

In light of the allegation in paragraph 30 of your counterclaim that "[u]nder Virginia law, insurer-appointed defense counsel only has the insured for a client," state the legal basis upon which the CAMERON MCEVOY firm shared information protected by the INSURED's attorney-client privilege with PROSIGHT without violating the firm's duty of loyalty to the INSURED.

**INTERROGATORY NO. 13:**

State all facts which you contend support the contention at paragraph 53 of YOUR counterclaim that "Because of the insured's and Travelers' 'refusal' of the defense offered by New York Marine and Travelers' unclean hands, Travelers is not entitled to any recovery for amounts incurred by it in the defense of the Underlying Action."

**INTERROGATORY NO. 14:**

State all facts which you contend support the contention at paragraph 54 of YOUR counterclaim that "New York Marine is entitled to recover the sum of $621,693.43 previously paid to Travelers on or about January 18, 2022 under reservation of rights, in reimbursement of 50% of the defense fees incurred by

1   independent counsel and paid by Travelers for the period from Cameron McEvoy's
2   withdrawal on November 6, 2020 through February 28, 2021, under reservation of
3   New York Marine's rights, as well as interest on that amount from January 18,
4   2022."

5   **INTERROGATORY NO. 15:**

6      State the amount that YOU have reimbursed TRAVELERS for the
7   INSURED's defense in the UNDERLYING ACTION for the period from
8   March 1, 2021, to the present.

9   **INTERROGATORY NO. 16:**

10      State in detail the reasons why YOU have not reimbursed TRAVELERS any
11   portion of the money it incurred for the INSURED's defense in the
12   UNDERLYING ACTION for the period from March 1, 2021, to the present.

13   **INTERROGATORY NO. 17:**

14      State in detail YOUR position (including reasons) as to whether the law
15   stated in *San Diego Navy Federal Credit Union v. Cumis Insurance Society*, 162
16   Cal. App. 3d 358 (1984), governs YOUR defense obligations to the INSURED
17   regarding the UNDERLYING ACTION.

18   **INTERROGATORY NO. 18:**

19      State in detail YOUR position (including reasons) as to whether the law
20   stated in California Civil Code section 2860 governs YOUR defense relationship to
21   the INSURED regarding the UNDERLYING ACTION.

22   **INTERROGATORY NO. 19:**

23      Describe in detail all duties to YOU regarding the UNDERLYING ACTION
24   which you contend that TRAVELERS breached.

25   **INTERROGATORY NO. 20:**

26      For each of the alleged breaches of duty by TRAVELERS you described in
27   your response to the prior interrogatory, describe with specificity the legal source
28   of that duty.

**INTERROGATORY NO. 21:**

For each of the alleged breaches of duty by TRAVELERS you described in your response to interrogatory no. 19 and 20, describe with specificity the substantial prejudice to YOU, if any, which resulted.

**INTERROGATORY NO. 22:**

State all facts which you contend supports the portion of the prayer to YOUR answer to TRAVELERS' first amended complaint (item 2(a)) that "NEW YORK MARINE has no duty to defend the mutual insured."

**INTERROGATORY NO. 23:**

State all facts which you contend supports the portion of the prayer to YOUR answer to TRAVELERS' first amended complaint (item 2(b)) that "NEW YORK MARINE has no obligation to provide the insured with a defense with independent defense counsel of the insured's choosing."

**INTERROGATORY NO. 24:**

State all facts which you contend support each of the affirmative defenses YOU assert to TRAVELERS' first amended complaint.

**INTERROGATORY NO. 25:**

For each response to the Requests for Admission served concurrently that are not unqualified admissions, state all facts in support of YOUR denial or qualified admission.


Dated: October 10, 2022


                                /s/ Mark D. Peterson
                              MARK D. PETERSON
                              Of CATES PETERSON LLP
                              Attorneys for Plaintiff
                              TRAVELERS COMMERCIAL
                              INSURANCE COMPANY

PLAINTIFF'S FIRST SET OF INTERROGATORIES

## PROOF OF SERVICE

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of Orange, State of California, and not a party to this action.   My business address is 4100 Newport Place, Suite 230, Newport Beach, CA 92660.  On October 10, 2022, I served the named below on the parties in this action as follows:

**PLAINTIFF TRAVELERS COMMERCIAL INSURANCE COMPANY'S FIRST SET OF INTERROGATORIES TO DEFENDANT NEW YORK MARINE AND GENERAL INSURANCE COMPANY**

[X]    **(E-SERVICE)**  by transmitting via e-mail the document(s) listed above to the e-mail addresses set forth below.

James P. Wagoner
Nicholas H. Rasmussen
Alexander R. Morrow
McCormick, Barstow, Sheppard, Wayte & Carruth LLP
7647 North Fresno Street
Fresno, California 93720

Email: jim.wagoner@mccormickbarstow.com
         nrasmussen@mccormickbarstow.com
         alexander.morrow@mccormickbarstow.com

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on October 10, 2022, at Newport Beach, California.

Melinda Yang

PROOF OF SERVICE

MARK D. PETERSON (State Bar #126174)
KATHLEEN O. PETERSON (State Bar #124791)
AMY HOWSE (State Bar # 252922)
CATES PETERSON LLP
4100 Newport Place, Suite 230
Newport Beach, CA 92660
Telephone: (949) 724-1180
markpeterson@catespeterson.com
kpeterson@catespeterson.com
ahowse@catespeterson.com

Attorneys for Plaintiff
TRAVELERS COMMERCIAL
INSURANCE COMPANY

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| TRAVELERS COMMERCIAL INSURANCE COMPANY, a Connecticut corporation,<br><br>Plaintiff,<br><br>v.<br><br>NEW YORK MARINE AND GENERAL INSURANCE COMPANY, a New York corporation,<br><br>Defendants. | Case No.: 2:21-cv-5832-GW (PDx)<br>Hon. George H. Wu<br>Hon. M.J. Patricia Donahue<br><br>**PLAINTIFF TRAVELERS COMMERCIAL INSURANCE COMPANY'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT NEW YORK MARINE AND GENERAL INSURANCE COMPANY** |

PROPOUNDING PARTY:      TRAVELERS COMMERCIAL
                        INSURANCE COMPANY

RESPONDING PARTY:       NEW YORK MARINE AND GENERAL
                        INSURANCE COMPANY

SET NO.:                ONE

---

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS

**INTRODUCTION AND INSTRUCTIONS**

PLEASE TAKE NOTICE that, pursuant to Federal Rule of Civil Procedure 36, plaintiff Travelers Commercial Insurance Company ("TRAVELERS") hereby requests that defendant New York Marine And General Insurance Company ("NEW YORK MARINE") admit within thirty days after service of these Requests for Admission, Set One, that each matter listed below is true.

If you fail to comply with the provisions of Federal Rule of Civil Procedure 36, with respect to these Requests for Admission, Set One, each of the matters on which an admission is requested will be automatically deemed admitted pursuant to Rule 36(a)(3).  Denial of any matter later proven may form the basis of a motion to assert costs under Federal Rule of Civil Procedure 37(c)(2).

**DEFINITIONS**

Words in capital are defined as follows:

1. The term "CAMERON MCEVOY" means the law firm Cameron McEvoy PLLC.

2. The term "INDEPENDENT COUNSEL" means counsel retained by the insured and funded by TRAVELERS, including Charlson Bredehoft Cohen Brown & Nadelhaft P.C. and Kaplan Hecker & Fink.

3. The term "INSURED" means and refers to the defendant in the UNDERLYING ACTION, Amber Laura Heard, to whom both TRAVELERS and NEW YORK MARINE issued insurance policies.

4. The "PROSIGHT POLICY" means the insurance policy issued by YOU to "Under the Black Sky, Inc." and "Amber Heard, an individual," policy no. GL201800012500, effective for the one year term beginning July 18, 2018.

5. The term "UNDERLYING ACTION" means and refers to the action entitled *John C. Depp, II v. Amber Laura Heard,* which was filed on January 4, 2017, in Fairfax County, Virginia Circuit Court and bears case number CL-2019-0002911.

1

6. "YOU," "PROSIGHT," and "NEW YORK MARINE" each means and refers to New York Marine and General Insurance Company and includes anyone acting on New York Marine and General Insurance Company's behalf, such as all agents, representatives, attorneys and/or other person acting or purporting to act on behalf of New York Marine and General Insurance Company for any purpose. "YOU," "PROSIGHT," and "NEW YORK MARINE" each also means and refers to ProSight Specialty Management Company, Inc. and includes anyone acting on ProSight Specialty Management Company, Inc.'s behalf, such as all agents, representatives, attorneys and/or other person acting or purporting to act on behalf of ProSight Specialty Management Company, Inc. for any purpose.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that the INSURED tendered the defense of the UNDERLYING ACTION to YOU on or about September 3, 2019.

**REQUEST FOR ADMISSION NO. 2:**

Admit that upon tender of the UNDERLYING ACTION to YOU, YOU owed the INSURED a defense in that action under the terms of the PROSIGHT POLICY.

**REQUEST FOR ADMISSION NO. 3:**

Admit that at all times after tender of the UNDERLYING ACTION to YOU, YOU owed the INSURED a defense in that action under the terms of the PROSIGHT POLICY.

**REQUEST FOR ADMISSION NO. 4:**

Admit that YOU continue to owe the INSURED a defense in the UNDERLYING ACTION through the appeal of that action.

**REQUEST FOR ADMISSION NO. 5:**

Admit that upon tender of the UNDERLYING ACTION to YOU, YOU owed the INSURED a defense in that action under the terms of the PROSIGHT

2

1  POLICY with independent counsel of the INSURED's choosing.

2  **REQUEST FOR ADMISSION NO. 6:**

3       Admit that YOU have not met all of YOUR obligations to defend the
4  INSURED in the UNDERLYING ACTION.

5  **REQUEST FOR ADMISSION NO. 7:**

6       Admit that YOUR duty to defend the INSURED in the UNDERLYING
7  ACTION has never been excused.

8  **REQUEST FOR ADMISSION NO. 8:**

9       Admit that YOU owe equitable contribution to TRAVELERS in connection
10 with TRAVELERS' payment of the INSURED's defense of the UNDERLYING
11 ACTION.

12 **REQUEST FOR ADMISSION NO. 9:**

13      Admit that, based upon YOUR and TRAVELERS' respective insurance
14 policy "Other Insurance" clauses, from November 6, 2020, when CAMERON
15 MCEVOY withdrew from its participation in the defense of the INSURED in the
16 UNDERLYING ACTION, YOU owe TRAVELERS 100% reimbursement of the
17 defense fees, costs, and expenses TRAVELERS incurred defending the INSURED
18 in the UNDERLYING ACTION.

