NICHOLAS J. BOOS (SBN 233399)
nboos@maynardnexsen.com
MAYNARD NEXSEN LLP
Two Embarcadero Center, Suite 1450
San Francisco, California 94111
Telephone: (415) 646-4700
Facsimile: (205) 254-1999

Attorneys for Plaintiff and Counter-Defendant
TRAVELERS COMMERCIAL INSURANCE
COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Travelers Commercial Insurance Company, a Connecticut Corporation,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>New York Marine and General Insurance Company, a Delaware Corporation,<br><br>　　　　　　Defendant. | Case No. 2:21-cv-5832-GW (PDx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TRAVELERS COMMERCIAL INSURANCE COMPANY'S OPPOSITION TO MOTION TO DISQUALIFY**<br><br>Date: May 11, 2023<br>Time: 8:30 a.m.<br>Judge: Hon. George H. Wu<br>Courtroom: 9D |
| New York Marine and General Insurance Company, a Delaware Corporation,<br><br>　　　　　　Counter-Claimant,<br><br>　　v.<br><br>Travelers Commercial Insurance Company, a Connecticut Corporation,<br><br>　　　　　　Counter-Defendant. | |

Maynard Nexsen LLP
Two Embarcadero Center, Suite 1450
San Francisco, CA 94111
(415) 646-4700

## TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................... 1

II.   FACTUAL BACKGROUND ....................................................................... 1

III.  LEGAL STANDARD ................................................................................. 3

IV.  ARGUMENT ............................................................................................... 4

  A.    The Motion Rests On A Faulty And Outdated Legal Premise. ................ 4

  B.    The Requirements of Rule 1.10(a) Are Met Such That Any Conflict Of Mr. Chipman Should Not Be Imputed To Maynard. ........................................... 7

    1.    Mr. Chipman's Participation, If Any, Was Insubstantial. ................... 8

    2.    Mr. Chipman Was Timely Screened. .................................................... 11

    3.    Prompt Notice Was Given To NY Marine. ........................................... 13

  C.    The Motion Identifies A Host Of Conduct That Does Not Give Rise To The Possibility Of Disqualification. ........................................................... 13

    1.    Mr. Chipman's Time Before Becoming A Lawyer. ............................. 14

    2.    Mr. Chipman's Work On Unrelated Matters At McCormick Barstow. 15

    3.    The Work Of Other McCormick Barstow Attorneys On The Matter At Issue. ......................................................................................................... 16

  D.    The Motion's Purpose Is Tactical, Further Justifying Denial. ............. 17

V.   CONCLUSION .......................................................................................... 18

Maynard Nexsen LLP
Two Embarcadero Center, Suite 1450
San Francisco, CA 94111
(415) 646-4700

# **TABLE OF AUTHORITIES**

## Cases

*Adams v. Aerojet-Gen. Corp.*, 86 Cal. App. 4th 1324, 1336, 104 Cal. Rptr. 2d 116, 124 (2001) ........................................................................................ 16

*Arizona All. for Cmty. Health Centers v. Arizona Health Care Cost Containment Sys.*, 47 F.4th 992, 999 (9th Cir. 2022) .................................................. 6

*Exp.-Imp. Bank of Korea v. ASI Corp.*, No. CV162056MWFJPRX, 2019 WL 8200603, at *10 (C.D. Cal. Jan. 16, 2019) ...................................... 12, 13

*Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 680 (2004) .................. 15

*Frazier v. Superior Ct.*, 97 Cal. App. 4th 23, 27, 118 Cal. Rptr. 2d 129, 132 (2002) ........................................................................................................ 16

*In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000) .............................. 1, 7

*In re Complex Asbestos Litig.*, 232 Cal. App. 3d 572, 592 (Ct. App. 1991) ........... 15

*Klein v. Facebook, Inc.*, No. 20-CV-08570-LHK, 2021 WL 3053150, at *4 (N.D. Cal. July 20, 2021) ...................................................................... 5, 8, 9, 11

*Maria De Jesus Cruz Ramos v. Costco Wholesale Corp., et al.,* Case no. CV 22-3579- MWF (AFMx), 2022 WL 18278604 *2 (C.D.Cal. Nov. 9, 2022) ............... 5

*Moreno v. Autozone, Inc.*, No. C05-04432 MJJ, 2007 WL 4287517, at *2 (N.D. Cal. Dec. 6, 2007) ........................................................................................ 17

*Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985) ............................................................................................ 1, 4

*People ex rel. Dep't of Corporations v. SpeeDee Oil Change Sys., Inc. ("SpeeDee Oil")*, 20 Cal. 4th 1135, 1145 (1999) ..................................................... 3, 4, 5

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) ........................... 3

*Sharp v. Next Entm't, Inc.*, 163 Cal. App. 4th 410, 424 (2008) ................................ 4

*Sherman v. CLP Res., Inc.*, No. CV 12-8080-GW(PLAX), 2015 WL 13542762, at *2 (C.D. Cal. Feb. 4, 2015) ......................................................................... 3

*Sierra v. Costco Wholesale Corp.*, No. 22-CV-01444-JSW, 2022 WL 4454359, at *4 (N.D. Cal. Sept. 23, 2022) ...................................................................... 5

*UMG Recordings, Inc. v. MySpace, Inc.*, 526 F.Supp.2d 1046, 1062 (C.D. Cal. 2007) ............................................................................................................ 17

*Victaulic Co. v. Am. Home Assurance Co.*, 80 Cal. App. 5th 485, 506–07 (2022) .. 15

