McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
James P. Wagoner, #58553
  *jim.wagoner@mccormickbarstow.com*
Lejf E. Knutson, #234203
  *lejf.knutson@mccormickbarstow.com*
Nicholas H. Rasmussen, #285736
  *nrasmussen@mccormickbarstow.com*
Graham A Van Leuven, #295599
  *graham.vanleuven@mccormickbarstow.com*
7647 North Fresno Street
Fresno, California 93720
Telephone:  (559) 433-1300
Facsimile:   (559) 433-2300

Attorneys for Defendant New York
Marine and General Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Travelers Commercial Insurance Company, a Connecticut Corporation,<br><br>           Plaintiff,<br><br>      v.<br><br>New York Marine and General Insurance Company, a Delaware Corporation,<br><br>           Defendant.<br><br>New York Marine and General Insurance Company, a Delaware corporation<br><br>           Counter-Claimant<br><br>      v.<br><br>Travelers Commercial Insurance Company, a Connecticut corporation,<br><br>           Counter-Defendant | Case No. 2:21-cv-5832-GW (PDx)<br><br>**NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY MAYNARD NEXSEN, LLP**<br><br>Date:        May 11, 2023<br>Time:        8:30 a.m.<br>Judge:       Hon. George H. Wu<br>Courtroom:   9D |

# **<u>TABLE OF CONTENTS</u>**

**<u>Page</u>**

I.   INTRODUCTION ........................................................................................... 1

II.  ARGUMENT .................................................................................................. 3

  A.   Nothing In Rule 1.10 Or Maynard Nexsen's Opposition Alters The Conclusion That The Associate Now Employed By Maynard Nexsen Represented And Received NY Marine's Confidential Information In This Matter, Thereby Requiring Maynard Nexsen's Disqualification. ......................................................................... 3

  B.   Even If A Screen Could Be Sufficient to Avoid Disqualification, Maynard Nexsen's Further Admissions Again Confirm That It Did Not Timely Establish An Ethical Screen ...................................... 10

    1.   Under Well-Established Law As Confirmed By The Cases Cited In Traveler's Opposition, Maynard Nexsen's Screen Was Not Timely Because It Was Not Established Before Undertaking Travelers' Representation ..................................... 10

    2.   Even Under Travelers' Proposed "Revelation" Standard, It Did Not Timely Implement An Ethical Screen .......................... 13

      a.   Even If The Conflict Was Only Revealed By Way Of NY Marine's March 2, 2023 Letter, Maynard Nexsen's March 9, 2023 Screen Was Untimely .............. 13

      b.   Maynard Cooper Should Have Been "Aware" Of The Conflict On Or Before February 18, 2023 ...................... 13

  C.   Other Facts Concerning The Associate's Employment And The Activities Of The Associate And Other Attorneys Are Relevant Facts ....................................................................................................... 15

  D.   NY Marine's Motion Is Meritorious, Predicated On A Clear Ethical Conflict, Promptly Brought, And Is Not Tactical ................... 16

  E.   Disqualifying Maynard Nexsen Works No Significant Hardship On Travelers .............................................................................................. 18

III. CONCLUSION .............................................................................................. 19

i

1

## TABLE OF AUTHORITIES

2

**Page**

3

<u>**CASES**</u>

4

*Arizona All. For Cmty. Health Centers v. Arizona Health Care Cost*
    *Containment Sys.,*
5
    (9th Cir. 2022) 47 F.4th 992 ................................................................ 8

6

*City and Cty. of San Francisco v. Cobra Solutions, Inc.,*
    (2006)  38 Cal.4th 839 .................................................................... 16

7

*Dickey v. Davis,*
8
    (E.D.Cal. 2017) 231 F.Supp.3d 634 ................................................ 5

9

*Dill v. Superior Court,*
    (1984) 158 Cal.App.3d 301 ........................................................ 3, 10

10

*Doe v. Yim,*
11
    (2020) 55 Cal.App.5th 573 ............................................................ 16

12

*Equal Employment Opportunity Comm'n. v. Peters' Bakery,*
    (N.D.Cal. Dec. 22, 2014) 2014 WL 7272943 ................................ 3

13

*Export-Import Bank of Korea v. ASI Corp.,*
14
    2019 WL 8200603 ........................................................ 2, 11, 12, 13

15

*Flatt v. Superior Court,*
    (1994) 9 Cal.4th 275 .................................................................... 6, 7

16

*German v. Mercedes-Benz, LLC,*
17
    (C.D.Cal. Feb. 14, 2022) 2022 WL 1407944 ................................ 6

18

*Global Van Lines, Inc. v. Superior Court,*
    (1983)  144 Cal.App.3d 488 .......................................................... 3

19

*H. F. Ahmanson & Co. v. Salomon Brothers, Inc.,*
20
    (1991)  229 Cal.App.3d 1445 ................................................... 9, 18

21

*Henriksen v. Great Am. Savings & Loan,*
    (1992) 11 Cal.App.4th 109 ................................................ 1, 3, 7, 8

22

*In re Complex Asbestos Litig.,*
23
    (1991) 232 Cal.App.3d 594 ...................................................... 11, 12

24

*Jessen v. Hartford Cas. Ins. Co.,*
    (2003) 111 Cal.App.4th 698 ................................................ 7, 9, 18

25

*Kirk v. American Title Ins. Co.,*
26
    (2010) 183 Cal.App.4th 776 ............................ 1, 3, 6, 7, 8, 9, 11, 16

27

*Klein v. Facebook, Inc.,*
    (N.D.Cal. July 20, 2021) WL 3053150 ........................... 2, 5, 6, 9, 12

28

1

## TABLE OF AUTHORITIES
### (Continued)

2

<u>Page</u>

3

*Lopez v. Lopez,*
    (2022) 81 Cal.App.5th 412...............................................................16

4

*Maria De Jesus Cruz Ramos v. Costco Wholesale Corp,*
    (C.D.Cal. Nov. 9, 2022) 2022 WL 18278604.........................................5, 6, 11

5

6

*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys's., Inc.,*
    (1999)  20 Cal.4th 1135....................................................1, 3, 6, 7, 8, 15, 17, 18

