McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
James P. Wagoner, #58553
  *jim.wagoner@mccormickbarstow.com*
Lejf E. Knutson, #234203
  *lejf.knutson@mccormickbarstow.com*
Nicholas H. Rasmussen, #285736
  *nrasmussen@mccormickbarstow.com*
Graham A Van Leuven, #295599
  *graham.vanleuven@mccormickbarstow.com*
7647 North Fresno Street
Fresno, California 93720
Telephone:  (559) 433-1300
Facsimile:   (559) 433-2300

Attorneys for Defendant New York
Marine and General Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Travelers Commercial Insurance Company, a Connecticut Corporation,<br><br>Plaintiff,<br><br>v.<br><br>New York Marine and General Insurance Company, a Delaware Corporation,<br><br>Defendant.<br><hr>New York Marine and General Insurance Company, a Delaware corporation<br><br>Counter-Claimant<br><br>v.<br><br>Travelers Commercial Insurance Company, a Connecticut corporation,<br><br>Counter-Defendant | Case No. 2:21-cv-5832-GW (PDx)<br><br>**SUPPLEMENTAL DECLARATION OF NICHOLAS H. RASMUSSEN IN SUPPORT OF NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S MOTION TO DISQUALIFY MAYNARD NEXSEN, LLP**<br><br>Date:        May 11, 2023<br>Time:        8:30 a.m.<br>Judge:       Hon. George H. Wu<br>Courtroom:   9D |

I, Nicholas H. Rasmussen, declare as follows:

1.     I am an attorney licensed to practice in the State of California, and am admitted to practice in the United States District Court for the Central District of California. I am a member of the firm of McCormick, Barstow, Sheppard, Wayte & Carruth, LLP, and in that capacity, represent Defendant and Counterclaimant New York Marine and General Insurance Company ("NY Marine") in this action. The following facts are based upon my personal knowledge, and if called as a witness I could and would testify competently to these facts under oath.

2.     This Supplemental Declaration is submitted in support of NY Marine's motion to disqualify Travelers Commercial Insurance Company's ("Travelers") counsel of record, Maynard Nexsen, LLP ("Maynard Nexsen").

3.     On April 24, 2023, I obtained a copy of the California State Bar's "Proposed Rule 1.10 Imputation of Conflicts of Interest: General Rule (Proposed Rule Adopted by the Board on November 17, 2016", its "EXECUTIVE SUMMARY" of the proposed rule, and the "COMMISSION REPORT AND RECOMMENDATION: RULE       1.10"       from       the       State       Bar       website       at: https://www.calbar.ca.gov/portals/0/documents/rules/rrc2014/final_rules/rrc2-1.10-all.pdf . A true and correct copy of the "Executive Summary" is attached hereto as Exhibit 1.

4.     As relevant, the Executive Summary states at page 4, in the fourth full paragraph thereof, that "There are five comments to proposed rule 1.10, all of which provide interpretive guidance or clarify how the proposed rule, which identifies several situations under which imputation can be avoided or does not apply, should be applied."

5.     The Executive Summary also states at page 4, "Post-Public Comment Revisions" that "After consideration of comments received in response to the initial 90-day public comment period, the Commission added Comment [1] which provides guidance in determining whether a lawyer participated substantially in a matter under

1

paragraph (a)(2)(i). The new Comment [1] lists non-exhaustive factors for evaluation and does not change a lawyer's obligations. The Commission also added a citation to *Kirk v. First American Title Ins. Co.* to the cases listed in Comment [6]. The Commission made non-substantive stylistic edits and voted to recommend that the Board adopt the proposed rule."

6.    On April 25, 2023, I obtained a from the website of the State Bar of California, a copy of the Attorney Profile for Nicholas J. Boos maintained by the State Bar of California, identifying his date of licensure in California, a true and correct copy of which is attached hereto as Exhibit 2.

I declare under penalty of perjury that the foregoing is true and correct. Executed in Fresno, California, on April 27, 2023.

By:    /s/ *Nicholas H. Rasmussen*
                    Nicholas H. Rasmussen

9075585.1

SUPPLEMENTAL DECLARATION OF NICHOLAS H. RASMUSSEN IN SUPPORT OF NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S MOTION TO DISQUALIFY MAYNARD NEXSEN, LLP

# EXHIBIT 1

**PROPOSED RULE OF PROFESSIONAL CONDUCT 1.10**
**(No Current Rule)**
**Imputation of Conflicts of Interest: General Rule**

