McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
James P. Wagoner, #58553
  *jim.wagoner@mccormickbarstow.com*
Lejf E. Knutson, #234203
  *lejf.knutson@mccormickbarstow.com*
Nicholas H. Rasmussen, #285736
  *nrasmussen@mccormickbarstow.com*
Graham A Van Leuven, #295599
  *graham.vanleuven@mccormickbarstow.com*
7647 North Fresno Street
Fresno, California 93720
Telephone:  (559) 433-1300
Facsimile:  (559) 433-2300

Attorneys for Defendant and Counterclaimant New York Marine and General Insurance Company

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Travelers Commercial Insurance Company, a Connecticut Corporation,<br><br>             Plaintiff,<br><br>       v.<br><br>New York Marine and General Insurance Company, a Delaware Corporation,<br><br>             Defendant.<br><br>New York Marine and General Insurance Company, a Delaware corporation<br><br>             Counter-Claimant<br><br>       v.<br><br>Travelers Commercial Insurance Company, a Connecticut corporation,<br><br>Counter-Defendant | Case No. 2:21-cv-5832-GW (PDx)<br><br>**NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS MOTION TO DISQUALIFY MAYNARD NEXSEN, LLP**<br><br>Date:    May 11, 2023<br>Time:   8:30 a.m.<br>Crtrm.:  9D<br><br>Hon. George H. Wu |

NY Marine's Notice of Supplemental Authority ISO its Motion to Disqualify Maynard Nexsen, LLP

As supplemental authority in support of its motion to disqualify Maynard Nexsen, LLP, counsel of record for Plaintiff and Counter-Defendant Travelers Commercial Insurance Company, Defendant and Counterclaimant New York Marine and General Insurance Company ("NY Marine") respectfully submits the attached opinion issued on April 28, 2023 in *Fletscher v. Fletscher,* Case No. C95934, 2023 WL 3141605 (Cal.Ct.App. April 28, 2023) (Unpub'd).

*Fletscher,* addressing a motion to disqualify counsel due to a conflict created by a prior representation, expressly observes that Rule 1.10(a) reflects the incorporation of "prior decisional law" governing motions to disqualify into the Rules of Professional Conduct. *Id.,* at *4 (stating that "[t]he circumstances under which an attorney's personal conflict will be imputed to the attorney's entire law firm, resulting in the firm's disqualification, were historically the product of decisional law [citation] and were added to the Rules of Professional Conduct in 2018 (see rule 1.10(a) ['While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rules 1.8 or 1.9' absent certain exceptions not applicable here]).")

Thus, in analyzing the conflict, *Fletscher* concluded that where the conflicted attorney had represented the client in the matter "that is currently being disputed by the parties", "there is a 'substantial relationship' 'between the subjects of the prior and the current representations'". *Id.,* at *4 (internal quotations omitted).

*Fletscher* further analyzes the issue pursuant to the updated California Rules of Professional Conduct, including Rule 1.10, citing and relying upon *Henriksen v. Great American Savings & Loan,* 11 Cal.App.4th 109, 114-115 (1992) and *Kirk v. First Am. Title Ins. Co.,* 183 Cal.App.4th 776, 800 (2010) as relevant governing law. *Fletscher, supra,* 2023 WL 3141605 at *4. In this respect, *Fletscher* states that:

> "As a general rule in California, where an attorney is disqualified from representation, the entire law firm is vicariously disqualified as well. [Citations.] This is especially true where the attorney's disqualification

is due to his prior representation of the opposing side during the same lawsuit." (*Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, 114-115.) "[T]he rule [is] quite clear cut in California: where an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law." (*Id.,* at p. 117; see also *Kirk v. First American Title Ins. Co.* (2010) 183 Cal.App.4th 776, 800 (*Kirk*) [noting "the Henriksen rules that vicarious disqualification should be automatic in cases of a tainted attorney possessing actual confidential information from a representation, who switches sides in the same case"].)

*Fletscher, supra,* 2023 WL 3141605, at *4.

