UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 21-5832-GW-PDx | Date | May 10, 2023 |
|---|---|---|---|
| Title | *Travelers Commercial Insurance Company v. New York Marine and General Insurance Company* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULING ON NEW YORK MARINE AND GENERAL INSURANCE COMPANY'S MOTION TO DISQUALIFY MAYNARD COOPER & GALE, LLP [106]

Attached hereto is the Court's Tentative Ruling on the above-entitled Motion [106] set for hearing on May 11, 2023 at 8:30 a.m.

:

Initials of Preparer    JG

***Travelers Commercial Ins. Co. v. N.Y. Marine & Gen. Ins. Co.***, CV 21-5832-GW-(PDx)
Tentative Ruling on Motion to Disqualify Maynard Cooper & Gale, LLP

Defendant New York Marine and General Insurance Company ("NY Marine") moves for the disqualification of Nicholas J. Boos ("Boos") and the law firm of Maynard Cooper & Gale, LLP ("the Maynard Firm")[1] (collectively, "Counsel") as counsel for plaintiff/counterdefendant Travelers Commercial Insurance Company ("Travelers"). Counsel substituted-in to this action on February 28, 2023. *See* Docket No. 104.

NY Marine's motion is based on the assertion that an attorney[2] who previously worked for the law firm representing NY Marine in this action – McCormick, Barstow, Sheppard, Wayte & Carruth LLP ("the McCormick Firm") – and who, while he worked at the McCormick Firm, performed work on, and was exposed to confidential/privileged information related to, the coverage dispute giving rise to this action, left the McCormick Firm and is now in the employ of the Maynard Firm. Specifically, while he was at the McCormick Firm, NY Marine asserts that Chipman:

> (1) Performed actual work for NY Marine on the coverage dispute with Travelers and their mutual insured out of which the present litigation directly arises; (2) received multiple emails specifically addressing confidential and privileged information pertaining to the underlying coverage dispute out of which this litigation directly arises, including facts bearing on NY Marine's positions, as well as discussion of NY Marine's legal analysis and strategy in connection with that dispute; (3) was party to numerous conversations with and between the undersigned counsel for NY Marine during which confidential facts, legal analysis and strategy regarding NY Marine's position in the coverage dispute and this litigation were discussed; and (4) attended a February 23, 2022 dinner with the undersigned counsel and NY Marine's Coverage and Litigation Counsel during which confidential facts, legal analysis and strategy concerning this litigation were discussed by all present.

Docket No. 106-2, at 1:11-2:1; *see also* Declaration of Nicholas H. Rasmussen in Support of New York Marine and General Insurance Company's Motion to Disqualify Maynard

---

[1] The motion acknowledges the possibility, and the Opposition confirms as a fact, that Maynard Cooper & Gale, LLP is now known as Maynard Nexen, P.C.

[2] The attorney in question is identified in Travelers' Opposition as Matthew A. Chipman ("Chipman"). *See, e.g.*, Declaration of Matthew A. Chipman in Support of Travelers Commercial Insurance Company's Opposition to Motion to Disqualify, Docket No. 108-1. Chipman joined the Maynard Firm on April 11, 2022, *see id.*, ¶ 7, almost a year before Boos substituted-in as Travelers' attorney in this case.

1

Cooper & Gale, LLP, Docket No. 106-4, ¶¶ 5-8; Declaration of James P. Wagoner in Support of New York Marine and General Insurance Company's Motion to Disqualify Maynard Cooper & Gale, LLP ("Wagoner Decl."), Docket No. 106-3, ¶¶ 7-9; Declaration of Graham A. Van Leuven in Support of New York Marine and General Insurance Company's Motion to Disqualify Maynard Cooper & Gale, LLP, Docket No. 106-6, ¶¶ 3-5; Declaration of Ellen Fine in Support of New York Marine and General Insurance Company's Motion to Disqualify Maynard Cooper & Gale, LLP, Docket No. 106-5, ¶ 7; Declaration of Ellen Fine in Support of New York Marine and General Insurance Company's Motion to Disqualify Maynard Cooper & Gale, LLP, Docket No. 106-7, ¶¶ 3-4.