19 **REQUEST FOR ADMISSION NO. 10:**

20      Admit that from November 6, 2020, when CAMERON MCEVOY withdrew
21 from its participation in the defense of the INSURED in the UNDERLYING
22 ACTION, YOU owe TRAVELERS 50% reimbursement of the defense fees, costs,
23 and expenses TRAVELERS incurred defending the INSURED in the
24 UNDERLYING ACTION.

25 **REQUEST FOR ADMISSION NO. 11:**

26      Admit that YOU and CAMERON MCEVOY had an understanding that
27 CAMERON MCEVOY could "lay low" and let INDEPENDENT COUNSEL and
28 TRAVELERS shoulder the burden of the INSURED's defense of the

PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS

1  UNDERLYING ACTION.

2  **REQUEST FOR ADMISSION NO. 12:**

3      Admit that, from November 6, 2020, when CAMERON MCEVOY

4  withdrew from its participation in the defense of the INSURED in the

5  UNDERLYING ACTION, YOU have not appointed any law firm to defend the

6  INSURED.

7  **REQUEST FOR ADMISSION NO. 13:**

8      Admit that, from November 6, 2020, when CAMERON MCEVOY

9  withdrew from its participation in the defense of the INSURED in the

10  UNDERLYING ACTION, YOU have not done anything to meet your obligation

11  to defend the INSURED.

12  **REQUEST FOR ADMISSION NO. 14:**

13      Admit that from November 6, 2020, when CAMERON MCEVOY withdrew

14  from its participation in the defense of the INSURED in the UNDERLYING

15  ACTION, YOU owe equitable contribution to TRAVELERS in connection with

16  TRAVELERS' payment of the INSURED's defense of the UNDERLYING

17  ACTION from November 6, 2020.

18  **REQUEST FOR ADMISSION NO. 15:**

19      Admit that YOU have failed to meet YOUR obligation to TRAVELERS to

20  share the expenses of the INSURED's defense in the UNDERLYING ACTION.

21  **REQUEST FOR ADMISSION NO. 16:**

22      Admit that YOU have failed to meet YOUR obligation to TRAVELERS to

23  share the expenses of the INSURED's defense in the UNDERLYING ACTION

24  from November 6, 2020, when CAMERON MCEVOY withdrew from its

25  participation in the defense of the INSURED in the UNDERLYING ACTION.

26  **REQUEST FOR ADMISSION NO. 17:**

27      Admit that YOU have not reimbursed TRAVELERS half of the amounts it

28  has paid in the INSURED's defense in the UNDERLYING ACTION from

November 6, 2020, when CAMERON MCEVOY withdrew from its participation in the defense of the INSURED in the UNDERLYING ACTION.

**REQUEST FOR ADMISSION NO. 18:**

Admit that YOUR duty to pay equitable contribution to TRAVELERS in connection with TRAVELERS' payment of the INSURED's defense of the UNDERLYING ACTION has never been excused.

**REQUEST FOR ADMISSION NO. 19:**

Admit that YOUR payment to TRAVELERS of $621,693.43 in reimbursement on or about January 19, 2022, is the only amount you have paid TRAVELERS related to its defense of the INSURED in the UNDERLYING ACTION.

**REQUEST FOR ADMISSION NO. 20:**

Admit that YOU have reimbursed TRAVELERS nothing for the INSURED's defense in the UNDERLYING ACTION for the period from March 1, 2021, to the present.

**REQUEST FOR ADMISSION NO. 21:**

Admit that at all times the CAMERON NCEVOY firm represented the INSURED in the UNDERLYING ACTION, that none of the attorneys there were licensed to practice law in the State of California.

**REQUEST FOR ADMISSION NO. 22:**

Admit that the INSURED's defense of the UNDERLYING ACTION required attorneys licensed to practice law in the State of California.

**REQUEST FOR ADMISSION NO. 23:**

Admit that YOU never engaged any attorneys licensed to practice law in California to participate in the INSURED's defense of the UNDERLYING ACTION.

1   **REQUEST FOR ADMISSION NO. 24:**

2       Admit that the attorneys at CAMERON MCEVOY did not actively

3   participate in the INSURED's defense of the UNDERLYING ACTION.

4   **REQUEST FOR ADMISSION NO. 25:**

5       Admit that, during their engagement by YOU to be the INSURED's defense

6   attorneys in the UNDERLYING ACTION, the attorneys at CAMERON

7   MCEVOY wrote YOU numerous times sharing information protected by the

8   INSURED's attorney-client privilege.

9   **REQUEST FOR ADMISSION NO. 26:**

10      Admit that, during their engagement by YOU to be the INSURED's defense

11  attorneys in the UNDERLYING ACTION, the attorneys at CAMERON

12  MCEVOY wrote YOU numerous times complaining that the INSURED's

13  INDEPENDENT COUNSEL were not adequately facilitating CAMERON

14  MCEVOY's participation in the defense as co-counsel.

15  **REQUEST FOR ADMISSION NO. 27:**

16      Admit that by complaining to YOU that the INSURED's INDEPENDENT

17  COUNSEL were not adequately facilitating CAMERON MCEVOY's participation

18  in the defense as co-counsel, the attorney's at the CAMERON MCEVOY firm

19  breached their duty of loyalty to the INSURED.

20  **REQUEST FOR ADMISSION NO. 28:**

21      Admit that while CAMERON MCEVOY was participating in the

22  INSURED's defense of the UNDERLYING ACTION, you never told the

23  INSURED that she could lose rights under the PROSIGHT POLICY if

24  INDEPENDENT COUNSEL did not cooperate better with CAMERON

25  MCEVOY.

26  **REQUEST FOR ADMISSION NO. 29:**

27      Admit that while CAMERON MCEVOY was participating in the

28  INSURED's defense of the UNDERLYING ACTION, you never told the

INSURED's attorneys that she could lose rights under the PROSIGHT POLICY if INDEPENDENT COUNSEL did not cooperate better with CAMERON MCEVOY.

**REQUEST FOR ADMISSION NO. 30:**

Admit that the alleged failure by the INSURED's INDEPENDENT COUNSEL to adequately cooperate with co-counsel CAMERON MCEVOY in the defense of the UNDERLYING ACTION did not cause YOU substantial prejudice.

**REQUEST FOR ADMISSION NO. 31:**

Admit that one of the reasons that CAMERON MCEVOY withdrew from the INSURED's defense of the UNDERLYING ACTION was frustration by at least one of the firm's attorneys that PROSIGHT's billing review system resulted in the firm being told that it would not be paid by PROSIGHT for work which PROSIGHT had asked it to perform.

**REQUEST FOR ADMISSION NO. 32:**

Admit that California law governs YOUR defense obligations to the INSURED regarding the UNDERLYING ACTION.

**REQUEST FOR ADMISSION NO. 33:**

Admit that the law stated in *San Diego Navy Federal Credit Union v. Cumis Insurance Society*, 162 Cal. App. 3d 358 (1984), governs YOUR defense obligations to the INSURED regarding the UNDERLYING ACTION.

**REQUEST FOR ADMISSION NO. 34:**

Admit that the law stated in California Civil Code section 2860 governs YOUR defense obligations to the INSURED regarding the UNDERLYING ACTION.

**REQUEST FOR ADMISSION NO. 35:**

Admit that during the trial of the UNDERLYING ACTION, Pamela Johnson of TRAVELERS shared her daily reports of the day's events with YOU.

**REQUEST FOR ADMISSION NO. 36:**

Admit that by representing the INSURED in her defense of the UNDERLYING ACTION, while simultaneously sharing with PROSIGHT information protected by the INSURED's attorney-client privilege, the CAMERON MCEVOY firm violated its duty of loyalty to the INSURED.

**REQUEST FOR ADMISSION NO. 37:**

Admit that while representing the INSURED in her defense of the UNDERLYING ACTION, the CAMERON MCEVOY firm provided YOU with information protected by the INSURED's attorney-client privilege, the sharing of which was detrimental to the INSURED.

**REQUEST FOR ADMISSION NO. 38:**

Admit that YOU requested information from the CAMERON MCEVOY firm regarding its defense of the UNDERLYING ACTION which was protected by the INSURED's attorney-client privilege from disclosure by the firm to YOU.

**REQUEST FOR ADMISSION NO. 39:**

Admit that YOU are using information against the INSURED which was protected by the INSURED's attorney-client privilege from disclosure to YOU by the CAMERON MCEVOY and which you gained from the CAMERON MCEVOY disclosing it to YOU without the INSURED's permission.


Dated: October 10, 2022


/s/ Mark D. Peterson
MARK D. PETERSON
Of CATES PETERSON LLP
Attorneys for Plaintiff
TRAVELERS COMMERCIAL
INSURANCE COMPANY

**PROOF OF SERVICE**

1

2     I, the undersigned, certify and declare that I am over the age of 18 years,

3   employed in the County of Orange, State of California, and not a party to this

4   action.   My business address is 4100 Newport Place, Suite 230, Newport Beach,

5   CA 92660.  On October 10, 2022, I served the named below on the parties in this
action as follows:

6   **PLAINTIFF TRAVELERS COMMERCIAL INSURANCE COMPANY'S**

7   **FIRST REQUEST FOR ADMISSIONS TO DEFENDANT NEW YORK
MARINE AND GENERAL INSURANCE COMPANY**

8

9     [X]   **(E-SERVICE)**  by transmitting via e-mail the document(s) listed above

10  to the e-mail addresses set forth below.

11        James P. Wagoner
          Nicholas H. Rasmussen

12        Alexander R. Morrow
          McCormick, Barstow, Sheppard, Wayte & Carruth LLP

13        7647 North Fresno Street
          Fresno, California 93720

14        Email: jim.wagoner@mccormickbarstow.com

15               nrasmussen@mccormickbarstow.com
                 alexander.morrow@mccormickbarstow.com

16

17    I hereby certify that I am employed in the office of a member of the Bar of this

18  Court at whose direction the service was made.

19    I declare under penalty of perjury under the laws of the State of California that

20  the foregoing is true and correct.

21    Executed on October 10, 2022, at Newport Beach, California.

22

23

24

25                                             Melinda Yang

26

27

28
_____

PROOF OF SERVICE

# EXHIBIT 2



## McCORMICK BARSTOW LLP
### ATTORNEYS AT LAW

James P. Wagoner
jim.wagoner@mccormickbarstow.com

*Certified Appellate Law Specialist certified
by the Board of Legal Specialization of the
California State Bar.