*Visa U.S.A., Inc. v. First Data Corp.*, 241 F.Supp.2d 1100, 1104 (N.D. Cal. 2003) .. 4

*White v. Superior Court*, 98 Cal.App.3d 51, 55 (1979) ............................................ 17

*William H. Raley Co. v. Superior Court*, 149 Cal. App. 3d 1042, 1048 (1983) ......... 4

**Statutes**

C.D. Cal. L.R. 83-3.1.2 ................................................................................................ 3

Cal. R. Prof'l Conduct 1.01(k) ............................................................................. 11, 12

California Rule of Professional Conduct 1.10(a)(2) ..................................... 1, 4, 5, 7

TRAVELERS COMMERCIAL INSURANCE COMPANY'S OPPOSITION TO MOTION TO DISQUALIFY

Plaintiff and Counter-Defendant Travelers Commercial Insurance Company ("Travelers") responds in opposition to Defendant and Counter-Claimant New York Marine and General Insurance Company's ("NY Marine") Motion to Disqualify Maynard Cooper & Gale, LLP (this firm is referred to herein as "Maynard").[1] (ECF No. 106) ("the Motion").

## I.     INTRODUCTION

Under the "particularly strict judicial scrutiny" accorded to disqualification motions, NY Marine's Motion serves little more than "tactical purposes . . . ." *Optyl Eyewear Fashion Int'l Corp. v. Style Companies, Ltd.*, 760 F.2d 1045, 1050 (9th Cir. 1985). The Motion relies upon outdated legal standards no longer supported by the applicable California Rules of Professional Conduct, points to strained factual assertions and innuendo, and presents a host of arguments that do not provide any basis for disqualification, revealing the tactical intent of the Motion. In any event, the "automatic disqualification" NY Marine seeks is not "the only way to ensure that lawyers honor their duties of confidentiality and loyalty." *In re Cnty. of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000). Instead, and despite Mr. Chipman having no recollection of performing any work on the instant litigation or any matter associated with it, Travelers' counsel promptly and effectively screened Matthew A. Chipman from the matter in accordance with the principles of California Rule of Professional Conduct 1.10(a)(2). As such, disqualification is not appropriate here.

## II.     FACTUAL BACKGROUND

Travelers filed this action on July 20, 2021. (ECF No. 1.) At that time, and up until February 28, 2023, Travelers was represented in this matter by Mark D. Peterson, Kathleen O. Peterson, and Amy Howse of Cates Peterson, LLP. (Declaration of Nicholas J. Boos ("Boos Decl."), ¶ 2.) On February 17, 2023,

---

[1] As NY Marine pointed out (ECF No. 106-2, n. 1) Maynard Cooper & Gale, LLP is now Maynard Nexsen LLP. A Notice has been filed with the Court. (ECF No. 107.)

Maynard Nexsen LLP
Two Embarcadero Center, Suite 1450
San Francisco, CA 94111
(415) 646-4700

Travelers contacted Nicholas J. Boos of Maynard about the possibility of assuming the representation. On February 28, 2023, Travelers sought permission to substitute Mr. Boos as counsel in place of the attorneys at Cates Peterson, LLP. (ECF No. 103.) The Court granted that request on the same day. (ECF 104).

Matthew Chipman originally worked for McCormick, Barstow, Sheppard, Wayte & Carruth LLP ("McCormick, Barstow") as a law student. (Declaration of Matthew A. Chipman "Chipman Decl.", ¶ 2.) Following his graduation, Mr. Chipman became an employee of McCormick, Barstow on or about October 13, 2020. (*Id*., ¶ 3.) At this time, Mr. Chipman was not a lawyer and did not become one until January 13, 2021, when he was admitted to the California Bar. (*Id*., ¶¶ 3-4.) Mr. Chipman worked at McCormick Barstow, Sheppard, Wayte & Carruth LLP ("McCormick Barstow") as an associate. (*Id*., ¶ 3.) His duties there consisted of assisting partners on assigned projects. (*Id*., ¶ 5.) Mr. Chipman left the employ of McCormick, Barstow on April 1, 2022. (*Id*., ¶ 6.) Mr. Chipman began his employment with Maynard on April 11, 2022. (*Id*., ¶ 7.). Maynard has approximately 550 attorneys in 23 offices across the country. (Boos Decl., ¶ 9.)

On February 18, 2023, as part of Maynard's conflict check process, Mr. Boos spoke with Mr. Chipman regarding the fact that McCormick, Barstow was representing NY Marine in this matter. (Boos Decl, ¶ 4); (Chipman Decl., ¶ 8.) Mr. Boos asked if he worked on the matter while at McCormick Barstow. (Chipman Decl. ¶ 8.) Mr. Chipman was aware that McCormick Barstow represented NY Marine in the matter at issue, but said he had not worked on it. (*Id*., ¶ 8); (Boos Decl., ¶ 4.) To this day, Mr. Chipman has no recollection of performing any work on the matter while employed by McCormick, Barstow. (Chipman Decl., ¶¶ 11, 14.) Mr. Chipman does not recall billing any amount of time on such a matter. (*Id*., ¶ 14.) Mr. Chipman does not recall any phone calls or contact with NY Marine regarding the matter. (*Id*., ¶ 11.) Mr. Chipman recalls a dinner with a representative of NY Marine at which Mr. Chipman was the most junior member of McCormick

Barstow, but he has no recollection of what was discussed. (*Id*., ¶ 12.) Prior to Mr. Boos having this conversation with Mr. Chipman, Mr. Chipman did not access any documents obtained by Maynard in the course of the representation, did not send or receive any emails containing information about the case, as he did not know Maynard had been contacted about representing Travelers in the instant matter. (Chipman Decl. , ¶ 9.)