7

*People v. Barker,*
    (2004) 34 Cal.4th 345...............................................................................5

8

9

*Rosenfeld Constr. Co. v. Superior Ct.,*
    (1991) 235 Cal.App.3d 566.......................................................................3

10

*Shadow Traffic Network v. Superior Court,*
    (1994)  24 Cal.App.4th 1067.....................................................................4

11

12

*Sierra v. Costco Wholesale Corp.,*
    (N.D.Cal. Sept. 23, 2022) 2022 WL 4454359 ...............................2, 4, 5, 6, 7, 8

13

*Signature MD, Inc. v. MDVIP, Inc.,*
    (C.D.Cal. Jan 20, 2015) 2015 WL 12781603 .........................................12, 13

14

15

*Trone v. Smith,*
    (9th Cir. 1980) 621 F.2d 994...................................................................18

16

*Turner v. Sullivan,*
    (C.D.Cal. Dec. 21, 2018) 2018 WL 7204070 ..............................................6

17

18

*United States v. Sun Keung Lee,*
    (N.D.Cal. Jan. 6, 2011) 2011 WL 52599 ....................................................3

19

*W. Pac. Elec. Co. Corp. v. Dragados/Flatiron,*
    (E.D.Cal. 2021) 534 F.Supp.3d 1209.........................................................6

20

21

*Zador Corp. v. Kwan,*
    (1995) 31 Cal.App.4th 1285....................................................................10

22

23

## OTHER AUTHORITIES

24

California Rule of Professional Conduct Rule 1.10 ..............2, 4, 6, 7, 8, 9, 10, 12, 14

25

California Rule of Professional Conduct Rule 1.10(a)(2)(i) ......................................8

26

California Rule of Professional Conduct Rule 1.10(a)(2)(ii) ..................................8, 9

27

28

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO
DISQUALIFY MAYNARD NEXSEN, LLP

# I.      **INTRODUCTION**

As the California Supreme Court has observed, although disqualification implicates important interests, "determining whether a conflict of interest requires disqualification involves more than just the interests of the parties". *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Sys's., Inc.,* 20 Cal.4th 1135, 1145 (1999) ("*SpeeDee Oil*"). "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *Id.*

NY Marine's motion to disqualify Maynard Nexsen, LLP ("Maynard Nexsen"), Plaintiff and Counter-defendant Travelers Commercial Insurance Company's ("Travelers") counsel of record, is based on a straightforward and fundamental proposition: that under the California Rules of Professional Conduct and well-established California law, an attorney may not ethically represent a party adverse to a former client in the same matter, and that where an attorney does "switch sides" in the same litigation, disqualification of the attorney and the new law firm is "automatic."   Thus, Maynard Nexsen's employment of an Associate attorney who previously represented and obtained NY Marine's confidential information *in connection with* this litigation requires that it be disqualified from representing Travelers here. *SpeeDee Oil, supra,* 20 Cal.4th at 1147; *Kirk v. American Title Ins. Co.,* 183 Cal.App.4th 776, 800 (2010); *Henriksen v. Great Am. Savings & Loan,* 11 Cal.App.4th 109, 114 (1992).

Travelers opposes the motion, asserting that the Associate did not "substantially participate" in NY Marine's representation in this matter. But its Opposition fails to withstand analysis for two specific reasons. First, and most fundamentally, the Opposition simply ignores the critical fact that the Associate attorney now employed by Maynard Nexsen *actually represented and received NY Marine's confidential information in this same matter*, instead pointing to readily

distinguishable cases analyzing the issue of whether disqualification is required where the conflicted attorney previously represented the former client *in other matters.* (See, ECF #108, at pp. 5:2-6:2.) Further, nothing in California Rule of Professional Conduct Rule 1.10 itself suggests that the Rule fundamentally alters the well-established California law that neither an attorney, nor their firm, may accept a representation adverse to a former client *in the same matter* where the attorney previously represented and obtained the former client's confidential information. Neither the Opposition nor the cases cited therein support such a conclusion.  In fact, the cases cited in the Opposition expressly acknowledge that notwithstanding the adoption of Rule 1.10, disqualification remains the "general rule" when a conflicted attorney "switches sides" in the same matter.

Second, even if Travelers were correct that an ethical "screen" could have sufficed to avoid Maynard Nexsen's disqualification here, it is well established that such a screen must be in place *before* undertaking the conflicted representation *Sierra v. Costco Wholesale Corp.,* No. 22-CV-01444-JSW, 2022 WL 4454359, (N.D.Cal. Sept. 23, 2022). Both of the cases cited in the Opposition in relation to this point, *Export-Import Bank of Korea v. ASI Corp.,* Case no. CV 16-2056-MWF (JPRx), 2019 WL 8200603 *11-12 ("*Ex.-Imp. Bank*"), and *Klein v. Facebook, Inc.,* Case no. 20-CV-08570-LHK, 2021 WL 3053150 (N.D.Cal. July 20, 2021), also expressly accept this rule. (ECF #108, at pp. 11:21-13:16). Here, the prior admissions in Maynard Nexsen's March 9, 2023 "meet and confer" correspondence and those contained in the Opposition and supporting declarations confirm that Maynard Nexsen did not attempt to implement an ethical screen until March 9, 2023—some three weeks after it undertook Travelers' representation, 10 days after appearing, and a week after being notified of the conflict by NY Marine. Thus, even if Travelers were correct that such an ethical "screen" could have sufficed to avoid Maynard Nexsen's disqualification, Travelers cannot avoid Maynard Nexsen's disqualification because that firm did *not* timely implement such a screen.

In sum, Maynard Nexsen's conflict here is clear: it employs an attorney who previously represented and received NY Marine's confidential information *in this very matter.* Moreover, the cases developing the rule requiring disqualification in these circumstances are clear in reasoning that this is because "[t]he most egregious conflict of interest is representation of clients whose interests are directly adverse in the same litigation", and "suggests to the clients—and to the public at large—that the attorney is completely indifferent to the duty of loyalty and the duty to preserve confidences." *SpeeDee Oil, supra,* at 1147. Thus, an attorney's prior representation and receipt of confidential information in the same matter is "a compelling reason for disqualification" of both the conflicted attorney and their firm. *Dill v. Superior Court,* 158 Cal.App.3d 301, 306 (1984).