**EXECUTIVE SUMMARY**

The Commission for the Revision of the Rules of Professional Conduct ("Commission") evaluated current rule 3-310 (Avoiding the Representation of Adverse Interests) in accordance with the Commission Charter. In addition, the Commission considered the national standard of the ABA counterparts, a series of rules that address conflicts of interest as they might arise in a number of different situations. The conflicts of interest Model Rules include four rules that correspond directly to the provisions of current rule 3-310: 1.7 (current client conflicts) [rule 3-310(B) and (C)]; 1.8(f) (third party payments) [rule 3-310(F)]; 1.8(g) (aggregate settlements) [rule 3-310(D)]; and 1.9 (Duties To Former Clients) [rule 3-310(E)].  The Model Rules also include Model Rule 1.8, which compiles in a single rule 10 separate conflicts of interest concepts,[1] and Model Rules 1.10 (general rule of imputation and ethical screening in private firm context), 1.11 (conflicts involving government lawyers), and 1.12 (conflicts involving former judges, third party neutrals and their staffs).

<u>**Rule As Issued For 90-day Public Comment**</u>

The result of the Commission's evaluation is a two-fold recommendation for implementing:

(1) the <u>Model Rules' framework</u> of having (i) separate rules that regulate the different conflicts of interest situations currently regulated by a single rule, rule 3-310: proposed rules 1.7 (current clients), 1.8.6 (payments from one other than client), 1.8.7 (aggregate settlements) and 1.9 (former clients); and (ii) several rules to address concepts that are currently found in case law but not in the Rules of Professional Conduct: proposed rules 1.10 (general rule of imputation of conflicts and ethical screening in private firm context), 1.11 (conflicts involving former and current government lawyers), and 1.12 (conflicts involving former judges, third party neutrals, and their staffs).

(2) <u>proposed rule 1.10</u> (imputation and ethical screening), which would incorporate into a rule of professional conduct the imputation within a law firm of conflicts of interest, a concept that is currently addressed only in California case law, and also would permit the erection of an ethical screen in narrowly defined circumstances to avoid the imposition of such imputations. Proposed rule 1.10 largely adheres to the structure and substance of Model Rule 1.10 but significantly differs in the extent to which a private firm is permitted to erect an ethical screen around a lawyer who has moved laterally from another private firm. Unlike the Model Rule, which broadly permits screening, i.e., it would permit the principal lawyer in the same matter to be screened, the proposed rule would permit screening only in limited situations, i.e., if the prohibited lawyer did "not substantially participate" in the matter at issue.

---

[1]     Rather than gather disparate conflicts concepts in a single rule, the Commission has recommended that each provision that corresponds to a concept in Model Rule 1.8 be assigned a separate rule number as is done in the current California rules. For example, the proposed rule corresponding to Model Rule 1.8(a) is numbered 1.8.1; the rule corresponding to Model Rule 1.8(b) is numbered 1.8.2, and so forth. Each of these rules is addressed in separate executive summaries.

Proposed rule 1.10 has been adopted by the Commission for submission to the Board of Trustees for public comment authorization. A final recommended rule will follow the public comment process.

1. ***Recommendation of the ABA Model Rule Conflicts Framework***. The rationale underlying the Commission's recommendation of the ABA's multiple-rule approach is its conclusion that such an approach should facilitate compliance with and enforcement of conflicts of interest principles. Among other things, separate rules should reduce confusion and provide out-of-state lawyers, who often practice in California under one of the multijurisdictional practice California Rules of Court (9.45 to 9.48) with quick access to the rules governing their specific conflicts problem. At the same time, this approach will promote a national standard for how the different conflicts of interest principles are organized within the rules.[2]

2. ***Recommendation of addressing the concepts of imputation and screening in a rule that tracks the organization of Model Rule 1.10***. There are four separate provisions in the proposed rule, two of which set forth the rules regarding imputation as it has been developed in case law in California (paragraphs (a) and (b)), one which provides that a client can waive the rule's application (paragraph (c)), and one which excludes government lawyers from the application of the rule (they are governed by rule 1.11).

There are a number of reasons for the Commission's recommendation. *First*, adopting the structure, format and language of the Model Rule, as supplemented by language and law developed in California case law, should protect client interests by clearly establishing in paragraph (a) that imputation is the default situation that can be avoided only if the conflict is personal to the prohibited lawyer, the lawyer is screened under narrowly specified conditions, or the client waives the rule's application. *Second*, permitting the exception for screening a lawyer who "did not substantially participate" in the contested matter will provide flexibility for lawyers to move laterally without creating a significant risk that a lawyer who has acquired sensitive confidential information about the former clients is now in the opposing party's law firm. *Third*, adopting a limited screening provision will place in a rule of professional conduct an approach to screening that was sanctioned in *Kirk v. First American Title Ins. Co.*, 183 Cal.App.4th 776, 108 Cal.Rptr.3d 620 (2010), *review denied* (6/23/2010). *Fourth*, including paragraph (c) regarding waiver will expressly permit what is already implied in current rule 3-310, i.e., that the client can consent to a conflicted representation.