A copy of the *Fletscher* decision is filed herewith.

Dated: May 9, 2023

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP

By: */s/ James P. Wagoner*
James P. Wagoner
Lejf E. Knutson
Nicholas H. Rasmussen
Graham A. Van Leuven
Attorneys for Defendant and Counterclaimant
New York Marine and General Insurance Company

9101623.1

Case 2:21-cv-05832-GW-PD Document 111 Filed 05/09/23 Page 4 of 9 Page ID #:1669

Fletscher v. Fletscher, Not Reported in Cal.Rptr. (2023)

KeyCite Red Flag - Severe Negative Treatment
Unpublished/noncitable

2023 WL 3141605
Not Officially Published
(Cal. Rules of Court, Rules 8.1105 and 8.1110, 8.1115)
Only the Westlaw citation is currently available.

California Rules of Court, rule 8.1115, restricts citation of unpublished opinions in California courts.

Court of Appeal, Third District, California.

Walter L. FLETSCHER,
Plaintiff and Appellant,
v.
Melissa FLETSCHER,
Defendant and Respondent.

C095934
|
Filed April 28, 2023

(Super. Ct. No. CV-FL-05-154102)

**Attorneys and Law Firms**

Patricia Ann Wilson, Hadfield & Wilson, 1901 Park Marina Dr, Redding, CA 96001, for Plaintiff and Appellant.

Paul C. Meidus, Reese, Smalley, Wiseman & Schweitzer, LLP, 1265 Willis Street, Redding, CA 96001, for Defendant and Respondent.

**Opinion**

Duarte, Acting P. J.

*1 Appellant Walter L. Fletscher appeals from the trial court's order granting respondent Melissa Fletscher's motion to disqualify Patricia Wilson, the attorney Walter had retained to represent him in his marriage dissolution case against Melissa, due to a conflict of interest.[1] At the time Walter retained Wilson, Wilson was a member of a law firm with attorney Bruce Dwiggins, who had previously represented Melissa during Walter's bankruptcy proceedings and had advised Melissa as to the content of an agreement between the parties. The trial court concluded that Dwiggins was disqualified from representing Walter due to the fact that Melissa was a former client, and it imputed that disqualification to Wilson.

On appeal, Walter contends the trial court abused its discretion by granting Melissa's motion to disqualify without considering whether Wilson's conflict of interest was merely speculative, whether disqualification was punitive rather than prophylactic, and whether disqualification would change the outcome of the case. We disagree and affirm the order.

**FACTS AND PROCEEDINGS**

*Walter's Motion for Accounting and Restitution*
Walter retained Wilson in September 2021. In November 2021, Wilson filed a motion on Walter's behalf for accounting and restitution, seeking a finding that Melissa had breached her fiduciary duty under the parties' December 2007 stipulated judgment of dissolution of marriage (stipulated judgment) by failing to timely list and sell a residential property in Carmel-by-the-Sea (the property). The motion contended that, but for Melissa's breach of fiduciary duty, Walter would have satisfied his financial obligation to Melissa under the stipulated judgment in 2008. Instead, according to Walter's motion, he continued to make payments he believed were required by the stipulated judgment, entitling him to restitution.

*Melissa's Motion to Disqualify Wilson*
In December 2021, Melissa filed a motion to disqualify Wilson for alleged conflict of interest. Melissa asserted that she retained attorney Griffith Tonkin in September 2015 to collect on Walter's debt to her, and that Tonkin continued to take action to collect the debt. In April 2016, after Walter had declared bankruptcy, Tonkin consulted with attorney Bruce Dwiggins of Dwiggins Bankruptcy Law on Melissa's behalf for the purpose of drafting and constructing a spousal equalization payment agreement, which was intended to resolve the parties' dispute regarding Walter's continued financial obligations. The parties entered into that agreement in October 2016. Tonkin paid Dwiggins $650 on Melissa's behalf for his assistance. Melissa retained Dwiggins again in 2019 and 2020 after Walter defaulted on the equalization payment agreement and declared bankruptcy. While representing her during Walter's bankruptcy proceedings, Dwiggins communicated with Melissa directly and with Tonkin to provide status reports and descriptions of Walter's conduct during the proceedings.