Motions to disqualify counsel are decided under state law. *See In re County of Los Angeles*, 223 F.3d 990, 995 (9th Cir. 2000); *see also* C.D. Cal. L.R. 83-3.1.2 (indicating that the Rules of Professional Conduct of the State Bar of California are adopted as the professional conduct standards in this District). NY Marine argues that not only does Chipman's prior role/activity at the McCormick Firm prevent *him* from representing Travelers in this action, but that his current employment at the Maynard Firm automatically requires the entire Maynard Firm's disqualification from representing Travelers in this matter, and renders any attempt by the Maynard Firm to screen Chipman irrelevant, under cases such as *Kirk v. First Am. Title Ins. Co.*, 183 Cal.App.4th 776 (2010), *Henriksen v. Great Am. Sav. & Loan*, 11 Cal.App.4th 109 (1992), *Flatt v. Superior Court*, 9 Cal.4th 275 (1994), and *Meza v. H. Muehlstein & Co., Inc.*, 176 Cal.App.4th 969 (2009). *See Kirk*, 183 Cal.App.4th at 814 (concluding that when a "tainted attorney was actually involved in the representation of the first client, and switches sides in the same case, no amount of screening will be sufficient, and the presumption of imputed knowledge [to the law firm where he/she now works] is conclusive"); *Henriksen*, 11 Cal.App.4th at 115 (stating that "[a]s a general rule in California, where an attorney is disqualified from representation, the entire law firm is vicariously disqualified as well" and that this is "especially true where the attorney's disqualification is due to his prior representation of the opposing side during the same lawsuit," while also noting that – at least as of that time – "the vicarious disqualification rules have essentially been shaped by judicial decisions" because the California Rules of

Professional Conduct did not specifically address the question); *id.* (concluding that trial judge "had no choice but to disqualify the entire firm" in "switching sides" case notwithstanding evidence of screening attorney in question "since the moment he arrived at the firm"); *id.* at 117 ("[W]here an attorney is disqualified because he formerly represented and therefore possesses confidential information regarding the adverse party in the current litigation, vicarious disqualification of the entire firm is compelled as a matter of law."); *Meza*, 176 Cal.App.4th at 978-79 (citing *Henriksen* and stating that an ethical wall "will generally not preclude the disqualification of the firm" when individual attorney's disqualification is due to his prior representation of the opposing side during the same lawsuit); *cf. Flatt*, 9 Cal.4th at 283 ("Where the requisite substantial relationship between the subjects of the prior and the current representations can be demonstrated, access to confidential information by the attorney in the course of the first representation (relevant, by definition, to the second representation) is *presumed* and disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm.").

Travelers' primary response to the motion – apart from discussing Chipman's lack of memory of working on this matter while at the McCormick Firm and the Maynard Firm's efforts to screen Chipman from this matter – is to assert that NY Marine relies on outdated standards as far as imputed disqualification of the Maynard Firm in its entirety is concerned. In particular, Travelers argues that changes to California Rule of Professional Conduct 1.10 in 2018[3] have altered the necessary analysis for imputed

---

[3] Rule 1.10, in pertinent part, now provides that:
   (a)  While lawyers are associated in a firm,* none of them shall knowingly* represent a client when any one of them practicing alone would be prohibited from doing so by rule 1.7 or 1.9, unless

. . .

      (2) the prohibition is based upon rule 1.9(a) or (b) and arises out of the prohibited lawyer's association with a prior firm,* and

         (i) the prohibited lawyer did not substantially participate in the same or a substantially related matter;

         (ii) the prohibited lawyer is timely screened* from any participation in the matter and is apportioned no part of the fee therefrom; and

         (iii) written* notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this rule, which shall include a description of the screening* procedures employed; and an agreement by the firm* to respond promptly to any written* inquiries or objections by the former client about the screening* procedures.

3

disqualification, noting that the only two cases NY Marine relies upon that post-date these changes – *Sierra v. Costco Wholesale Corp.*, No. 22-CV-01444-JSW, 2022 WL 4454359 (N.D. Cal. Sept. 23, 2022) and Ramos v. Costco Wholesale Corp., No. CV 22-3579-MWF (AFMx), 2022 WL 18278604, at *2 (C.D. Cal. Nov. 9, 2022) – both undertake the analysis as it should now be done: consideration first of whether the individual lawyer is disqualified under Rule 1.9[4] before examining whether vicarious disqualification should apply (*i.e.*, whether "the presumption of vicarious disqualification . . . has . . . been rebutted"). *See Sierra*, 2022 WL 4454359, at *4; *Ramos*, 2022 WL 18278604, at *2; *see also Klein v. Facebook, Inc.*, No. 20-CV-08570-LHK, 2021 WL 3053150, at *4-8 (N.D. Cal. July 20, 2021). Travelers asserts that the current Rule 1.10 language and these more-recent cases means there is no automatic disqualification of a prohibited lawyer's new firm.