**FRESNO, CA OFFICE**
7647 North Fresno Street
Fresno, California 93720
P.O. Box 28912
Fresno, CA 93729-8912
Telephone (559) 433-1300
Fax (559) 433-2300

**Other offices of
McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP**

www.mccormickbarstow.com

**BAKERSFIELD, CA OFFICE**
5060 California Ave., Suite 1090
Bakersfield, California 93309
Telephone (661) 616-1594
Fax (661) 616-1595

**CINCINNATI, OH OFFICE**
Scripps Center, Suite 1050
312 Walnut Street
Cincinnati, Ohio 45202
Telephone (513) 762-7520
Fax (513) 762-7521

**LAS VEGAS, NV OFFICE**
8337 West Sunset Road, Suite 350
Las Vegas, Nevada 89113
Telephone (702) 949-1100
Fax (702) 949-1101

**MODESTO, CA OFFICE**
1125 I Street, Suite 1
Modesto, California 95354
Telephone (209) 524-1100
Fax (209) 524-1188

**RENO, NV OFFICE**
201 W. Liberty Street, Suite 320
Reno, Nevada 89501
Telephone (775) 333-0400
Fax (775) 333-0412

**SAN LUIS OBISPO, CA OFFICE**
1041 Mill Street, Suite 105
San Luis Obispo, California 93401
Telephone (805) 541-2800
Fax (805) 541-2802

March 2, 2023

**VIA E-MAIL [NBOOS@MAYNARDCOOPER.COM]**

Nicholas J. Boos
Maynard Cooper & Gale
Two Embarcadero Center, Suite 1450
San Francisco, CA  94111

Re:     *Travelers Commercial Insurance Co. v. New York Marine and General Ins. Co.*
        USDC Central District Case No. 2:21-cv-5832-GW (PDx)

Dear Mr. Boos:

The undersigned and McCormick Barstow, LLP represent New York Marine and General Insurance Company ("NY Marine") in connection with the above-referenced litigation. We are in receipt of your February 28, 2023 Notice of Substitution and the Court's March 1, 2023 Order granting your substitution. Regretfully, the purpose of this letter is to inform you of the very apparent conflict of interest created by yours and Maynard Cooper's appearance on behalf of Travelers in this litigation, and accordingly to demand yours and the firm's immediate withdrawal as counsel for Travelers.

As you are aware, in or about April 2022, Maynard Cooper hired Matt Chipman as an Associate in your office. Prior to—and indeed up until—his employment by your firm, he was an Associate at McCormick Barstow in our  Insurance Coverage and Bad Faith Litigation Practice Group. Although he worked only a small amount of time on the *Travelers v. NY Marine* litigation, he was nevertheless directly involved on behalf of NY Marine. In that capacity, our (so far brief) review of email exchanges with him has also identified at least three emails to him (on March 1-2, 2021 and April 24, 2021) which expressly addressed this litigation and which unquestionably include confidential client information pertaining to this litigation. Additionally, he was unquestionably privy to innumerable conversations concerning this matter with and between myself and other senior attorneys on the file including  Nick Rasmussen and Graham Van Leuven.  Indeed, along with Mr. Rasmussen, Mr. Van Leuven, and the undersigned, he also attended a February 23, 2022 dinner with NY Marine's Coverage and Litigation Counsel during which this matter was discussed.

As you are no doubt aware, when considering the existence and consequences of such a conflict, when "the tainted attorney was actually involved in the representation of the first client, and switches sides in the same case, no amount of screening will be sufficient, and the presumption of imputed knowledge is conclusive" thereby requiring the disqualification of the tainted firm. *Kirk v. First Am. Title Ins. Co.,* 183 Cal.App.4th 776, 814 (2010) (citing *Henriksen v. Great Am. Savings & Loan,* 11 Cal.App.4th 109, 115, 117 (1992) and *Meza v. H. Muehlstein & Co., Inc.,* 176 Cal.App.4th 969, 979 (2000)).  (Emphasis added.)  Accordingly, given Matt's actual work on the file and his clear receipt of NY Marine's confidential information concerning this litigation, on



Nicholas J. Boos
March 2, 2023
Page 2

behalf of NY Marine, we must respectfully demand that Maynard Cooper immediately withdraw from Travelers' representation in this matter.

Very truly yours,

James P. Wagoner
McCormick Barstow LLP

JPW

8950610.1

# EXHIBIT 3



Nicholas J. Boos
DIRECT 415.646.4674
EMAIL   nboos@maynardcooper.com

March 9, 2023

**VIA E-MAIL**

James P. Wagoner
McCormick Barstow LLP
7647 North Fresno Street
Fresno, California 93720
P.O. Box 28912

> **Re:**   ***Travelers Commercial Ins. Co. v. New York Marine and Gen. Ins. Co.***
> **U.S. Dist. Ct., Central Dist. Cal., Case No. 2:21-cv-5832-GW-PD**

Dear Mr. Wagoner:

We reject your demand that my law firm withdraw as counsel for as counsel for Travelers Commercial Insurance Company in the above referenced matter.  You assert that disqualification is required because Matt Chipman, an associate at my law firm who has not had any involvement in this matter, previously worked at your firm.  You are incorrect.  First, Mr. Chipman is not disqualified from working on this matter.  Second, his alleged disqualification is not imputed to other members of my law firm.

You appear to suggest that Mr. Chipman is disqualified under Rule 1.9(a) of the California Rules of Professional Conduct, which states: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent."  That rule does not apply here.

Mr. Chipman did not represent your client, New York General Insurance Company, in the above-referenced action while he worked at your law firm.  He was not assigned to that matter by your law firm, he did not make any appearances in that matter, and he has no recollection of performing any work on that matter.  Nevertheless, you contend that he—and by extension my law firm— should be disqualified because you say he received three emails two years ago (before the lawsuit was filed) regarding the matter, was "privy" to conversations among people at your law firm "concerning this matter," and attended a dinner with "NY Marine's Coverage and Litigation Counsel" during which "this matter was discussed."  Despite your vague assertions, Mr. Chipman has no recollection of receiving any confidential information regarding the above-referenced action.  That is consistent with the fact that he has no recollection of ever working on it.

You presumably became aware of Rule 1.10(a) of the California Rules of Professional Conduct while preparing your withdrawal demand, but you make no mention of it in your letter.  Under that rule, even if Mr. Chipman was disqualified, his disqualification is not imputed to my law firm. The rule states that an attorney's disqualification is not imputed to the firm where the attorney "did not substantially participate in the same or a substantially related matter; [] is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and [] written notice

James P. Wagoner
McCormick Barstow LLP
March 9, 2023
Page 2

is promptly given to any affected former client to enable the former client to ascertain compliance
with the provisions of this rule . . . ."  The requirements of this rule are satisfied here.

Mr. Chipman did not substantially participate in the above-referenced action.  Mr. Chipman has
no recollection of working on the matter, and your letter states that he "worked only a small amount
of time" on it.  Thus, Mr. Chipman's participation in the matter was, at most, *de minimis*.

Mr. Chipman was timely screened.  Although Mr. Chipman was not disqualified and, as discussed
above, has no confidential information, we nevertheless developed a screen in response to your
letter asserting a conflict.  To that end, Mr. Chipman has not worked on the above-referenced
action nor will he do so; he is "walled off" from any information pertaining to the matter, including
being unable to access paper or electronic files; no attorney or employee of our firm will
communicate with him regarding the action; an email memorandum has been circulated warning
legal staff to isolate Mr. Chipman from communications regarding the above-referenced action
and to prevent access to file materials; and reminder memoranda will be sent to legal staff every
60 days.

Consistent with Prof. Cond. Rule 1.10(a)(2)(iii), this letter provides written notice to your client
including "a description of the screening procedures" our firm implemented.  We will respond
promptly to written inquiries or objections by your client regarding those screening procedures.

For the foregoing reasons, my law firm declines to withdraw from this matter.  If you would like
to discuss this issue, please let me know.

Very truly yours,

Nicholas J. Boos

# EXHIBIT 4



**McCORMICK BARSTOW LLP**
**ATTORNEYS AT LAW**

James P. Wagoner
jim.wagoner@mccormickbarstow.com

*Certified Appellate Law Specialist certified
by the Board of Legal Specialization of the
California State Bar.

**FRESNO, CA OFFICE**
7647 North Fresno Street
Fresno, California 93720
P.O. Box 28912
Fresno, CA 93729-8912
Telephone (559) 433-1300
Fax (559) 433-2300

**Other offices of
McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP**

www.mccormickbarstow.com

**BAKERSFIELD, CA OFFICE**
5060 California Ave., Suite 1090
Bakersfield, California 93309
Telephone (661) 616-1594
Fax (661) 616-1595

**CINCINNATI, OH OFFICE**
Scripps Center, Suite 1050
312 Walnut Street
Cincinnati, Ohio 45202
Telephone (513) 762-7520
Fax (513) 762-7521

**LAS VEGAS, NV OFFICE**
8337 West Sunset Road, Suite 350
Las Vegas, Nevada 89113
Telephone (702) 949-1100
Fax (702) 949-1101

**MODESTO, CA OFFICE**
1125 I Street, Suite 1
Modesto, California 95354
Telephone (209) 524-1100
Fax (209) 524-1188

**RENO, NV OFFICE**
201 W. Liberty Street, Suite 320
Reno, Nevada 89501
Telephone (775) 333-0400
Fax (775) 333-0412

**SAN LUIS OBISPO, CA OFFICE**
1041 Mill Street, Suite 105
San Luis Obispo, California 93401
Telephone (805) 541-2800
Fax (805) 541-2802

March 23, 2023

**VIA E-MAIL [NBOOS@MAYNARDCOOPER.COM]**

Nicholas J. Boos
Maynard Cooper & Gale
Two Embarcadero Center, Suite 1450
San Francisco, CA  94111

Re:    *Travelers Commercial Insurance Co. v. New York Marine and General Ins. Co.*
         USDC Central District Case No. 2:21-cv-5832-GW (PDx)

Dear Mr. Boos:

New York Marine and General Insurance Company ("NY Marine") has now had the opportunity to consider your March 9, 2022 letter the existence of disputing Maynard Cooper's obvious conflict of interest in its representation of Travelers Commercial Insurance Company ("Travelers") in this matter.  Such a conflict clearly exists on account of Maynard Cooper's employment of Associate attorney Matt Chipman who was previously employed by McCormick Barstow LLP and who represented NY Marine in both this litigation as well as in at least five (5) other cases. We understand from your letter that Maynard Cooper denies that any conflict exists or that it is subject to disqualification as a result of Mr. Chipman's previous employment with McCormick Barstow LLP and his representation of NY Marine in the very action in which your firm now represents Travelers. For the reasons set forth below, we must respectfully reject the various premises and conclusions of your letter, and again demand that Maynard Cooper both acknowledge that it is disqualified from representing Travelers and agree to withdraw from that representation.