Mr. Chipman has not worked on this matter at Maynard. No documents or communications regarding the matter have been directed to him, and there have been no communications with Mr. Chipman regarding the substance of the matter. (Boos Decl., ¶ 4); (Chipman Decl., ¶ 10.) Following the implementation of a formal technological screen, Mr. Chipman is unable to access any electronic files relating to the matter (there are no paper files related to the matter). (Boos Decl., ¶¶ 5,6.) Maynard's relevant staff in the practice group have been instructed not to communicate with Mr. Chipman regarding the matter. (Boos Decl., ¶ 7.) They will continue to be reminded not to do so every 60 days. (Boos Decl., ¶ 7.)

### III.  LEGAL STANDARD

"The Central District has adopted California's ethical standards governing attorney conflicts of interest." *Sherman v. CLP Res., Inc.*, No. CV 12-8080-GW(PLAX), 2015 WL 13542762, at *2 (C.D. Cal. Feb. 4, 2015) (citing C.D. Cal. L.R. 83-3.1.2; *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009)). "When considering a disqualification motion based on alleged conflicts of interest, the court's 'paramount concern' is always preserving public trust in the legal profession's integrity." *Id*. (quoting  *People ex rel. Dep't of Corporations v. SpeeDee Oil Change Sys., Inc. ("SpeeDee Oil")*, 20 Cal. 4th 1135, 1145 (1999)). "But the court must also be cognizant of other considerations, including the impact disqualification may have on a party's right to chosen counsel, an attorney's interest in representing a client, and the financial burden on a client of replacing disqualified counsel." *Id*. (citing *William H. Raley Co. v. Superior Court*, 149 Cal.

App. 3d 1042, 1048 (1983)). "Consequently, courts must evaluate disqualification motions holistically 'to ensure that literalism does not deny the parties substantial justice.'" *Id*. (quoting *SpeeDee Oil*, 20 Cal. 4th at 1144). "And because disqualification motions are 'especially prone to tactical abuse,' [] and "strongly disfavored," [] the court must subject their evidence and arguments to "particularly strict judicial scrutiny[.]" *Id*. (quoting *Sharp v. Next Entm't, Inc.*, 163 Cal. App. 4th 410, 424 (2008); *Visa U.S.A., Inc. v. First Data Corp.*, 241 F.Supp.2d 1100, 1104 (N.D. Cal. 2003); *Optyl Eyewear Fashion Int'l Corp.*, 760 F.2d at 1050 (citations and quotations omitted)).

## IV.   ARGUMENT

### A. The Motion Rests On A Faulty And Outdated Legal Premise.

NY Marine's Motion argues repeatedly that any purported conflict here requires "automatic" disqualification of every attorney at Maynard. (ECF 106-2, 2, 8, 13, 14, 15, 16, 18.) However, the Motion ignores changes to the applicable imputed conflicts rule—California Rule of Professional Conduct 1.10—that was added in 2018. Cal. R. Prof'l Conduct 1.10.

The current Rule 1.10 provides:

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rules 1.7 or 1.9, unless:

. . .

(2) the prohibition is based upon rule 1.9(a) or (b) and arises out of the prohibited lawyer's association with a prior firm, and
(i)   the prohibited lawyer did not substantially participate in the same or a substantially related matter;
(ii)  the prohibited lawyer is timely screened from any participation in the matter and is apportioned no part of the fee therefrom; and
(iii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this rule, which shall include a description of the screening procedures employed; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures.

Cal. R. Prof'l Conduct 1.10.

Under the new rule, the analysis proceeds differently. Now, courts recognize the general rule for imputation when an attorney who participates in a matter with a prior law firm moves to a firm adverse to the prior firm's client on a substantially similar matter. *See Klein v. Facebook, Inc.*, No. 20-CV-08570-LHK, 2021 WL 3053150, at *4 (N.D. Cal. July 20, 2021) ("When a conflict of interest requires an attorney's disqualification from a matter, the disqualification normally extends vicariously to the attorney's entire law firm.") (quoting *SpeeDee Oil*, 20 Cal. 4th at 1139). However, courts separately analyze whether, despite a potential conflict arising from the lawyer's actions in relation to the representation, the requirements of Rule 1.10(a)(2) are met. *See, e.g.*, *id.*

The cases cited by NY Marine here almost exclusively predate the changes to the express provisions of the new Rule. The only two cases that post-date the Rule's changes performed this very analysis. *See* (ECF No. 106-2, 10-11, 19) (citing *Sierra v. Costco Wholesale Corp.*, No. 22-CV-01444-JSW, 2022 WL 4454359, at *4 (N.D. Cal. Sept. 23, 2022)); (*Id.*, 19) (citing *Maria De Jesus Cruz Ramos v. Costco Wholesale Corp., et al.,* Case no. CV 22-3579- MWF (AFMx), 2022 WL 18278604 *2 (C.D.Cal. Nov. 9, 2022)). Both cases involved the same disqualified lawyer, who had a uniquely pervasive relationship with the defendant in similar slip and fall litigation. *Sierra*, 2022 WL 4454359, at *1 (disqualified attorney "handled every aspect of the Costco cases on which he worked"); *Maria De Jesus Cruz Ramos*, 2022 WL 18278604 *1 (disqualified attorney "handled virtually every aspect of Costco's files."). Despite this lawyer's conflict due to personal involvement, the court in *Sierra* addressed "the question [of] whether [the attorney's] disqualification is imputed to [his current firm]." 2022 WL 4454359, at *4. Similarly, the court in *Maria De Jesus Cruz Ramos* asked whether "the presumption of vicarious disqualification of his law firm ha[d] been rebutted." 2022 WL 18278604 *2. In sum, the updated Rule 1.10 now provides that courts must

analyze whether the requirements 1.10(a)(2) are met, despite an attorney's adverse involvement in a related matter at a prior firm.