## II. ARGUMENT

### A. Nothing In Rule 1.10 Or Maynard Nexsen's Opposition Alters The Conclusion That The Associate Now Employed By Maynard Nexsen Represented And Received NY Marine's Confidential Information In This Matter, Thereby Requiring Maynard Nexsen's Disqualification.

For at least 40 years, California courts have consistently held that when an attorney who previously represented and obtained a former client's confidential information obtains new employment and "switches sides" in the *same* matter, both the tainted attorney and the new firm must be disqualified "automatically". *SpeeDee Oil, supra,* 20 Cal.4th at 1147; *Kirk, supra,* 183 Cal.App.4th at 800; *Henriksen, supra,* 11 Cal.App.4th at 114; *Dill, supra,* 158 Cal.App.3d at 306.  California law is equally clear that the tainted attorney's own *recollection* of such information or the lack thereof is inconsequential to the analysis. *Rosenfeld Constr. Co. v. Superior Ct.,* 235 Cal.App.3d 566, 576 (1991); *Equal Employment Opportunity Comm'n. v. Peters' Bakery,* Case no. 13-cv-04507-BLF, 2014 WL 7272943 *6 (N.D.Cal. Dec. 22, 2014); *United States v. Sun Keung Lee,* Case no. CR 10-0186 MHP, 2011 WL 52599 *2 (N.D.Cal. Jan. 6, 2011);  *see also, Global Van Lines, Inc. v. Superior Court,* 144 Cal.App.3d at 488 (1983); *Shadow Traffic Network v. Superior Court,* 24 Cal.App.4th

1067, 1086 (1994).

Here, the Associate now employed by Maynard Nexsen was previously employed by the undersigned law firm as an Associate attorney and, in that capacity, performed work for NY Marine and received its confidential information *in this matter.* (ECF #106-2, at pp. 11:21-16:14; ECF #106-3, ¶¶ 5-9; ECF # 106-4, ¶¶ 4-8; ECF #106-5, ¶¶ 5-7; ECF # 106-6, ¶¶ 3-5; ECF #106-7, ¶¶ 3-4.)  As a result, and as addressed at length in NY Marine's opening memorandum, that well-established legal principal requires that both the Associate and Maynard Nexsen be disqualified from Travelers' representation in this matter.

In Opposition, Travelers asserts that the Associate whom Maynard Nexsen now employs did not "substantially participate" in NY Marine's representation while employed at McCormick Barstow, that as a result, "[u]nder the new rule [Rule 1.10], the analysis proceeds differently", and that Maynard Nexsen's disqualification is not required. (ECF  108, at pp. 4:11-11:19.) Travelers' argument, however, relies entirely on a line of cases which analyze the question in the context of a conflicted attorney's prior representation in "substantially *similar"* matters. *Id.* Here, the conflict before the Court is one in which the conflicted attorney actually represented and received NY Marine's confidential information in *the same matter* in which Maynard Nexsen now seeks to represent NY Marine's opponent. (ECF #106-2, at pp. 11:21-16:14; ECF #106-3, ¶¶ 5-9; ECF # 106-4, ¶¶ 4-8; ECF #106-5, ¶¶ 5-7; ECF # 106-6, ¶¶ 3-5; ECF #106-7, ¶¶ 3-4.)  As a result, nothing in the Opposition supports the conclusion that Rule 1.10 permits Travelers to avoid Maynard Nexsen's disqualification, and indeed, a review of the cases cited in the Opposition confirms their recognition that the rule of automatic disqualification remains applicable when the conflicted attorney "switches sides" in the same matter.

Travelers points to two cases cited in NY Marine's opening memorandum which post-date the November 1, 2018 adoption of CRPC 1.10, *Sierra, supra,* 2022 WL 4454359, and *Maria De Jesus Cruz Ramos v. Costco Wholesale Corp,* No. CV

4

22-3579-MWF (AFMx), 2022 WL 18278604 (C.D.Cal. Nov. 9, 2022) ("*Ramos*"). Travelers contends that the *Sierra* and *Ramos* decisions support the conclusion that this Court must perform a detailed "substantial relationship" analysis even where, as here, the conflicted attorney actually received the former client's confidential information in the same matter. (ECF #108, at p. 5:12-28.) However, neither of those cases address that circumstance.

In *Sierra*, the conflicted attorney "represented Costco in numerous cases while employed with another firm", before moving to a firm which was representing a plaintiff in "a personal injury lawsuit against Costco" which was not one of the matters in which the conflicted attorney had previously represented Costco. *Sierra, supra,* 2022 WL 4454359 *1. *Ramos* also addressed the same facts and circumstances (and indeed, the same attorney), the conflict again arising out of the new firm's representation of plaintiffs in *different* matters than those in which the conflicted attorney had previously represented Costco. *Ramos, supra,* 2022 WL 18278604 *1. Likewise, *Klein v. Facebook, Inc.,* Case no. 20-CV-08570-LHK, 2021 WL 3053150 (N.D.Cal. July 20, 2021) also involved a conflicted attorney who had previously represented Facebook in connection with other matters which were admittedly only "related to", and not the same as, the dispute in which the conflicted representation was challenged. *See, id.,* at *1, *4. Thus, setting aside that each of those decisions found that disqualification was warranted, in each instance, the analysis performed by the courts was appropriate because the conflicted attorneys had previously represented the former client in *different* matters; none addressed whether such an analysis is even relevant where the conflicted attorney actually represented and acquired the former client's confidential information and then "switched sides" in the exact same matter.