**Informed written consent**. In addition to the foregoing considerations, the Commission recommends carrying forward California's more client-protective requirement that a lawyer obtain the client's "informed written consent," which requires written disclosure of the potential adverse consequences of the client consenting to a conflicted representation. The Model Rules,

---

[2]    Every other jurisdiction in the country has adopted the ABA conflicts rules framework. In addition to the identified provisions, the Model Rules also include Model Rule 1.8, which includes eight provisions in addition to paragraphs (d) and (f) that cover conflicts situations addressed by standalone California rules (e.g., MR 1.8(a) is covered by California rule 3-300 [Avoiding Interests Adverse To A Client] and MR 1.8(e) is covered by California rule 4-210 [Payment of Personal or Business Expenses By Or For A Client)].)

Further, the Model Rules also deal with concepts that are addressed by case law in California: Model Rules 1.10 (Imputation of Conflicts and Ethical Screening); 1.11 (Conflicts Involving Government Officers and Employees); and 1.12 (Conflicts Involving Former Judges and Judicial Employees). The Commission is recommending rule counterparts to those rules, each of which is the subject of a separate executive summary.

on the other hand, employ a less-strict requirement of requiring only "informed consent, confirmed in writing." That standard permits a lawyer to confirm by email or even text message that the client has consented to a conflict.

Paragraph (a) of proposed rule 1.10 sets forth the default rule in the introductory clause: any prohibition on representation under rules 1.7 (current client conflict) or 1.9 (former client conflict) will be imputed to all lawyers in the firm unless either subparagraph (a)(1) or (2) applies.

Subparagraph (a)(1) provides that a prohibition based on a lawyer's "personal interest" (e.g., close personal or professional relationship) is not imputed to other lawyers in the firm so long as that interest does not create a significant risk of materially limiting the representation of the firm's client.

Subparagraph (a)(2), the screening provision, is derived from the corresponding paragraph in Model Rule 1.10 but has been modified to reflect that the rule is a disciplinary rule rather than a civil standard for disqualification (substitution of "prohibited" for "disqualified"). In addition, unlike the Model Rule, which broadly permits screening,[3] subparagraph (a)(2) provides for screening only in limited circumstances.[4] Under subparagraph (a)(2), a prohibited lawyer's conflict will not be imputed to other lawyer's in the firm so long as the prohibited lawyer did not substantially participate in the contested matter, is timely screened, and written notice is provided to any affected former client to enable the latter to ascertain compliance with the rule. Specifics on what constitutes an effective screen are provided in rule 1.0.1(k) and associated comments.

The phrase "arises out of the personally prohibited lawyer's association with a prior firm" further limits the availability of screening to situations where a prohibited lawyer has moved laterally from another firm. Put another way, a law firm could not erect a screen around those firm lawyers who had represented a former client when the lawyers were associated in the same firm in order to represent a new client against that former client. This is an appropriate limitation on screening and parallels the availability of screening for current and former government lawyers (rule 1.11) and former judicial personnel (rule 1.12) only when such lawyers move to new employment.

---

[3]   The term **"broadly permits screening"** is used to describe an ethical screen provision that permits screening even if the screened lawyer had a substantial and direct involvement in the former client's case, and even if the former and current clients' cases were "substantially related." A rule that broadly permits screening in effect would put private lawyers on equal footing as government lawyers who move from government to private practice or from private practice to government. Even a government lawyer who "personally and substantially participated" in the relevant matter can be screened.

Only four jurisdictions have adopted the Model Rule 1.10(a)(2) screening provisions verbatim: Connecticut, Idaho, Iowa and Wyoming. Nevertheless, there are 14 other jurisdictions that have adopted screening provisions that broadly permit screening of private lawyers similar to the Model Rule: Arizona, Delaware, D.C., Illinois, Kentucky, Maryland, Michigan, Montana, North Carolina, Oregon, Pennsylvania, Rhode Island, Utah and Washington.

[4]   The term **"limited screen"** is used to describe a screening provision that permits screening only if a lawyer did not "substantially participate," or was not "substantially involved," did not have a "substantial role," did not have "primary responsibility," etc., in the former client's matter, or when any confidential information that the lawyer might have obtained is deemed "not material" to the current representation, or "is not likely to be significant."

Fourteen jurisdictions permit screening in limited situations: Colorado, Hawaii, Indiana, Massachusetts, Minnesota, Nevada, New Hampshire, New Jersey, New Mexico, North Dakota, Ohio, Tennessee, Vermont, and Wisconsin.