Case 2:21-cv-05832-GW-PD Document 111 Filed 05/09/23 Page 5 of 9 Page ID #:1670

Fletscher v. Fletscher, Not Reported in Cal.Rptr. (2023)

**\*2** Melissa contended that Dwiggins owed her a duty of loyalty, as his former client, and that duty of loyalty extended to other members of his firm. She asserted that Wilson joined Dwiggins Bankruptcy Law during the time that Dwiggins represented her, and, although Wilson ostensibly represented Walter under her separate firm Hadfield & Wilson, she was a "key part" of Dwiggins Bankruptcy Law. Melissa claimed that Wilson's representation of Walter, which included challenging the validity of the equalization payment agreement, violated the duty imputed to her to protect Melissa's interests in Walter's bankruptcy proceedings and in the equalization payment agreement.

Walter opposed Melissa's motion to disqualify Wilson. He acknowledged that Wilson joined Dwiggins Bankruptcy Law in May 2020, but he contested Melissa's characterization of the relevant facts. He asserted that Wilson was not a member of Dwiggins Bankruptcy Law when Dwiggins provided minimal advice regarding a single paragraph of the equalization payment agreement, that Dwiggins' limited representation of Melissa in Walter's bankruptcy proceedings was not substantially related to Melissa's breach of fiduciary duty with respect to the stipulated judgment, and that Wilson represented Walter through her own firm separate from Dwiggins Bankruptcy Law. He further noted that Melissa did not assert that she communicated any confidential information to Dwiggins. Accordingly, he contended that any contention of conflict of interest was speculative and that disqualification would not change the outcome of the case because any new attorney Walter retained would argue the same motion Wilson had filed on his behalf.

*Trial Court's Order*

Following a hearing, the trial court granted Melissa's motion to disqualify Wilson. The court found that Dwiggins provided legal advice regarding the terms of one paragraph of the equalization payment agreement at a time when the agreement's language was expected to be confidential, and that he identified himself as Melissa's attorney and represented her interests during Walter's bankruptcy proceedings. The court noted that Walter now challenged the validity of the equalization payment agreement, the contents of which Dwiggins had helped draft. Walter does not challenge these findings on appeal.

Although the trial court found no evidence that Wilson had personally worked on Walter's bankruptcy matter, the court observed that where one attorney is disqualified due to a conflict of interest, the entire firm is generally disqualified as well. (Citing *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1139 (*SpeeDee*).) The court concluded that the exchange of confidential information regarding the equalization payment agreement gave rise to the presumption that the confidential information was shared with members of the same firm, shifting the burden to Walter to show that an ethical screening system was in place to protect client confidentiality. Finding no evidence that safeguards were put in place to shield Melissa's confidential information from Wilson, the court granted the motion to disqualify.

Walter timely appealed the trial court's order. The case was fully briefed in January 2023, and was assigned to this panel on January 31, 2023.

**DISCUSSION**

I

*Motion to Disqualify*

Walter claims the trial court abused its discretion when it granted Melissa's motion to disqualify Wilson, because its order was based solely on facts related to Wilson's conflict of interest and did not analyze whether the conflict of interest was speculative, whether disqualification was prophylactic rather than punitive, or whether disqualification would change the outcome of the case. We disagree because, as we will explain, disqualification was required based on the facts of this case.

A. *Standard of Review*

**\*3** "Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied findings supported by substantial evidence. [Citations.] When substantial evidence supports the trial court's factual findings, the appellate court reviews the conclusions based on those findings for abuse of discretion. [Citation.] However, the trial court's discretion is limited by the applicable legal principles. [Citation.] Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law.

Case 2:21-cv-05832-GW-PD   Document 111   Filed 05/09/23   Page 6 of 9   Page ID #:1671

Fletscher v. Fletscher, Not Reported in Cal.Rptr. (2023)

[Citation.] In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion." (*SpeeDee, supra,* 20 Cal.4th at pp. 1143-1144.)