At least in part this is the correct conclusion, Travelers further argues, because the revised Rule 1.10 requires a court to examine whether or not the particular prohibited lawyer "substantially participate[d]" in the matter in his or her earlier employment. In turn, Comment [1] to the current Rule 1.10 provides various factors that should be considered in determining whether previous participation was "substantial:" the lawyer's level of responsibility, duration of participation, extent of advisement or personal contact with client, and exposure to material confidential information. As noted further *infra*, the Court would agree that, at least on the present evidentiary showing, it would not be possible for it to conclude that, using those factors, Chipman met the "substantial participat[ion]" standard while working at the McCormick Firm.

NY Marine responds to this argument by noting that Travelers has only highlighted post-2018 cases – *Sierra* and *Ramos* – that deal with situations where the

---

Cal. Rules of Prof'l Conduct 1.10(a)(2). Rule 1.9(a) provides that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person* in the same . . . matter in which that person's* interests are materially adverse to the interests of the former client unless the former client gives informed written consent.*" Cal. Rules of Prof'l Conduct 1.9(a).

It is noted that, in the above quoted rules, the asterisks appear in the original text and "[a]n asterisk (*) identifies a word or phrase defined in the terminology rule, rule 1.0.1." *See* Footnote to Cal. Rules of Prof'l Conduct 1.10.

[4] There appears to be no dispute here that at the very least Chipman is disqualified from representing Travelers in this case.

conflicted attorney previously represented the former client in other *similar* matters, whereas it has provided evidence that Chipman represented NY Marine and received NY Marine's confidential information in *this* matter. While that appears to be an accurate distinction (and, in fact, neither *Sierra* nor *Ramos* cited to or quoted from Rule 1.10), the language of Rule 1.10 would suggest that it may not be dispositive.

NY Marine argues that there is "nothing in [Rule 1.10 that] suggests that the Rule fundamentally alters the well-established California law that neither an attorney, nor their firm, may accept a representation adverse to a former client in the same matter where the attorney previously represented and obtained the former client's confidential information." Docket No. 109, at 2:3-7. But the Court does not understand how – absent some quibbling over the meaning of NY Marine's use of the word "fundamentally" – that argument can be made given the current language of subparagraph 1.10(a)(2)(i), which seeks to confirm that the attorney in question "did not *substantially participate* in *the same* or a substantially related matter." Cal. Rules of Prof'l Conduct 1.10(a)(2)(i) (emphases added).⁵ Under that wording, whether or not Travelers has only relied on cases dealing with "substantially related matter[s]" is sort of beside the point because the "substantially participate" language is *not* limited only to "substantially related matter[s]." It extends to "the same . . . matter." As Travelers argues in its Opposition, "[i]f the Rule was intended to provide for automatic exclusion, there would be no need to qualify the level of the lawyer's prior participation." Docket No. 108, at 6:13-16.

Similarly, NY Marine asserts that the statement in Comment [6] to Rule 1.10 that "[s]tandards for disqualification, and whether in a particular matter (1) a lawyer's conflict will be imputed to other lawyers in the same firm,* or (2) the use of a timely screen* is effective to avoid that imputation, are also the subject of statutes and case law," with a specific citation to *Kirk*, among other cases, "confirms that *Kirk* still sets forth the

---

⁵ "Vicarious disqualification" may indeed still be the "general rule" notwithstanding the language of Rule 1.10, as NY Marine argues in its Reply, but under the current wording of Rule 1.10, it would appear to take a showing of "substantial[] participat[ion]" to reach that "general rule" result. As another way of saying the same thing, it may be true, as NY Marine also argues in its Reply, that the fourth factor recognized in Comment [1] to Rule 1.10 should be treated as "dispositive" in "switching sides" situations. But the Court would still have to wrestle with the "extent" and "materiality" elements reflected in that factor in reaching its conclusion. NY Marine's present showing is insufficient on those topics, even if the Court were prepared to treat the factor as potentially dispositive.