As an initial matter, your letter asserts that California Rule 1.9(a) does not apply.  That rule states that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client unless the former client gives informed written consent". Specifically, your letter asserts that Mr. Chipman did not represent NY Marine "in the above-referenced action while he worked at" McCormick Barstow LLP, and further contends that "[h]e was not assigned to that matter by your law firm, he did not make any appearances in that matter, and he has no recollection of performing any work on that matter." However, in determining whether a conflict of interest exists, under well-established California law, whether an attorney was formally "assigned" to a matter or "appeared" in court on behalf of the client is immaterial. Neither does Mr. Chipman's lack of recollection of his involvement in the matter or his receipt of NY Marine's confidential information alter the conclusion that a conflict of interest exists.



Nicholas J. Boos
March 23, 2023
Page 2

First, as observed in our letter of March 2, 2023, regardless whether he was formally "assigned" to this matter, Mr. Chipman <u>did</u> represent NY Marine in this action, including by performing work on the file for which his time was billed to the client, as well as in other matters. Moreover, the proposition that a formal "assignment" is necessary for an attorney to have a conflict is self-evidently contradicted by the well-established law that a conflict of interest is *imputed* to all members of a firm—even those who *have never worked on the matter* and/or who *were not employed by the firm* at the time of the representation giving rise to the conflict. *See, e.g., Holm v. City of Barstow*, Case no. EDCV 08-420-VAP (JCx), 2008 WL 4290857 *6 (C.D.Cal. Sep. 16, 2008) (attorney who *did not begin his employment* at the conflicted law firm until *after* an attorney who had performed work for a client had *left* the firm was *still* subject disqualification because the imputed conflict still existed).

Your assertion that Mr. Chipman "did not make any appearances" in the *Travelers v. NY Marine* litigation is likewise unsupported by any reference to California law and is also equally irrelevant. In this respect, the contention defies logic as conflicts of interest can exist because of an attorney's former representation of a client and such representation need not occur in a courtroom. More to the point, however, that proposition is contradicted by well-established California law holding that a conflict requiring disqualification may arise whenever the attorney receives the client's confidential information—even as the result of a mere consultation or where no attorney-client relationship is ever actually formed. *See, People ex rel. Dept. of Corps. v. SpeeDee Oil Change Sys's., Inc.,* 20 Cal.4th 1135, 1147-1148 (1999); *In re Tevis,* 347 B.R. 679, 692 (9th Cir. BAP 2006) ("Under California law, the mere consultation with a prospective client may create a disqualifying conflict of interest for a lawyer, especially where confidential information was disclosed.") (citing *SpeeDee Oil, supra*).

The position set forth in your letter also ignores that conflicts are imputed to all attorneys in a firm. *SpeeDee Oil, supra,* 20 Cal.4th 1135, 1139 (citing *Flatt v. Superior Court,* 9 Cal.4th 275, 283 (1994)). Thus, consistent with this principle, courts addressing the imputation of knowledge to all attorneys in a firm have observed that the principle flows from the practical "rationale that attorneys practicing together generally share each other's, and their clients', confidential information." *Kirk v. First Am. Title Ins. Co.,* 183 Cal.App.4th 776, 799 (2010) (citing *City and Cty. of San Francisco v. Cobra Solutions, Inc.,* 38 Cal.4th 839, 847-848 (2006)).

As to Mr. Chipman's lack of "recollection of performing any work on" the *Travelers v. NY Marine* matter, your letter appears to suggest that such a lack of recollection negates any conflict. However, an attorney's failure to recall either their representation of a client or their receipt of confidential client information is an entirely subjective matter. Consequently, it cannot logically make a material difference in the analysis where, as here, the attorney actually did represent the client and acquired its confidential information. The suggestion that Mr. Chipman has no recollection of performing any work on the matter is also inconsistent with both the purpose behind



Nicholas J. Boos
March 23, 2023
Page 3

the rule, the "paramount concern" of which the California Supreme Court has stated "must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar", and the need for courts to "protect clients' legitimate expectations of loyalty to preserve this essential basis for trust and security in the attorney-client relationship." *SpeeDee Oil, supra,* 20 Cal.4th 1135, 1145, 1147. Such expectations of confidentiality and loyalty cannot be founded upon a former attorney's mere claim that they lack recollection of their documentable representation and receipt of confidential information.

In any event, and fundamentally, your position ignores that California courts which have passed on the question have consistently held that an attorney's specific recollection of the conflicting representation are immaterial where the conflict is direct and the attorney is on both sides of the same dispute. *Rosenfeld Constr. Co. v. Superior Ct.,* 235 Cal.App.3d 566, 576 (1991) ("We find no authority that supports the notion that, standing alone, the present recollection of the members of the firm is an adequate criterion."); *Equal Employment Opportunity Comm'n. v. Peters' Bakery,* Case no. 13-cv-04507-BLF, 2014 WL 7272943 *6 (N.D.Cal. Dec. 22, 2014) ("That Mr. Baker neither recalls the consultation nor, presumably, what confidential information he received during the consultation, does not eliminate the risk that his memory may be triggered at any point as the present case develops."); *United States v. Sun Keung Lee,* Case no. CR 10-0186 MHP, 2011 WL 52599 *2 (N.D.Cal. Jan. 6, 2011) ("Lastly, at the hearing and in his papers, Mr. Gruel assures the court that he has no present recollection of being privy to any confidential information regarding the government's investigation into Lee's alleged drug-related criminal activities. [Citations.] Whether Mr. Gruel has any present recollection is not dispositive here."); *see also, Global Van Lines, Inc. v. Superior Court,* 144 Cal.App.3d 483, 488 (1983) (finding that notwithstanding an attorney's claims of no present recollection, it is not unreasonable to impute receipt of confidential information where it would have been logical for the attorney to have received such information in the course of his employment); *Shadow Traffic Network v. Superior Court,* 24 Cal.App.4th 1067, 1086 (1994) (expressing recognition that representation could be impacted by conflicted expert's conscious or unconscious consideration of confidential information received from other representation).

It is consequently apparent that Mr. Chipman would have a conflict regardless of his own direct knowledge of the file, and certainly regardless of his own mere lack of recollection of his work on and receipt of confidential client information concerning this matter. Thus, the assertion on page one of your letter that "Mr. Chipman is not disqualified from working on this matter" is patently contrary to California law.[1] But

---

[1] For all the reasons set forth in this letter, your related assertion that "Mr. Chipman is not disqualified from working *on this matter*" (emphasis added) is not only contrary to law, but outright preposterous. For those same reasons, your contention that Rule of Professional Conduct 1.10 excuses the conflict or otherwise does not require its disqualification is equally incorrect and contrary to California law.



Nicholas J. Boos
March 23, 2023
Page 4

more to the point, in this case, Mr. Chipman, while an Associate at McCormick
Barstow LLP, *actually worked on the file and acquired knowledge of NY Marine's
confidential information concerning this specific matter.* Indeed, to this end, three
members of McCormick Barstow LLP will, if necessary, provide sworn declarations
stating not only that Mr. Chipman performed actual work on this file for NY Marine,
but as well, that he was a direct recipient of NY Marine's confidential information
concerning this matter. Specifically, the undersigned, as well as Mr. Rasmussen and
Mr. Van Leuven, can each provide sworn declarations stating that Mr. Chipman was
present for and participated in conversations in their capacities as counsel for NY
Marine during which they specifically discussed both matters of fact bearing on this
litigation, NY Marine's legal analysis and strategy in connection with this litigation as
well as the underlying litigation and coverage dispute from which the present litigation
arose. In addition, NY Marine's Coverage and Litigation Counsel will similarly provide
a sworn declaration confirming that Mr. Chipman was present and participated in a
conversation at an evening dinner on February 23, 2022, during which she, the
undersigned, Mr. Rasmussen, and Mr. Van Leuven discussed both factual matters and
NY Marine's legal strategy in this litigation and in the underlying litigation and
coverage dispute out of which the present litigation arises. Consequently, your
assertions that Mr. Chipman "did not represent" NY Marine in this litigation, and that
he does not possess any of its confidential information *concerning this litigation or the
underlying claim and litigation which gave rise to the present dispute,* is without basis
in either fact or law. Mr. Chipman has a conflict, and that conflict is imputed to your
entire firm. *SpeeDee Oil, supra,* 1155-1556 (attorney's receipt of confidential
information required firm's disqualification); *Dill v. Superior Court,* 158 Cal.App.3d
301, 303, 306 (1984) (where associate who worked on file and obtained client's
confidential information moved to another firm which represented opposing real parties
in interest, his conflict of interest required second firm's disqualification).

Furthermore, turning to your contention that Mr. Chipman "was timely screened",
under relevant law no such "screening" is sufficient and, even if it were, the factual
statements contained in your letter confirm that Mr. Chipman was *not* timely screened.
In this respect, California law is well-established that where, as here, "the tainted
attorney was actually involved in the representation of the first client, and switches
sides in the same case, no amount of screening will be sufficient, and the presumption
of imputed knowledge is conclusive." *Kirk, supra,* 183 Cal.App.4th 776, 814; *Meza v.
Muehlstein & Co., Inc.,* 176 Cal.App.4th 969, 978 (2009) (stating that the rule of
automatic disqualification "is especially true where the attorney's disqualification is
due to his prior representation of the opposing side during the same lawsuit."); 
*Henriksen v. Great Am. Savings & Loan,* 11 Cal.App.4th 109, 114-115 (1992) (citing
*Flatt v. Superior Court,* 9 Cal.4th 275, 283 (1994)). Given the foregoing, and contrary
to the suggestion in your letter, Rule of Professional Conduct 1-10 does not apply to
excuse the conflict, nor does it permit Maynard Cooper to avoid the necessary
consequence of the conflict—its disqualification.



Nicholas J. Boos
March 23, 2023
Page 5

Finally, even where such "screening" may be sufficient, California law provides that "screening should be implemented *before undertaking the challenged representation* or hiring the tainted individual. Screening must take place at the outset to prevent any confidences from being disclosed." *Sierra v. Costco Wholesale Corp.,* -- F.Supp.3d --, 2022 WL 4454359 *4 (N.D.Cal. 2022) (emphasis added) (quoting *In re Complex Asbestos Litig.,* 232 Cal.App.3d 572, 594 (1991)); *Maria De Jesus Cruz Ramos v. Costco Wholesale Corp., et al.,* Case no. CV 22-3579-MWF (AFMx), 2022 WL 18278604 *2 (C.D.Cal. Nov. 9, 2022) (same); *Kirk, supra,* 183 Cal.App.4th 776, 792 (same). Here, your letter acknowledges that Maynard Cooper only "developed a screen *in response to [our] letter*" of March 2, 2023 (emphasis added). That statement confirms that even if a screen could have been effective, it was not "timely" implemented here at the commencement of Maynard Cooper's representation of Travelers.