Aside from these cases applying the updated Rule 1.10, there are several other pieces of evidence that demonstrate the required analysis of the 1.10(a)(2) screening requirements despite a lawyer's personal involvement, *i.e.*, the lack of an automatic imputation. First, the text of Rule 1.10(a)(2)(i) supports this conclusion. The Rule contemplates that the prohibition on the lawyer whose conflict is to be imputed is based upon a substantially similar or identical matter at a prior firm. Subsection (a)(2)(i) further requires—for the exception to apply—that the lawyer whose conflict is to be imputed may not have "substantially participate[d]" in the matter at the prior firm. This requirement is crucial to the conclusion that there is no automatic imputation and disqualification based upon the lawyer's personal involvement in the prior firm. If the Rule was intended to provide for automatic exclusion, there would be no need to qualify the level of the lawyer's prior participation. Under the construct urged by NY Marine, any participation in the same or substantially similar matter would lead to automatic disqualification. This would leave the "substantially participate" language entirely superfluous. This runs against the Court's duty to make "every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *Arizona All. for Cmty. Health Centers v. Arizona Health Care Cost Containment Sys.*, 47 F.4th 992, 999 (9th Cir. 2022) (citations and internal quotation marks omitted). In this way, the very language of Rule 1.10(a) demonstrates that personal participation in a matter at a prior firm does not provide automatic disqualification of everyone at the lawyer's current firm.

The Comments to the Rule provide for the same conclusion. Comment 1 sets out a number of factors to be used "[i]n determining whether a prohibited lawyer's previous participation was substantial . . . ." Cal. R. Prof'l Conduct 1.10, cmt. [1]. Again, under NY Marine's reading this would be a completely useless comment;

once the lawyer has been personally involved, his later firm would be automatically disqualified. There would be no need to determine the substantiality of the involvement in the matter. The existence of the comment is further proof that there is no automatic disqualification.

The Rule change also reflects the broader trends recognizing the changing legal landscape. For example, in *In re Cnty. of Los Angeles*, the Ninth Circuit found that "[t]he vicarious disqualification of an entire firm can work harsh and unjust results, particularly in today's legal world where lawyers change associations more freely than in the past." 223 F.3d 990, 996 (9th Cir. 2000). "A rule that automatically disqualifies a firm in all cases substantially related to the tainted lawyer's former representation could work a serious hardship for the lawyer, the firm and the firm's clients." *Id*. This is what the new Rule 1.10 purports to do. Like the Model Rules before it, Rule 1.10 "recognize[s] that the increased mobility of lawyers between firms calls for a less rigorous application of the disqualification rules." *Id*. (citing *Model Rules of Professional Conduct,* Rule 1.9 cmt. 3 (1983)). In sum, the language of Rule 1.10, the cases applying it, and the broader trends in analyzing conflicts all demonstrate that automatic disqualification is not appropriate here, even if Mr. Chipman had some involvement on the matter at McCormick Barstow. Instead, the Court should and, indeed, must determine whether—using the requirements of Rule 1.10(a)—the conflict should be imputed to Maynard, and whether disqualification is therefore appropriate.

## B. <u>The Requirements of Rule 1.10(a) Are Met Such That Any Conflict Of Mr. Chipman Should Not Be Imputed To Maynard.</u>

Rule 1.10(a)(2) has three requirements.[2] The lawyer must not have "substantially participate[d] in the same or a substantially related matter;" must be

---

[2] Facially, any conflict Mr. Chipman has "arises out of [his] association with a prior firm." Cal. R. Prof'l Conduct 1.10(a)(2).

"timely screened"[3]; and the latter firm must "promptly" provide notice in writing to the "former client" with "a description of the screening procedures employed; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures." Cal. R. Prof'l Conduct 1.10(a)(2). The circumstances here meet all of these requirements.

### 1.  Mr. Chipman's Participation, If Any, Was Insubstantial.

All of the evidence here, including NY Marine's vague assertions, point to the same conclusion: Mr. Chipman had little, if any—let alone substantial—participation in the matter while employed at McCormick Barstow. "The Comments to Rule 1.10(a)(2) identify four factors that should be considered in determining whether a prohibited lawyer's previous participation was substantial: '[1] the lawyer's level of responsibility in the prior matter, [2] the duration of the lawyer's participation, [3] the extent to which the lawyer advised or had personal contact with the former client, and [4] the extent to which the lawyer was exposed to confidential information of the former client likely to be material in the current matter.'" *Klein v. Facebook, Inc.*, No. 20-CV-08570-LHK, 2021 WL 3053150, at *5 (N.D. Cal. July 20, 2021) (citing Cal. R. Prof'l Conduct 1.10, cmt. [1]).