"It is axiomatic that a decision does not stand for a proposition not considered by the court." *Dickey v. Davis,* 231 F.Supp.3d 634, 735 (E.D.Cal. 2017) (quoting *People v. Barker,* 34 Cal.4th 345, 354 (2004)); *W. Pac. Elec. Co. Corp. v.*

5

*Dragados/Flatiron,* 534 F.Supp.3d 1209, 1227 (E.D.Cal. 2021);   *German v. Mercedes-Benz, LLC,* Case no. 2:21-cv-09587-SB-JC, 2022 WL 1407944 *2 (C.D.Cal. Feb. 14, 2022); *Turner v. Sullivan,* Case no. CV 17-0290-PA (JPR), 2018 WL 7204070 *6 (C.D.Cal. Dec. 21, 2018). Consequently, nothing in *Sierra, Ramos* or *Klein* supports the conclusion either that a full and detailed evaluation of the "substantial relationship" test need be performed or that disqualification is no longer the rule where, as here, the conflicted attorney actually represented and received the former client's confidential information and then switches sides in the same matter.

In fact, closer analysis of the Rule and its comments, as well as more recent decisions such as *Sierra,* support the conclusion that nothing in Rule 1.10 alters the analysis—or the well-established law that disqualification is required—when the conflicted attorney actually represented and received the former's client's confidential information  in the very same matter. In this respect, in Comment 6 to Rule 1.10, the Committee expressly observed that "[s]tandards for disqualification, and whether in a particular matter (1) a lawyer's conflict will be imputed to other lawyers in the same firm, or (2) the use of a timely screen is effective to avoid that imputation, are also the subject of statutes and case law." Rule 1.10, Cmt. [6]. That comment expressly cites *Kirk v. American Title Ins. Co.,* 183 Cal.App.4th 776 (2010).[1] *Id. Kirk* itself provides an extensive discussion of the development of the law of conflicts by California courts, including the relevant application of *SpeeDee Oil, Flatt v. Superior Court,* 9 Cal.4th 275 (1994), and *Henriksen,* among numerous other decisions bearing on the present analysis and cited and discussed in NY Marine's

---

[1] Notably, the State Bar's own "Executive Summary" discussing the drafting, modification and adoption of the Rule 1.10 confirms that "[t]he Commission also added a citation to *Kirk* [] to the cases listed" in order to provide further guidance following the public comment period on the initial proposed rule. Supplemental Decl. of Nicholas H. Rasmussen ("Suppl. Rasmussen Decl. ¶¶ 3-5, Ex. 1, p. 4; Suppl. Req. for Judicial Notice ["Suppl. RJN"], at ¶ 1.)

opening memorandum. *Id.*  *Kirk* also expressly acknowledges *Henriksen* as setting forth the "general rule" that "vicarious disqualification should be automatic in cases of a tainted attorney possessing actual confidential information from a representation, who switches sides in the same case." *See generally, Kirk, supra,* 183 Cal.App.4th at 792-800 (historical discussion), and at 800 (acknowledging *Henriksen* as the "general rule"); *see also,* ECF #106-2, at pp. 7-19 (discussing and analyzing *Kirk, SpeeDee Oil, Flatt,* and *Henriksen,* among other relevant law, at length).

In short, the Bar Committee's express determination to include the reference to *Kirk* in Comment [6] confirms that *Kirk* still sets forth the relevant law governing the "[s]tandards for disqualification, and whether in a particular matter . . . a lawyer's conflict will be imputed to other lawyers in the same firm" under Rule 1.10. As observed above, *Kirk* acknowledges *Henriksen's* rule requiring disqualification where an attorney "switches sides" in the same matter.  As such, Travelers' assertion that as a result of the adoption of Rule 1.10, NY Marine's motion is based on "a faulty and outdated legal premise" flies in the face of Bar Committee's demonstrated intent regarding the interpretation of Rule 1.10.

Further, that the principles set forth in *Kirk* and preceding decisions—such as those in *SpeeDee Oil* and *Henriksen*—remain the appropriate analytical framework is apparent upon consideration of decisions post-dating the adoption of Rule 1.10 cited in the Opposition. In *Sierra*, decided in 2022 but citing the decision in *Jessen v. Hartford Cas. Ins. Co.,* 111 Cal.App.4th 698 (2003) rendered some 15 years before the adoption of Rule 1.10, the Court observed that "if the relationship between the attorney and the former client is shown to have been direct—that is, where the lawyer as personally involved in providing legal advice and services to the former client— then it must be presumed that confidential information has passed to the attorney". *Sierra, supra,* 2022 WL 4454359 *3 (citing *Jessen, supra,* at 709). In turn, the court in *Sierra* further noted, "in a direct attorney-client relationship, 'disqualification will depend upon the strength of the similarities between the legal problem involved in the

7

1  former representation and the legal problem involved in the current representation."
2  *Sierra, supra,* 2022 WL 4454359 \*3 (citing *Jessen, supra,* at 709). The *Sierra* Court
3  then went on to expressly acknowledge that following *Kirk*, "vicarious
4  disqualification" of the conflicted attorney's new firm "is the general rule". *Id.,* at \*4.

5       Equally unavailing is Travelers' assertion that application of the rule of
6  "automatic" disqualification under the present circumstances would somehow render
7  the language of Rule 1.10(a)(2)(i) or (a)(2)(ii) "superfluous". *See,* ECF #108, at pp.
8  6:3-7:4 (citing *Arizona All. For Cmty. Health Centers v. Arizona Health Care Cost*
9  *Containment Sys.,* 47 F.4th 992, 999 (9th Cir. 2022) and arguing that application of
10  the rule of automatic disqualification here would render CPRC 1.10 and its comments
11  "superfluous" and "useless"). Rather, in making this assertion, the Opposition simply
12  fails to recognize that even applying the rule of "automatic disqualification" under the
13  circumstances here, there is still ample scope for a more lenient result in other,
14  different contexts—for instance, where the conflicted attorney represented the former
15  client in *other* matters, or where knowledge of the client's confidential information
16  bearing on the same matter was merely imputed, rather than actual and direct. And,
17  relatedly, it ignores the fact that the rule and reasoning requiring "automatic
18  disqualification" as set forth in *Henriksen*, *SpeeDee Oil* and *Kirk* itself reflect this
19  same distinction between circumstances in which the conflicted attorney actually
20  possessed confidential information and "switched sides" in the same matter (thus
21  requiring disqualification), and those where the conflict did not involve the very same
22  matter, in which event the court would properly proceed to analyze whether a
23  "substantial relationship" existed between the representations. *See, e.g., Kirk supra,*
24  183 Cal.App.4th at 796-797 (discussing the development of this distinction).