Paragraph (b) incorporates Model Rule 1.10(b), which was adopted as the law of California by the court in *Goldberg v. Warner/Chappell Music, Inc.* (2005) 125 Cal.App.4th 752 [23 Cal.Rptr.3d 116]. The concept recognized in *Goldberg* is that if a lawyer who has represented a client and acquired confidential information has left the firm, and no other lawyer who has acquired confidential information remains, then there is no one left in the firm with knowledge that can be imputed to other lawyers in the firm.

Paragraph (c) expressly states what is already implied in current rule 3-310, which provides that a client can give informed written consent to a conflicted representation. If a client can consent to such a representation, then it should follow that a client can waive the imputation of one lawyer's conflict to other lawyers in the firm.

Paragraph (d) excludes government lawyers from the application of this rule and directs such lawyers to rule 1.11, which incorporates its own imputation provisions for conflicts involving current and former government lawyers.

There are five comments to proposed rule 1.10, all of which provide interpretative guidance or clarify how the proposed rule, which identifies several situations under which imputation can be avoided or does not apply, should be applied. Comment [1] notes that the rule does not apply when the prohibited person is a nonlawyer, for example, a secretary, or a person who acquired confidential information as a nonlawyer, e.g., a law student, but cautions that such a person should be screened. Comment [2] clarifies the application of paragraph (a)(2)(ii) to partnership shares. Comment [3] clarifies that rule 1.8.11, not rule 1.10, applies to conflicts that arise under the 1.8 series of rules. Comment [4] refers lawyers to the 5 series of rules involving supervisory duties within a law firm so that such lawyers can better comprehend their duties vis-à-vis screens. Comment [5] notes that this disciplinary rule does not necessarily govern disqualification motions in the courts.

## **Post-Public Comment Revisions**

After consideration of comments received in response to the initial 90-day public comment period, the Commission added Comment [1] which provides guidance in determining whether a lawyer participated substantially in a matter under paragraph (a)(2)(i). The new Comment [1] lists non-exhaustive factors for evaluation and does not change a lawyer's obligations.  The Commission also added a citation to *Kirk v. First American Title Ins. Co.* to the cases listed in Comment [6]. The Commission made non-substantive stylistic edits and voted to recommend that the Board adopt the proposed rule.

# EXHIBIT 2



The State Bar *of California*

**Nicholas Justin Boos #233399**
**License Status: Active**

Address: Maynard Nexsen LLP, 2 Embarcadero Ctr, Ste 1450, San Francisco, CA 94111-3915
Phone: 415-704-7433  |  Fax: 205-714-6415
Email: nboos@maynardnexsen.com  |  Website: www.maynardnexsen.com

## More about This Attorney ▼

**All changes of license status due to nondisciplinary administrative matters and disciplinary actions.**

| Date | License Status ⓘ | Discipline ⓘ | Administrative Action ⓘ |
|------|------------------|--------------|-------------------------|
| Present | Active | | |
| 12/1/2004 | Admitted to the State Bar of California | | |

**Additional Information:**
- About the disciplinary system

Copyright © 2023 The State Bar of California

  

## PROOF OF SERVICE

**Travelers Commercial Insurance Company v. New York Marine and General Insurance Company**

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Fresno, State of California.  My business address is 7647 North Fresno Street, Fresno, CA 93720.

On April 27, 2023, I served true copies of the following document(s) described as **SUPPLEMENTAL DECLARATION OF NICHOLAS H. RASMUSSEN IN SUPPORT OF NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S MOTION TO DISQUALIFY MAYNARD NEXSEN, LLP** on the interested parties in this action as follows:

| | |
|---|---|
| Nicholas J. Boos | Kirk Pasich |
| Maynard Cooper & Gale | Kayla Robinson |
| Two Embarcadero Center, Suite 1450 | Pasich LLP |
| San Francisco, CA  94111 | 10880 Wilshire Blvd., Suite 2000 |
| Telephone: (415) 646-4674 | Los Angeles, CA 90024 |
| Email: nboos@maynardcooper.com | Telephone: (424) 313-7860 |
| | Email: kpasich@pasichllp.com |
| *Attorneys for Plaintiff Travelers Commercial Insurance Company* | krobinson@pasichllp.com |
| | *Attorneys for Non-Party Amber Heard* |

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on April 27, 2023, at Fresno, California.

_____
*/s/ Heather Ward*
Heather Ward

---

SUPPLEMENTAL DECLARATION OF NICHOLAS H. RASMUSSEN IN SUPPORT OF NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S MOTION TO DISQUALIFY MAYNARD NEXSEN, LLP