Because there is no factual dispute here, we review the trial court's legal conclusions de novo. We first set forth and apply the relevant law regarding disqualification of attorneys, and then address the legal principles raised by Walter.

    B. *Dwiggins' Conflict of Interest*

" 'It has long been established in civil cases that the court has the power, on motion of a party, to disqualify an opposing attorney from participating in a trial when, for example, the attorney improperly seeks to proceed against a former client.' " (*City National Bank v. Adams* (2002) 96 Cal.App.4th 315, 323.) "A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, [and] the conduct of its ministerial officers.' " (*SpeeDee, supra,* 20 Cal.4th at p. 1145.)

California State Bar Rules of Professional Conduct and governing case law generally prohibit the representation of a new client whose interests are adverse to those of a former client. (*City National Bank v. Adams, supra,* 96 Cal.App.4th at p. 323.) As relevant here, rule 1.9(a) of the Rules of Professional Conduct (formerly rule 3-310(e)) provides: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed written consent."[2] Rule 1.7(b) prohibits a lawyer from representing a client if there is a significant risk the lawyer's representation of the client will be materially limited by the lawyer's responsibilities to or relationships with a former client, in the absence of informed written consent of each client.

If an attorney fails to obtain informed written consent from a former client waiving the conflict and proceeds to represent the former client's adversary, "the former client may disqualify the attorney by showing a ' "substantial relationship" ' between the subjects of the prior and the current representations. [Citation.] To determine whether there is a substantial relationship between successive representations, a court must first determine whether the attorney had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation." (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 847 (*Cobra Solutions*).)

**\*4** If the attorney "had a direct professional relationship with the former client in which the attorney personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation," "the former client need not prove that the attorney possesses actual confidential information." (*Cobra Solutions, supra,* 38 Cal.4th at p. 847.) "Instead, the attorney is presumed to possess confidential information if the subject of the prior representation put the attorney in a position in which confidences material to the current representation would normally have been imparted to counsel." (*Ibid.*)

On the other hand, "[w]hen the attorney's contact with the prior client was not direct, then the court examines both the attorney's relationship to the prior client and the relationship between the prior and the present representation. If the subjects of the prior representation are such as to 'make it likely the attorney acquired confidential information' that is relevant and material to the present representation, then the two representations are substantially related. [Citations.] When a substantial relationship between the two representations is established, the attorney is automatically disqualified from representing the second client." (*Cobra Solutions, supra,* 38 Cal.4th at p. 847.)

Evaluating the facts as found by the trial court, we conclude Dwiggins had a direct professional relationship with Melissa in which he personally provided legal advice and services on a legal issue that is closely related to the legal issue in the present representation. (See *Cobra Solutions, supra,* 38 Cal.4th at p. 847.) Dwiggins personally represented Melissa's interests in Walter's bankruptcy proceedings, and he provided legal advice regarding the terms of the equalization payment agreement, the validity of which is at issue in Walter's motion for accounting and restitution. At the time Dwiggins provided legal advice regarding the terms of the equalization payment agreement, the terms of that agreement were confidential. Because Dwiggins provided legal advice on the content of an agreement that is currently being disputed by the parties, we conclude there is a " ' "substantial relationship" ' " between the subjects of the prior and the current representations, and therefore Dwiggins is disqualified from representing Walter. (*Cobra Solutions, supra,* 38 Cal.4th at p. 847.) Next, we will analyze whether Wilson must be vicariously disqualified due to Dwiggins' conflict of interest.

Case 2:21-cv-05832-GW-PD   Document 111   Filed 05/09/23   Page 7 of 9   Page ID #:1672

Fletscher v. Fletscher, Not Reported in Cal.Rptr. (2023)

C. *Imputing Dwiggins' Conflict to Wilson*

The circumstances under which an attorney's personal conflict will be imputed to the attorney's entire law firm, resulting in the firm's vicarious disqualification, were historically the product of decisional law (*Cobra Solutions, supra,* 38 Cal.4th at p. 847) and were added to the Rules of Professional Conduct in 2018 (see rule 1.10(a) ["While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rules 1.7 or 1.9" absent certain exceptions not applicable here]).