5

relevant law governing" this situation, "requiring disqualification where an attorney 'switches sides' in the same matter." Docket No. 109, at 7:8-13. But if that were true, again, what is the point of subparagraph 1.10(a)(2)(i) and Comment [1]?[6] Certainly, recognizing that the topic was also addressed in (or "the subject of") certain cases is not the same thing as noting that those decisions still *control* on the topic – indeed, such a statement would make the question raised in the previous sentence even more pressing.

As such, while the Court would agree with NY Marine that a "substantial relationship" analysis of the type performed in *Sierra* and *Ramos* is not required here (because here we are concerned with representation in the *same* matter, not a purportedly substantially related one), the pertinent question for the present circumstances – at least under the Rules of Professional Conduct – now appears to be: "If you were involved in this same matter while at your prior firm, did you 'substantially participate' in it?" Comment [1] to Rule 1.10 indicates that "expos[ure]" to "confidential information" in that prior representation is relevant (and, as NY Marine argues, perhaps should be considered dispositive), but the Court is called upon to assess "the extent to which" the lawyer in question had such exposure and to ensure that any such confidential information is "likely to be material" in this action. It is not clear that the Court can meaningfully engage in such an analysis with the information NY Marine has thus far provided (no doubt limited in detail due to NY Marine's reliance upon evidentiary considerations that may no longer apply given the current wording of Rule 1.10).

Perhaps the strongest argument for NY Marine here would be an assertion that, whatever Rule 1.10 says, the promulgation of that rule is not binding or precedential in any way. This may, in fact, have been what it was attempting to say – particularly by way of its reference to Comment [6] to Rule 1.10 – though without coming out and doing so directly. The Court has made an effort itself to examine the effect of the Rules of Professional Conduct upon prior case law that may not longer be consistent with present rule language. The best it has been able to uncover on its own in this regard is the

---

[6] In arguing that the rule of "automatic disqualification" still exists, unaffected by current Rule 1.10 in situations where an attorney has "switched sides" on the same matter, NY Marine effectively wants it to be the case that the direct receipt of *any* confidential information leads to that result. The Court simply cannot square that contention with the language of subparagraph 1.10(a)(2)(i) and Comment [1] to the Rule.

observation that such rules "are disciplinary rules, and merely inform the law controlling motions to disqualify," and that they – or at least their predecessors – "'are not intended to supersede existing law relating to . . . motion[s] for disqualification of counsel due to conflict of interest.'" *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 820 F.Supp. 1212, 1215 n.6 (N.D. Cal. 1993) (quoting Discussion to Rule 1-100 of California Rules of Professional Responsibility). But is this still the current view of the effect/impact of professional conduct rules in California? There is a hole in the parties' briefing in this regard. The Court is therefore left struggling with what to do with current Rule 1.10(a)(2)(i).

If it is still possible that Chipman did not "substantially participate" in this matter for NY Marine while at the McCormick Firm – and NY Marine has not, thus far, demonstrated otherwise[7] – the only other[8] question germane under Rule 1.10[9] with respect to whether Counsel must be disqualified because of Chipman's present employment by the Maynard Firm is whether Chipman was "timely screened from any participation in the matter and is apportioned no part of the fee therefrom." Cal. Rules of Prof'l Conduct 1.10(a)(2)(ii). In truth, what this comes down to is whether he was "timely screened" because Chipman, an Associate at the Maynard Firm, is paid via a salary and bonus structure, with no compensation from the firm directly related to this

---

[7] Even assuming – despite the fact that this is NY Marine's motion – that it is Traveler's burden to demonstrate applicability of the exception resident in subparagraph 1.10(a)(2), Travelers' submission thus far supports a conclusion that Chipman – a junior associate with apparently very little time spent on this matter, exposure to the client itself only by way of a group dinner out at a restaurant, and an "exposure to confidential information" lacking almost entirely in detail – did not "substantially participate" in representing NY Marine in this matter when he worked for the McCormick Firm. NY Marine's evidence to the contrary does not convincingly demonstrate otherwise, at least based upon the level of detail it has provided to this point.

[8] There appears to be no issue here with respect to whether NY Marine was "promptly given" "written notice" of the type required by Rule 1.10(a)(2)(iii) in the form of Counsel's March 9 letter.