In sum, Mr. Chipman not only represented NY Marine *in connection with this very dispute*, but unquestionably received its confidential information pertaining to this litigation. He is therefore conflicted, and that conflict is *automatically* imputed to Maynard Cooper, requiring its disqualification. Moreover, *even if* the conflict could be adequately screened (it cannot), because your letter admits that the screen was not established "before [Maynard Cooper's] undertaking of" Travelers' representation in this action, it is not timely as a matter of California law and consequently does not suffice to prevent Maynard Cooper's disqualification.

For the reasons set forth above and in our letter of March 2, 2023, NY Marine again requests that Maynard Cooper acknowledge the irreconcilable conflict created by its representation of Travelers in the above-referenced litigation, and promptly confirm that it will withdraw as counsel. If Maynard Cooper will not acknowledge its conflict and agree to withdraw, please let us know when you are available next week for a telephonic "meet and confer" conference in connection with NY Marine's motion to disqualify Maynard Cooper.

Very truly yours,

James P. Wagoner
McCormick Barstow LLP

JPW

8989423.1

# EXHIBIT 5

## Nicholas Rasmussen

| | |
|---|---|
| **From:** | Nicholas J. Boos <NBoos@maynardcooper.com> |
| **Sent:** | Thursday, March 30, 2023 10:11 AM |
| **To:** | Jim Wagoner |
| **Cc:** | Nicholas Rasmussen |
| **Subject:** | Re: Travelers Commercial Ins. Co. v. New York Marine and General Ins. Co. |

I am not available today, but can speak tomorrow afternoon. Please let me know if there is a time tomorrow that works for you.

Nicholas J. Boos
Direct: (415) 646-4674
Mobile: (510) 541-5688
nboos@maynardcooper.com

Sent from my iPhone

**Nicholas J. Boos**
Partner | Insurance & Financial Services Litigation
P: 415.646.4674 | C: 510.541.5688 | F: 205.714.6709
NBoos@maynardcooper.com | V-card
—
Two Embarcadero Center, Suite 1450
San Francisco, CA 94111

1



Maynard Cooper & Gale and Nexsen Pruet have agreed to merge on April 1, 2023.

LexMundi
Member

On Mar 30, 2023, at 10:09 AM, Jim Wagoner <Jim.Wagoner@mccormickbarstow.com> wrote:


Nick, just following up on this one.  We would like to meet and confer with you today at 1:00 pm.

Very truly yours,

**James P. Wagoner**
**McCormick Barstow LLP**
7647 North Fresno Street | Fresno, CA 93720
Main (559) 433.1300 | Direct (559) 433.2119
www.mccormickbarstow.com

*Certified Specialist in Appellate Law
The State Bar of California

**From:** Jim Wagoner <Jim.Wagoner@mccormickbarstow.com>
**Sent:** Tuesday, March 28, 2023 4:07 PM
**To:** nboos@maynardcooper.com

2

**Cc:** Nicholas Rasmussen <Nicholas.Rasmussen@mccormickbarstow.com>
**Subject:** RE: Travelers Commercial Ins. Co. v. New York Marine and General Ins. Co.

Nick,

Just following up on our letter of March 23rd. We propose a meet and confer call on Thursday at 1:00 p.m. If that time does not work for you, please let us know what time will work.

Very truly yours,

**James P. Wagoner**
**McCormick Barstow LLP**
7647 North Fresno Street | Fresno, CA 93720
Main (559) 433.1300 | Direct (559) 433.2119
www.mccormickbarstow.com

*Certified Specialist in Appellate Law
The State Bar of California

**From:** Jim Wagoner <Jim.Wagoner@mccormickbarstow.com>
**Sent:** Thursday, March 23, 2023 2:07 PM
**To:** nboos@maynardcooper.com
**Cc:** Nicholas Rasmussen <Nicholas.Rasmussen@mccormickbarstow.com>; Graham Van Leuven

3

<Graham.VanLeuven@mccormickbarstow.com>

**Subject:** Travelers Commercial Ins. Co. v. New York Marine and General Ins. Co.

Please see attached correspondence.

Very truly yours,

**James P. Wagoner**
**McCormick Barstow LLP**
7647 North Fresno Street | Fresno, CA 93720
Main (559) 433.1300 | Direct (559) 433.2119
www.mccormickbarstow.com

*Certified Specialist in Appellate Law
The State Bar of California

<Letter to Boos from Wagoner (3_23_23).PDF>

Confidentiality Notice - The information contained in this e-mail and any attachments to it is intended only for the named recipient and may be legally privileged and include confidential information. If you are not the intended recipient, be aware that any disclosure, distribution or copying of this e-mail or its attachments is prohibited. If you have received this e-mail in error, please notify the sender immediately of that fact by return e-mail and permanently delete the e-mail and any attachments to it. Thank you.

4

# EXHIBIT 6

 The State Bar *of California*

Matthew Aaron Chipman #332944
**License Status: Active**

Address: Maynard Cooper & Gale LLP, 2 Embarcadero Ctr, Ste 1450, San Francisco, CA 94111-3915
Phone: 415-646-4670  |  Fax: 205-714-6709
Email: mchipman@maynardcooper.com  |  Website: Not Available

## More about This Attorney  ▼

**All changes of license status due to nondisciplinary administrative matters and disciplinary actions.**

| Date | License Status ⓘ | Discipline ⓘ | Administrative Action ⓘ |
|------|-----------------|--------------|------------------------|
| Present | Active | | |
| 1/13/2021 | Admitted to the State Bar of California | | |

**Additional Information:**
- About the disciplinary system

Copyright © 2023 The State Bar of California

  

# EXHIBIT 7



# MEET OUR TEAM

# Search Our Team

6 search results for: Office: **San Francisco, CA**



**Jamal B. Al-Haj**
OF COUNSEL

San Francisco, CA



**Nick J. Boos**
PARTNER, SAN FRANCISCO OFFICE MANAGING PARTNER

San Francisco, CA



**Matthew Chipman**
ASSOCIATE

San Francisco, CA



**Norman Lau**
COUNSEL

San Francisco, CA



**Sasha G. Rao**
PARTNER



**Brandon Stroy**
PARTNER

San Francisco, CA                San Francisco, CA

# EXHIBIT 8





# Nick J. Boos

### PARTNER, SAN FRANCISCO

### OFFICE MANAGING PARTNER

San Francisco, CA

t. 415.646.4674

Email

## Practices

Insurance Law

## Education

**University of San Francisco School of Law**
(2004, J.D.)

**University of California – Berkeley**
(2001, B.A.)

Nick is Managing Partner of Maynard Nexsen's San Francisco office. He is a member of the Firm's Insurance and Financial Services Litigation practice group where he focuses on the representation of insurers, financial services clients, and other companies in complex litigation and other disputes. He regularly serves as lead counsel in high-

stakes cases in state and federal courts throughout California.

Nick has been selected for inclusion in "The Best Lawyers in America" every year since 2019, and has been named a California "Super Lawyer" every year since 2020. In 2016, Nick was recognized as one of the Top 40 Lawyers Under 40 in the State of California by the Los Angeles and San Francisco Daily Journal Corporation. He was also annually recognized as a Super Lawyers "Rising Star" from 2013 to 2017. Nick received his J.D. from the University of San Francisco School of Law and his B.A. from the University of California, Berkeley.

## Community & Professional

→   American Bar Association - Insurance Coverage Litigation Committee's Additional Insured Subcommittee, co-
chair

→   American Bar Association - Insurance Coverage Litigation Committee's Bad Faith Subcommittee, former co-
chair

→   Defense Research Institute - Commercial General Liability Subcommittee, vice chair

# Representative Matters

→   Representing life insurer in putative class action.

→   Obtained a partial summary judgment for commercial property insurer on insured's claims for bad faith, unfair
competition, and punitive damages arising out of insurance claim involving stolen inventory.

→   Representing insurers in actions alleging bad faith and unfair business practices.

→   Represented commercial general liability insurer in breach of contract and bad faith action arising out of
underlying actions for patent infringement and trade secret misappropriation.

→   Represented commercial property insurers in breach of contract and bad faith actions involving claims for
millions of dollars in business income loss.

→   Represented insurer in breach of contract and bad faith action involving life insurance dispute.

→   Represented insurance professional in dispute with Department of Insurance.

→   Obtained summary judgment for commercial general liability insurer in breach of contract and bad faith action
arising out of underlying commercial lease dispute.

→   Obtained partial summary judgment for commercial property insurer on insured's claim for bad faith arising out
of multi-million dollar coverage dispute involving property damage.

→   Obtained partial summary judgment for liability insurer finding no duty to defend under technology errors and
omissions policy.

→ Represented employment practices liability insurer in breach of contract and declaratory relief action arising out of coverage dispute involving multi-million dollar underlying judgment against insured.

→ Represented commercial general liability insurer in breach of contract and bad faith action arising out of trade dress infringement claim.

→ Represented commercial general liability insurer in breach of contract and bad faith action arising out of alleged disparagement claim.

→ Represented builder's risk insurer in breach of contract and bad faith action arising out of multimillion dollar fire loss at hotel project.

→ Represented builder's risk insurer in breach of contract and bad faith action arising out of multimillion dollar water loss at condominium project.

→ Obtained partial summary judgment for property insurer on claims for breach of contract and bad faith.

→ Represented commercial general liability insurer in declaratory relief action involving thousands of underlying asbestos liability claims.

→ Represented commercial general liability insurer in breach of contract and bad faith action arising out of construction project disputes.

→ Represented reinsurers in the investigation and adjustment of multi-million dollar commercial property claim.

## Recognition

→ Named a California "Super Lawyer" (2020-present)

→ The Best Lawyers in America© for Insurance Law (2019 - present)

→ Recognized as one of the Top 40 Lawyers Under 40 in the State of California by the Los Angeles and San Francisco Daily Journal Corporation, "Top 40 Under 40," Daily Journal, 2016

→ Recognized as a Super Lawyers Northern California "Rising Star" (2013 - 2017)

## News

08.22.2022
200 Maynard Attorneys Recognized in The Best Lawyers in America© 2023

08.19.2021
179 Maynard Attorneys Recognized in The Best Lawyers in America© 2022

03.17.2021
Auto Premium Discounting - What Insurers Need to Know

# Speaking Engagements

→ Co-presenter, "Habitability Claims and Coverage Issues: Overview," presentation to clients (September 1, 2016).