NY Marine does not claim Mr. Chipman had *any* responsibility for the case while at McCormick Barstow, much less a level of responsibility that would impute any conflict to 549 other attorneys at Maynard.  Instead, NY Marine focuses on a single "assignment" that was supposedly performed in one day.   Notably, despite pointing to this single assignment as the primary basis for its Motion, NY Marine makes no mention of whether Mr. Chipman billed any time for this work or whether NY Marine paid McCormick Barstow for the work.  In any event, the claimed involvement was infinitesimally small considering the context.  Mr.

---

[3] This requirement also requires the lawyer to be "apportioned no part of the fee" from the representation. Cal. R. Prof'l Conduct 1.10(a)(2)(ii). Mr. Chipman meets this requirement because he is paid solely via salary and will not apportioned any fee generated in this matter. (Boos Decl., ¶ 8.)

Chipman worked at that firm as an attorney for more than a year. (Chipman Decl., ¶¶ 4, 6.) His entire time there was spent accomplishing tasks assigned by supervising attorneys. (*Id*., ¶ 5.) Mr. Chipman billed more than 2,000 hours during his time at McCormick Barstow.   (*Id*. ¶ 14.)  And despite having no recollection of billing any time on this matter, it appears that Mr. Chipman may have performed—at most—one discrete piece of legal work that took him—at most—one day to complete.[4] (ECF No. 106-2, 4.); (ECF No. 106-4, Rasmussen Decl., ¶ 5) (ECF No. 106-3, Wagoner Decl., ¶ 7.) The remainder of Mr. Chipman's purported interactions with the matter appear to be conversations where Mr. Chipman was—at most—a passive participant and mostly in social settings. None of the assertions by NY Marine suggest Mr. Chipman was directing the strategy discussed. This factor weighs against a finding of substantial participation. *See Klein*, 2021 WL 3053150, at \*5 (factor "weighs against a finding of substantial participation because [disqualified attorney] was a fourth-year associate who was primarily assisting . . .a partner").

The "duration" factor also weighs heavily against substantial involvement. Again, the only actual legal assignment Mr. Chipman worked on in connection with the matter took him—at most—one day. As noted above, it is telling that NY Marine has not disclosed how many hours Mr. Chipman spent on the matter, as this is the most important factor in this determination. *Klein*, 2021 WL 3053150, at \*5 ("800 hours, or three-quarters of the time he billed during that period" "weighs heavily" in favor of finding substantial involvement).  Either Mr. Chipman did not bill any time doing this "legal work" or the time was so miniscule that NY Marine has chosen not to disclose it. Mr. Chipman's purported occasional presence in

---

[4] Without the benefit of having access to even redacted copies of the March 1 and 2 email exchanges referenced in NY Marine's Motion, access to any billing records reflecting such work, or Mr. Chipman's recollection of having performed the work (of which he has none), Travelers cannot concede any work was actually ever performed on this matter by Mr. Chipman.

conversations where the matter was discussed is, at best, imprecise as to timing ((ECF No. 106-5, Rasmussen Decl., ¶ 8); (ECF No. 106-9, Declaration of Lejf E. Knutson, Decl. ¶ 4.) (describing a "camping trip during the summer of 2021.")), subject ((*Id*.); (ECF No. 106-2, 5) ("various factual issues bearing on NY Marine's legal position, as well as their thoughts concerning actual or potential tactical and legal strategies respecting the litigation") (citing (ECF No. 106-3, Wagoner Decl., ¶ 8); (ECF No. 106-4, Rasmussen Decl., ¶ 6); (ECF No. 106-6, Declaration of Graham Van Leuven ¶ 3); (ECF No. 106-5 Declaration of Ellen Fine, ¶ 7)), or evidentiarily problematic, providing no indication that Mr. Chipman was privy to any information (ECF No. 106-4, Rasmussen Decl., ¶ ("generally" . . . this was a high-profile matter, and unsurprisingly, it was routinely discussed"). In sum, the duration of Mr. Chipman's involvement was—in terms of actual legal tasks—was one day. This weighs against a finding of substantial involvement.

The third factor regarding advice to the client is similarly not indicative of substantial involvement. Again, NY Marine has identified exactly one meeting with its representative that Mr. Chipman attended: a dinner at a restaurant.  (ECF No. 106-2, 5) (citing (ECF No. 106-3, Wagoner Decl., ¶ 8); (ECF No. 106-4, Rasmussen Decl., ¶ 6); (ECF No. 106-6, Declaration of Graham Van Leuven ¶ 3); (ECF No. 106-5 Declaration of Ellen Fine, ¶ 7).)[5] Additionally, though NY Marine asserts "the attendees all discussed" the matter (ECF No. 106-2, 5), it is factually not clear how Mr. Chipman could have done so, since he was not given his lone assignment on the matter until the following month (ECF No. 106-4, Rasmussen Decl., ¶ 6). In any event, Mr. Chipman's one meeting with the client where the matter was discussed—prior to any actual involvement by him—paired with the

---

[5] Again, NY Marine's Declarations are more telling for what they omit than what they contain: None of the dinner attendees claim any McCormick Barstow attorney billed his or her time during that dinner or that NY Marine paid for any legal services rendered during that dinner despite claiming that legal strategy related to this matter was discussed during the dinner.

fact that Mr. Chipman had been a lawyer for a little over a month at the time (Chipman Decl., ¶ 4) does not show substantial involvement. *See Klein*, 2021 WL 3053150, at *6 (third factor weighed "slightly against a finding of substantial participation" despite attorney's "regular phone calls" with client representative).