25       Travelers' argument also ignores the obvious and practical method of
26  reconciling California courts' prior decisions with the language of Rule 1.10 and the
27
28

"four-factor test" set forth therein.[2] Specifically, to conclude that where the conflicted attorney actually represented and received the former client's confidential information and then "switches sides" in the same matter, the fourth factor—that considering "the extent to which the lawyer was exposed to confidential information of the former client likely to be material in the current matter"—should simply be treated as dispositive. As observed above, this is, in practical terms, precisely the distinction already reflected in the rule of "automatic" disqualification as analyzed in *Kirk*.

As applied here, the conflicted Associate actually represented NY Marine, and certainly received its confidential information in connection with this matter. (ECF #106-2, at pp. 11:21-16:14; ECF #106-3, ¶¶ 5-9; ECF # 106-4, ¶¶ 4-8; ECF #106-5, ¶¶ 5-7; ECF # 106-6, ¶¶ 3-5; ECF #106-7, ¶¶ 3-4.)[3] As a result, the question of "the strength of the similarities between the legal problem involved in the prior

---

[2] Rule 1.10(a)(2) identifies four factors for consideration: (1) the lawyer's level or responsibility in the prior matter, (2) the duration of the lawyer's participation; (3) the extent to which the lawyer advised or had personal contact with the former client; and (4) the extent to which the lawyer was exposed to confidential information of the former client. *Klein, supra,* 2021 WL 3053150 *5 (citing Rule 1.10, cmt. [1]).

[3] Consistent with its written "meet and confer" correspondence, Travelers continues to equivocate about whether the conflicted Associate actually received confidential information, and suggests that NY Marine somehow may not have established this fact. *See, e.g.,* ECF #108, at pp. 8:6-11:20, and n. 4 (suggesting that Travelers cannot ascertain whether the Associate received NY Marine's confidential information without copies of NY Marine's counsel's privileged internal correspondence regarding this matter or its billing records). This is not the law, and Travelers is not entitled to more than the declarations provided. And for good reason since, as California courts have routinely acknowledged, such an inquiry would have "the ironic result of disclosing the former client's confidences and secrets through an inquiry into the actual state of the lawyer's knowledge." *Jessen, supra,* 111 Cal.App.4th at 706 (quoting *H. F. Ahmanson & Co. v. Salomon Brothers, Inc.,* 229 Cal.App.3d 1445, 1453 (1991)).

representation and the legal problem involved in the current representation" is irrelevant since the representation is in the exact same case.[4] As a result, neither Rule 1.10 itself, the comments thereto, nor subsequent case law addressing disqualification alter the conclusion that where, as here, an attorney has actually received the former client's confidential information and "switches sides" in the same matter, the well-settled law requiring the disqualification of the attorney and the new firm governs the analysis and applies to require Maynard Nexsen's disqualification here.

**B.** **Even If A Screen Could Be Sufficient to Avoid Disqualification, Maynard Nexsen's Further Admissions Again Confirm That It Did Not Timely Establish An Ethical Screen**

1. Under Well-Established Law As Confirmed By The Cases Cited In Traveler's Opposition, Maynard Nexsen's Screen Was Not Timely Because It Was Not Established Before Undertaking Travelers' Representation

As relevant here, Travelers contacted Mr. Boos and the Maynard Nexsen firm on February 17, 2023 to request that it undertake Travelers' representation. (ECF #108-2, at ¶ 3.) Acknowledging that he was aware of the Associate's prior employment by McCormick Barstow at that time, Mr. Boos spoke with the Associate on February 18, 2023 "in order to determine the potential existence of a conflict of interest". (*Id.,* at ¶ 4.) The Associate confirmed to Mr. Boos that "McCormick Barstow represented [NY Marine]" in this matter – though the Associate also told Mr.

---

[4] California courts analyzing conflicts have recognized this result in other circumstances. *See, e.g., Zador Corp. v. Kwan,* 31 Cal.App.4th 1285, 1294 (1995) (observing that where the conflict arises out of, for instance, a prior joint representation, the court's detailed application of the "substantial relationship test adds nothing to the disqualification analysis … because a substantial relationship between the former representation and the subsequent action is inherent"); *Dill, supra,* 158 Cal.App.3d at 304 (noting and concluding in three sentences that where the conflicted associate joined a firm representing parties adverse to a former client for whom he had performed work in the same matter, "the 'substantial relationship' test is amply satisfied" and disqualification was required notwithstanding the associate's declaration that he had only handled "random matters" in the case at the prior firm, and "did not recall" or receive confidential information).

Boos that "he had no recollection of performing any work on the matter." (*Id.*) "During the" February 18, 2023 call, Mr. Boos "informed [the Associate] that he would not be working on [this] matter." (*Id.*)

Maynard Nexsen filed its appearance in this matter on February 28, 2023, which was granted on March 1, 2023. (ECF # 103, 104.) On March 2, 2023, NY Marine, through the undersigned counsel, wrote to Mr. Boos informing him that the Associate had previously represented it and obtained its confidential information pertaining to this action, and objected to the conflict created by Maynard Nexsen's representation of Travelers in this litigation as a result. (ECF #106-3, ¶ 12, Ex. 2.) Only on March 9, 2023, did Maynard Nexsen "implement a 'technological screen' applicable to [the Associate] and the instant matter." (ECF #108-2, ¶ 5.)