"As a general rule in California, where an attorney is disqualified from representation, the entire law firm is vicariously disqualified as well. [Citations.] This is especially true where the attorney's disqualification is due to his prior representation of the opposing side during the same lawsuit." (*Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, 114-115.) "[T]he rule [is] quite clear cut in California: where an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law." (*Id.* at p. 117; see also *Kirk v. First American Title Ins. Co.* (2010) 183 Cal.App.4th 776, 800 (*Kirk*) [noting "the *Henriksen* rule that vicarious disqualification should be automatic in cases of a tainted attorney possessing actual confidential information from a representation, who switches sides in the same case"].)

\*5  Some courts have concluded that, in proper circumstances, automatic disqualification is not required, but that there is instead a rebuttable presumption that the "tainted" attorney's knowledge of client confidences is imputed to the firm, which can be refuted by evidence that the law firm adequately screened the attorney from the others at the firm representing the adverse party. (See *Kirk, supra,* 183 Cal.App.4th at p. 801.)

Here, we do not need to analyze whether vicarious disqualification is compelled as a matter of law, or whether Dwiggins Bankruptcy Law was entitled to rebut the presumption that Dwiggins' knowledge of Melissa's confidences required Wilson's vicarious disqualification. It matters not, because the trial court found no evidence that Dwiggins Bankruptcy Law made *any attempt* to construct an ethical wall from the beginning of Wilson's employment at the firm. Accordingly, even if there were only a rebuttable presumption that Dwiggins' knowledge of Melissa's confidences is imputed to the firm, Dwiggins failed to rebut that presumption. Accordingly, Wilson was vicariously disqualified from representing Walter.

D. *Applicability of Other Legal Principles*

Walter contends the trial court erred by relying on "conflict-related facts" and failing to consider three other legal principles he contends should apply here: (1) the conflict must not be speculative, (2) the disqualification must be prophylactic, not punitive, and (3) disqualification is inappropriate if it will not change the outcome of the case. As we will explain, we disagree.

Walter contends the trial court failed to determine that anything more than a hypothetical conflict of interest existed because there was no evidence that Wilson actually acquired confidential information related to Melissa. But as we have discussed, no such evidence was required. Walter relies on *Neal v. Health Net, Inc.* (2002) 100 Cal.App.4th 831 to support his argument, but that case does not assist him. In *Neal*, plaintiff Neal appealed from an order disqualifying her attorney, Traylor, in an employment discrimination lawsuit filed against her former employer, defendant Health Net, Inc., and her former supervisor. In addition to representing Neal, Traylor also represented a legal secretary formerly employed by Health Net, whose employment was terminated after she accessed a Health Net computer file containing attorney-client information related to Neal's lawsuit. In granting the defendants' motion to disqualify, the trial court concluded it was reasonably probable that the legal secretary had shared confidential information with Traylor regarding Neal.

Reversing, the appellate court recognized that the delivery of an adversary's privileged matters *by a client* to their lawyer is not a ground for disqualification under California law, observing: "The cases have consistently concluded that mere exposure to confidential information of the opposing party does not require disqualification." (*Neal v. Health Net, Inc., supra,* 100 Cal.App.4th at p. 841.) The court concluded disqualification was not required because there was no direct evidence that the confidential information was shared to the attorney, and the defendants had no way to rebut the declarations of the legal secretary and Traylor affirming that no confidential information had been shared. However, *Neal* is distinguishable from the facts here because Wilson was not merely exposed to confidential information by a *client*, she was vicariously disqualified from representing a party adverse to Dwiggins' former client where there was

Case 2:21-cv-05832-GW-PD   Document 111   Filed 05/09/23   Page 8 of 9   Page ID #:1673

Fletscher v. Fletscher, Not Reported in Cal.Rptr. (2023)

a substantial relationship between the current and former representations.