[9] Under the California case law – with the exception of *Sierra* and *Ramos* which, as noted *supra*, both involved "substantial relationship" situations, not "switching sides" situations – NY Marine cited (before Travelers raised the issue of Rule 1.10 in its Opposition), efforts by the Maynard Firm to screen Chipman from involvement in this matter on Travelers behalf would be irrelevant. Even were such efforts relevant, however, NY Marine also cites case law indicating that any such screening would have had to begin at the outset of the second firm's hiring of the "tainted" lawyer. Here, the evidence suggests that a proper screen was not implemented until sometime after March 2, 2023, at the earliest, in response to the McCormick Firm's March 2 letter to the Maynard Firm complaining about the Maynard Firm's representation of Travelers in this matter. *See* Wagoner Decl., ¶ 13 & Exh. 3.

7

action.  *See* Declaration of Nicholas J. Boos in Support of Travelers Commercial Insurance Company's Opposition to Motion to Disqualify ("Boos Decl."), Docket No. 108-2, ¶ 8.

Can the Maynard Firm satisfy Rule 1.10(a)(2)(ii)'s requirement that the attorney in question be "timely screened," however?  Travelers argues that a screen must be created "as soon as the conflict was revealed," citing *Export-Import Bank of Korea v. ASI Corp.*, No. CV162056MWFJPRX, 2019 WL 8200603, at *10 (C.D. Cal. Jan. 16, 2019).  Meanwhile, NY Marine insists that the screening must take place beginning at or before the moment the second firm's representation begins.  Here, Counsel began discussing representation with Travelers on February 17, 2023, Boos spoke with Chipman on February 18, 2023, in an attempt to determine whether there was a conflict, and Boos formally substituted-in on February 28, 2023.  *See* Boos Decl., ¶¶ 3-4; Docket No. 104.

If Rule 1.10 is controlling as to how the analysis is to proceed, the Court's initial reaction would be to question why the timeliness of any screening would *precede* a time at which it is determined – or is at least asserted – that the lawyer in question "substantially participate[d]" in the matter while at his or her prior firm?  In other words, while it might make sense to equate a "timely screening" with the beginning of representation under a prior approach that did not look to "substantial participation" because that approach was more black-and-white, where a "grey area" has been inserted into the calculus via the "substantial participation" calculation, can/should we still have a black-and-white timing determination tied to the beginning of representation?[10]  The Court cannot think of any obvious reason why we should.

According to NY Marine, it should have been apparent to the Maynard Firm *prior*

---

[10] The Court may share with NY Marine certain concerns about whether the current language of subparagraph 1.10(a)(2) represents a wise development in the law.  *See, e.g.*, Docket No. 109, at 14-15 n.6.  One particular issue that raises some concern for the Court under the Rule is how the "substantially participate" determination is to be made upon attorneys moving firms.  At least in terms of analysis of the issue at the new firm consistent with the factors recited in Comment [1], the determination will presumably have to be made *solely* by the attorney who himself/herself is prohibited from representation under Rule 1.9; otherwise, confidential material may be disclosed to the new firm simply in the process of determining whether a firm-wide prohibition/disqualification is appropriate/necessary.  But in determining what information is "likely to be material in the current matter," would that same attorney not also have to be somewhat familiar with the thoughts/plans/objectives underlying his new firm's handling of the matter?  Would this be consistent with his/her or the new firm's ethical obligations, and could it be accomplished if a screen is (or is to be) implemented?  In at least this Court's view, there is much uncertainty here.

8

to undertaking its representation of Travelers here that a screen was necessary at least with respect to Chipman's participation in representing Travelers in this matter because Chipman was himself disqualified from such representation via the terms of Rule 1.9(a). But that would require knowledge on the part of the Maynard Firm that Chipman had represented Travelers in this action while at the McCormick Firm, and the evidence indicates that the Maynard Firm had no such knowledge as of the onset of the Maynard Firm's representation of Travelers in this matter. *See* Declaration of Matthew A. Chipman in Support of Travelers Commercial Insurance Company's Opposition to Motion to Disqualify, Docket No. 108-1, ¶¶ 8-9; Boos Decl., ¶¶ 3-4.