→ Co-presenter, "Carrier's Duty to Initiate Settlement Negotiations in the Absence of a Demand: What's Considered Bad Faith for Failing to Initiate Settlement Offers Where There is No Demand?," ACI Extra-Contractual and Bad Faith Liability Conference, New York, New York (June 2, 2016).

→ Moderator, "Views From In-House Counsel and Claims Professionals on the Latest Approaches by Insurers and Retained Counsel in Promoting Strong Yet Flexible Settlement Approaches; Novel Methods of Communication and Disclosures to Insureds; Conflicts With Defendants; and Other Key Litigation Decisions," ACI's 31st National Forum on Bad Faith Claims & Litigation, Chicago, Illinois (July 27, 2015).

→ Co-presenter, "Insurance Bad Faith Litigation," Pincus Professional Education Seminar, San Francisco, California (February 20, 2015).

→ Co-presenter, "Using Mediation and Settlement Communications in Bad Faith Actions," Sedgwick's 2014 Insurance Webinar Series (September 18, 2014).

→ Co-presenter, "Issues Regarding Additional Insureds and Claims by Insurers," Client Presentation, Los Angeles, California (September 2, 2014).

→ Co-presenter, "Hot Topics in Coverage and Bad Faith Litigation," Client Presentation ● (June 25, 2014).

→ Co-presenter, "Resolution of Property Insurance Claims in the Modern Age — Appraisal, Mediation and Arbitration," Property Insurance Law Committee Annual Spring CLE Meeting, Carlsbad, California (April 25, 2014).

→ Co-presenter, "Duties After Loss: Enforcing Policy Provisions," PLRB/LIRB Eastern Regional Adjusters Conference, Charlotte, North Carolina (October 29-30, 2013).

→ Co-presenter, "Settlement Obligations Under California Law," Client Presentation, San Francisco, California (September 18, 2013).

→ Co-presenter, "Reservations Required or Not? Recent Trends Concerning Reservation of Rights and the Impact on Defense Handling, Control and Conflicts of Interest," ABA Insurance Coverage Litigation Committee CLE Seminar, Tucson, Arizona (March 1, 2013).

→ Co-presenter, "Excess Carrier's Duty to Defend — When 'Follow Form' Means 'Drop Down' and Other Issues," ABA Insurance Coverage Litigation Committee CLE Seminar, Tucson, Arizona (March 2, 2012).

Case 2:21-cv-05832-GW-PD    Document 106-3    Filed 04/10/23    Page 55 of 74    Page ID #:1548





# Matthew Chipman

## ASSOCIATE

San Francisco, CA

t. 415.646.4670

Email

## Practices

Insurance Law

## Education

**University of San Francisco School of Law**
(2020, J.D., Merit Plus Scholarship Recipient, USF Law Review, Research Assistant to Prof. Monalisa Vu, Moot Court Case Counsel, Advocate of the Year, Semi-Finalist)

**University of California – Berkeley**
(2016, B.A. in Interdisciplinary Studies, Big C Award Recipient)

Matt is a member of the Insurance and Financial Services Litigation Practice Group. Prior to joining Maynard, Matt was an associate in the insurance coverage and bad faith litigation practice group for a full-service law firm, focusing on insurance coverage and complex civil litigation, involving both first and third-party claims.

Matthew received his J.D. from the University of San Francisco School of Law where he served on the USF Law Review, Moot Court Case Counsel, and Research Assistant for Legal Research and Writing Professor Monalisa Vu. During his time in law school, Matt clerked for the Hon. Mary E. Wiss of the San Francisco Superior Court, the Hon. Beverly Wood of the Marin Superior Court and The Hon. Saundra B. Armstrong of the U.S. District Court for the Northern District of California. Matt earned his B.A. from the University of California at Berkley where he was a member of the Cal Rugby team between 2011-2016, earning his Big C Award in 2014.

$\rightarrow$ Experience in complex civil litigation in both State and Federal courts focusing on insurance coverage litigation, including contribution, subrogation, breach of contract and right to independent counsel, including both defending and prosecuting complaints and cross-complaints

$\rightarrow$ Engage in motion practice; draft pleadings in State and Federal court; propound and respond to discovery

$\rightarrow$ Appeared in Fresno Superior Court to argue opposition to demurrer; appeared in Southern District of California for an Early Neutral Evaluation Conference and for various discovery hearings

$\rightarrow$ Review first and third-party claims and draft corresponding reservation of rights, declination, and coverage opinions under homeowners, personal excess/umbrella, CGL, auto, and pollution policies

$\rightarrow$ Experience in analyzing claims under traditional policies of insurance subject to the California Insurance Code, as well as various liability coverage agreements and other similar contracts provided by entities pursuant to the California Government Code and California Labor Code

$\rightarrow$ Investigate first-party claims specifically related to fraud and draft corresponding position letters

$\rightarrow$ Monitor and coordinate with panel counsel and independent counsel regarding litigation strategy and potential settlement opportunities; provide advice to the client based on consultation with panel counsel regarding expense and indemnity reserves as well as projection outcome of litigation in both state and federal court

$\rightarrow$ Prepare mediation, early neutral evaluation, and settlement briefs; attend and successfully negotiate settlements ranging from $25,000 to $10,000,000+; draft corresponding settlement documents

# News

04.25.2022

MAYNARD ADDS DEPTH TO ITS ASSOCIATE RANKS ACROSS NATIONAL FOOTPRINT

# Speaking Engagements

→   February 3, 2021: draftsman of "How COVID-19 Has Changed The Insurance Landscape From An Underwriting and Claims Perspective," Annual Public Agency risk Management Association Conference (Virtual)

→   March 3, 2021: co-presenter of "What To Know About Indemnity And Hold Harmless Agreements, and Public Entities" 2021 SDRMA Spring Education Day (Virtual)





# Jamal B. Al-Haj

OF COUNSEL

San Francisco, CA

t. 415.646.4711

Email

## Practices

Mergers & Acquisitions

Private Equity & Venture Capital

Securities Regulation & Corporate Finance

Emerging Businesses

## Education

**The George Washington University Law School**
(2012, J.D., *cum laude*)

**George Mason University**
(2008, B.A., *cum laude*)

Jamal is a Of Counsel at Maynard Nexsen's in our Private Equity and Venture Capital, Mergers and Acquisitions, and Emerging Companies practice groups.

Jamal's practice includes a focus on both domestic and international mergers and acquisitions, private equity investment funds, joint ventures, equity and debt financings, and other corporate law matters. He also represents investment banking clients in financial advisory work as well as early, mid-, and late-stage private companies in the capacity of outside general counsel concerning matters of corporate governance, securities compliance, intellectual property, and executive compensation.

Jamal has acted as a trusted advisor to premier clients with a global presence, including serving as counsel on over $50 billion in M&A-related transactions in the telecommunications and pharmaceutical industries. He is a frequent speaker at symposiums on legal matters pertaining to members of the startup community. In addition, he is fluent in Dutch.

# Recognition

→ Best Lawyers: Ones to Watch for Leveraged Buyouts and Private Equity Law, Mergers and Acquisitions Law, Venture Capital Law (2021-present)

## News

**08.22.2022**
**200 Maynard Attorneys Recognized in The Best Lawyers in America© 2023**

**08.19.2021**
**179 Maynard Attorneys Recognized in The Best Lawyers in America© 2022**





# Norman Lau

COUNSEL

San Francisco, CA

t. 415.646.4706

Email

## Practices

Insurance Law

## Education

**University of California – Hastings College of Law**
(2007, J.D., Executive editor for the Hastings
Constitutional Law Quarterly)

**University of California – Berkeley**
(2004, B.A. with Honors)

Norman Lau is Of Counsel in the Firm's Insurance and Financial Services Litigation practice group. He has more than
10 years of experience and focuses his practice on insurance coverage disputes and counseling. Norman represents

insurance companies in California and federal courts. His substantial litigation experience encompasses first- and third-party bad faith litigation, inter-carrier contribution lawsuits, contribution and complaint in intervention actions, declaratory relief actions, and ERISA litigation.

In advising insurance company clients, Norman has experience preparing insurance coverage opinion letters and coverage position letters analyzing homeowners, auto, professional errors and omissions, and ISO form and manuscript general liability policies.

During law school, Norman was an intern with the California Department of Insurance where he assisted in administrative enforcement actions regarding improper claim practices and approval of policy language. Norman was a teaching assistant for the University's Moot Court Program and for a course on legal writing and research. During law school, Norman received CALI Awards in Legal Writing and Research and Insurance Law, the Witkin Award for Academic Excellence in Legal Writing and Research, and an honorable mention for the Best Oral Argument at a moot court competition.

In 2008, he co-authored "Earthquake Coverage: Then and Now" for Mathew Bender's Emerging Issues series.





# Sasha G. Rao

PARTNER

San Francisco, CA

t. 415.646.4702

Email

## Practices

Intellectual Property Litigation

Intellectual Property Protection

Emerging Businesses

Pharmaceutical, Biotechnology & Medical Devices

Patent Litigation

Private Equity & Venture Capital

Intellectual Property Law

Life Sciences

## Education

**New York University School of Law**

(1996, J.D.)

**Randolph Macon Woman's College**
(1993, B.A., *magna cum laude*)

Widely recognized as one of Silicon Valley's leading intellectual property lawyers, Sasha Rao has an established record of success for some of the world's top companies.

Chair of Maynard Nexsen's nationwide Intellectual Property Practice, Sasha regularly leads intellectual property and commercial litigation for her clients, including cases involving patents, trademarks, copyrights, trade secrets, unfair competition, and complex commercial disputes.

Sasha is also regarded as a trusted advisor by her clients, ranging from tech start-ups to the largest multinational companies, on corporate, transactional, policy and regulatory matters, including IP aspects of mergers and acquisitions.

Sasha has tried cases in district courts throughout the U.S. Her strong science background has enabled her to develop effective courtroom strategies for cases involving technologies ranging from pharmaceuticals, medical devices, and biotechnology to computers, Internet, Web 3.0 and software. In the technology realm, Sasha has defended some of Silicon Valley's most prominent companies in cases brought by competitors and non-practicing entities. In the realm of life sciences, Sasha has extensive experience in Hatch-Waxman/ANDA litigation and has represented generic and branded pharmaceutical companies in numerous patent cases.