The fourth factor additionally weighs against substantial participation. In evaluating the exposure to confidential information, the court considers the activities taken by the lawyer, and analyze how much confidential information may be transmitted. In this case, there is a total void of such information. NY Marine's Motion and materials wholly fail to identify what information and documents were provided to Mr. Chipman or what Mr. Chipman actually did. If these were publicly available documents or the policy itself, the already dubious substantial participation is even lower. Further, this was a high profile trial of which the public was generally aware, including many of the facts at issue.  (ECF No. 106-4, Rasmussen Decl., ¶ 8.) The universe of nonpublic knowledge was comparatively smaller than in a typical case.  In sum, Mr. Chipman's limited participation was far from working with experts, attending weekly meetings and calls, or receiving thousands of emails.  *Klein*, 2021 WL 3053150, at *6. It appears that – at most - Mr. Chipman's review consisted of initial and very limited review of some basic documents. In all, the factors weigh against a finding of substantial participation.

### 2.  Mr. Chipman Was Timely Screened.

Contrary to NY Marine's representations, Mr. Chipman was timely screened from the matter, thus fulfilling the Rule 1.10 requirement. The Rules of Professional Conduct define what constitutes an adequate screen:

> "Screened" means the isolation of a lawyer from any participation in a matter, including the timely imposition of procedures within a law firm* that are adequate under the circumstances (i) to protect information that the isolated lawyer is 2 obligated to protect under these rules or other law; and (ii) to protect against other law firm* lawyers and nonlawyer personnel communicating with the lawyer with respect to the matter.

Cal. R. Prof'l Conduct 1.01(k). Thus, the effectiveness of a screen is judged "from

case to case." *Exp.-Imp. Bank of Korea v. ASI Corp.*, No. CV162056MWFJPRX, 2019 WL 8200603, at *10 (C.D. Cal. Jan. 16, 2019) (citing *Kirk*, 183 Cal. App. 4th at 810). The minimum requirements are that the screen was created "as soon as the conflict was revealed, rather than waiting for the court to impose screening measures" and that there were "preventative measures" to foreclose the possibility transmission of confidential information. *Id*. (citing *Kirk*, 183 Cal. App. 4th at 810). Courts also consider other factors including, relevant here, "prohibitions against and sanctions for discussing confidential matters [and] established rules and procedures preventing access to confidential information and files." *Id.* (further citations omitted).

The screen is timely if created "as soon as the conflict was revealed." Here, Maynard created a preliminary screen ***before*** any conflict was revealed. Again, Mr. Boos and Mr. Chipman discussed McCormick Barstow's representation in the matter first on February 18, 2023. (Boos Decl., ¶ 4.); (Chipman Decl., ¶ 8.) During this conversation, Mr. Chipman had no recollection of working on the matter and said so. (Boos Decl., ¶ 4.); (Chipman Decl., ¶ 8.)[6] Accordingly, at this time, there was no conflict because Mr. Chipman had not—to anyone at Maynard's knowledge—participated "in the same or a substantially related matter" at McCormick Barstow. Despite the absence of any apparent conflict, Maynard took preventative measures designed to prevent Mr. Chipman from working on the matter. Namely, Mr. Chipman was told that he would not be working on the matter. (Boos Decl., ¶ 4); (Chipman Decl., ¶ 8.) Again, the touchstone of a screen is whether it is "adequate under the circumstances." Cal. R. Prof'l Conduct 1.01(k). The preventative measure of communicating to Mr. Chipman that he would not work on the matter—and abiding by that communication—were adequate, given

---

[6] If not already clear, Mr. Chipman's lack of any recollection was reasonable as the only purported work he performed on the case took—at most—one day before the filing of the instant action. (ECF No. 106-4, Rasmussen Decl., ¶ 5); (ECF No. 1)

that there was no former client conflict apparent at this time.

Further, when NY Marine identified in its March 2, 2023 letter the apparent limited amount of work Mr. Chipman performed on the matter while under the employ of McCormick Barstow (ECF No. 106-3, Wagoner Decl., ¶ 12, Ex. 2) Maynard took additional steps. These included, relevant to the additional factors, setting out a prohibition to all affected staff that Mr. Chipman was not to be included in any communications or documents regarding the matter (Boos Decl., ¶ 7), setting up a system of reminders every sixty days of the prohibition (*Id*.), and—most importantly—implementing procedures by which it became impossible for Mr. Chipman to access files related to the matter (*Id*.,¶ 5). These procedures were implemented when the potential conflict was revealed by NY Marine's letter. *Exp.-Imp. Bank of Korea v. ASI Corp.*, No. CV162056MWFJPRX, 2019 WL 8200603, at *10 (C.D. Cal. Jan. 16, 2019) ("In other circumstances, four days may be timely."). The measures were adequate given the lack of involvement and the functional inability of Mr. Chipman to access confidential information relating to the matter due to the screen.

### 3.  Prompt Notice Was Given To NY Marine.

NY Marine does not appear to contend that this requirement is not met and it would not be logical to do so. The notice was provided promptly: ten days after Maynard had joined the case (ECF No.103), and one week after NY Marine's letter (ECF No. 106-3, Wagoner Decl., ¶ 12, Ex. 2). The letter provided all of the information about the procedures put in place and—as required—offered to answer any additional questions. The notice fulfilled all of Rule 1.10's requirements. Thus, any conflict that Mr. Chipman has was not imputed to Maynard, and disqualification is inappropriate.