NY Marine's opening memo expressly addressed the cases holding that under California law, to avoid disqualification, "screening should be implemented *before undertaking the challenged representation* or hiring the tainted individual. Screening must take place at the outset to prevent any confidences from being disclosed." (ECF #106-2, at p. 19:8-20:2 [quoting and citing *Sierra, supra,* 2022 WL 4454359 *4 (emphasis added) (in turn quoting *In re Complex Asbestos Litig.,* 232 Cal.App.3d at 594 (1991))]; *Ramos, supra,* 2022 WL 18278604 *2; *Kirk, supra,* 183 Cal.App.4th 776, 792].) Nevertheless, relying on language in *Ex.-Imp. Bank, supra,* 2019 WL 8200603, *10, Travelers profers a more lenient standard, asserting that where an "ethical screen" is sufficient to preclude disqualification, "[t]he minimum requirements are that the screen was created 'as soon as the conflict was revealed". (ECF #108, at p. 12:3-6, 12:11 [quoting *Ex.-Imp. Bank, supra,* 2019 WL 8200603, *10].) It then contends that Maynard Nexsen "created a preliminary screen *before* any conflict was revealed"—apparently referring to Mr. Boos' having informed the Associate that he "would not be working on this matter". (*Id.,* at 12:12-12 (bolding and italics in original); ECF #108-2, ¶ 4.) However, Maynard Nexsen's own statements and admissions incontrovertibly establish that it did not.

11

While the Opposition quotes *Ex.-Imp. Bank* for its "as soon as the conflict is revealed" language, it entirely ignores *Ex.-Imp. Bank's* subsequent acknowledgment of well-established California law disqualifying counsel "for failing to implement ethical screens *before* representing a prospective client." *Ex.-Imp. Bank, supra,* 2019 WL 82000603 *11 (bolding and italics in original, and collecting cases including *Signature MD, Inc. v. MDVIP, Inc.,* No. 14-cv-5453-DMG (SSx), 2015 WL 12781603 *3 (C.D.Cal. Jan 20, 2015) [disqualifying counsel where ethical screen erected two days after retention].).

Moreover, though Travelers' Opposition cites *Klein* as standing for the proposition that cases preceding the November 2018 adoption of Rule 1.10 are "outdated", *Klein* too expressly held that "screening should be implemented before undertaking the challenged representation or hiring the tainted individual" and that "[s]creening must take place at the outset to prevent any confidences from being shared." *Klein, supra,* 2021 WL 3053150 *7 (quoting *In re Complex Asbestos Litig., supra*); and see ECF #108, at p. 5:2-12 (stating that "[u]nder the new rule, the analysis proceeds differently" and citing *Klein*).

Thus, both the cases cited in NY Marine's opening memorandum, as well as *Ex.-Imp. Bank* and *Klein*, the decisions upon which Travelers' Opposition relies, all confirm that an effective screen should be implemented *before* the challenged representation is accepted. Travelers presents no case law suggesting a different result. Given the foregoing, since Maynard Nexsen admits that it did not establish the screen until March 9, 2023—three weeks after accepting the assignment, 10 days after appearing, and one week after it received NY Marine's letter objecting to the conflict—that well-established law requires its disqualification. (ECF #106-3, ¶ 12, Ex. 2; ECF #108, at pp. 12:11-13:12; ECF # 108-2, ¶¶ 5-7.)

2.  Even Under Travelers' Proposed "Revelation" Standard, It Did Not Timely Implement An Ethical Screen

    a.  Even If The Conflict Was Only Revealed By Way Of NY Marine's March 2, 2023 Letter, Maynard Nexsen's March 9, 2023 Screen Was Untimely

As noted above, the Opposition cites to *Ex.-Imp. Bank* in support of the proposition that Maynard Nexsen needed only establish a screen "as soon as a conflict was revealed", and thereafter asserts that despite Maynard Nexsen having been advised by the Associate on February 18, 2023 that McCormick Barstow represented NY Marine in this very matter, it was not "aware" of a conflict until March 2, 2023. (ECF #108, at pp. 12:11, 13:11-12.) Even if the Court accepts that Maynard Nexsen only became "aware" of the conflict on March 2, 2023 when it received NY Marine's letter, by its own admission it did not implement an ethical screen until March 9, 2023. (ECF #108-2, ¶¶ 5-7.)  Thus, it still did not implement the screen "as soon as the conflict was revealed".[5] *See, Signature MD, Inc., supra*, 2015 WL 12781603 *3 (disqualification imposed where ethical screen not erected until two days after undertaking representation).

    b.  Maynard Cooper Should Have Been "Aware" Of The Conflict On Or Before February 18, 2023

Travelers' Opposition admits that its lead counsel in this matter, Mr. Boos, was aware of the Associate's prior employment at McCormick Barstow, and that the Associate "advised" him "that [the Associate] was aware that McCormick Barstow represented [NY Marine] in the matter that is the subject of this litigation" on February 18, 2023. (ECF #108, at p. 12:12-14; ECF #108-2, ¶ 4; ECF #802-3, ¶ 8.)

Travelers' assertion that "there was no former client conflict apparent" despite

---

[5] Moreover, there is good reason to question the effectiveness of that screen since, on the same day that it claims to have implemented the screen—March 9, 2023—Mr. Boos also wrote to the undersigned, asserting that the Associate "has not had any involvement in this matter", and most stunningly, "*is not disqualified from working on this matter*" for Travelers. (ECF #106-3, ¶ 13, Ex. 3, at p.1 [emphasis added].)

13

Maynard Nexsen's knowledge that the Associate had previously been employed by McCormick Barstow in its Insurance Coverage and Bad Faith Litigation Practice Group, and that McCormick Barstow attorneys from that practice group represented NY Marine in this matter, is patently contrary to well-established law. In this respect, the Opposition unduly conflates CPRC 1.10—which governs *whether a tainted attorney's conflict is imputed to others in the firm*—with CPRC 1.9, which sets forth the rules governing whether an individual attorney has a conflict. Under Rule 1.9(a) "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person[] in the same or a substantially related matter in which that person's* interests are materially adverse to the interests of the former client unless the former client gives informed written consent."