**\*6** Walter next argues that the trial court's decision was punitive, rather than prophylactic, because its order focused on the historical deficiencies of the firm's conflicts system and failed to address whether there exists a genuine likelihood that Wilson's status will affect the outcome of the proceedings. (See *Gregori v. Bank of America* (1989) 207 Cal.App.3d 291.) Specifically, Walter contends there is no reasonable likelihood that disqualification will affect the outcome of the case because the trial court's order authorized Walter's new attorney to argue the motion Wilson filed. However, the court did not focus on the firm's failure to establish an ethical screening system to punish Wilson, but rather to support its conclusion that vicarious disqualification was required because Wilson failed to rebut the presumption that Dwiggins' knowledge of Melissa's confidences was imputed to her. (See *Kirk, supra*, 183 Cal.App.4th at p. 801.)

Given the absence of any ethical screening at Dwiggins Bankruptcy Law, and the fact that both Dwiggins and Wilson continued to work at the firm together, there is a likelihood that Wilson "may receive and use the information possessed by the tainted attorney in the pending action." (*Kirk, supra*, 183 Cal.App.4th at p. 815.) The fact that the trial court authorized Walter's new attorney to argue the motion prepared by Wilson does not affect that result because the confidential information possessed by Dwiggins is not limited to the facts included in Walter's written motion, but can also include, for example, knowledge of Melissa's general litigation strategy.

**DISPOSITION**

The trial court's order disqualifying Wilson from representing Walter is affirmed. Melissa is entitled to her costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

We concur:

Boulware Eurie, J.

McAdam, J.[*]

**All Citations**

Not Reported in Cal.Rptr., 2023 WL 3141605

---

Footnotes

\*   Judge of the Yolo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

1   We refer to the Fletschers by their first names to avoid confusion.

2   Further undesignated references to "rule" are to the State Bar Rules of Professional Conduct.

   Former rule 3-310 provided, in relevant part: "(C) A member shall not, without the informed written consent of each client: [¶] (2) Accept or continue representation of more than one client in a matter in which the interests of the clients actually conflict .... [¶] (E) A member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

---

**End of Document**                © 2023 Thomson Reuters. No claim to original U.S. Government Works.

# PROOF OF SERVICE

**Travelers Commercial Insurance Company v. New York Marine and General Insurance Company, 2:22-cv-5832-GW (PDx)**

**STATE OF CALIFORNIA, COUNTY OF FRESNO**

At the time of service, I was over 18 years of age and **not a party to this action**. I am employed in the County of Fresno, State of California. My business address is 7647 North Fresno Street, Fresno, CA 93720.

On May 9, 2023, I served true copies of the following document(s) described as **NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ITS MOTION TO DISQUALIFY MAYNARD NEXSEN, LLP** on the interested parties in this action as follows:

Nicholas J. Boos  
Maynard Nexsen LLP  
Two Embarcadero Center, Suite 1450  
San Francisco, CA 94111  
Telephone: (415) 646-4674  
Email: nboos@maynardnexsen.com  

*Attorneys for Plaintiff Travelers Commercial Insurance Company*

*Via Email*

Kirk Pasich  
Kayla Robinson  
Pasich LLP  
10880 Wilshire Blvd., Suite 2000  
Los Angeles, CA 90024  
Telephone: (424) 313-7860  
Email: kpasich@pasichllp.com  
krobinson@pasichllp.com  

*Attorneys for Non-Party Amber Heard*

**BY ELECTRONIC SERVICE (E-MAIL):** Based on a court order or an agreement of the parties to accept electronic service, my electronic service address is heather.ward@mccormickbarstow.com, and I caused the document(s) to be sent to the persons at the electronic service address(es) listed in the Service List. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

**BY CM/ECF NOTICE OF ELECTRONIC FILING:** I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system. Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on May 9, 2023, at Fresno, California.

Heather Ward