Yet, with the exception of a single comment in a single case that does not actually mention or cite Rule 1.10, what limited case law there is on the subject supports NY Marine's position. Post-2018 case law applying the "timely screened" provision of Rule 1.10 relies on *Kirk*'s statement that "[a] firm must impose screening measures when the conflict first arises," *Klein v. Facebook, Inc.*, No. 20-CV-08570-LHK, 2021 WL 3053150, at *7 (N.D. Cal. July 20, 2021) (quoting *Kirk*, 183 Cal.App.4th 776, 810 (2010)), while simultaneously stating that "'screening should be implemented before undertaking the challenged representation or hiring the tainted individual'" and "'[s]creening must take place at the outset to prevent any confidences from being shared,'" *id.* (quoting *In re Complex Asbestos Litig.*, 232 Cal.App.3d 732, 745 (1991)). *Sierra* follows that approach too (though without citing Rule 1.10). *See Sierra*, 2022 WL 4454359, at *4 (focusing on screening "when the conflict first arises," that it "should be implemented before undertaking the challenged representation or hiring the tainted individual" and "must take place at the outset"). Though it places emphasis on post-2018 case law (including *Klein*) where it believes such law suits it, Travelers ignores *Klein*'s treatment of the "timely screening" obligation. *See* Docket No. 108, at 11:20-13:17.

It is true that, in *Export-Import Bank of Korea*, a Central District court – considering a different professional conduct rule imposing a "timely screened" requirement – asserted that "two elements are necessary and ***must*** be present to find a screen effective," with one of those elements being that "the screen was imposed as soon as the conflict was revealed." No. CV 16-2056-MWF (JPRx), 2019 WL 8200603, at *10 (C.D. Cal. Jan. 16, 2019). Of course, this does not clarify the implicit issue of revealed *to*

9

*whom*? But putting aside that potential criticism of the perceived requirement's phrasing, reading it to excuse a delay in screening would benefit attorneys who keep such conflicts under wraps, either purposefully or negligently, to the detriment of clients whose confidences are at the risk of exposure. Moreover, as NY Marine notes in its Reply, that same court ultimately recognized that "[c]ourts routinely disqualify counsel for failing to implement ethical screens **before** representing a prospective client." *Id.* at \*11.

While the Court believes that it may be exceedingly difficult for a law firm to know (though it is the whole purpose of a conflicts-check process), for certain, that one of its attorneys represented a prospective new client in the same matter, let alone whether he or she "substantially participated" in that (or a "substantially related" matter), perhaps especially when the attorney in question professes to his or her new employer to have *not* done so, the Court concludes that the risk of such uncertainty (or nondisclosure) must fall on the attorney's new firm rather than the prior client whose confidences suffer the threat of disclosure, actual or imputed. This is consistent with the concept, frequently mentioned in the context of disqualification motions, that preservation of client confidences and maintenance of public trust in the administration of justice and integrity of the bar are paramount interests. Although there are of course also interests in protecting a client's choice of counsel and an attorney's decision to represent a client, without the fundamental concern about preserving client confidences this whole area of case law has little reason to exist.

In the end, therefore, while the Court believes that Travelers is likely correct – or at least NY Marine has failed to convince the Court that Travelers is *not* correct – that the language of Rule 1.10 makes a difference in how the law is to be applied in California even in cases involving "switching sides," the "timely screening" concept that still applies in order to prevent disqualification of an attorney's new firm under Rule 1.10 still requires implementation of screening at or before the time a new representation coincides with the employment of an individual attorney who is precluded from representation under Rule 1.9. Here, that did not occur. Instead, efforts to effectively screen Chipman did not occur until sometime after the McCormick Firm alerted the Maynard Firm to the perceived problem by way of its March 2, 2023 letter.

As a result, putting aside the question of whether or not Chipman substantially

participated in representing NY Marine while he worked at the McCormick Firm, the exception to imputed disqualification of the Maynard Firm in its entirety that might have been available under the terms of Rule 1.10(a)(2) is not applicable here. Consequently, the Court believes that it must exercise its discretion on this matter by granting NY Marine's motion and disqualifying Counsel.[11]

---

[11] The Court easily rejects Travelers' last argument that the Court should deny the motion because the motion is purely tactical, or brought in bad faith. NY Marine became aware that the Maynard Firm would be representing Travelers in this matter on February 28, 2023, when the Maynard Firm substituted-in as counsel. After attempting to informally address the matter with the Maynard Firm, NY Marine filed this motion on April 10. The motion revealed as much information about Chipman's work at the McCormick Firm as appear to be required under California law (or at least under pre-Rule 1.10 law), in an effort to not disclose material or information that NY Marine is attempting to protect from disclosure – due to the attorney in question's current employment with the Maynard Firm – by way of this very motion. In short, the Court sees no cause whatsoever to be concerned that the instant motion is purely-tactical or brought in bad faith.