Sasha's enthusiasm for cutting-edge technologies has led to her being recognized as one of the leading practitioners in the emerging fields of blockchain and crypto, artificial intelligence, and autonomy and robotics, including autonomous vehicles, drones, UAVs, urban air mobility, and connected and artificially intelligent systems. Her legal concentration includes regulatory, policy, intellectual property, data rights, and legal strategy.

Sasha is registered to practice in the United States Patent and Trademark Office. She also represents clients in Patent Office trials, including covered business method (CBM) and inter partes review (IPR) post-grant invalidity challenges available under the America Invents Act.

Sasha stands out as one of the top practitioners in her field. Chambers USA recognized Sasha in 2022 (and also 2021 and 2020) as a Leading Individual in Intellectual Property: Patent Litigation. She was also named by the Daily Journal in 2022 as one of California's Top Intellectual Property Lawyers (having previously received this recognition in 2020, 2019 and 2013) and in 2019 as one of California's Top Women Lawyers and Top Artificial Intelligence Lawyers.

Sasha was selected as an Intellectual Property Trailblazer for 2019 by the National Law Journal. The Recorder has recognized Sasha as one of the "Women Leaders in Tech Law" four times (2018, 2017, 2014 and 2013). She has been on the list of Super Lawyers since 2014 and was featured in the 2021 Northern California Super Lawyers Magazine. Sasha's success and talents in the IP field have also earned her recognition by The Best Lawyers in America© in the area of Litigation: Intellectual Property (2017-present). She was also recognized as a "Trailblazer" by the South Asian Bar Association – Northern California (2016); an "IP Star" by Managing IP magazine (2013–present); and one of the

"Top 250 Women in IP" by IP Stars (2013–present).

## Community & Professional

→ Stanford Program of Law, Science & Technology, Advisory Board

→ Bay Area IP Inn of Court

→ South Asian Bar Association – Northern California, Life Member

## Notable Cases and Successes

→ Largan Precision Co. Ltd v. Ability Opto-Electronics Technology Co. Ltd. et al. (E.D. Texas 2019) Represented HP in a patent infringement lawsuit filed in the Eastern District of Texas by optical lens maker Largan Precision Inc. Largan claimed that the lenses used in various HP webcams allegedly infringe four Largan optical lens patents. After successfully petitioning the U.S. Court of Appeals for the Federal Circuit for a Writ of Mandamus transferring the matter from the Eastern District of Texas to the Northern District of California, HP filed a motion for summary judgment of non-infringement in early 2021, leading to favorable settlement of the case.

→ High Sec Labs Ltd. v. iPGARD Inc et al. (D. Nev. 2020): Represented defendants iPGARD Inc. and SmartAVI Inc. in a patent infringement lawsuit filed by High Sec Labs Ltd., asserting infringement of four patents relating to cybersecurity products that are purchased by the U.S. government for cybersecurity compliance. Developed defendants' case strategy, including filing counterclaims against High Sec Labs asserting non-infringement and invalidity of the asserted patents and alleging antitrust violations. The case settled favourably in 2021.

→ Scanning Technologies Innovations LLC v. Square, Inc Represented Square in a patent infringement lawsuit relating to inventory tracking and point of sale systems. Plaintiff voluntarily dismissed the case after Square moved to dismiss the case for unpatentable subject matter.

→ Cypress Lake Software, Inc. v. HP Inc. Represented HP in a patent infringement lawsuit relating five patents concerning various computer functionalities. After case was successfully transferred from the Eastern District of Texas to the Northern District of California, the case has been stayed.

→ Square, Inc. v. Unwired Planet, LLC Represented Square in a covered business method petition related to mobile payments technology. Obtained PTAB decision invalidating all claims as unpatentable abstract ideas.

→ Broadband iTV, Inc. v. Hawaiian Telcom, Inc. et al Represented Hawaiian Telcom in multi-defendant patent infringement suit brought in the District of Hawaii by non-practicing entity involving delivery of video-on-demand content over the Internet. Obtained summary judgment opinion invalidating all of the asserted claims as unpatentable abstract ideas which was affirmed by the Federal Circuit. The U.S. Supreme Court later denied cert., sealing the win for Hawaiian Telecom.

→ Digital Verification Systems v. Square Inc. Represented Square in a 2017 patent infringement case related to Square's mobile payment platforms, achieving a dismissal with prejudice for Square.

→ North Star Innovations v HP Inc. Represented HP in an NPE case related to software components of HP mobile produces, achieving early exit for HP via successful indemnity claim.

→ Cypress Lake Semiconductor v. HP Inc. Represented HP in an NPE case related to software components of HP mobile products, achieving an early dismissal for HP.

→ Progme v. HP Inc. Represented HP in an NPE case related to software components of HP mobile products, achieving an early dismissal for HP.

→ MiMedx Group, Inc. v. NuTech Medical Inc. Ongoing representation of NuTech in a patent infringement lawsuit in the Northern District of Alabama relating to placental tissue grafts.

→ Gametek LLC v. Gameview Studios, LLC Represented Gameview Studios (subsidiary of DeNA) in a patent infringement lawsuit brought by Gametek involving in-game advertising and purchasing technology. Case settled favorably after successful transfer from the Southern to the Northern District of California.

→ Confidential client Represented a prominent Mountain View-based technology company in securing a summary judgment ruling of non-infringement in a Central District of California case involving four patents related to geo-location technology. Following a favorable claim construction ruling for our client that led directly into summary judgment motions, the Court granted our client's summary judgment motion of non-infringement of all asserted claims.

→ Eolas v. Adobe et al Represented a prominent Mountain View-based technology company defendant in securing victory in a case brought by Eolas Technologies Inc. on two patents that it contended cover all websites containing interactive content. After an invalidity trial involving multiple defendants, an Eastern District of Texas jury returned a verdict finding all asserted claims of both patents invalid.

→ Software Research Int'l v. HP Inc. Represented HP in a patent infringement lawsuit involving testing software for websites in the Northern District of California. Case dismissed by plaintiff after initial discovery.

→ Compaq Computer Corp. v. eMachines Represented Compaq in patent infringement action asserting computer systems patents in the Southern District of Texas. Obtained summary judgment of infringement of nine patents relating to personal computer subsystems. Obtained permanent injunction before trial against further infringement of two patents. Damages claim was in excess of $200 million before trebling. Case settled favorably through mediation two weeks before trial.

→ Lucent v. Periphonics Represented Lucent in patent infringement action asserting patents regarding interactive voice technology in the District of Delaware. Case settled favorably through mediation after the Markman hearing.

→ Tria Beauty, Inc. v. Radiancy, Inc. Represented Tria Beauty, an FDA-regulated medical device manufacturer, in a false advertising lawsuit brought against a competitor marketing an unregulated device with false claims. Case settled favorably before scheduled trial in the Northern District of California.

→ Purdue Pharma Products L.P. v. Par Pharmaceuticals Represented Purdue Pharma and associated companies in a Hatch-Waxman patent infringement lawsuit involving controlled-release tramadol in the District of Delaware.

→ Rexall Sundown, Inc. v. Weider Nutrition International, Inc. Represented Rexall in a patent infringement lawsuit

involving glucosamine and chondroitin nutraceuticals in the Western District of Wisconsin. Case settled after initial discovery.

→ Warner-Lambert Company v. Teva Pharmaceuticals USA Represented Teva Pharmaceuticals in ANDA patent infringement litigation brought under the Hatch-Waxman Act involving quinapril ACE inhibitor in the District of New Jersey. Case tried for inequitable conduct issues and the Court found no equitable conduct. The decision was affirmed on appeal.

## Recognition

→ Chambers USA: Leader in the area of Intellectual Property: Patent (2020-present)

→ Chambers USA: Recognized Practitioner in the area of Intellectual Property (2018 - 2019)

→ Daily Journal, Top Intellectual Property Lawyers (2013, 2019, 2020, 2021)

→ Daily Journal, Top Artificial Intelligence Lawyers (2019)

→ Daily Journal, Top Women Lawyers (2019)

→ National Law Journal, Intellectual Property Trailblazers (2019)

→ Women Leaders in Tech Law, The Recorder (2013-2014, 2017-2018)

→ Top 50 California Super Lawyers® (2019)

→ Most Influential Woman in Intellectual Property Law 2019 - USA (Acquisition International)

→ The Best Lawyers in America© for Litigation: Intellectual Property (2017 - present)

→ IP Star, Managing IP (2013 - present)

→ Patent Star and Trademark Star, Managing IP (2017 - present)

→ Who's Who Legal - Patents (2013 - present)

→ Top 250 Women in IP, IP Stars (2013 - present)

→ Trailblazer, South Asian Bar Association, Northern California (2016)

→ California Super Lawyers® for Intellectual Property Litigation (2014 - present)

→ Woman of Influence, Silicon Valley Business Journal (2013)

→ Rainmaker, MCCA's Diversity & The Bar (2012)

## News

08.22.2022

200 Maynard Attorneys Recognized in The Best Lawyers in America© 2023

06.02.2022

FORTY-THREE MAYNARD ATTORNEYS RECOGNIZED IN CHAMBERS USA GUIDE 2022

08.19.2021

179 Maynard Attorneys Recognized in The Best Lawyers in America© 2022

06.01.2021

Maynard Receives High Marks from Chambers and Partners in 2021

04.21.2021

Maynard's Sasha Rao Named To Daily Journal's Top Intellectual Property Lawyers For 2021

01.11.2021

MAYNARD ADDS ATTORNEY/PHD TO TOP-RANKED PATENT LITIGATION PRACTICE


# Speaking Engagements

$\rightarrow$ Practising Law Institute "Conditions for Patentability; Novelty: Inside and Outside the PTO – Cases and Decisions" Webinar (May 11, 2020)

$\rightarrow$ ChIPs Global Summit "Future of AI and Autonomous Vehicles" in Washington, D.C. (September 26, 2019)

$\rightarrow$ International IP Skills Summit (IIPSS) "US Patent Prosecution and Responding Under 35 U.S.C. 101 Subject Matter Rejection" Hyderaba, India (August 13-14, 2019)

$\rightarrow$ Unmanned Systems Canada Conference "Personal Airborne Transportation" in Toronto, Canada (November 3, 2018)

$\rightarrow$ AIRBUS Leadership University, IP Seminar "Technology-Centric M&A: The Specifics from Aerospace and Defense" in Toulouse-Blagnac, France (December 7, 2018)

$\rightarrow$ World IP Forum, "Section 101 and its Implications on Biotechnology and Pharmaceuticals in New Delhi, India (November 14-16, 2018)

$\rightarrow$ Daily Journal Patent Disputes Forum "The Role of Artificial Intelligence in Patent Litigation" in Menlo Park, California (April 18, 2018)