### C.  <u>The Motion Identifies A Host Of Conduct That Does Not Give Rise To The Possibility Of Disqualification.</u>

Indicative of a "kitchen-sink approach," NY Marine's Motion points to a variety of purported factual conduct that has no possibility of giving rise to

disqualification of Maynard here. Namely, references to Mr. Chipman's activities prior to becoming a lawyer, the fact that Mr. Chipman performed work on matters on behalf of NY Marine but not related to this matter, and the fact that others at McCormick Barstow worked on the instant matter do not provide any recognized basis for disqualification here.

### 1. Mr. Chipman's Time Before Becoming A Lawyer.

It is undisputed that Mr. Chipman worked for McCormick Barstow as a law student in May through August of 2019. (Chipman Decl., ¶ 2); (ECF No. 106-2, 3.) It is also undisputed that Mr. Chipman worked for McCormick Barstow from October 13, 2020 to January 13, 2021. (Chipman Decl., ¶ 3, 6); (ECF No. 106-2, 3.) It is further undisputed that during this time, Mr. Chipman was not an attorney. (Chipman Decl., ¶ 4); (ECF No. 106-2, 3, n. 3.) NY Marine attempts to make some unspecified innuendo regarding these uncontested matters; noting, "[o]n October 13, 2020—the same day the Associate began his employment at McCormick Barstow—NY Marine retained McCormick Barstow to represent it in connection with certain coverage disputes between itself, Travelers and Ms. Heard . . . ." (ECF No. 106-2, 15.) However, the only instance in which Mr. Chipman is alleged to have had any work related to this matter while employed at McCormick Barstow is in March 2021. (ECF No. 106-2, 4); (ECF No. 106-4 ("Rasmussen Decl"), ¶ 5); (ECF No. 106-3 ("Wagoner Decl."), ¶ 7.)

Logically, this string of facts presents no basis for disqualification. First, by virtue of his lack of any assignment related to the matter, there was no confidential information obtained by then-non-attorney Mr. Chipman, and thus no reason to disqualify him for actions during this period. Indeed, the camping trip and dinner that NY Marine references—to the extent they are relevant at all—were not until "the summer of 2021" and February 2022, well after Mr. Chipman became an attorney. (ECF No. 106-4 ("Rasmussen Decl"), ¶¶ 6,8.)  Further, Comment [2] to California Rule of Professional Conduct 1.10 provides that the Rule does not

"prohibit representation if the lawyer is prohibited from acting because of events before the person became a lawyer, for example, work that the person did as a law student." Indeed, the imputation of conflicts arising through non-lawyers only applies when the non-lawyer obtains confidential information. *In re Complex Asbestos Litig.*, 232 Cal. App. 3d 572, 592 (Ct. App. 1991). In short, the entire time period before Mr. Chipman became a lawyer is irrelevant for present purposes because during such time, he obtained no confidential information regarding the instant matter. No conflict of interest is presented.

### 2.  Mr. Chipman's Work On Unrelated Matters At McCormick Barstow.

In further tacit acknowledgment that Mr. Chipman performed little to no actual legal work on the instant matter, NY Marine's Motion again attempts to muddy the waters by—in two separate footnotes—noting that Mr. Chipman "performed work on several other NY Marine files" apart from the current matter. (ECF No. 106-2, 4, n. 6.); (*Id.*, 2, n. 2.) ("During this time, McCormick Barstow was also handling approximately 75 other files for NY Marine, some of which files the Associate also assisted in handling.") The reason for NY Marine's burying such half-baked suggestions in footnotes in unsurprising, given that Mr. Chipman's work on unrelated NY Marine matters cannot give rise to a conflict in this case.

California courts have "not adopt[ed] the so-called playbook approach." *Farris v. Fireman's Fund Ins. Co.*, 119 Cal. App. 4th 671, 680 (2004). Instead, "[t]o create a conflict requiring disqualification, [the law] mandates that the information acquired during the first representation be 'material' to the second; that is, it must be found to be directly at issue in, or have some critical importance to, the second representation." *Id.* (citations omitted). References to "internal guidelines, training methodology, underwriting protocols, litigation policies, and other confidential institutional information" or "overall structure and practices" are not sufficient. *Victaulic Co. v. Am. Home Assurance Co.*, 80 Cal. App. 5th 485, 506–07 (2022); *Farris*, 119 Cal. App. 4th at 680. "Such generalized assertions cannot establish a"

conflict of interest. *Victaulic Co.*, 80 Cal. App. 5th at 507.

To the extent they are arguments at all, NY Marine's references to Mr. Chipman's work on other NY Marine matters are transparent allusions to the over-generalized "playbook" allegations that California courts have repeatedly refused to find can equate to a conflict of interest. NY Marine does not even attempt to clarify how any information from any other matter would be material in this matter. This conduct is clearly insufficient create a conflict of interest.

### 3. The Work Of Other McCormick Barstow Attorneys On The Matter At Issue.

In its most blatant disregard of case law, NY Marine argues that because its current counsel worked on this matter, their knowledge is imputed to Mr. Chipman even after he left the employ of McCormick Barstow and "even if [Mr. Chipman] had not actually worked on this matter . . . ." (ECF No. 106-2, 2.) This is not so. What NY Marine argues for here is known as "double imputation," "first from one member of the law firm representing the [former client] to another member of that firm, and second from the latter attorney to a different law firm entirely." *Frazier v. Superior Ct.*, 97 Cal. App. 4th 23, 27, 118 Cal. Rptr. 2d 129, 132 (2002). "Case law does not support" this theory. *Id.*; *Adams v. Aerojet-Gen. Corp.*, 86 Cal. App. 4th 1324, 1336, 104 Cal. Rptr. 2d 116, 124 (2001) (refusing to adopt theory whereby "*former firm's* relationship with the same client was substantially related to the new litigation, regardless of whether the attorney personally acquired any material confidential information.").