Given the foregoing, no later than February 18, 2023, it should have been apparent to Maynard Nexsen and to any attorney of reasonable prudence that a conflict precluding the Associate from representing parties adverse to NY Marine in the "same or similar" matter existed or was highly likely.[6]  Indeed, the assertion that

---

[6] Indeed, Travelers' attempts to parse the analysis here based on *exactly what Maynard Nexsen* purportedly knew (or didn't know) about the Associate's prior work for NY Marine and when*,* underscores the rationale behind the broadly accepted California law requiring that an ethical screen be adopted *prior to* a representation, since the rule avoids such parsing entirely. Further, Travelers' view, if adopted by this Court, would have other deleterious effects. For instance, it would effectively render moot well-established case law holding that an attorney's own recollection of a prior representation or receipt of confidential information is not relevant to a conflict analysis. *See,* ECF #106-2, at pp. 16:25-21 and fn. 9 (citing and discussing relevant law).  This is because Travelers' desired result here—the conclusion that Maynard Nexsen was "unaware" of the Associate's conflict despite knowing that the Associate worked for the very same attorneys who represent NY Marine in this matter—effectively requires the conclusion that a now third-year Associate's failure to recall his actual work in this matter (or to grasp the significance of his conversations about it) likewise excuses Maynard Nexsen—and Mr. Boos, a far more experienced attorney of nearly two decades' practice—from recognizing that a conflict *could and did* exist. (ECF #106-1, ¶ 1; ECF #106-3, ¶16, Ex. 6; Suppl. RJN, ¶ 2; Suppl. Rasmussen Decl.

---

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY MAYNARD NEXSEN, LLP

Travelers and Maynard Nexsen were not "aware" of the conflict until they received NY Marine's March 2, 2023 letter is self-evidently contradicted by the admission that Mr. Boos "informed [the Associate] that he would not be working on th[is] matter" on February 18, 2023. (ECF #108-2; ECF 108-3, ¶ 8.)  As a result, this Court should conclude that Maynard Nexsen was aware of the conflict at least as early as February 18, 2023. As such, even under its proposed "revelation" test, its March 9, 2023 screen was not timely implemented.

Ultimately, well-established California law provides that where an ethical screen is sufficient to preclude disqualification, that screen should be in place *before* the conflicted representation is undertaken. Case law cited by Travelers does not dispute that this is the rule. Consequently, even assuming this Court does not agree that the rule of "automatic" disqualification applies to preclude Maynard Nexsen's representation of Travelers, regardless of when the Court believes Maynard Nexsen was or should have been "aware" of the present conflict, the Court should find that its failure to timely implement an ethical screen *before* undertaking Travelers' representation requires its disqualification.

### C.   Other Facts Concerning The Associate's Employment And The Activities Of The Associate And Other Attorneys Are Relevant Facts

The Opposition also includes three pages of argument addressing: (1) the Associate's employment by McCormick Barstow as a "Summer Associate"; (2) the Associate's work on other NY Marine files; and (3) the work of other McCormick Barstow attorneys while the Associate was employed by McCormick Barstow. (See,

¶ 6.) The argument presented by Travelers, if adopted by this Court, would encourage attorneys and firms to engage in ostrich-like behavior: ask no questions and wait to see if the former client objects. That outcome is plainly contrary to the express statement of the California Supreme Court that in evaluating conflicts and disqualification motions, "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *SpeeDee Oil, supra,* at 1145.

ECF #108, at pp. 13:26-17:3.)

In its moving papers, NY Marine observed, among other facts, that the Associate had been employed by McCormick Marine as a "summer associate" before his law school graduation, that while employed by McCormick Barstow he worked on other matters for NY Marine, and that other attorneys at McCormick Barstow also represented NY Marine in numerous matters during the Associate's employment at McCormick Barstow. (See generally, ECF #106-2, at pp. 6:1-8:20 and fns. 2-5.). To the extent these facts are at issue, they are primarily relevant for two straightforward reasons: first, because they relate the full, complete, and true state of relevant facts concerning the parties' relationships. And second, because Travelers continues to dispute whether the Associate actually represented or obtained NY Marine's confidential information regarding this matter. As a result, since California courts expressly recognize the practical "rationale that attorneys practicing together generally share each other's, and their clients', confidential information", the representation of NY Marine by other McCormick Barstow attorneys in both this and other matters also supports the conclusion that the Associate *did* receive confidential information concerning this matter. *Kirk, supra,* 183 Cal.App.4th at 799 (citing *City and Cty. of San Francisco v. Cobra Solutions, Inc.,* 38 Cal.4th 839, 847-848 (2006)). It is unclear why Travelers believed those facts worthy of three pages of argumentation, especially since it has chosen to address arguments not raised by NY Marine. But in any event, the facts are what they are, and this Court may treat them as it deems appropriate.

### D. <u>NY Marine's Motion Is Meritorious, Predicated On A Clear Ethical Conflict, Promptly Brought, And Is Not Tactical</u>

California courts recognize that in analyzing motions to disqualify, courts "must consider… 'the possibility [opposing] counsel is using the motion to disqualify for purely tactical reasons'". *Lopez v. Lopez,* 81 Cal.App.5th 412, 424 (quoting *Doe v. Yim,* 55 Cal.App.5th 573, 583 (2020)); *see also, SpeeDee*

*Oil, supra,* 20 Cal.4th at 1145.

Here, the facts are that Maynard Nexsen employs an Associate attorney who represented NY Marine and who received its confidential information concerning this matter. (ECF #106-2, at pp. 11:21-16:14; ECF #106-3, ¶¶ 5-9; ECF # 106-4, ¶¶ 4-8; ECF #106-5, ¶¶ 5-7; ECF # 106-6, ¶¶ 3-5; ECF #106-7, ¶¶ 3-4.) No more than 24 hours after it was contacted by Travelers about representing it in this action, Maynard Nexsen was aware both that it had an Associate who had been employed by McCormick Barstow during the pendency of this litigation, and that McCormick Barstow represented NY Marine in this matter. (ECF #108-2, ¶¶ 3-4; ECF #108-3, ¶ 8.) Regardless of what the Associate could or could not recollect concerning this matter, that alone should have been enough to place Maynard Nexsen on notice that a conflict existed—as the fact that Mr. Boos "informed [the Associate] that he would not be working on th[is] matter" at that time tacitly admits. (ECF #108-2, ¶ 4; ECF #108-3, ¶ 8.) But it contends that it was *not* aware, and admits that it took no formal steps to prevent the transmission of confidential information concerning this matter to or from the Associate until March 9, 2023. (ECF #108-2, ¶¶ 4-7.) For its part, NY Marine only became aware that Maynard Nexsen would be representing Travelers when it appeared in this matter on February 28, 2023 by filing its notice of substitution which was granted on March 1, 2023. (ECF #103, 104). The next day, March 2, 2023, NY Marine informed Maynard Nexsen and Travelers of the conflict and demanded Maynard Nexsen's withdrawal. (ECF #106-3, ¶ 12, Ex. 2.) In response, Maynard Nexsen's March 9, 2022 letter denied that the Associate had ever worked on the file, *denied that he was even disqualified from working on this matter for Travelers*, and only reluctantly stated that it would erect an (untimely) ethical screen. (ECF #106-3, ¶ 13, Ex. 2.)