$\rightarrow$ General Aviation Manufacturers Association's Spring 2018 Policy and Legal Issues Committee "Electric Propulsion, Automation, and Liability: Regulatory and Legal Considerations" in Washington, D.C. (March 13, 2018)

$\rightarrow$ State Bar of California Office of Education "Envisioning Passenger Urban Air Mobility: Legal and Policy Considerations for Personal Aerial Vehicles" via webinar (January 16, 2018)

$\rightarrow$ AIAA SCITECH 2018 Conference "On Demand Mobility: Regulatory and Operational Challenges" in Kissimmee, Florida (January 10, 2018)

→ Unmanned Systems Canada "Personal Air Vehicles" in Toronto, Canada (November 3, 2017)

→ ITS World Congress "Automated Flying Cars" in Montreal, Canada (November 2, 2017)

→ Drone World Expo "The Role of IoT, Software & Platforms in the Commercial Drone Ecosystem" in San Jose, California (October 3, 2017)

→ AUVSI's Xponential Conference "NASA and the First Steps Toward Widespread UAS Integration" in Dallas, Texas (May 9, 2017)

→ TSG Drone Seminar "Air Traffic Panel" in San Francisco CA (January 24, 2017)

→ Tech Talk for Drone World Expo "The Intersection of Technical and Legal Considerations in Commercial Drones" in San Jose, California (November 16, 2016)

→ 13th Annual Stanford E-Commerce Best Practices Conference "Patent Litigation Update" at Stanford Law School in Palo Alto, CA (June 6, 2016)

→ 12th Annual Stanford E-Commerce Best Practices Conference "Patent Best Practices" at Stanford Law School in Palo Alto, CA (June 8, 2015)

→ The PTO and the Courts co-sponsored by the Stanford Program in Law, Science, & Technology, Samsung Electronics, and the Stanford Technology Law Review "Legal Differences in the PTO and the Courts" at Stanford Law School (April 17, 2015)

## Insights

→ "Patent invalidity post-Arthrex: much ado about nothing" in Daily Journal (November 19, 2019)

→ "Electric Urban Air Taxis: Science Fiction or Legal Matter of Fact?" in Daily Journal (May 23, 2019)

→ "Hikma v. Vanda Exaggerates Treatments' Patent Eligibility" in IPLaw360 (March 15, 2019)

→ Mentioned in Law360 article, "5 Insights From Airbus Group's Joshua Walker" (December 2, 2016)

→ Quoted in Daily Journal article, "High court to consider challenge how patent agency handles appeals" by Kevin Lee (January 19, 2016)

→ "Claim Construction: the PTAB versus district courts" in Daily Journal (April 17, 2015)

→ 2015 Roundtable Series, Intellectual Property in California Lawyer (March 2, 2015)

07.02.2021
GETTING TECH OFF THE GROUND: Airbus' flying car is just one of the cutting-edge projects Sasha Rao gets to work on

11.19.2019
Patent Invalidity Post-Arthrex: Much Ado About Nothing?

Case 2:21-cv-05832-GW-PD   Document 106-3   Filed 04/10/23   Page 69 of 74   Page ID
#:1562

03.15.2019
Hikma V. Vanda Exaggerates Treatments' Patent Eligibility

## Blog Posts

**Maynard Sponsors the California Leaders in Tech Law & Innovation**
Blog, 11.07.2019

**Sasha Rao Recognized as a Trailblazer in IP**
Blog, 07.23.2019

**Recent Wins for Maynard Nexsen's IP Litigation Team**
Blog, 07.23.2019





# Brandon Stroy

PARTNER

San Francisco, CA

t. 415.646.4703

Email

## Practices

Intellectual Property Litigation

Intellectual Property Protection

Pharmaceutical, Biotechnology & Medical Devices
Patent Litigation

Private Equity & Venture Capital

Emerging Businesses

Intellectual Property Law

Life Sciences

## Education

**Columbia University**

(2006, J.D.)

**Duke University**
(2002, M.E.M.)

**Duke University**
(2001, B.S.)

Brandon is a Partner in the Firm's Intellectual Property Protection Practice. His practice is centered on intellectual property counseling, litigation, and diligence.

Brandon's background in electrical and biomedical engineering enables him to advise clients across a range of complex technological areas. He has tried patent cases relating to pharmaceuticals, medical devices, computers, and software. He also advises clients on strategic and business issues related to intellectual property, including portfolio management and valuation and licensing.

Over the course of his career, Brandon has defended some of Silicon Valley's most prominent technology companies on patent matters. He has successfully represented clients in a variety of intellectual property matters including the Internet, data networking, encryption technologies, telecommunications, electrochemical sensors, semiconductors, medical devices, and automotive technologies. He also has extensive experience litigating intellectual property cases for life sciences companies, including Hatch-Waxman/ANDA litigation.

Brandon has also represented clients in matters before the United States Patent and Trademark Office, including post-grant proceedings under the America Invents Act.

Brandon was named a Northern California Rising Star for Intellectual Property and Intellectual Property Litigation by Super Lawyers in 2016 and 2017. He received his J.D. from Columbia Law School. He holds a M.E.M. and a B.S from Duke University.

## Community & Professional

→   SF Bay Area Inn of Court

→   Bar Association of San Francisco

→   American Bar Association

## Notable Cases and Successes

→   Broadband iTV, Inc. v. Hawaiian Telcom, Inc. et al. (D. Haw.) – Represented Defendant Hawaiian Telcom in multi-defendant patent infringement suit brought by non-practicing entity involving delivery of video-on-

demand content over the Internet. Obtained summary judgment opinion invalidating all of the asserted claims as unpatentable abstract ideas.

→ MiMedx Group, LLC v. NuTech Medical, Inc. (N.D. Ala.) Represents a leading producer of placental tissue grafts in a pending patent infringement suit involving graft manufacturing and tissue processing techniques.

→ Eolas Technologies, Inc. v. Adobe Systems, Inc. et al. (E.D. Tex.) - Represented a prominent Mountain View Internet company in major patent infringement suit involving embedded interactive Web content. Obtained trial verdict invalidating all asserted claims.

→ Novartis Vaccines & Diagnostics v. Wyeth Pharmaceuticals (E.D. Tex). – Represented Wyeth (Pfizer) in a patent infringement action related to the formulation of a recombinant gene therapy drug. Obtained favorable settlement for client.

→ Client Confidential (C.D. Cal.) - Represented prominent Mountain View Internet in patent infringement suit related to geolocation services, winning summary judgment of non-infringement of all asserted claims.

→ Lambda Optical Solutions, LLC v. Alcatel-Lucent SA et al. (D. Del.) - Represented Defendant Alcatel-Lucent in multi-defendant patent infringement suit brought by patent assertion entity involving optical network switching technology, as well as trade secret misappropriation and breach of contract counterclaims.

→ Agranat IP Licensing,LLC v. Hewlett-Packard Co. (C.D. Cal.) - Represented Defendant Hewlett-Packard in patent infringement suit involving embedded web server technology.

→ GameTek, LLC v. Gameview Studios, LLC (N.D. Cal.) - Represented Defendant Gameview Studios in patent infringement suit brought by patent assertion entity involving in-game transactions in mobile applications. Helped negotiate favorable settlement agreement.

→ Therasense, Inc. v. Becton, Dickinson & Co., et al. (N.D. Cal.) – Represented Defendants in a major patent infringement litigation involving blood glucose monitoring products and electrochemistry. Obtained complete victory at trial – including award of attorneys' fees - that was affirmed on appeal.

→ Medtronic v. Nova Biomedical (C.D. Cal.) – Represented Defendant in a patent infringement litigation involving blood glucose monitoring technology. Obtained victory for client at trial.

→ B.E. Technology, LLC v. Spark Networks, Inc. (W.D. Tenn.) - Represented Defendant Spark Networks in patent infringement action involving targeted advertisements in Web environments.

→ Synchrome Technology, Inc. v. LG Electronics, Inc. et al. (N.D. Ga.) - Represented Defendant LG Electronics in patent infringement suit involving computer disk drive technology.

→ Novartis Vaccines & Diagnostics, Inc. v. Wyeth (E.D. Tex.) - Represented Defendant Wyeth in patent infringement suit involving recombinant DNA used in Factor VIII blood protein replacement therapy.

→ Medtronic MiniMed, Inc. v. Nova Biomedical Corp. (C.D. Cal.) - Represented Defendant Nova Biomedical in trade secret misappropriation and breach of contract action related to design and manufacture of blood glucose monitors resulting in winning jury verdicts on all claims at trial.

→ Therasense, Inc. v. Becton, Dickinson & Co., et al. (N.D. Cal.) - Represented Defendants BD and Nova

Biomedical in patent infringement suit related to blood glucose monitor technology and test strip design and biochemistry. Invalidity and/or non-infringement of all asserted patent claims found at jury trial, and affirmed on appeal.

→ Muth Mirror Systems, LLC v. Gentex Corp. (E.D. Wisc.) - Represented Defendant Gentex in a patent infringement action related to electrochromic automotive mirror technology. Obtained judgment of invalidity, unenforceability, and non-infringement of all asserted claims at trial.

→ Washington v. Sandoval (N.D. Cal.) - Represented Plaintiff California prison inmate pro bono in First Amendment prisoners' rights action related to petitions for redress of grievances without fear of reprisal.

# Recognition

→ California Super Lawyers "Rising Star" in Intellectual Property and Intellectual Property Litigation (2016 and 2017)

# Blog Posts

**IP Litigation Team Secures District Court Win**
Blog, 01.14.2020

# PROOF OF SERVICE

**Travelers Commercial Insurance Company v. New York Marine and General Insurance Company**

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Fresno, State of California. My business address is 7647 North Fresno Street, Fresno, CA 93720.

On April 10, 2023, I served true copies of the following document(s) described as **DECLARATION OF JAMES P. WAGONER IN SUPPORT OF NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S MOTION TO DISQUALIFY MAYNARD COOPER & GALE, LLP** on the interested parties in this action as follows:

Nicholas J. Boos
Maynard Cooper & Gale
Two Embarcadero Center, Suite 1450
San Francisco, CA 94111
Telephone: (415) 646-4674
Email: nboos@maynardcooper.com

*Attorneys for Plaintiff Travelers Commercial Insurance Company*

Kirk Pasich
Kayla Robinson
Pasich LLP
10880 Wilshire Blvd., Suite 2000
Los Angeles, CA 90024
Telephone: (424) 313-7860
Email: kpasich@pasichllp.com
krobinson@pasichllp.com

*Attorneys for Non-Party Amber Heard*

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 10, 2023, at Fresno, California.

*/s/ Heather Ward*
Heather Ward