Here, NY Marine attempts to make this very argument. Indeed, it avers that the information other attorneys at McCormick Barstow acquired during this matter—at any time—are imputed to Mr. Chipman; and that knowledge is imputed to all of Maynard. (ECF No. 106-2, 2.) Again, this theory has been rejected. The only way that Mr. Chipman's conflict can be imputed to Maynard is if Mr. Chipman actually obtained confidential information. *Frazier*, 97 Cal. App. 4th at 30 ("knowledge is imputed only once, from the attorney with the confidential

16

information, to the remainder of his or her firm"). NY Marine's argument that knowledge from other members of McCormick Barstow can be imputed to Mr. Chipman and, in turn, imputed to Maynard is plainly unavailing.

**D. The Motion's Purpose Is Tactical, Further Justifying Denial.**

"Disqualification proceedings are equitable in nature." *Id*. (citing *UMG Recordings, Inc. v. MySpace, Inc.*, 526 F.Supp.2d 1046, 1062 (C.D. Cal. 2007)). "For this reason, courts may properly consider the totality of the circumstances, including whether the motion is being brought in bad faith or otherwise for tactical reasons." *Id*. at *7 (citing *White v. Superior Court*, 98 Cal.App.3d 51, 55 (1979)). While it may be improper to "deny an otherwise well-taken motion *solely* because it conveyed a tactical advantage, [an] indicia of gamesmanship [can] offer serious additional support for denying the motion." *Id*. (emphasis in original). One indicia of tactical motivation in a motion to disqualify is a "kitchen-sink approach . . . ." *Moreno v. Autozone, Inc.*, No. C05-04432 MJJ, 2007 WL 4287517, at *2 (N.D. Cal. Dec. 6, 2007); *Sherman*, No. CV 12-8080-GW(PLAX), 2015 WL 13542762, at *6.

As demonstrated above, NY Marine has taken a kitchen sink approach to the motion, attempting to distract with irrelevant facts and innuendo. Even where it is potentially meritorious, there is less than full candor. Notably, NY Marine has failed to provide any information as to the actual time Mr. Chipman billed to the matter while employed at McCormick Barstow, has provided next to no information about what information was actually conveyed to him or the work he performed, and offers decidedly vague characterizations of conversations about "various factual issues" that occurred in times as vague as a season of 2021 and other conclusory jargon. While Travelers steadfastly maintains that under the appropriate legal standards there is no reason for Maynard's disqualification, this conduct—taken as a whole— evidences a tactical motive for the instant Motion and provides additional good cause for its denial.

1

## V.    <u>CONCLUSION</u>

2

3

For the foregoing reasons, Travelers respectfully submits that NY Marine's

Motion is due to be denied.

4

5

Dated:  April 20, 2023                                 MAYNARD NEXSEN LLP

6

7

                                                                */s/ Nicholas J. Boos*
                                                   By:    NICHOLAS J. BOOS
                                                   Attorneys for Plaintiff and Counter-
                                                   Defendant
8

                                                   TRAVELERS COMMERCIAL
                                                   INSURANCE COMPANY

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**PROOF OF SERVICE**

STATE OF CALIFORNIA         )
COUNTY OF SAN FRANCISCO     )

I am employed in the County of San Francisco, State of California.  I am over the age of 21 and am not a party to the within action.  My business address is Maynard Nexsen LLP, Two Embarcadero Center, Suite 1450, San Francisco, California 94111. On the date indicated below, I served the foregoing document described as:

**TRAVELERS COMMERCIAL INSURANCE COMPANY'S RESPONSE IN OPPOSITION TO NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S MOTION TO DISQUALIFY**

on the interested parties in this action by placing: [ ] the original document - OR- [X] a true and correct copy thereof to the persons below at the email addresses below:

James P. Wagoner, #58553
jim.wagoner@mccormickbarstow.com
Lejf E. Knutson, #234203
lejf.knutson@mccormickbarstow.com
Nicholas H. Rasmussen, #285736
nrasmussen@mccormickbarstow.com
Graham A Van Leuven, #295599
graham.vanleuven@mccormickbarstow.com
MCCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP 7647
North Fresno Street
Fresno, California 93720
Tel: (559) 433-1300
Fax: (559) 433-2300

*Attorneys for Defendant New York Marine and General Insurance Company*

Kirk Pasich
kpasich@pasichllp.com
Kayla Robinson
krobinson@pasichllp.com
PASICH LLP
10880 Wilshire Blvd., Suite 200 Los Angeles, CA 90024
Tel: (424) 313-7860

*Attorneys for Non-Party Amber Heard*

[X]   **BY CM/ECF ELECTRONIC SERVICE:** The following are registered CM/ECF users with the Court and have consented to service through the Court's automatic transmission of a notice of electronic filing.

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

06817539.2

19

TRAVELERS COMMERCIAL INSURANCE COMPANY'S OPPOSITION TO MOTION TO DISQUALIFY

Executed on April 20, 2023 in San Francisco, California.

_____
Brian Recinos