In short, NY Marine notified Travelers of the conflict virtually immediately and undertook appropriate "meet and confer" efforts as required by local rules; its motion was promptly filed thereafter, and it is justly grounded in both the actual and

17

direct conflict concerning *this same matter* as separately attested to by five attorneys. (ECF #106-2, at pp. 11:21-16:14; ECF #106-3, ¶¶ 5-9, 12, Ex. 2; ECF # 106-4, ¶¶ 4-8; ECF #106-5, ¶¶ 5-7; ECF # 106-6, ¶¶ 3-5; ECF #106-7, ¶¶ 3-4.) The motion is further justified by the obstreperous and conflicting responses received from Travelers and its counsel which have given NY Marine legitimate concern that the matter was not recognized as a serious invasion of its interests, and that the inviolability of NY Marine confidences would not be honored. (ECF #106-3, ¶ 12, Ex. 2.) In contrast, the Opposition presents no substantive argument that the motion is "tactical" beyond *ad hominem* and, again, the erroneous and "ironic" complaint that NY Marine will not disclose the actual substance of the confidential information it seeks to protect through this motion. *Jessen, supra,* 111 Cal.App.4th at 706 (quoting *H. F. Ahmanson & Co., supra,* 229 Cal.App.3d at 1453. (ECF #108, at p. 17:5-28.); *see also, Trone v. Smith,* 621 F.2d 994, 999 (9th Cir. 1980) ("The test does not require the former client to show that actual confidences were disclosed. That inquiry would be improper as requiring the very disclosure the rule is intended to protect."). As such, there is no reasonable basis for this Court to conclude that NY Marine's motion was filed for an improper or "tactical" purpose.

**E.   Disqualifying Maynard Nexsen Works No Significant Hardship On Travelers**

As noted, California courts recognize that disqualification implicates important interests, including "a client's right to chosen counsel, an attorney's interest in representing a client, [and] the financial burden on a client to replace disqualified counsel". *SpeeDee Oil, supra,* 20 Cal.4th at 1145.   "Nevertheless, determining whether a conflict of interest requires disqualification involves more than just the interests of the parties", and "[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process." *Id.*

Here, the latter interests outweigh the former. First, if Travelers was not promptly advised by Maynard Nexsen of this issue, that is certainly not NY Marine's fault. Second, NY Marine notified Travelers of the conflict *within 48 hours* of Maynard Nexsen's appearance, and has promptly brought this motion following meet and confer efforts as required by the local rules. As a result, any expense incurred by Travelers in obtaining new counsel is almost certainly minimal. As such, consideration of NY Marine's rights and the directly related ethical considerations here uniformly weigh in favor of requiring Maynard Nexsen's disqualification.

## III. <u>CONCLUSION</u>

For the foregoing reasons and those stated in NY Marine's moving papers, NY Marine respectfully requests that the Court disqualify Maynard Nexsen from representing Travelers in this matter.

Dated:  April 27, 2023

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP

By: _____
          */s/ James P. Wagoner*
James P. Wagoner
Lejf E. Knutson
Nicholas H. Rasmussen
Graham A. Van Leuven
Attorneys for Defendant New York Marine and General Insurance Company

9069411.1

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY MAYNARD NEXSEN, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **WORD COUNT CERTIFICATE**

I certify that the foregoing Plaintiff and Counter-defendant's Motion to Disqualify Maynard Nexsen LLP contains 6,290 words (not including the cover, the Table of Contents, the Table of Authorities, the signature block, and this certificate) which complies with Local Rule 11-6.1. In preparing this certificate, I relied on the word count of Microsoft Office Word 2010, the computer program used to prepare the Plaintiff and Counter-Defendant's Reply In Support Of Its Motion to Disqualify Maynard Nexsen LLP.

Dated:  April 27, 2023

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP

By: _____*/s/ James P. Wagoner*_____

James P. Wagoner
Lejf E. Knutson
Nicholas H. Rasmussen
Graham A. Van Leuven
Attorneys for Defendant New York Marine and General Insurance Company

9069411.1

NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY MAYNARD NEXSEN, LLP

# PROOF OF SERVICE

**Travelers Commercial Insurance Company v. New York Marine and General Insurance Company**

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Fresno, State of California.  My business address is 7647 North Fresno Street, Fresno, CA 93720.

On April 27, 2023, I served true copies of the following document(s) described as **NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION TO DISQUALIFY MAYNARD NEXSEN, LLP** on the interested parties in this action as follows:

| | |
|---|---|
| Nicholas J. Boos | *Via Email* |
| Maynard Nexsen LLP | |
| Two Embarcadero Center, Suite 1450 | Kirk Pasich |
| San Francisco, CA  94111 | Kayla Robinson |
| Telephone: (415) 646-4674 | Pasich LLP |
| Email: nboos@maynardnexsen.com | 10880 Wilshire Blvd., Suite 2000 |
| | Los Angeles, CA 90024 |
| *Attorneys for Plaintiff Travelers Commercial Insurance Company* | Telephone: (424) 313-7860 |
| | Email: kpasich@pasichllp.com |
| | krobinson@pasichllp.com |
| | |
| | *Attorneys for Non-Party Amber Heard* |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 27, 2023, at Fresno, California.

*/s/ Heather Ward*

Heather Ward